## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **LUCAS WALL,** | : | |
| | : | |
| Plaintiff, | : | Case No. 6:21-cv-1008-PGB-GJK |
| | : | |
| v. | : | District Judge Paul Byron |
| | : | |
| **SOUTHWEST AIRLINES,** *et. al.* | : | Magistrate Judge Gregory Kelly |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST ALL DEFENDANTS ON COUNT 1 OF THE COMPLAINT

COMES NOW plaintiff, *pro se*, and moves for an order temporarily restraining all seven airline defendants[1] from failing to obey the Air Carrier Access Act ("ACAA") (49 USC § 41705) and the regulations promulgated thereunder (14 CFR Part 382) when considering passengers' exemption requests from the Federal Transportation Mask Mandate ("FTMM")[2] pending a ruling on the Motion for Preliminary Injunction I plan to file in the next week.

---

[1] The defendants are Southwest Airlines, Alaska Airlines, Allegiant Air, Delta Air Lines, Frontier Airlines, JetBlue Airways, and Spirit Airlines.

[2] The Federal Transportation Mask Mandate consists of: 1) Executive Order 13998, 86 Fed. Reg. 7205 (Jan. 26, 2021); 2) Department of Homeland Security Determination 21-130 (Jan. 27, 2021); 3) Centers for Disease Control & Prevention Order "Requirement for Persons To Wear Masks While on Conveyances & at Transportation Hubs," 86 Fed. Reg. 8,025 (Feb. 3, 2021); 4) Transportation Security Administration Security Directives 1542-21-01A, 1544-21-02A, and 1582/84-21-01A (May 12, 2021); and 5) TSA Emergency Amendment 1546-21-01A (May 12, 2021).

My Complaint includes three causes of action, however this motion is limited to Count 1. The other counts will be addressed later in the course of this litigation.

I have a ticket to travel by air tomorrow (June 16) and will be directly and imminently harmed if the defendants are not immediately restrained from illegally requiring numerous onerous steps for a flyer with a disability who can't wear a mask to obtain an exemption from the FTMM. Wall Declaration at ¶ 10, attached as Pl. Ex. 1. I also still need to complete my blocked June 2 flight from Orlando to Fort Lauderdale immediately, otherwise I won't be able to use the ticket I paid for to fly from Fort Lauderdale to Salt Lake City tomorrow. Wall Decl. at ¶ 11.

## I. LEGAL STANDARD

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts to give notice and the reasons why it should not be required." Fed.R.Civ.P. 65(b).

Local Rule 6.01 lays out additional procedures including five parts the moving party must include, four standards the legal memorandum must meet, and service upon the defendants. Each of these requirements will be addressed in the Argument section below.

To obtain a TRO, the movant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

A plaintiff seeking a TRO must show that the extraordinary remedy of an *ex parte* restraining order is warranted. Plaintiff must show that the injury is so imminent that notice and a hearing is impractical. *Taafee v. Robinhood Markets*, No. 8:20-cv-513-T-36SPF (W.D. Fla. March 31, 2020).

## II. STATEMENT OF FACTS

The facts of this case are laid out in excruciating detail in ¶¶ 1-412 of the Complaint. Dkt. 1. I draw the Court's attention to the most relevant facts related to this request for a TRO:

1. I've been taking care of my mother in The Villages, Florida – located in this judicial district – during the last several months of the COVID-19 pandemic. *Id.* at ¶ 1.

2. Now that my mom and I are both fully vaccinated, I booked May 31, 2021, eight airline tickets for summer travel to see friends and family as well as visit several National Park Service units. *Id.* at ¶ 2.

3. The first flight I booked was Southwest Airlines Flight 2204 from Orlando (MCO) to Fort Lauderdale (FLL) June 2, 2021. *Id.* at ¶ 3.

