Plaintiff's Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **LUCAS WALL,** : | |
| : | |
| Plaintiff, : | Case No. 6:21-cv-975-PGB-DCI |
| : | |
| v. : | District Judge Paul Byron |
| : | |
| **CENTERS FOR DISEASE** : | Magistrate Judge Daniel Irick |
| **CONTROL & PREVENTION** *et al.* : | |
| : | |
| Defendants. : | |

## PLAINTIFF'S MOTION TO DISQUALIFY
## MAGISTRATE JUDGE DANIEL IRICK

COMES NOW plaintiff, *pro se*, and seeks disqualification from this case and the related action *Wall v. Southwest Airlines* (Case No. 6:21-cv-1008-PGB-DCI) of Magistrate Judge Daniel Irick for bias shown against me and violation of my Fifth Amendment right to due process in recently ruling on the Federal Defendants'[1] motion to strike and extend deadline (Doc. 48) *ex parte* despite the fact I filed a 14-page opposition brief (Doc. 54) one day after the government submitted its motion – and a mere 16 minutes before Magistrate Judge Irick filed his June 22 Order (Doc. 55) granting the government everything it wanted without any consideration of my arguments.

---

[1] The Federal Defendants named in this case are: Centers for Disease Control & Prevention, Department of Health & Human Services, Transportation Security Administration, Department of Homeland Security, Department of Transportation, and President Joseph Biden.

1

I moved later June 22 for the district judge to vacate Magistrate Judge Irick's Order (Doc. 56). The district judge has yet to rule on that emergency motion. However, even if granted that relief, it is not enough. Magistrate Judge Irick must be disqualified from this case (and my related action) for showing improper bias toward the Federal Defendants, counsel for whom (U.S. Attorney's Office for the Middle District of Florida) he used to work for from 2007 to 2016. Pl. Ex. 1.

## I. PROCEDURAL HISTORY

The Federal Defendants filed June 21 a motion to strike and set briefing deadline (Doc. 48) concerning my two Motions for Preliminary Injunction (Docs. 33 & 36). Even though Local Rule 3.01(c) allows me 14 days to respond in opposition to a motion, I submitted my brief (Doc. 54) the next day (June 22). Only 16 minutes later, I was shocked to see an e-mail from the Court that Magistrate Judge Irick had granted the government's motion (Doc. 55) without considering any of the arguments I raised in my 14-page opposition (Doc. 54). Furthermore, Magistrate Judge Irick's Order read like a cut-and-paste of his former employer's brief, with a few words changed to make it an Order.

I moved later June 22 (Doc. 56) for the district judge to vacate the Order (Doc. 55) on an emergency basis and reconsider Magistrate Judge Irick's Order pursuant to Fed.R.Civ.P. 72(a). I requested a ruling by June 23, but did not receive one, so June 24 I filed an Emergency Petition for Permission to Appeal with the U.S. Court of Appeals for the 11th Circuit (Doc. 58) since this Court did not require the Federal

2

Defendants to file their oppositions to my Motions for PI by their June 24 and 25 deadlines. I noted the nature of the emergency is that I have a flight from Orlando (MCO) to Frankfurt (FRA) July 1 to visit my brother and his wife, which necessitates the Court ruling on my Motions for Preliminary Injunction to halt enforcement of the Federal Transportation Mask Mandate and International Traveler Testing Requirement no later than June 30.

## II. ARGUMENT

**A. Magistrate Judge Irick's Order (Doc. 55) is clearly erroneous and contrary to law as it was issued *ex parte*. This shows bias against me.**

I filed my opposition (Doc. 54) to the Federal Defendants' motion (Doc. 48) at 10:26 a.m. June 22. Doc. 56-1. Magistrate Judge Irick's Order (Doc. 55) was filed at 10:42 a.m. Doc. 56-2. There is no mention in the Order that Magistrate Judge Irick considered my 14-page opposition – and it is simply impossible for him to have done so given that his Order was issued only 16 minutes after I filed my brief.

