UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| **LUCAS WALL** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 6:21-cv-1008-PGB-DCI |
| | : | |
| v. | : | District Judge Paul Byron |
| | : | |
| **SOUTHWEST AIRLINES** *et al.*, | : | Magistrate Judge Daniel Irick |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' RESPONSE TO THE COURT'S SHOW
CAUSE ORDER REGARDING AMENDED COMPLAINT**

COME NOW plaintiffs, *pro se*, and submit this response to the Court's Show
Cause Order (Doc. 67) regarding the Amended Complaint (Doc. 61) filed Sept. 13.

Lucas Wall filed this action against the seven Airline Defendants on June 14,
2021, alleging, *inter alia*, unlawful discrimination against passengers who can't
wear face masks due to medical conditions. Doc. 1. All seven Airline Defendants
filed Motions to Dismiss on Aug. 23. Docs. 41-42 & 45. Mr. Wall, joined by a dozen
additional plaintiffs and adding "Numerous Unnamed Executives of the 7 Airlines"
as new defendants, filed an Amended Complaint as of right Sept. 13. Doc. 61.

The Court issued a Show Cause Order on Sept. 15, directing plaintiffs to address
these questions: 1) Are the 12 additional plaintiffs properly joined?; 2) May the
plaintiffs determine how they will associate and organize to collectively prosecute

their claims?; 3) May a group of plaintiffs select a lead plaintiff and class representative?; 4) Is Lead Plaintiff & Class Representative Lucas Wall engaging in the unauthorized practice of law?; 5) May each plaintiff waive individual service?; and 6) May a group of nonprisoner *pro se* plaintiffs file a putative class action?

The Court directed the plaintiffs by Sept. 30 to show cause "in writing why the Amended Complaint should not be stricken (without prejudice and with leave to re-plead)..." Doc. 67.

## ARGUMENT

### A. The 12 additional plaintiffs are properly joined.

There is nothing in the Federal Rules of Civil Procedure or the Local Rules to sustain this Court's suggestion that the dozen additional plaintiffs are not properly joined. "The Federal Rules of Civil Procedure liberally permit a joinder of other parties ... The purpose of these rules is to ensure fairness and judicial efficiency in the resolution of all claims arising from the same underlying events or subject matter." Ex. 7.

An Amended Complaint filed pursuant to Fed.R.Civ.P. 15 clearly permits a plaintiff to add or drop parties. "[A] party may also learn of new information and want to amend its pleading to add a new party or claim accordingly." Ex. 1. Motions to strike, including those made *sua sponte*, generally "are disfavored because they potentially serve only to delay. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989)." *Stanek v. St. Charles Community Unit School*

*Dist. #303*, No. 13-cv-3106 (N.D.Ill. Dec. 1, 2017). Here, the Court's Show Cause Order has tolled the defendants' 14-day deadline to respond to the Amended Complaint, which should be filed by Sept. 27 – unfairly delaying plaintiffs' prosecution of this case, including filing a Motion for Preliminary Injunction to halt the defendants' illegal conduct while this dispute is litigated.

As the Court noted in its Show Cause Order (Doc. 67), plaintiffs complied with Fed.R.Civ.P. 15(a)(1) by amending their pleading once as a matter of course within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Because the amendment was filed as of right, plaintiffs did not need leave of the Court to add parties. Nothing in Fed.R.Civ.P. 15 prohibits adding plaintiffs with similar claims against the same defendants.

Even if the Court had authority to review added parties in an amendment as of right, it would have to be guided by the principles for granting leave to pleading amendments outside the time period as a matter of right. These include: "(a) undue delay; (b) bad faith or dilatory motive by the moving party; (c) repeated failure to cure deficiencies by previous amendments; (d) undue prejudice to the opposing party; or (e) futility." Ex. 1. In this case – even if the Court possessed authority to review joinder of parties in an Amended Complaint filed as of right – there is no undue delay as this litigation is in its early phases. A Scheduling Order has not been entered nor has discovery begun. Plaintiffs have acted in good faith in joining similar claims against the same defendants. This is the first Amended Complaint, so

there is no failure to cure earlier deficiencies. There is no undue prejudice to the defendants. In fact, the defendants benefit from joinder of parties so they face one lawsuit instead of 13 separate cases in numerous judicial districts across the nation. "The court must also consider how best to avoid wasting judicial time and resources…" Ex. 4.

And the joinder of plaintiffs is not futile. In the absence of undue prejudice, denial to add plaintiffs "must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Heyl & Patterson Int'l v. F.D. Rich Housing of the Virgin Islands,* 663 F.2d 419, 425 (3rd Cir. 1981).

"Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed.R.Civ.P. 20(a). Here the plaintiffs are all asserting their rights to relief based on, *inter alia*, the illegal discrimination against them by the defendants because of their disabilities, the illegal actions of the defendants in forcing them under onerous and continuous threats and intimidation to wear medical devices (face coverings) that are not authorized by the U.S. Food & Drug Administration ("FDA") or approved only under an Emergency Use Authorization ("EUA"), violation of our constitutional right to freedom of movement, and the defendants' breach of their contracts of carriage with the plaintiffs by forcing and coercing us to wear unauthorized or

emergency-use-only medical devices that plaintiffs did not agree to when purchasing their airline tickets (and such contract requirements would be illegal even if they were included).

The 30 causes of action plaintiffs present in the Amended Complaint involve the same questions of law and many facts common to all plaintiffs. The additional plaintiffs' interests are based on the same claims and factual bases of Mr. Wall's original Complaint. Defendants are not unduly prejudiced by the addition of new plaintiffs in this action because the new plaintiffs present the same claims and same basic underlying facts as the original plaintiff. The best way "to secure the just, speedy, and inexpensive determination of every action and proceeding" is by allowing joinder. Fed.R.Civ.P. 1.

> Plaintiffs' claims "may be addressed more efficiently in one action rather than numerous individual cases. The investigation, discovery, and evidential proofs would apply to all plaintiffs. Furthermore, joinder of the parties and their ... claims promotes judicial economy. It is likely that the ... claims would have been consolidated if the plaintiffs had filed their claims separately in the first place, pursuant to Fed.R.Civ.P. 42(a), because the claims involve common questions of law and fact against the same defendants. Therefore, the 19 plaintiffs may join in this one action." *Hennessey v. Atlantic County Dept. of Public Safety*, No. 06-cv-143 (D.N.J. 2006).