4.  I have been fully vaccinated since May 10, 2021. *Id.* at ¶ 21.

5.  Due to my Generalized Anxiety Disorder, I have never covered my face. I tried a mask a couple times for brief periods last year, but had to remove it after five or so minutes because it caused me to instigate a feeling of a panic attack, including hyperventilating and other breathing trouble. *Id.* at ¶ 22-24. *See also* Pl. Exs. 11-16 attached to the Complaint. *Id.*

6.  Defendant Southwest refused to let me board Flight 2204 from MCO to Fort Lauderdale (FLL) the morning of June 2. *Id.* at ¶ 27 and Wall Decl. at ¶ 7.

7.  I am stranded at my mother's house in The Villages because I was deprived of the ability to take the flight I paid for.

8.  The next flight I have booked is tomorrow (June 16): JetBlue Airways Flight 2319 from Fort Lauderdale (FLL) to Salt Lake City (SLC). Dkt. 1 at ¶ 4 and Wall Decl. at ¶ 10.

9.  I have numerous other flights booked domestically and internationally from June 18 to July 15. Dkt. 1 at ¶¶ 5-10 and Wall Decl. at ¶ 12.

## III. I MEET THE CRITERIA REQUIRED TO OBTAIN A TEMPORARY RESTRAINING ORDER

Fed.R.Civ.P. 65 spells out the procedure for obtaining a TRO. Those requirements are supplemented by Local Rule 6.01. I will address each requirement beginning first with the federal rules:

A.  Fed.R.Civ.P. 65(b)(1): Formal notice to the seven defendants is not possible at this time because service of process has not been effectuated given that

the Complaint was just filed yesterday (June 14). Summonses have not yet been issued by the clerk, so I haven't even had a chance to begin serving process. No attorney for the defendants has yet to enter an appearance in this matter. I have communicated informally by e-mail with the attorneys and offices listed in the Certificate of Service at the end of this document.

B. When I filed the Complaint yesterday (June 14), I informally advised the opposing parties that I intended to quickly move for a TRO, but I have not received any response from six of the defendants. The attorney who said he will be representing Frontier Airlines once formal service is complete, Brian Maye, replied to simply acknowledge receipt of the Complaint by e-mail.

C. Fed.R.Civ.P. 65(b)(1)(A): My Complaint and the attached Declaration (Pl. Ex. 1) clearly show that immediate and irreparable injury, loss, or damage will result to me before the adverse party can be heard in opposition because I have already been denied the ability to fly once (on June 2) and am at risk of being banned from using the other airline tickets I have purchased for later this month (starting tomorrow, June 16) directly because of the discriminatory conduct of the seven defendants.

D. Fed.R.Civ.P. 65(b)(1)(B): I certify, as explained above. the efforts I have made to give notice to the defendants. A ruling on this motion should not wait for the airlines' attorneys to enter an appearance because of the emergency situation, which begins tomorrow (June 16).

E.  Fed.R.Civ.P. 65(c): No security is needed in conjunction with this motion because the defendants would not suffer any monetary damages if the TRO is granted. On the contrary, the defendants would actually ***gain*** money because I would not be forced to cancel and refund the plane tickets I have already purchased. The TRO would simply temporarily force the defendants to comply with the ACAA until this Court can hold a hearing on the Motion for Preliminary injunction I plan to file in the next week.

F.  Local Rule 6.01(a)(1): I have included "Temporary Restraining Order" in the title of this motion.

G.  Local Rule 6.01(a)(2): The conduct to be restrained is set forth in the attached Proposed Order, namely the defendants' refusal to follow the ACAA nationwide when it comes to accommodating passengers with disabilities who can't wear face coverings. These exemptions are permitted under the FTMM, but the defendants are making it so onerous to be granted one that their conduct has the effect of banning tens of millions of disabled Americans from using any aspect of the country's commercial aviation system.

H.  In the alternative, I ask for the TRO to apply to all defendants in this judicial district; or at bare minimum, solely to me as an individual flyer with a qualifying medical condition that makes it impossible for me to wear a face mask without endangering my health.

I.  The persons subject to restraint are all employees of the defendants, including their contractors, who work in airports and on board aircraft.