"Typically, a court will be hesitant to make an *ex parte* [ruling]. This is because the Fifth Amendment and the Fourteenth Amendment guarantee a right to due process, and *ex parte* motions – due to their exclusion of one party – risk violating the excluded party's right to due process." Definition of *ex parte* from Cornell Law School's Legal Information Institute.[2]

"A party may respond to a motion within 14 days after service of the motion." Local Rule 3.01(c). Therefore the deadline to file my response to the government's

---

[2] https://www.law.cornell.edu/wex/ex_parte (visited June 22, 2021)

3

motion (Doc. 48) was July 5. However, despite the fact I filed an opposition the morning of June 22, Magistrate Judge Irick issued an *ex parte* ruling 16 minutes later – 13 days before the deadline to oppose.

Magistrate Judge Irick, in addition to failing to consider my opposition brief, stated no grounds for granting the Federal Defendants an additional 23 days to respond to my preliminary injunction motions when Local Rule 6.02(c) clearly sets the deadline at seven days, not 30. This decision is not only clearly erroneous, it must be interpreted by any reasonable person as a showing of bias in favor of the defendants.

Confusingly, Magistrate Judge Irick's order states "The remainder of Defendants' Motion (Doc. 48) is DENIED without prejudice." Doc. 55. However, he granted *ex parte* both of the Federal Defendants' requests – to strike my two PI motions and allow a 23-day extension of the seven-day deadline to respond to a PI motion under Local Rule 6.02(c). It is unclear what exactly was denied, as everything the government asked for it its motion it was granted *ex parte*.

"An *ex parte* judicial proceeding is conducted for the benefit of only one party. … Under the FIFTH AMENDMENT to the U.S. Constitution, 'No person shall … be deprived of life, liberty, or property, without DUE PROCESS of law.' A bedrock feature of due process is fair notice to parties who may be affected by legal proceedings. An *ex parte* judicial proceeding, conducted without notice to, and outside the presence of, affected parties, would appear to violate the Constitution." Pl. Ex. 2.

4

"*Ex parte* judicial proceedings are usually reserved for urgent matters where requiring notice would subject one party to irreparable harm. … *Ex parte* contact also describes a judge who communicates with one party to a lawsuit to the exclusion of the other party or parties, or a judge who initiates discussions about a case with disinterested third parties. Canon 3(A)(4) of the AMERICAN BAR ASSOCIATION (ABA) Model CODE OF JUDICIAL CONDUCT discourages judges from such *ex parte* communications." *Id.* In this case, there was no urgency for Magistrate Judge Irick to decide the government's motion without considering my opposition, as there was no irreparable harm the Federal Defendants would have suffered absent an *ex parte* order.

*Ex parte* refers "to motions, hearings, or orders granted on the request of and for the benefit of one party only. This is an exception to the basic rule of court procedure that both parties must be present at any argument before a judge…" Pl. Ex. 3.

The purpose of the Due Process Clause is to protect all persons from mistaken or unjustified deprivations of life, liberty, or property. *Carey v. Piphus*, 435 U.S. 247, 259 (1978). The clause guarantees every person the opportunity to contest any government action that deprives them of life, liberty, or property. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). In this case, the Federal Defendants have deprived me of the liberty to travel by enforcing illegal and unconstitutional mask mandates and testing requirements. Likewise they have deprived me of property (airline tickets I

5

purchased). Magistrate Judge Irick's *ex parte* order granting the government's motion to delay resolution of the Motions for Preliminary Injunction have contributed to these due-process violations to the extent I was forced to file an emergency appeal with the 11th Circuit because I have a flight booked July 1 from Orlando to Germany to visit my brother and his wife. This declaration of bias against my procedural and constitutional rights requires disqualification, not just a vacating of the Order by the district judge or Court of Appeals.

Every individual has the right to a neutral and impartial judge, so that he can present his case "with assurance that the arbiter is not predisposed to find against him." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). An *ex parte* order striking, without cause, two time-sensitive motions and granting, again without cause, a 23-day deadline extension instead of following the Local Rules gives this litigant zero assurance that the arbiter is not predisposed to find against me.