Although not all plaintiffs have suffered illegal discrimination, unlawful forced use of an unauthorized or EUA medical device, breach of contract, *et al.* by all defendants – or that some causes of action don't apply to every single plaintiff – does not prohibit them from prosecuting this action together in one case. "Neither a plaintiff nor a defendant need be interested in obtaining or defending against all

the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities." Fed.R.Civ.P. 20(a)(3). This rule promotes the Court's goal of judicial economy and spares the defendants from having to litigate 13 substantially similar cases in nine different federal judicial districts (plaintiffs' citizenship is in eight states and the District of Columbia).

"Rule 15 is an excellent example of how the federal rules provide parties with the necessary flexibility to pursue their claims." Ex. 1. Rule 15 provides plaintiffs with an extremely liberal standard to meet. Courts should generally not interfere with amendments as of right adding parties absent any evidence of bad faith, undue delay, or undue prejudice to the nonmovant. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2nd Cir. 1995). *See also Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2nd Cir. 2000). A "party may make a Rule 15(a) amendment to add, substitute, or drop parties to the action." 6 Charles Alan Wright & Arthur F. Miller, Federal Practice & Procedure § 1474 (3rd ed. 2008).

The Electronic Case Filing User Manual for the U.S. District Court for the District of Columbia makes abundantly clear that adding parties in an amendment of right is permitted in federal district courts: "Continue to add as many new plaintiffs as needed." Ex. 2. "Plaintiffs may choose to amend a complaint for numerous reasons such as to include additional claims, correct facts, ***add additional parties to the suit***, include additional requests for relief, or clear up inadequate claims." Ex. 3 (emphasis added).

> "In some cases a plaintiff may wish to join, or add, other parties after the start of the lawsuit. Proper parties and necessary or indispensable parties may be added while the action is pending. A proper party is anyone who may be a party in the lawsuit. The JOINDER, or addition, of a proper party in a pending lawsuit is entirely permissible. ... Courts are careful not to exclude parties with an interest in a lawsuit because a failure to join those parties might lead to a series of lawsuits with inconsistent verdicts." Ex. 4.

Adding the new plaintiffs now promotes judicial economy because they would otherwise seek joinder, intervene in the instant case, or file their own complaints in several other judicial districts. The Supreme Court held that, absent evidence of "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," a court should not interfere with the right to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Arthur v. Maersk*, 434 F.3d 196, 202 (3rd Cir. 2006).

A fundamental requirement for any plaintiff is, of course, that he/she has standing. To establish standing, a plaintiff must show three elements: a violation of a concrete, particularized legally protected interest (an injury in fact); a causal relationship between the defendants' conduct and the injury to the plaintiff; and the likelihood that the injury can be redressed if a court finds in the plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). In the case at bar, all dozen added plaintiffs have Article III standing. Declarations at Doc. 62 at Exs. 19-30.

"Under the [Federal] Rules [of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). If the plaintiffs filed 13 separate suits in this Court, consolidation would be in order under Fed.R.Civ.P. 42(a), so there's no reason to not allow the joinder of parties now. "Consolidating the above cases at this early stage will result in judicial economy of resources, which will facilitate the expediency of discovery and resolution of the cases for all parties." *Welch v. Cape May County Corr. Center*, No. 16-1351 (D.N.J. April 21, 2016).

The Court's suggestion that an Amended Complaint is not the proper vehicle to add plaintiffs is not supported by any authority. District courts routinely permit amendment to add additional plaintiffs with claims similar to the original. *See, e.g., Smith v. Leis*, 2009 WL 1687945 at *1-2 (S.D.Ohio); *In re Norplant Contraceptive Prod. Liab. Litig.*, 163 F.R.D. 255, 257 (E.D.Tex. 1995).

Disallowing joinder would accomplish nothing but delay and extra costs for the plaintiffs and defendants. If the Court strikes the Amended Complaint, plaintiffs could simply voluntarily dismiss this case and file a new one – either in this judicial district or another appropriate venue. A change of venue would be costly for the defendants as they have hired counsel who are members of this Court's Bar as well as those who have been admitted *pro hac vice*. If plaintiffs refiled this case in another state, defendants would bear the burden of having to fire their Florida counsel and hire new counsel in the new state – lawyers who would not be familiar with

the issues at hand. The attorneys specially admitted here would have to pay additional fees to seek admission *pro hac vice* in the new venue.

There is a "strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Goggins v. Alliance Capital Mgmt.*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003) (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2nd Cir. 1968)).

Joinder of all plaintiffs' claims in the Amended Complaint strengthens our voices against the defendants' massive infringements on our statutory and constitutional rights. Plaintiffs (and millions similarly situated) are experiencing the most serious conspiracy to interfere with the civil rights of the disabled since the Americans with Disabilities Act was passed in 1990.  The clear advantage of joinder is that only one trial is needed to try the claims of named plaintiffs who are affected in a manner typical of each other and of the unnamed similarly situated plaintiffs. This imposes less of a burden on the courts. And it will allow a more precise examination of the accusations than would be possible in the context of 13 separate lawsuits.  It is only through this joinder that plaintiffs can and will expose the many airline executives responsible for the most widespread discrimination against the disabled in decades.

In conclusion, the joinder of plaintiffs is not only legally permissible, it is in the best interest of all parties and judicial economy. The Court should allow the Amended Complaint to stand.

## B. A group of *pro se* plaintiffs has the right to determine how it will associate and organize to collectively prosecute its claims.

Plaintiffs have a statutory right to "conduct their own cases personally." 28 USC § 1654. There is nothing in the U.S. Code, the Federal Rules of Civil Procedure, or the Local Rules to sustain this Court's suggestion that the 13 plaintiffs may not band together to prosecute this case *pro se* when they all have individual standing and share common claims against the defendants. Even prisoners have the right, in some cases, to litigate jointly without a lawyer. "While it is generally not practicable for multiple *pro se* inmates to litigate their claims in a single action, the claims here appear to be so interrelated as to warrant an exception to that general principle." *Gary v. Shelby Cnty. Gov't*, No. 2:18-cv-2756 (W.D.Tenn. Feb 3, 2020). And that right most certainly applies to noninmates.

> "Both the right to proceed *pro se* and liberal pleading standards reflect the modern civil legal system's emphasis on protecting access to courts. Self-representation has firm roots in the notion that all individuals, no matter their status or wealth, are entitled to air grievances for which they may be entitled to relief. Access, then, must not be contingent upon retaining counsel, lest the entitlement become a mere privilege denied to certain segments of society. ... '[o]pen access to the courts for all citizens' is one of the principles upon which the right to prosecute one's own case is founded." Ex. 5.