J.  Local Rule 6.01(a)(3): As stated above, no security is required. "The Court recognizes that it maintains broad discretion to determine the amount of security and may, if appropriate, waive the security. *Johnston v. Tampa Sports Auth.*, 8:05-cv-2191-T-27MAP, 2006 WL 2970431, at *1 (M.D. Fla. Oct. 16, 2006) (Whittemore, J.) (collecting cases)." *Taafee.*

K.  Local Rule 6.01(a)(4): My legal memorandum is contained in the Argument section below.

L.  Local Rule 6.01(a)(5): A proposed order is attached and an editable Microsoft Word version will be e-mailed to chambers.

M. Local Rule 6.01(b): I address the four requirements of the legal memorandum in the Argument section below.

N.  Local Rule 6.01(c): I vow to comply with the rule requiring service of all enumerated documents immediately after the order resolving this motion.

## IV. ARGUMENT

### A. There is a strong likelihood I will ultimately prevail on the merits of my claims.

I have a substantial likelihood of success on the merits. Defendants' illegal discriminatory conduct is so blatant and outrageous, there is no need for the Court to conduct any additional evidential inquiry at this first step in the case. Sadly the federal agency responsible for enforcing the ACAA, the Department of Transportation ("DOT"), has abrogated its legal duty to do so, allowing the defendants for the past year to discriminate against likely millions of flyers and potential flyers by

failing to obey the act and its accompanying regulations. Therefore this Court must intervene to put an immediate stop to the defendants' misconduct.

## 1. Six defendants require advance notice by passengers who can't wear a mask, but this is explicitly forbidden.

These five defendants require advance notice by a disabled customer who requests a mask exemption a specific number of days before flying: Allegiant and Frontier: 10 days; Southwest and Alaska: seven days; and Spirit: two days.

JetBlue's notice provision is impermissibly vague, requiring advance notice but not indicating when customers must request an exemption: "Customers with disabilities who cannot wear a mask, or cannot safely wear a mask because of the disability as defined by the Americans with Disabilities Act, may contact us  to learn about qualifying for an exemption from the federal requirement to wear a mask when on board a flight. Exemptions will be limited on board each flight and will require specific documentation."[3]

Delta does not require advance notice, but tells disabled passengers who can't wear a mask to show up at the airport at least one hour before normal to undergo a medical consultation with a third-party vendor.

For the six defendants who require advance notice, this is expressly forbidden by the ACAA. "[Y]ou must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

---

[3] https://www.jetblue.com/at-the-airport/accessibility-assistance/other-medical-concerns (visited June 15, 2021)

The Court should restrain Defendants Southwest, Alaska, Allegiant, Frontier, JetBlue, and Spirit from requiring advance notice by disabled passengers who can't wear a mask in violation of 14 CFR § 382.25.

## 2. At least four defendants require a medical certificate from a passenger's doctor before they can be granted a mask exemption, but this is explicitly forbidden.

Defendants Southwest, Alaska, Frontier, and Spirit require customers to present a medical certificate from their physician as part of their-mask exemption process. Defendants Allegiant and Delta do not require a medical certificate. Defendant JetBlue's policy on this matter is unclear since the airline does not publish its criteria for requesting an exemption.

Medical certificates from passengers' doctors are not allowed except in limited circumstances: "(a) Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation. (b)(1) You may require a medical certificate for a passenger with a disability — (i) Who is traveling in a stretcher or incubator; (ii) Who needs medical oxygen during a flight; or (iii) Whose medical condition is such that there is reasonable doubt that the individual can complete the flight safely, without requiring extraordinary medical assistance during the flight." 14 CFR § 382.23.

A passenger who can't wear a face mask because of a medical condition does not meet the three criteria listed for when airlines may demand a medical certificate.

The regulation goes on to state: "You may also require a medical certificate for a passenger if he or she **has** a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added).

Thus no airline may require a customer seeking a mask exemption to submit a medical certificate unless that person is known to be infected with COVID-19 or another communicable disease. The plain language of the regulation indicates the defendants may not make a presumptive determination that every single airline passenger – even those who are fully vaccinated and/or naturally immune – is infected with COVID-19. That is scientifically impossible and not permitted under 14 CFR § 382.23(c)(1).