As a matter of due process, a judge who fails the "appearance of impartiality" test may not sit as the judge in the case. *Hurls v. Ryan*, 752 F.3d 768 (9th Cir. 2011).

As a country, we believe one of the tenants of due process is fair notice to parties who may be affected by legal proceedings. Absent exigent circumstances, a judge should never rule on a motion without hearing from both sides. It's the equivalent of an umpire calling a strike when the ball is only halfway from the pitcher's mound to home plate, or a referee signaling a touchdown when the ball carrier is still on the 10 yardline. Ruling on a nonemergency, procedural motion *ex parte* without

6

notice to the adverse party is a violation of basic judicial ethics that warrants immediate disqualification.

### B. Magistrate Judge Irick's conduct meets the legal standards for disqualification.

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 USC § 455(a).

Federal judges must abide by the Code of Conduct for United States Judges ("CCUSJ"), a set of ethical principles and guidelines adopted by the Judicial Conference of the United States. The CCUSJ provides guidance for judges on issues of judicial integrity and independence, judicial diligence and impartiality, permissible extra-judicial activities, and the avoidance of impropriety or even its appearance.

"A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which: (a) the judge has a personal bias or prejudice concerning a party…" CCUSJ Canon 3(C)(1)(a).

In a constitutional system grounded by the rule of law, it is imperative that judges make decisions according to that law, unclouded by personal bias or conflicts of interest. Moreover, the Due Process Clause has been construed to guarantee litigants the right to a "neutral and detached" judge. *Ward v. Village of Monroeville*, 409 U.S. 57 (1972).

7

It is not enough that judges be impartial; the public must **perceive** them to be so. The CCUSJ therefore admonishes judges to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and to "avoid impropriety and the appearance of impropriety in all activities."

When the impartiality of a judge is in doubt, the appropriate remedy is to disqualify that judge from hearing further proceedings in the matter. In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Supreme Court reaffirmed that litigants have a due-process right to an impartial judge, and that under circumstances in which judicial bias is probable, due process requires disqualification.

No judge may decide a case if he is biased for or against any party. *Tunney v. Ohio*, 273 U.S. 510, 523 (1927); *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).

A judge shall not hear a case if "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). In such cases, "the inquiry is an objective one. The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton*.

28 USC § 455 deals not only with actual bias and other forms of partiality but also with the **appearance** of partiality. Any reasonable American would see issuing an *ex parte* order thwarting a plaintiff's attempts to get critical, time-sensitive injunctive relief from illegal and unconstitutional Centers for Disease Control & Prevention orders as appearing to be biased, if not demonstrating actual bias.

8

"The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). And, "the standard for recusal under § 455(a) is whether an objective, disinterested, lay observer, fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989). (internal quotations omitted); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 & n.12 (11th Cir. 1988) (emphasizing that the test is whether a "lay observer," and not one "trained in the law," would reasonably question the judge's impartiality).

Under this standard, all doubts must be "resolved in favor of recusal." *Id.* Further, "objective standards may also require recusal whether or not actual bias exists or can be proved." *Caperton* at 886 (citing *In re Murchison*, 349 U.S. 133, 136 (1955), for the proposition that "[d]ue process 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.'"). Thus, 455(a) "clearly mandates … a judge err on the side of caution and disqualify himself in a questionable case." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1112 (5th Cir. 1980).

The CCUSJ instructs judges to "avoid impropriety and the appearance of impropriety in all activities," Canon 2, and specifically to "respect and comply with the law and [to] act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," Canon 2(A).

9

"An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances … would conclude that the judge's honesty, impartiality, temperament, or fitness to serve as a judge is impaired." Commentary to Canon 2(A).

The impartiality of judges, and the appearance of impartiality, are important for ensuring public confidence in our federal courts. A *pro se* litigant going up against the might of the federal government can't have any confidence in the Court's impartiality when it issues an *ex parte* ruling blocking him from even the chance of obtaining critical injunctive relief so he may visit his family in Germany.