The right of citizens to prosecute their own cases dates back to English common law.

"'[T]he Founders believed that self-representation was a basic right of a free people.' As such, our early legal regimes heavily guarded the ability to proceed *pro se*; their commitment demonstrates both egalitarian and democratic ideals. First, a fundamental precept of American law is that financial status should neither determine access to courts nor substantially alter the outcomes of cases. Individuals who are unable to afford attorneys should not be denied a forum in which to air their grievances. ... self-representation safeguards were not solely intended to protect the poor's access to courts; they also empowered citizens of all types to have their own voices heard, rather than speaking exclusively through their lawyers." *Id.*

Unfortunately, as the Court's Show Cause Order demonstrates:

"there exists significant bias against *pro se* litigants in the court system: *Pro se* litigants are regularly perceived in a negative manner; they are most often attacked for the judicial inefficiencies many judges, attorneys, and observers believe they create. As a result, they are thought to be pests responsible for clogging up the court system. However, the evidence largely disproves these assessments. Indeed, studies have shown that cases with only represented parties consumed more time than and settled at essentially the same rate as their *pro se* counterparts." *Id.* (internal quotation marks omitted).

Plaintiffs have not just a statutory right, but also a constitutional right to assemble and collectively petition the government (here the Judicial Branch) for a redress of grievances.

"It cannot be seriously doubted that the First Amendment's guarantees of free speech, petition, and assembly give railroad workers the right to gather together for the lawful purpose of helping and advising one another in asserting the rights Congress gave them ... statutory rights which would be vain and futile if the workers could not talk together freely as to the best course to follow." *Brotherhood of Railroad Trainmen v. Virginia ex. rel. Virginia State Bar*, 377 U.S. 1 (1964).

In that case, the issue was the right of railroad workers to assist the prosecution of claims by injured laborers or by the families of workers killed on the job. Here the issue is the right of the disabled (plus the husband of a disabled plaintiff) to assist each other in the prosecution of claims of unlawful discrimination by the defendants as well as interference with our civil rights and constitutional right to

travel among the states and abroad. "To be certain, the right to file a lawsuit *pro se* is one of the most important rights under our Constitution and laws. The Courts must maintain an open door to those downtrodden members of our society who cannot afford legal assistance." *Elmore v. McCammon*, 640 F. Supp. 905 (S.D. Tex. 1986).

"Our form of government is built on the premise that every citizen shall have the right to engage in political expression and association. This right was enshrined in the First Amendment of the Bill of Rights." *Sweezy v. New Hampshire*, 354 U.S. 234, 250-251 (1957), *cf. De Jonge v. Oregon*, 299 U.S. 353, 364-366 (1937).

The current social/political climate has made it toxic for many lawyers and law firms to take on highly controversial topics such as mask mandates that could subject them and their shareholders to undue scrutiny. The Court's interference with the disabled plaintiffs' right to associate by prosecuting this lawsuit together would create "the gravest danger of smothering all discussion ... of litigation on behalf of the rights of members of an unpopular minority." *NAACP v. Button,* 371 U.S. 415 (1963). Therefore, the Court should allow the Amended Complaint to stand.

## C. The rights of a group of *pro* se plaintiffs to prosecute a case together include the ability to select a lead plaintiff and class representative.

There is no authority to sustain the Court's suggestion that the plaintiffs may not select a lead plaintiff and a (tentative) class representative. By unanimously

selecting a lead plaintiff, all plaintiffs do so in an effort to promote judicial econ-omy and reduce the time defense counsel and the Clerk's Office must devote to this case versus having to deal individually with 13 separate litigants.

In fact, plaintiffs made this decision after reviewing the Local Rules for parties represented by multiple lawyers. "The first paper filed on behalf of a party must designate only one 'lead counsel' who – unless the party changes the designation – remains lead counsel throughout the action." Local Rule 2.02(a). "Lead counsel" is defined as "the lawyer responsible to the court and the other parties for the con-duct of the action, including scheduling." Local Rule 1.01(d)(9). Defendants in this matter have each, as required, designated one lead counsel. *See, e.g.,* Docs. 70 & 71.

Plaintiffs understand the above-cited Local Rules apply to lawyers, and no plaintiff here is a lawyer. However, the model of selecting one person to serve as the lead representative for a side is firmly established by this and other courts. Furthermore, plaintiffs have a right to prosecute this case as they desire, so long as none of them engage in the illegal practice of law (*see* discussion below) or run afoul of the rules.

Plaintiffs are all aware Mr. Wall is not an attorney and is not representing us in that manner. All our conference calls, e-mail correspondence, etc. are done as a joint effort. The purpose of joining this lawsuit is we all want to help and support each other, so as not to have to do this alone. All submissions and decisions have been worked on together as a team with everyone involved in some part including

accumulating data, presenting and discussing documents and other evidence, and determining the next steps to be taken. It is mentioned in every discussion that for each and every step, if anyone wants to present something differently to the Court than the group, they may do so. Thus far all decisions have been unanimous.

By choosing a lead plaintiff, we are not retaining a lawyer. The purpose of this selection is to simplify the process for the plaintiffs, the Court, and even for the defendants. Litigating these claims is so important for each of us, but it's a difficult job to do alone. We reach out to each other for help and support. There's no doubt 13 minds are better than one. At any point, we reserve the right to choose a different lead plaintiff, just like a company may choose another lead attorney during litigation if necessary.

However, the Court should rest assured that all plaintiffs have chosen Mr. Wall as our lead with mature consideration and full, informed consent (whereas defendants do not give us our legal right to consent or refuse use of an experimental medical device that doesn't reduce COVID-19 transmission yet causes dozens of proven harms to human health; Doc. 62 at Ex. 200). Thus far Mr. Wall has acted in the highest of propriety in his service as lead plaintiff not only to us, but also to the Court and counsel for the defendants. We are fully confident in his commitment to us and his competence – including complying with Court rules.

Plaintiffs have a constitutionally guaranteed right to assist and advise each other, including appointment of a lead plaintiff. "The right of members to consult with each other ... necessarily includes the right to select a spokesman from their

number who could be expected to give the wisest counsel." *Brotherhood of Railroad Trainmen*.

"Free trade in ideas means free trade in the opportunity to persuade to action, not merely to describe facts." *Thomas v. Collins*, 323 U.S. 516, 537 (1945). The Court should allow the Amended Complaint to stand.