The Court should restrain Defendants Southwest, Alaska, Frontier, and Spirit from requiring a medical certificate by disabled passengers who can't wear a mask in violation of 14 CFR § 382.23. Defendant JetBlue should also be restrained since it does not publish whether or not it requires a medical certificate from someone seeking a mask exemption.

### 3. At least three defendants require a third-party medical consultation from their vendor before a passenger can be granted a mask exemption, but this is explicitly forbidden.

Defendants Southwest, Delta, and Spirit require customers asking for a mask exemption to undergo a third-party consultation with a medical vendor. Defendant JetBlue's policy is unclear since it does not publish its rules for mask exemptions.

The other three defendants do not list a requirement for a third-party medical consultation.

The defendants who require a medical consultation are doing so illegally. "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate…" 14 CFR § 382.23(d).

Because airlines are not permitted to seek a medical certificate from any passenger wanting a mask exemption, they therefore are also not allowed to force said customers to undergo a third-party medical consultation. As the regulation clearly states, such consultation is only permitted for the small number of categories of disabilities that require a medical certificate.

The Court should restrain Defendants Southwest, Delta, and Spirit from requiring disabled passengers who can't wear a mask to undergo a third-party medical consultation in violation of 14 CFR § 382.23. Defendant JetBlue should also be restrained since it does not publish whether or not it requires a medical consultation.

**4. At least five defendants require a disabled passenger seeking a mask exemption – even those like me who are fully vaccinated and/or naturally immune from COVID-19 – to present a negative coronavirus test prior to each flight departure. But this constitutes illegal discrimination under the ACAA.**

Four defendants require disabled travelers seeking a mask exemption to submit a negative COVID-19 test taken within three days of departure: Southwest, Alaska, Allegiant, and Frontier. Spirit has the most outrageous requirement: a negative COVID-19 test must be provided that was taken within 24 hours of departure – an impossibility for many flyers who don't have access to rapid coronavirus testing. Defendant JetBlue's policy is unclear since it does not publish its rules for mask exemptions. Delta is the only defendant who does not demand a negative COVID-19 test.

Requiring a negative test for a virus is not specifically addressed in the regulations, however in general: "As a carrier, you must not subject passengers with a disability to restrictions that do not apply to other passengers, except as otherwise permitted in this part (e.g., advance notice requirements for certain services permitted by § 382.27)." 14 CFR § 382.33(a).

Also look at the overall nondiscrimination mandate in the ACAA statute: "In providing air transportation, an air carrier, including (subject to section 40105(b)) any foreign air carrier, may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities; (2) the individual has a record of such an impairment; (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

The regulations and statute are clear: The defendants may not require a negative COVID-19 test only from passengers with a disability who seek a mask exemption because this is a restriction not imposed on other passengers. Doing so constitutes illegal discrimination. The only way for the defendants to require a negative COVID-19 test from disabled passengers is to require such a test from ALL flyers. Then customers with and without a disability would be treated equally.

The Court should restrain Defendants Southwest, Alaska, Allegiant, Frontier, and Spirit from requiring disabled passengers who can't wear a mask to submit a negative coronavirus test unless they require ALL passengers to meet this requirement pursuant to 14 CFR § 382.33. Defendant JetBlue should also be restrained since it does not publish whether or not it requires a negative COVID-19 test from disabled customers asking for mask waiver. 49 USC § 41705(a).

**5. Defendants Southwest and Spirit won't allow a disabled passenger who does somehow get a mask exemption to travel on a flight that is above a certain percentage full. Southwest and JetBlue won't seat more than one mask-exempt passenger on a plane. But this is explicitly forbidden.**

Defendant Southwest informs passengers wanting a mask exemption to acknowledge that "Southwest Airlines may change my travel dates and/or flights should one or more of my originally scheduled flights have a capacity of 75% or more, or another Passenger approved for a mask exemption booked on such flight. ... Please note that Passengers may be required to travel on a different date than their scheduled itinerary." Pl. Ex. 115 attached to the Complaint. Dkt. 1.

The first provision is illegal because Southwest does not subject nondisabled travelers to being bumped from flights that have a capacity of 75% of more. 49 USC § 41705(a). Also: "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation." 14 CFR § 382.11(a)(1). And: "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

The second provision is also illegal: "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17.