"Under § 455, the standard is whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002) (quoting *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000)).

"The critical question presented by this statute 'is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances.'" *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998) (quoting *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 41 (4th Cir. 1995)). In this case, there is no doubt that one observing these proceedings would question Magistrate Judge Irick's impartiality after the June 22 *ex parte* decision granting the government, whom he used to work for, everything it desired to stall a decision on my Motions for Preliminary Injunction.

An essential component of equal justice under the law is a neutral and detached judge to preside over the court proceedings. Accordingly, it's not the judge's own beliefs, nor even the presence of actual bias that matters, but instead, the "objective risk of actual bias that required ... recusal." *Caperton* at 886.

The law "focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice; a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street. Use of the word 'might' in the statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980).

"Once a judge whose impartiality toward a particular case may reasonably be questioned presides over that case, the damage to the integrity of the system is done." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (7th Cir. 1989).

"[A] judge must recuse [himself] if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *United States v. Hartsel,* 199 F.3d 812, 820 (6th Cir. 1999) (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990)).

WHEREFORE, I request this Court issue an order disqualifying Magistrate Judge Daniel Irick from this case and my related action, *Wall v. Southwest Airlines* (Case No. 6:21-cv-1008-PGB-DCI). The clerk should be directed to reassign another magistrate judge to both matters.

Respectfully submitted this 25th day of June 2021.

*Lucas Wall*
Lucas Wall, plaintiff
435 10th St., NE
Washington, DC 20002
Telephone: 202-351-1735
E-Mail: Lucas.Wall@yahoo.com

**Local Rule 3.01(g) Certification**
I conferred by e-mail June 25 with Stephen Pezzi, counsel for the Federal Defendants. He informed me that the government opposes this motion.

Also June 25, I conferred by e-mail with Dan Gerber, counsel for Defendant Greater Orlando Aviation Authority. He informed me GOAA also opposes this motion.

I have not conferred with Defendant Central Florida Transportation Authority because, although it has been served with the Complaint, it has yet to appear.

```
                     Plaintiff's Exhibit 1
```

# Daniel Irick

Magistrate Judge
Original Appointment Date: October 01, 2016
Division: Orlando
Chambers: 5-550
Chambers Phone:
Courtroom: 5C
Judge Initials: DCI

| Courtroom Deputy |
| --- |
| Nativelis Rodriguez |

**Biography**

**Court Calendar**

**Employment**

**Forms**

**Internships**

**Preferences**

**Federal Judicial Service**
Magistrate Judge, United States District Court for the Middle District of Florida
Appointed on October 1, 2016

**Education**
University of Florida, 2000
University of Florida Levin College of Law, J.D., 2004

**Professional Career**
Private Practice, Miami Florida, 2004–2006
Law Clerk, The Honorable William Terrell Hodges, United States District Court for the Middle District of Florida, 2006–2007
==Assistant United States Attorney, Middle District of Florida, 2007–2016==

```
                     Plaintiff's Exhibit 2
```

law.jrank.org

# Ex Parte - Further Readings

4-5 minutes

---

*[*Latin, On one side only.*]* Done by, for, or on the application of one party alone.

An ex parte judicial proceeding is conducted for the benefit of only one party. Ex parte may also describe contact with a person represented by an attorney, outside the presence of the attorney. The term *ex parte* is used in a case name to signify that the suit was brought by the person whose name follows the term.

Under the FIFTH AMENDMENT to the U.S. Constitution, "No person shall … be deprived of life, liberty, or property, without DUE PROCESS of law." A bedrock feature of due process is fair notice to parties who may be affected by legal proceedings. An ex parte judicial proceeding, conducted without notice to, and outside the presence of, affected parties, would appear to violate the Constitution. However, adequate notice of judicial proceedings to concerned parties may at times work irreparable harm to one or more of those parties. In such a case, the threatened party or parties may receive an ex parte court hearing to request temporary judicial relief without notice to, and outside the presence of, other persons affected by the hearing.