### D. Lead Plaintiff & Class Representative Lucas Wall is not engaging in the unauthorized practice of law.

Mr. Wall's involvement in leading this group of 13 *pro se* plaintiffs does not constitute the unauthorized practice of law as the Court insinuates. Mr. Wall did not solicit his coplaintiffs to join this case nor ever say that he could represent them as counsel. The dozen joined plaintiffs sought out Mr. Wall – as have hundreds of other disabled and nondisabled Americans – after reading media reports of his lawsuits against both the defendants and the federal government concerning illegal mask requirements in the transportation sector. *See Wall v. Centers for Disease Control & Prevention*, No. 6:21-cv-975 (M.D.Fla.). Mr. Wall made clear to all interested coplaintiffs in initial and follow-up correspondence that he is not a lawyer and may not represent them as such. Each of us understands our legal responsibility to represent ourselves since we are proceeding without an attorney.

Plaintiffs made this clear to the Court in our Sept. 14 Notice:

> "We understand Mr. Wall is not an attorney and therefore may not represent us. Proceeding *pro se*, we are responsible for representing ourselves. However, for efficiency and judicial economy, we plan to work collectively as a group and make decisions by majority vote. But as we are all representing ourselves, we reserve the right to make separate filings should our individual interests diverge from that of the group." Doc. 64.

Furthermore, Mr. Wall is a plaintiff in this case (the original plaintiff), not prosecuting a lawsuit on behalf of others. He has not sought or received any compensation for his work on this case from his coplaintiffs.[1] In "regulating the practice of law, a State cannot ignore the rights of individuals secured by the Constitution." *Brotherhood of Railroad Trainmen.*

> "A State could not, by invoking the power to regulate the professional conduct of attorneys, infringe in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest. Laymen cannot be expected to know how to protect their rights when dealing with practiced and carefully counseled adversaries, *cf. Gideon v. Wainwright*, 372 U.S. 335 … and for them to associate together to help one another to preserve and enforce rights granted them under federal laws cannot be condemned as a threat to legal ethics. The State can no more keep these workers from using their cooperative plan to advise one another than it could use more direct means to bar them from resorting to the courts to vindicate their legal rights. The right to petition the courts cannot be so handicapped." *Id.*

The Supreme Court later ruled that, in the context of prisons, a knowledgeable nonlawyer has the right to assist others in the preparation of legal documents – even in cases where the nonlawyer is not a plaintiff.

> "In the case of all except those who are able to help themselves – usually a few old hands or exceptionally gifted prisoners – the prisoner is, in effect, denied access to the courts unless such help is available. … in depriving prisoners of the assistance of fellow inmates, Tennessee has [], in substance, deprived those unable themselves, with reasonable adequacy, to prepare their petitions, of access to the constitutionally and statutorily protected availability of" legal action to defend their rights. *Johnson v. Avery*, 393 U.S. 483 (1969).

---

[1] Each plaintiff, per our group agreement, has contributed an equal amount of money into a shared legal fund to pay for costs such as the filing fee, service of process, subscriptions to PACER and other electronic research databases, discovery, etc. None of this money represents payment to Mr. Wall.

Here Mr. Wall functions not as a person practicing law without a license but as a chosen, capable lead plaintiff to help guide the group through the challenges of federal litigation against giant corporations with enormous legal and financial resources.

> "Without the assistance of fellow prisoners, some meritorious claims would never see the light of a courtroom. ... Laymen – ***in and out of prison*** – should be allowed to act as 'next friend' to any person in the preparation of any paper or document or claim, so long as he does not hold himself out as practicing law or as being a member of the Bar. The cooperation and help of laymen, as well as of lawyers, is necessary if the right of '[r]easonable access to the courts' is to be available to the indigents among us." *Id.* (emphasis added).

Although plaintiffs have unanimously chosen Mr. Wall to act as lead plaintiff and class representative, that doesn't mean they may not actively participate in the litigation. Plaintiffs are aware of our obligation under Fed.R.Civ.P. 11(a) that "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented."

All plaintiffs are energetically participating in this litigation. We have exchanged hundreds of e-mails about the case, held so far two videoconferences lasting at least two hours each to discuss our strategy and share ideas, and have created a private Facebook group for further collaboration. We have developed agreed-upon processes and procedures for ensuring every plaintiff has a voice in any pleadings or arguments. This reflects our strong desire to work together to defeat a common enemy: the unlawful mask mandates imposed upon us and tens of millions of other flyers by the defendants. We have been transparent with the Court

about our procedures, including authorizing Mr. Wall to file on behalf of the group since he is approved to use the CM/ECF system. Docs. 64 & 65.

"[A] State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights. … here the entire arrangement employs constitutionally privileged means of expression to secure constitutionally guaranteed civil rights." *NAACP.*

Although Mr. Wall is not a lawyer and is therefore not subject to the disciplinary provisions for attorneys belonging to this Court's Bar, that does not mean the Court could not sanction him if he were to, *e.g.*, submit a paper bearing our e-signatures that we have not personally approved via the system described *supra*. "By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief" that it's true and accurate. Fed.R.Civ.P. 11(b).

Should Mr. Wall abuse in any way his position as lead plaintiff and class representative, the Court may *sua sponte* "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed.R.Civ.Pl. 11(c)(3). This should give the Court the assurances it desires that our lead plaintiff and class representative will act in full compliance with the rules and his duty to all of us.

State law regulating the practice of law may not ban the ability of similarly situated litigants "to associate for the purpose of assisting persons who seek legal redress for infringements of their constitutionally guaranteed and other rights." Such activities "are modes of expression and association protected by the First and 14th Amendments which Virginia may not prohibit, under its power to regulate the legal profession..." *NAACP*.

The Supreme Court has spoken clearly numerous times on several issues raised in the Court's Show Cause order:

> "[T]he First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion. *Thomas v. Collins*, 323 U.S. 516, 537 ...; *Herndon v. Lowry*, 301 U.S. 242, 259-264 ... *Cf. Cantwell v. Connecticut*, 310 U.S. 296 ...; *Stromberg v. California*, 283 U.S. 359, 369 ...; *Terminiello v. Chicago*, 337 U.S. 1, 4 ... In the context of NAACP objectives, litigation is not a technique of resolving private differences; it is a means for achieving the lawful objectives of equality of treatment by all government, federal, state and local, for the members of the Negro community in this country. It is thus a form of political expression. Groups which find themselves unable to achieve their objectives through the ballot frequently turn to the courts. ... And under the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." *Id*.

Just as the NAACP advocates in the judicial system for equality of blacks under the law, here the plaintiffs do so in a quest for equality of the disabled, another minority group protected by federal and international law. The Court should allow the Amended Complaint to stand.