Like Defendant Southwest, Defendant Spirit informs customers with mask exemptions that "We may place you on a flight that has a lower number of Guests." Pl. Ex. 121 attached to the Complaint. Dkt. 1. *See* 14 CFR § 382.17. And Defendant JetBlue states that "Exemptions will be limited on board each flight." Pl. 120 attached to the Complaint. Dkt. 1.

The Court should restrain Defendants Southwest, JetBlue, and Spirit from banning mask-exempt passengers from flights that are above a certain percent full and/or that have more than one mask-exempt customer on board pursuant to 14 CFR §§ 382.11(a)(1), 382.11(a)(4), and 382.17.

**6. Defendant Spirit allows it employees to move a disabled flyer with a mask exemption from his/her selected seat to the back of the plane. But this is explicitly forbidden.**

Defendant Spirit's mask-exemption policy includes this discriminatory aspect: "You may be moved to the back of the aircraft." Pl. Ex. 121 attached to the Complaint. Dkt. 1.

The Court should not tolerate Spirit's policy of moving disabled passengers to the rear of the plane – an ugly rule reminiscent of segregation policies of the past whereby black people were forced to sit in the back of the bus. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

The Court should restrain Defendant Spirit from requiring mask-exempt passengers from giving up the seat they chose and be moved to the rear of the plane pursuant to 14 CFR § 382.87(a). Defendant JetBlue should also be restrained since it does not publish whether or not it has a similar policy.

## 7. Congress has not amended the ACAA during the pandemic or provided other authority for the defendants to disregard their legal duty to avoid discriminating against passengers with disabilities.

Congress has ***never*** enacted a federal mask mandate. Nor has it amended the ACAA in response to the pandemic to give airlines permission to discriminate against passengers who can't tolerate covering their nose and mouth. Congress has approved at least 20 laws directly concerning the coronavirus pandemic, yet none

of these have authorized a mask mandate or discrimination against disabled flyers. *See* discussion in the Complaint at ¶¶ 114-118. Dkt. 1.

One may view the FTMM and masks in general as good or bad public policy. Americans disagree passionately about masks. But congressional intent is clear: Airline mask policies – and especially their discriminatory refusal to follow the law in granting exemptions to those with disabilities – are frowned upon.

### 8. Medical exemptions to the FTMM are expressly allowed, but defendants are making them impossible to get with their discriminatory conduct.

In the related case *Wall v. Centers for Disease Control & Prevention*, No. 6:21-cv-975-PGB-DCI, I argue the FTMM is illegal and unconstitutional. However, until this Court strikes it down and/or the FTMM is repealed, it is currently the policy of the Executive Branch. But it's important to consider here that the FTMM itself exempts passengers with disabilities who can't don a mask.

"This Order exempts the following categories of persons: ... A person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act..."[4]

The public policy of the United States is that airlines must exempt passengers with a disability such as myself who can't safety wear a mask because of their medical condition. But the defendants are discriminating against travelers who medically can't wear a face covering with so many onerous procedures that getting an

---

[4] CDC Order "Requirement for Persons To Wear Masks While on Conveyances & at Transportation Hubs" 86 Fed. Reg. 8,025 (Feb. 3, 2021).

exemption is nearly impossible, so most are just staying home, barred from flying anywhere in the country or abroad.

"I have a substantial interest in the discriminatory policies at issue in this suit. I am a frequent flyer, subject to airline enforcement policies dozens of times a year. I was denied the ability to fly June 2 because of Southwest's illegal discrimination against me as a passenger with a disability (Generalized Anxiety Disorder) that makes it impossible for me to tolerate wearing a face covering." Wall Decl. at ¶ 8.

The defendants' mask enforcement directives go far above and beyond state rules for face coverings. Their refusal to grant mask exemptions is in direct contradiction to the mask polices of 47 states and the District of Columbia, and violate the Centers for Disease Control & Prevention ("CDC")'s May 13, 2021, guidance that "vaccinated people don't need masks … ***people who are fully vaccinated can stop wearing masks***…" Dkt. 1 at Pl. Ex. 29 (emphasis added).