Ex parte judicial proceedings are usually reserved for urgent matters where requiring notice would subject one party to irreparable harm. For example, a person suffering abuse at the hands of a spouse or significant other may seek ex parte a TEMPORARY RESTRAINING ORDER from a court, directing the alleged abuser to stay away from him or her. Ex parte judicial proceedings are also used to stop irreparable injury to property. For example, if two neighbors, Reggie and Veronica, disagree over whose property a tree stands on, and Reggie wants to cut down the tree whereas Veronica wants to save it, Veronica can seek an ex parte hearing before a judge. At the hearing, she will ask the judge for a temporary RESTRAINING ORDER preventing Reggie from felling the tree. She will have to show the judge that she had no reasonable opportunity to provide Reggie with formal notice of the hearing, and that she might win the case. The court will then balance the potential hardships to Reggie and Veronica, in considering whether to grant Veronica's request.

A court order from an ex parte hearing is swiftly followed by a full hearing between the interested parties to the dispute. State and federal legislatures maintain laws allowing ex parte proceedings because such hearings balance the right to notice against the right to use the legal system to avert imminent and irreparable harm. Far from violating the Constitution, the ex parte proceeding is a lasting illustration of the elasticity of due process.

Ex parte contact occurs when an attorney communicates with another party outside the presence of that party's attorney. Ex parte contact also describes a judge who communicates with one party to a lawsuit to the exclusion of the other party or parties, or a judge who initiates discussions about a case with disinterested third parties. Canon 3(A)(4) of the AMERICAN BAR ASSOCIATION (ABA) Model CODE OF JUDICIAL CONDUCT discourages judges from such ex parte communications. Under rule 4.2 of the ABA Model Rules of PROFESSIONAL RESPONSIBILITY, a lawyer should refrain from contacting a party

who the lawyer knows is represented by another attorney, unless the lawyer has the consent of the other attorney or is authorized by law to do so.

In a case name, *ex parte* signifies that the suit was initiated by the person whose name follows the term. For example, *Ex parte Williams* means that the case was brought on Williams's request alone. Many jurisdictions have abandoned *ex parte* in case names, preferring English over Latin terms (e.g., *Application of Williams* or *Petition of Williams*). In some jurisdictions, *ex parte* has been replaced by *in re*, which means "in the matter of" (e.g., *In re Williams*). However, most jurisdictions reserve the term *in re* for proceedings concerning property.

```
                                          Plaintiff's Exhibit 3
```

legal-dictionary.thefreedictionary.com

# ex parte

6-8 minutes

### Ex Parte

*[*Latin, On one side only.*] Done by, for, or on the application of one party alone.*

An ex parte judicial proceeding is conducted for the benefit of only one party. Ex parte may also describe contact with a person represented by an attorney, outside the presence of the attorney. The term *ex parte* is used in a case name to signify that the suit was brought by the person whose name follows the term.

Under the Fifth Amendment to the U.S. Constitution, "No person shall … be deprived of life, liberty, or property, without due process of law." A bedrock feature of due process is fair notice to parties who may be affected by legal proceedings. An ex parte judicial proceeding, conducted without notice to, and outside the presence of, affected parties, would appear to violate the Constitution. However, adequate notice of judicial proceedings to concerned parties may at times work irreparable harm to one or more of those parties. In such a case, the threatened party or parties may receive an ex parte court hearing to request temporary judicial relief without notice to, and outside the presence of, other persons affected by the hearing.