## E. Each plaintiff may waive individual service.

In its Show Cause Order (Doc. 67), the Court incorrectly asserts that "Nor do Plaintiff[]s['] notices purporting to make [Mr. Wall] 'lead plaintiff' solely entitled

to service of documents and to allow him to act in that 'lead' role with decisions of the 13 plaintiffs made by 'a majority vote' pass muster." First, the notices (Docs. 64 & 65) were not submitted only by Mr. Wall; they were appropriately e-signed by all 13 plaintiffs, who reviewed and approved the documents for submission via the Court's CM/ECF system. Second, the notices do not "purport" to make Mr. Wall lead plaintiff. They make him lead plaintiff, as determined by a unanimous vote of all plaintiffs. Third, plaintiffs have already discussed *supra* the Court's incorrect contention that plaintiffs' legal strategy does not "pass muster."

We now move on to the issue of waiver of individual service. Doc. 65. All dozen added plaintiffs advised the Court and other parties that "we waive our right to receive individual service of all filings pursuant to Fed.R.Civ.P. 5(b)(2)(E)." *Id.*

> "Upon receipt of all service of Court orders and the defendants' filings, Mr. Wall will immediately download the documents and forward them by e-mail to all dozen additional plaintiffs. This system will be more efficient for us, and also benefits the Court and all defendants by not making them send us papers all individually by postal mail." *Id.*

With all due respect, the Court has no right to interfere with how the plaintiffs choose to receive service. "A paper is served under this rule by … sending it to a registered user by filing it with the court's electronic-filing system or sending it ***by other electronic means that the person consented to in writing***…" Fed.R.Civ.P. 5(b)(2)(E) (emphasis added). The plaintiffs' Notice (Doc. 65) meets the rule's requirement of consenting in writing to service by other electronic means, i.e. Mr. Wall receives service via the Court's CM/ECF system, downloads the document(s), and promptly forwards it/them to all plaintiffs. We have already

used this system and everyone is satisfied with it. As stated in the Notice, this process is not only efficient for the plaintiffs but also the Court and the defendants.

The Court should allow Plaintiffs' Waiver of Individual Service (Doc. 65) to stand.[2]

## F. A group of nonprisoner *pro se* plaintiffs may file a putative class action. They are only required to hire counsel if/when they move to certify the class.

Finally, we address the sixth concern the Court raised in the Show Cause Order (Doc. 67): whether a group of *pro se* plaintiffs may include in an Amended Complaint two proposed classes similarly situated. They are defined as the Disabled Class and the Nondisabled Class. Doc. 61. The Court expresses concern that "It is axiomatic that a *pro se* party cannot represent another party before this Court." Doc. 67. However, the cases the Court cites bear no relevance to the issue at bar. Moreover, the Court's suggestion does not comport with the requirements of Fed.R.Civ.P. 23.

In *Franklin v. Garden State Life Ins.*, 462 F. App'x 928, 930 (11th Cir. 2012), the 11th Circuit held that "a non-lawyer administrator could not proceed *pro se* on behalf of an estate." This case does not speak to the ability of a *pro se* plaintiff group to propose a class action. Plaintiffs here are not seeking to represent an estate.

---

[2] Should the Court determine otherwise, each plaintiff is willing and able to sign up for a PACER account and register to receive direct e-mail service. If the Court rules this is the way to proceed, plaintiffs request it issue an order directing the Clerk to accept CM/ECF account requests from all 12 joined plaintiffs. However, plaintiffs prefer our current selected method of service, which has been working fine and does not involve all of us having to create PACER accounts.

In *U.S. ex. Rel. Stonstorff v. Blake Med. Ctr.*, 2003 WL 21004734, at *1 (M.D.Fla. Feb. 13, 2003), this Court determined that a relator proceeding *pro se* who filed a *qui tam* complaint for violations of the False Claims Act could not sustain the action because a nonlawyer is prohibited from litigating on behalf of the United States. This rationale was upheld by the 11th Circuit in *Timson v. Sampson,* 518 F.3d 870 (11th Cir. 2008). But again, these cases do not speak to the ability of a *pro se* plaintiff group to propose a class action. Plaintiffs here are not seeking to represent the United States in a *qui tam* action.

In *Wallace v. Smith*, 145 F. App'x 300, 302 (11th Cir. 2005), the 11th Circuit addressed whether a Georgia prisoner could bring a class action on behalf of himself as well as past, present, and future inmates. "[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action," the 11th Circuit determined, citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) and *Massimo v. Henderson*, 468 F.2d 1209, 1210 (5th Cir. 1972) (affirming dismissal of the portion of petitioner's complaint seeking relief on behalf of fellow inmates). Again, this case does not speak to the ability of a *pro se* nonprisoner plaintiff group to propose a class action. Plaintiffs here are not prisoners and are not seeking to represent other inmates.

## 1. The restriction on *pro se* plaintiffs filing a putative class action only applies to prisoners and others proceeding *in forma pauperis*.

Since none of the cases cited by the Court sheds light on the issue at bar, plaintiffs searched extensively for case law that does speak to the question of whether a

group of nonincarcerated litigants may file a putative class action *pro se*. The only cases we located, however, also deal with the inability of prisoners to propose class actions on behalf of others behind bars. This is because, as a threshold matter, courts have concluded that prisoners (and others who are proceeding *in forma pauperis*) are not equipped to adequately represent the interests of others because, *inter alia*, they often lack the intellectual capacity and financial resources to serve as a tentative class representative. And there are practical matters that restrict the ability of a confined person to adequately litigate on behalf of others – including that prisoners are typically assigned to various units within the institution and do not have contact with others outside their ward. This makes it impossible for a prisoner litigant to understand the issues faced by proposed class members and to effectively communicate with them. But none of these issues are a concern here.

The Court is confusing the ability of plaintiffs in this case to *propose* a class action, which does not require representation by counsel, versus their ability to *certify* a class action, which does require a lawyer.

In terms of prisoners and other *in forma pauperis* ("IFP") plaintiffs, a district court is required to review their complaints before service of process to determine whether summary dismissal is appropriate. 28 USC § 1915. In this mandatory screening process, courts must determine if an action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 USC § 1915(e)(2). Additional preservice screening of prisoner complaints is mandated by 28 USC §

1915A. Judges often dismiss or strike such complaints at this stage *sua sponte*, including those containing class allegations. But this process doesn't apply in this case because plaintiffs have paid the filing fee and are not in prison. Even if screening applied, plaintiffs' Amended Complaint doesn't meet any of the three statutory criteria for *sua sponte* dismissal or striking.