CDC finally admitted May 13: "The science is clear***: If you are fully vaccinated, you are protected, and you can start doing the things that you stopped doing because of the pandemic*** …" *Id.* (emphasis added).

The defendants' mask enforcement is so far-reaching they explicitly require those who are eating and drinking to wear masks "between bites and sips" – a policy found nowhere else in the country, even during the peak of the pandemic.

If the defendants are permitted to continue refusing transportation to disabled customers who can't wear a face mask, there would be no end to what they could

do to further discriminate against those with other disabilities. They could, for example, stop providing wheelchairs for mobility-impaired customers since this is a costly service. They could even flat-out ban anyone who can't walk from flying. Congress enacted the ACAA to protect passengers such as myself who suffer from one or more medical impairments. Airlines have a legal responsibility not to discriminate against us, a duty DOT has sadly failed to enforce during the pandemic.

The Court should restrain all defendants from prohibiting a mask exemption from any passenger who declares a disability and asserts they can't wear a mask because of it during the normal check-in process without having to go through any extra requirements that don't apply to nondisabled travelers.

## 9. The defendants are common carriers with legal duties to transport any passenger who purchases a ticket and complies with federal rules.

The 1831 Supreme Court ruling in *Beckman v. Saratoga & Schenectady Railroad* established that whenever there is a compelling public interest in a technology available to the public, for instance, a new mode of transport such as railways, then all citizens are equally entitled to enjoy its benefits and to access it. The right of free movement is not tied to any specific mode of transportation. Consequently, it encompasses all means of travel. If I want or need to travel by air – for example on a lengthy trip such as Fort Lauderdale, Florida, to Salt Lake City, Utah, coming up tomorrow (June 16), that is my right. I only plan to stay in Utah for two nights, making it impossible to travel there by means other than airplane. Also, I don't

own an automobile that I could use for my transportation. I must use public services such as commercial airlines.

Freedom of travel includes the right to movement on common carriers. "A carrier becomes a common carrier when it 'holds itself out' to the public, or to a segment of the public, as willing to furnish transportation within the limits of its facilities to any person who wants it." That means that any individual or corporation becomes a common carrier by promoting to the public the ability and willingness to provide transportation service, including air travel. Air transport providers operating in, to, or from the United States act under common carrier rules.[5]

Even if other modes exist, it is not acceptable to force disabled travelers to forego using air travel because "it would work a considerable hardship on many air travelers to be forced to utilize an alternate form of transportation, assuming one exists at all." *United States v. Alvarado*, 495 F.2d 799, 806 (2nd Cir. 1974).

The defendants' mask policies impermissibly establish an irrebuttable presumption that every single person flying anywhere in the United States is infected with COVID-19 and therefore must wear a mask to supposedly prevent transmission of the virus. (Scientific research actually shows that masks do nothing to reduce coronavirus spread and are actually harmful to humans. *See* the extensive discussion at ¶¶ 296-392 of the Complaint.) The defendants claim that every single traveler – even those who are fully vaccinated and/or have natural immunity – are

---

[5] FAA Advisory Circular No. 120-12A (Apr. 24, 1986), https://tinyurl.com/FAAAC120-12A (visited June 15, 2021).

deemed to be a direct threat to transportation safety. This conclusion is beyond absurd and is scientifically ***impossible***.

Public health can be adequately protected by means which, when compared with essentially excluding all disabled travelers who can't wear masks from the entire air-transportation network, are more narrowly tailored. For instance, there's no evidence the defendants have worked with the federal government to utilize the "Do Not Board" and "Lookout" systems to stop those who test positive for COVID-19 from flying for two weeks while they are ill. Dkt. 1 at Pl. Ex. 32. This would specifically target those travelers who are a genuine threat to public health without infringing on the freedom to travel for everyone else.

The broad and enveloping requirement the defendants impose for every airline passenger – regardless of their medical conditions – to cover their face indiscriminately excludes plainly relevant considerations such as the individual's disability, vaccination, and immunity status. The discriminatory policies are therefore "not … 'narrowly drawn to prevent the supposed evil,' cf. *Cantwell v. Connecticut*, 310 U.S. 307." *Aptheker v. Secretary of State,* 378 U.S. 500 (1964).