Ex parte judicial proceedings are usually reserved for urgent matters where requiring notice would subject one party to irreparable harm. For example, a person suffering abuse at the hands of a spouse or significant other may seek ex parte a Temporary Restraining Order from a court, directing the alleged abuser to stay away from him or her. Ex parte judicial proceedings are also used to stop irreparable injury to property. For example, if two neighbors, Reggie and Veronica, disagree over whose property a tree stands on, and Reggie wants to cut down the tree whereas Veronica wants to save it, Veronica can seek an ex parte hearing before a judge. At the hearing, she will ask the judge for a temporary Restraining Order preventing Reggie from felling the tree. She will have to show the judge that she had no reasonable opportunity to provide Reggie with formal notice of the hearing, and that she might win the case. The court will then balance the potential hardships to Reggie and Veronica, in considering whether to grant Veronica's request.

A court order from an ex parte hearing is swiftly followed by a full hearing between the interested parties to the dispute. State and federal legislatures maintain laws allowing ex parte proceedings because such hearings balance the right to notice against the right to use the legal system to avert imminent and irreparable harm. Far from violating the Constitution, the ex parte proceeding is a lasting illustration of the elasticity of due process.

Ex parte contact occurs when an attorney communicates with another party outside the presence of that party's attorney. Ex parte contact also describes a judge who communicates with one party to a lawsuit to the exclusion of the other party or parties, or a judge who initiates discussions about a case with disinterested third parties. Canon 3(A)(4) of the American Bar Association (ABA) Model Code of

Judicial Conduct discourages judges from such ex parte communications. Under rule 4.2 of the ABA Model Rules of Professional Responsibility, a lawyer should refrain from contacting a party who the lawyer knows is represented by another attorney, unless the lawyer has the consent of the other attorney or is authorized by law to do so.

In a case name, *ex parte* signifies that the suit was initiated by the person whose name follows the term. For example, *Ex parte Williams* means that the case was brought on Williams's request alone. Many jurisdictions have abandoned *ex parte* in case names, preferring English over Latin terms (e.g., *Application of Williams* or *Petition of Williams*). In some jurisdictions, *ex parte* has been replaced by *in re*, which means "in the matter of" (e.g., *In re Williams*). However, most jurisdictions reserve the term *in re* for proceedings concerning property.

**Further readings**

Campagna, Larry A. 2002. "The Prohibition of Ex Parte Communications by Appeals Officers." *The Practical Tax Lawyer* 16 (winter).Flowers, Roberta K. 2000. "An Unholy Alliance: The Ex Parte Relationship Between the Judge and the Prosecutor." *Nebraska Law Review* 79 (spring).

Gottlieb, Henry. 1995. "ABA Limits Ex-Parte Contacts; N.J. Lawyer Dissents." *New Jersey Law Journal* (September 4).

Harhut, C.T. 1995. "Ex Parte Communication Initiated by a Presiding Judge." *Temple Law Review* 68.

West's Encyclopedia of American Law, edition 2. Copyright 2008 The Gale Group, Inc. All rights reserved.

## ex parte

(ex par-tay, but popularly, ex party) adj. Latin meaning "for one party," referring to motions, hearings or orders granted on the request of and for the benefit of one party only. This is an exception to the basic rule of court procedure that both parties must be present at any argument before a judge, and to the otherwise strict rule that an attorney may not notify a judge without previously notifying the opposition. Ex parte matters are usually temporary orders (like a restraining order or temporary custody) pending a formal hearing, or an emergency request for a continuance. Most jurisdictions require at least a diligent attempt to contact the other party's lawyer of the time and place of any ex parte hearing.

Copyright © 1981-2005 by Gerald N. Hill and Kathleen T. Hill. All Right reserved.

## ex parte

'on behalf of, a phrase used to indicate a hearing where the court is relying on a statement made on behalf of someone rather than after proof In England and Wales, as a result of the Civil Procedure Rules 1998, the phrase now used is 'without notice'.
Collins Dictionary of Law © W.J. Stewart, 2006

EX PARTE. Of the one part. Many things may be done ex parte, when the opposite party has had notice; an affidavit or deposition is said to be taken ex parte when only one of the parties attends to taking the same. Ex parte paterna, on the side of the father, or property descended to a person from his father; ex parte materna, on the part of the mother.

A Law Dictionary, Adapted to the Constitution and Laws of the United States. By John Bouvier.