"As a *pro se* litigant, Johnson cannot bring an action on behalf of his fellow orthodox Muslim inmates." *Johnson v. Brown*, 581 F. App'x 777 (11th Cir. 2014), citing *Massimo v. Henderson*, 468 F.2d 1209, 1210 (5th Cir. 1972) (concluding that a *pro se* inmate could not bring a petition for equitable relief on behalf of his fellow inmates). Prisoners who brought *pro se* action against sheriff alleging lack of adequate medical care at parish jail do not have standing to request class certification when Amended Complaint is filed where at that time they have been transferred to other facilities. *Walker v. Haynes*, 659 F.2d 46 (5th Cir. 1981). A group of offenders in the custody of the Minnesota Sex Offender Program "cannot represent the rights of other parties in a class action lawsuit." *Gamble v. Minnesota State Industries,* No. 16-cv-2720 (D.Minn. Feb. 16, 2018). "[B]ecause Plaintiffs are prisoners proceeding *pro se*, they may not commence a class action lawsuit." *Reid-Douglas v. Wetzel*, No. 15-cv-533 (W.D.Pa. May 27, 2015). "Multiple inmate *pro se* plaintiffs cannot bring a single [class-action] lawsuit." *Roberts v. Newsom*, No. 5:20-cv-1810 (C.D.Calif. June 4, 2021).

Plaintiff "does not appear to have the financial wherewithal to represent the class, as he is proceeding *in forma pauperis*." *Thomas v. Trump*, No. 21-cv-3111

(D.N.J. July 21, 2021). Because plaintiff is proceeding IFP, "he is advised that he may not bring this case on behalf of other persons." *Hamilton v. Florida*, No. 4:20-cv-422 (N.D.Fla. Sept. 10, 2020).

## 2. Plaintiffs have standing to assert claims on behalf of themselves, the proposed Disabled Class, and the proposed Nondisabled Class.

Since the Court's supposition that a group of nonincarcerated *pro se* plaintiffs may not file a putative class action appears to be without merit, we must now turn to the threshold question of whether plaintiffs have Article III standing to bring this suit on behalf of themselves and all others similarly situated. Plaintiffs must clear this hurdle if we are allowed to proceed. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of [themselves] or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Here it's clear from the Amended Complaint (Doc. 61) and the declarations of all 13 plaintiffs attached thereto that each named plaintiff has standing because the defendants have injured them by denying them the ability to fly because they can't medically wear a face mask and/or refuse to wear an FDA unauthorized or EUA medical device, *inter alia*. Plaintiffs also have standing to pursue their claims at this initial stage of the litigation on behalf of the proposed Disabled and Nondisabled classes because members of those classes have suffered the same injures by the same defendants.

**3. Plaintiffs meet the requirements of Fed.R.Civ.P. 23(a) to file a putative class action even though they have not yet retained counsel.**

Plaintiffs have established we, as nonprisoners who have paid the filing fee, may file a putative class action and that we have standing to do so. Next the Court must consider whether we meet the initial criteria of the federal class-action rule. We do.

> "One or more members of a class may sue ... as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

It's important to note there is no requirement to hire a lawyer to initiate a class action under Rule 23(a). We must only demonstrate the four listed criteria. First, we must address numerosity. The class is so numerous that joinder of all members is impracticable. As stated in the Amended Complaint (Doc. 61), plaintiffs believe the putative Disabled Class contains several million members as the defendant airlines have illegally banned since Summer 2020 anyone with a medical condition who can't tolerate wearing a mask from nearly all of their flights. We believe the Nondisabled Class numbers well into the tens of millions because the defendants have illegally mandated since Spring 2020 that all passengers wear an FDA unauthorized or EUA medical device without their informed consent or legal right to refuse. Clearly it's impracticable to join all of these class members, hence we have 13 named plaintiffs similarly situated to begin this lawsuit.

Second is the issue of commonality. There are questions of law or fact common to the proposed classes. While some causes of action will only apply to some class members against some of the defendants, the overall questions of law and facts dominate. The two central questions of law are: Have the defendant airlines illegally prohibited any passenger with a medical condition who can't wear a face mask from flying? Have the defendants illegally forced and/or coerced under threats all passengers to use FDA unauthorized or EUA medical devices without their informed consent? "[E]ven a single common question will do..." *Stanek*.

Third, we must examine typicality. The claims of the representative parties are typical of the claims of the classes. Twelve plaintiffs are considered disabled under the Americans with Disabilities Act, the Air Carrier Access Act, the Rehabilitation Act, and international law because of their medical conditions that interfere with a basic function of life, i.e. breathing. One plaintiff, Eric Cila, is not disabled but his wife, Plaintiff Shannon Greer Cila, is. And Mr. Cila objects to being forced by the defendants to use an FDA unauthorized or EUA medical device without his informed consent and in breach of contract, *inter alia*. All named plaintiffs are typical of the proposed class members.

Fourth is the requirement of adequacy. The named plaintiffs as representative parties will fairly and adequately protect the interests of the putative classes. All 13 plaintiffs have been discriminated against by the defendants and/or forced against their will to use FDA unauthorized or EUA medical devices in violation of federal law and the contracts of carriage they entered into with the defendants, *inter alia*.

These 13 plaintiffs live in seven states, the District of Columbia, and Israel (the Marcus plaintiffs are dual American/Israeli citizens with a permanent address in California) – ranging from Alaska all the way to the Middle East. (Plaintiff Kleanthis Andreadakis is also a dual citizen of Greece and travels there to visit family but has been banned because of the defendants' mask rules.) They have been injured – and continue to be injured – by the acts of all seven Airline Defendants and their yet-to-be-named executives.

"Adequacy embraces two components: the class representative (i) 'must not have antagonistic or conflicting interests with the unnamed members of the class' and (ii) 'must appear able to vigorously prosecute the interests of the class,'" and **during class certification** do so "through qualified counsel." *Huisha-Huisha v. Mayorkas*, No. 21-cv-100 (D.D.C. Sept. 16, 2021) (emphasis added).

A class action is clearly the best method to move forward with this case given the tens of millions of Americans harmed by the defendants' illegal actions.

> "[T]he Class Action Fairness Act of 2005 ... expresses congressional confidence in the abilities of federal judges to 'assure fair and prompt recoveries for class members with legitimate claims' and to provide appropriate 'consideration of interstate cases of national importance under diversity jurisdiction.' ... CAFA begins with the finding that 'class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties...' Ex. 6.