"This freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful – knowing, studying, arguing, exploring, conversing, observing, and even thinking. Once the right to travel is curtailed, all other rights suffer…" *Id.* (Douglas, J., concurring).

In this matter, the defendants have measures available to them that are far less restrictive than discriminating against any person who can't tolerate covering their nose and mouth, especially working with the government to use a system that's long been established to stop passengers with a communicable disease from traveling such as the "Do Not Board" and "Lookout" lists. *See* discussion in ¶¶ 184-196 of the Complaint. Dkt. 1.

**B. My inability to take flights represents irreparable injury because I am being denied the use of services I have paid for, and my statutory right to travel free from discrimination is being infringed upon.**

I will without a doubt suffer irreparable injury if the requested relief is not granted. Defendant Southwest by its action June 2 denying me the ability to board an airplane has already caused me irreparable injury.

Absent judicial relief, I'll be irreparably injured by the defendants because I won't be able to go to Utah tomorrow (June 16), which is 2,081 miles away from Fort Lauderdale. The only realistic way I can go is by air, but Defendant JetBlue will prevent me from making the trip absent relief – just like Defendant Southwest already denied me the ability to fly from Orlando to Fort Lauderdale on June 2.

Absent a TRO for the next two weeks, I will be deprived of using the tickets I have bought to fly June 16 on Defendant JetBlue, June 18 on Defendant Frontier, June 20 on Defendant Allegiant, June 22 on Defendant Southwest, and June 24-25 on Defendant Delta.

**C. Absent a restraining order, I will be unable to take the June 16 and other flights I currently have booked because of the defendants' illegal discrimination. But the defendants won't suffer any harm.**

The threatened injury to me outweighs the harm the relief would inflict on the defendants. In fact, not only would the seven defendants not suffer any harm, they would actually ***profit*** off of being restrained by this Court by way of not having to cancel and refund the plane tickets I purchased. Furthermore, the defendants could not allege they would suffer any harm by an order from this Court restraining them from violating the ACAA. If DOT carried out its statutory duty to enforce the ACAA, the Defendants would have already been fined millions of dollars for their illegal discrimination during the past year.

"For purposes of section 46301, a separate violation [of the ACAA] occurs under this section for each individual act of discrimination prohibited by subsection (a)." 49 USC § 41705(b). "A general civil penalty of not more than $35,188 ... applies to violations of statutory provisions and rules or orders issued under those provisions ..." 14 CFR § 383.2(a).

The defendants cannot have an interest in taking actions that are prohibited by law. They therefore cannot claim to have any cognizable "injury" as a result of the issuance of a TRO.

**D. The federal government's greatest interest in combatting the COVID-19 pandemic is getting Americans vaccinated so they can return to normal life. As a fully vaccinated traveler, I pose no threat to the other passengers and am merely seeking to enforce my legal rights.**

22

Entry of the requested TRO would serve the public interest in not discriminating against travelers with disabilities. For decades, it has been the policy of Congress that disabled Americans should have the same rights to go about their lives as those who are fortunate enough not to suffer from a crippling medical condition. In addition to the ACAA, Congress long ago passed laws to protect the disabled including the Rehabilitation Act and the Americans with Disabilities Act.

Furthermore, the FTMM itself recognizes that there are many disabled Americans who can't tolerate wearing a face mask. Ending the defendants' illegal discrimination against travelers with disabilities is indisputably in the public interest. The CDC and President Joe Biden have been telling Americans that once they get vaccinated, they can ditch their masks. Same with 47 states and D.C. as well as countless stores and other private businesses. The airline industry stands out as one of the few places left in America where the fully vaccinated must obstruct their breathing.

The defendants' extremely harsh enforcement of their mask rules – most of them totally banned all disabled travelers from flying from roughly June 2020 to February 2021, when the FTMM went into effect – is arbitrary and capricious. The defendants have not shown any proof that barring mask-exempt passengers from their airplanes has in any way contributed to public health.