We have selected Mr. Wall as an adequate lead plaintiff and class representative. He has gained national attention for being the first person to challenge all aspects of the illegal and unconstitutional Federal Transportation Mask Mandate ("FTMM") in court (*Wall v. Centers for Disease Control & Prevention*) and the

first airline passenger to contest the unlawful discrimination against the disabled by the defendants in the instant matter. Mr. Wall has spent a good part of the past four months vigorously prosecuting these two cases in the interests of not just himself, but the tens of millions of Americans negatively affected by the FTMM and the airlines' discriminatory policies. And he plans to continue aggressively advocating in court for the rights of disabled Americans to travel free of discrimination as well as the statutory right of everyone not to be forced to use experimental medical devices, *inter alia*.

Mr. Wall is not only a frequent traveler – he has been to all 50 states and 133 foreign countries – he is also learned in the law despite not having a Juris Doctor. Mr. Wall was first exposed to the law at a young age when he worked in his father's law office. As editor of his high-school newspaper, Mr. Wall at age 18 brought a lawsuit against the school board under the Virginia Freedom of Information Act – a case widely covered by the Virginia press that was eventually decided by the Virginia Supreme Court. *Wall v. Fairfax County School Bd*., 475 S.E.2d 803 (Va. 1996).

Mr. Wall earned bachelor's degrees in journalism and political science at the University of Missouri, which included internships at several daily newspapers as well as in the U.S. Senate and the Missouri House of Representatives. Mr. Wall worked as a journalist for many years after graduating from college, which in-

cluded covering many legal issues. He spent a year working for the federal government in Washington, D.C., before editing for several years a weekly journal of a national transportation association covering transport law and policy.

Mr. Wall has extensive experience prosecuting cases as a *pro se* plaintiff including two related multi-year-long first-impression lawsuits involving constitutional, regulatory, and interstate-compact law that he argued before the District of Columbia Court of Appeals (the supreme court for the nation's capital), *Wall v. Babers*, 82 A.3d 794 (D.C. 2014); and the Maine Supreme Judicial Court. *State of Maine v. Wall*, Mem. 12-121 (Me. 2012). In addition to this case, Mr. Wall is also a *pro se* plaintiff in three other active federal civil suits: *Wall v. Centers for Disease Control & Prevention*; *Wall v. Reliance Standard Life Ins. Co.*, No. 20-cv-2075 (D.D.C.); and *Wall v. Internal Revenue Service*, No. 21-cv-2202 (D.D.C.) Several opposition lawyers have told Mr. Wall he writes better briefs than many attorneys they work with.

But the Court need not take the plaintiffs' word for it that Mr. Wall is a fully capable class representative who will – in conjunction with his dozen coplaintiffs – fairly and adequately protect the interests of the putative classes. This Court is intimately familiar with Mr. Wall's legal skills through the instant case and *Wall v. Centers for Disease Control & Prevention*, where dispositive motions were fully briefed as of Sept. 17 and are ripe for the Court's determination.

A class representative need only possess "a minimal degree of knowledge necessary to meet the adequacy standard." *Szczubelek v. Cendant Mortg. Corp.*, 215

F.R.D. 119 (D.N.J. March 31, 2003). Here it's clear Mr. Wall has way more than a "minimal degree of knowledge" to fairly represent the putative class members. He "has the ability and incentive to represent the claims of the class vigorously" and his interests are not "antagonistic to those of the class." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3rd Cir. 2007); *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3rd Cir. 2001). The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3rd Cir. 2012).

At this initial stage of litigation, courts typically only reject a *pro se* plaintiff as tentative class representative if he/she does not "'possess the knowledge and experience necessary to protect the interests of the class as required by Rule 23(a)(4),' as they lack formal legal training. *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 288 (D.N.J. Dec. 4, 1996) (quoting *Avery v. Powell*, 695 F. Supp. 632, 643 (D.N.H. Aug. 29, 1988)); *see also Krebs v. Rutgers*, 797 F. Supp. 1246, 1261 (D.N.J. July 22, 1992) (denying **class certification** to *pro se* plaintiffs without sufficient legal education)." *Doyle v. Southwest Airlines*, No. 17-11767 (D.N.J. March 1, 2018) (emphasis added).

In this case, we are far from class certification (see discussion below). And although Mr. Wall lacks "formal" legal training in that he has not graduated from a law school, he nonetheless possess "sufficient legal education" though his two uni-

versity degrees, work reporting on the law and in the federal government, and extensive experience as a litigator. Mr. Wall, in fact, has likely seen the inside of a courtroom (including three state supreme courts) more than many licensed lawyers. He undoubtedly "possess the knowledge and experience necessary to protect the interests of the class" during these initial proceedings.

The rules make clear having an attorney is optional at this stage of a proposed class action: "The court **may** designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed.R.Civ.P. 23(g)(3) (emphasis added).

In sum, plaintiffs have demonstrated they meet the requirements of Fed.R.Civ.P. 23(a) to file a putative class action even though they have not yet retained counsel (which we plan to do if our Amended Complaint survives motions to dismiss and makes it into discovery).

## 4. Plaintiffs also meet the requirements of Fed.R.Civ.P. 23(b) to file a putative class action even though they have not yet retained counsel.

Plaintiffs urge the Court to refrain from addressing the sufficiency of the class claims until we file a post-discovery Motion for Class Certification. At this early phase, a class action may be maintained if Rule 23(a) is satisfied and if:

> (1) prosecuting separate actions by ... individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class ... ; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting

> only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b).

Only one of three requirements of Rule 23(b) must be met. Here, plaintiffs meet all three. Also, these factors appear to be decided at class certification, whereas here we are only at the filing of an Amended Complaint containing class allegations.

### 5. There are many reasons why the rules don't require class counsel until certification.

"As experience with Rule 23 evolved, however, judges began to rule on motions to dismiss and even motions for summary judgment before turning to class certification. That approach seems to have several advantages." Ex. 6. "A 1996 Center study ... documented that district courts often ruled on merits motions before class certification. Experience had overtaken formal rules, and the rulemakers took notice. The 2003 amendments to Rule 23(c)(1) give you more flexibility by allowing you to consider class certification 'at an early practicable time.'" *Id*.

If this case were dismissed before the class-certification phase, it would be unjust for the Court to demand the plaintiffs endure additional financial hardships in an attempt to hire counsel. Likewise, the plaintiffs could settle with the defendants before class certification and should not be penalized by having to pay massive sums of that settlement to an attorney. Only "20% to 40% of all cases filed as class actions were certified as such. ... the most important actions you can take to promote settlement are to rule on dispositive motions and then, if necessary, rule on

class certification." *Id.* "Determining whether to certify a settlement class is often less onerous than whether to certify a contested class, if all defendants favor the settlement. ... Where there is more than one defendant, individual defendants may, and often do, settle separately and at different points in the litigation with all class members." Ex. 7.