The airline industry itself promotes how safe flying is. Studies the defendants commissioned have shown airplanes are among the safest places you can be during

the pandemic. *See* discussion at ¶¶ 393-412 of the Complaint. Dkt. 1. Most importantly, there have not been any reported outbreaks of COVID-19 at airports or on board aircraft. The Supreme Court drew this similar distinction when granting emergency injunctive relief to catholic churches in New York who faced draconian limits on how many people could attend mass.

"Not only is there no evidence that the applicants have contributed to the spread of COVID–19 but there are many other less restrictive rules that could be adopted to minimize the risk to public interests. Finally, it has not been shown that granting the applications will harm the public. As noted, the State has not claimed that attendance at the applicants' services has resulted in the spread of the disease. And the State has not shown that public health would be imperiled if less restrictive measures were imposed." *Roman Catholic Diocese of Brooklyn v. Cuomo,* No. 20A87 (Nov. 25, 2020).

Should the Court not restrain the defendants' illegal discriminatory conduct, tens of millions of Americans with health problems who can't wear masks will continue to be denied use of the nation's aviation system – a system partly funded by our own tax dollars. Thus, it is absolutely in the public interest to restrain the defendants' refusal to grant mask exemptions nationwide (or at least in this judicial district or, at minimum, specific to myself until a preliminary injunction hearing can occur). Given the vast size of our nation, excluding a significant percentage of our population from the ability to fly for work, to visit family, to vacation, to attend medical appointments with specialty physicians in other states, and so forth causes

immense harm and suffering – exactly the sort of injuries Congress enacted the ACAA to prevent.

This Court has the power to put a stop to it, especially considering that scientific research shows that masks do nothing to reduce coronavirus spread and are actually harmful to humans. *See* discussion at ¶¶ 296-392 of the Complaint. Dkt. 1.

## V. PRAYER FOR RELIEF

WHEREFORE, I request this Court issue the attached proposed order granting me the requested relief.

Respectfully submitted this 15th day of June 2021.

*Lucas Wall*

Lucas Wall, plaintiff
435 10th St., NE
Washington, DC 20002
Telephone: 202-351-1735
E-Mail: Lucas.Wall@yahoo.com

**CERTIFICATE OF SERVICE**

Because this is a new case, formal service of the Complaint has not yet been completed on any defendant and no defense counsel have entered an appearance with the Court. However, I have corresponded prior to filing this lawsuit with attorneys for six of the defendants. I've also e-mailed numerous times counsel for and officers of Defendant Spirit Airlines, who have failed to respond to my multiple requests to provide me with the name and contact information for the lawyer who will be handling this case.

Therefore I hereby certify that on June 15, 2021, I e-mailed this motion, one attached exhibit, and the proposed order to the attorneys for six defendants as well as the people I have attempted to contact at Defendant Spirit:

Angela Mayeux
Counsel for Southwest Airlines
Angela.Mayeux@wnco.com

Kyle Levine
Counsel for Alaska Airlines
Kyle.Levine@alaskaair.com

Laura Overton
Counsel for Allegiant Air
Laura.Overton@allegiantair.com

Komal Patel
Counsel for Delta Air Lines
Komal.A.Patel@delta.com

Brian Maye
Counsel for Frontier Airlines
Adler, Murphy, & McQuillen LLP
bmaye@amm-law.com

Michael Carbone
Counsel for JetBlue Airways
Michael.Carbone@jetblue.com

Thomas Canfield
Senior Vice President, General Counsel, & Secretary
Spirit Airlines
Thomas.Canfield@spirit.com

Meisha Coulter or Meisha Smith (last name uncertain)
Senior Director & Legal Counsel
Spirit Airlines
Meisha.Coulter@spirit.com
Meisha.Smith@spirit.com

Yasaman Moazami-Goudarzi
Attorney
Spirit Airlines
Yasaman.Moazami-Goudarzi@spirit.com

Joan McField-Mortimer
Guest Relations Manager
Spirit Airlines
Joan.McField-Mortimer@spirit.com


*Lucas Wall*

Lucas Wall, plaintiff