When a defendant's opposition to a motion to amend (or, in this case, a magistrate judge's *sua sponte* motion to strike a timely filed as-of-right Amended Complaint) "involves not-yet-certified classes, it is appropriate to allow the amendment and address the defendant's arguments against certification 'in the context of motions to certify the proposed classes.' *Presser v. Key Food Stores Co-op, Inc.*, 218 F.R.D. 53, 57 (E.D.N.Y. 2003) (quoting *Acad. of Ambulatory Foot Surgery v. Am. Podiatry Ass'n*, 516 F. Supp. 378, 383 (S.D.N.Y. 1981))." *Johnson v. Bryson*, No. 10-cv-3105 (S.D.N.Y. March 22, 2012). "By allowing this amendment, the Court is in no way suggesting that the Plaintiffs will ultimately be able to pursue those class claims. Rather, the Court is simply reserving decision as to that issue until a later stage of this case." *Id.*

It's premature to rule on the adequacy (or lack) of counsel at the pleading stage. Right now

> "'all that is required is a 'preliminary showing that the lead plaintiff's claims are typical and adequate [of the class].' *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999); *see also Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) ('Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing. There is no need to require anything more than a preliminary showing at this stage.')." *Samaras v. Fiat*, No. 16-cv-12803 (E.D.Mich. Jan. 18, 2017).

Allowing this putative class action to proceed is important because, *inter alia*, "the filing of a class action generally suspends the limitation periods that would apply to the individual claims of all of the putative class members. That is the case even if a putative class member is not even aware that the class action is pending." Ex. 7. If a class action survives a motion to dismiss (or if none is filed), a court will usually establish a timetable for discovery, motions, and hearings on class certification. "Because a putative class plaintiff must demonstrate that the class meets each Rule 23 prerequisite through a preponderance of evidence, courts typically allow several months (or years) of discovery before a class certification motion is due." *Id.*

Illustrating the lack of any mandate for plaintiffs to retain counsel today, "Some courts allow defendants and/or defense counsel to contact absent putative class members before certification because, ***until certification, they are not represented by class counsel***." *Id.* (emphasis added). If absent class members are not represented by class counsel during the initial proceedings, then it follows they are not represented either by a group of *pro se* litigants – therefore we would not be legally "representing" anyone other than ourselves until we reach the certification stage and must hire an attorney.

### 6. Plaintiffs aren't required to hire counsel until they move for class certification.

Lastly on this lengthy discussion, the plaintiffs are under no obligation to hire an attorney until we reach the stage where we are ready to ask the Court to certify the proposed classes. Only then does the requirement for a lawyer kick in: "An order that certifies a class action must define the class and the class claims, issues, or defenses, and ***must appoint class counsel*** under Rule 23(g)." Fed.R.Civ.P. 23(c)(1)(B) (emphasis added). "Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed.R.Civ.P. 23(g).

Plaintiffs are aware of this rule and have never made any statement to the Court that we plan to seek class certification without counsel, as that clearly would not be permitted. But that doesn't mean, as the Court suggests in its Show Cause Order (Doc. 67), the plaintiffs can't file an Amended Complaint asserting putative classes.

*Pro se* litigants who move to certify a class action meet with failure, and the plaintiffs here understand this. "Because Plaintiff, as a *pro se* litigant, is not an attorney and is not able to represent others, the Motion to Designate a Class Action is denied." *Dicara v. Liberty Mutual Ins*, No. 3:16-cv-165 (D.Conn. April 14, 2016). "[T]here is no procedural mechanism for the Court to appoint class counsel where none has been proposed." *Dundee v. University Hospital Corp.*, No. 1:19-cv-1141 (N.D.Ohio Jan. 17, 2020). "Because a layperson ordinarily does not possess the legal training and expertise necessary to protect the interests of a proposed class,

courts are reluctant to certify a class represented by a *pro se* litigant." *Sule v. Story*, 1996 WL 170156 at *1 (10th Cir. 1996).

Because plaintiffs have only filed a putative class action and not moved for certification – an action that would not likely occur until next year – the Court should allow the Amended Complaint to stand.

## CONCLUSION

The Court lacks cause to *sua sponte* strike the Amended Complaint or any Notice filed by plaintiffs because the 12 additional plaintiffs are properly joined, a group of *pro se* plaintiffs have the right to determine how they will associate and organize to collectively prosecute their claims, a group of *pro se* plaintiffs may select a lead plaintiff and class representative, Lead Plaintiff & Class Representative Lucas Wall is not engaging in the unauthorized practice of law, each plaintiff may waive individual service, and a group of *pro se* plaintiffs may file a putative class action; they must hire counsel only when they move for class certification.

WHEREFORE, plaintiffs request the Court allow to stand as is the Amended Complaint and all Notices because they do not violate any statute, the Federal Rules of Civil Procedure, or the Local Rules.

In the alternative, should the Court decide to strike the Amended Complaint, plaintiffs request they be given at least 14 days to file a Second Amended Complaint

and that this deadline be tolled pending resolution by the district judge of any motion plaintiffs timely file appealing the magistrate judge's decision pursuant to Fed.R.Civ.P. 72.

All plaintiffs have reviewed and approved this response.

Respectfully submitted this 24th day of September 2021.


*Lucas Wall*

Lucas Wall, lead plaintiff and class representative
435 10th St., NE
Washington, DC 20002
Telephone: 202-351-1735
E-Mail: Lucas.Wall@yahoo.com


*Aaron Abadi*                          *Kleanthis Andreadakis*

Aaron Abadi, plaintiff                 Kleanthis Andreadakis, plaintiff


*Eric Cila*                            *Shannon Greer Cila*

Eric Cila, plaintiff                   Shannon Greer Cila, plaintiff


*Anthony Eades*                        *Uri Marcus*

Anthony Eades, plaintiff               Uri Marcus, plaintiff


*Yvonne Marcus*                        *Kevin Leonardo McDonnell*

Yvonne Marcus, plaintiff               Kevin Leonardo McDonnell, plaintiff


*Peter Menage*                         *Connie Rarrick*

Peter Menage, plaintiff                Connie Rarrick, plaintiff


*Jared Rarrick*                        *Jennifer Rarrick*

Jared Rarrick, plaintiff               Jennifer Rarrick, plaintiff