# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **LUCAS WALL** *et al.*, | |
| Plaintiffs, | Case No. 6:21-cv-1008-PGB-DCI |
| v. | District Judge Paul Byron |
| **SOUTHWEST AIRLINES** *et al.*, | Magistrate Judge Daniel Irick |
| Defendants. | |

## LEAD PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

COMES NOW Lead Plaintiff & Class Representative Lucas Wall, *pro se*, and responds to the Court's Oct. 26 Order (Doc. 85). The Order denies Plaintiff Leonardo McDonnell's Motion to Redact. Buried in that Order is a separate command that "on or before November 8, 2021, Mr. Wall shall show cause in writing why his electronic filing privileges in all cases before this Court should not be revoked because he abused his permissions by electronically filing documents on behalf of other persons." *Id.* at 3.

### I. OBJECTIONS

Before responding to the Court's false assertion that I have "abused" my e-file status, I must join in many objections to the Order (Doc. 85) that my coplaintiff Mr. McDonnell has raised. Doc. 87. The Order denies, without cause, Mr. McDonnell's Motion to Redact – potentially putting him in danger of being stalked by a

1

previous abuser – but also zig-zags into numerous unrelated issues that continue to show the magistrate's animus toward the plaintiffs in this case, especially myself. The magistrate needs to seriously consider recusing himself from this case for showing constant bias against *pro se* litigants, the disabled, and/or anyone fighting discriminatory mandatory masking policies.

Before Mr. McDonnell and 11 other plaintiffs joined this case Sept. 14, I identified the magistrate's bias and moved for him to recuse himself. Doc. 22. The magistrate inappropriately denied that motion. Doc. 36. Plaintiffs are now considering whether to seek action from the district judge overseeing this case and/or the chief of judge of this judicial district to remove the magistrate from this proceeding. We plan to discuss this issue at our weekly videoconference tomorrow. We are also researching our options to file a complaint with the 11th Circuit and/or other bodies supervising judicial conduct. The magistrate continues to inappropriately insert himself into this case as an advocate for the defendants, disparaging plaintiffs and throwing up roadblocks and speedbumps at every possible opportunity – depriving us from litigating this case on the merits. The magistrate has essentially become another counsel for the defendants.

Mr. McDonnell filed Oct. 31 numerous objections to the Order at issue. Doc. 87. I write separately to support most of his objections and to continue to express my deep concern about the magistrate's behavior. Although I am now forbidden "from filing any document on behalf of any other person in this case" (Doc. 85 at 3), I can

report to the Court that other plaintiffs share my concerns and might write their own objections to the way we are being treated.

1. I object to the magistrate's striking of Mr. McDonnell's original Motion to Redact (Doc. 81) because I filed it electronically on his behalf. Mr. McDonnell gave me explicit permission in the motion itself to file it on his behalf since he doesn't have access to the Court's ECF system. It is not the magistrate's role to continue to play eighth adversary against plaintiffs in addition to the seven Airline Defendants in this case. I had Mr. McDonnell's express permission to e-file on his behalf. In fact, all 12 added plaintiffs filed a Notice Sept. 14 giving their approval for me to file on their behalf. Doc. 64. Although the Court has raised concern about this Notice, it remains on the docket and has not been stricken nor revoked by any plaintiff.

The magistrate issued an Order to Show Cause objecting to how we plaintiffs decided to exercise our constitutional and statutory rights to collectively prosecute this case. Doc. 67. In our response, we noted Supreme Court cases and other authority confirming our ability to proceed as we determined. Doc. 72. Yet the magistrate continues to interfere with our prosecution, severely delaying adjudication of this case *sua sponte* without any defendant having moved to dismiss the Amended Complaint. Doc. 61.

Our decision on how to best file is not the Court's concern. I urge the magistrate to stop obstructing our prosecution of this case or excuse himself for bias toward

*pro se* litigants, the disabled, and/or those who are fighting against mask mandates.

2. I join Mr. McDonnell's objection to the magistrate's constant use of the derogatory/accusatory term "purported," e.g. "Plaintiff Lucas Wall electronically filed an Amended Complaint (Doc. 61) that was ***purportedly*** brought by several named plaintiffs (including Mr. McDonnell) and on behalf of a ***purported*** class." Doc. 85 at 1 (emphasis added). According to Oxford Languages, "purported" means "appearing or stated to be true, though not necessarily so; alleged." I do not appreciate the magistrate's constant attacks on me and the other dozen plaintiffs – essentially accusing us of lying.

The Amended Complaint ***was*** brought by myself and a dozen additional Named Plaintiffs. There is nothing "purported" about it. The Amended Complaint was filed on behalf of a ***proposed*** or ***putative*** class, not a "purported class." The magistrate's choice of language continues to essentially libel all 13 plaintiffs in this case by accusing us of submitting false papers to the Court with no evidence to back up these scandalous assertions. It would be the equivalent, for example, of us writing insultingly "Daniel Irick is purportedly a magistrate judge in the Middle District of Florida," "Brian Maye purportedly represents Allegiant Air and Frontier Airlines in this proceeding," or "Southwest Airlines purportedly has pilots that are trained to fly airplanes."

3. Pages 225, 226, and 227 of the Amended Complaint do not "purport" to contain e-signatures and signature blocks of the Named Plaintiffs. They ARE the e-signatures and signature blocks of all Named Plaintiffs. I have taken great pains to ensure all dozen additional plaintiffs review and approve court filings before their e-signature and signature block are attached. Again, the Court continues to make assumptions that this is all being concocted – as if my 12 coplaintiffs are figures of my imagination as opposed to real human beings who are suffering because of the illegal discriminatory conduct of the defendants – but fails to provide any evidence to support these libelous charges that I and/or the rest of the plaintiffs are somehow presenting false papers to the Court.

4. The Court notes "None of these named plaintiffs had permission to file electronically except Mr. Wall." Doc. 85 at 1. But the Court again ignores the Notice we all filed Sept. 14. "For all filings made by the group, we authorize Mr. Wall to submit documents on our behalf to the Court using the CM/ECF system once we have approved them." Doc. 64 at 1. Neither the magistrate nor the district judge overseeing this case has struck the Notice, and therefore everyone's approval for me to submit documents on their behalf using ECF remains in effect.

5. I object to the magistrate wanting Mr. McDonnell to become a victim of stalking by denying his Motion to Redact without providing any good cause for his decision. This appears to be a gross dereliction of his official duties, showing no empathy for Mr. McDonnell's situation of being the victim of abuse.

6. I object to the magistrate's false allegation that "This incident raises serious concerns about Mr. Wall's activities in relation to attempting to represent other people before this Court." Doc. 85 at 2. I am NOT attempting to represent anyone before this Court, as we continue to say to deaf ears. I have told my fellow plaintiffs and the Court many times I am not a lawyer and may not represent anyone. But that does not mean I can't work in tandem with others to sue for unlawful discrimination and now retaliation. We made a unanimous decision to work collectively to prosecute our common claims against the seven airlines. The magistrate's constant attacks on me are extremely unprofessional and continue to raise serious questions about his ability to try this case impartially.

7. The Court ignorantly writes that "taking the statements in the Motion as true, Mr. Wall may have placed Mr. McDonnell at physical or other risk by publicly exposing his telephone number, and email address in the Amended Complaint." Doc. 85 at 2. Yet again the magistrate libels me and calls into question my good character – which very well could be grounds for a civil suit if it weren't for the possibility the magistrate could be shielded by judicial immunity – as an advocate for disabled Americans banned from using public transportation because of the Federal Transportation Mask Mandate and the airlines' discriminatory policies on face coverings. All 13 of us reviewed and approved the Amended Complaint, giving our written permission to affix our e-signature and signature block.

Mr. McDonnell explained to the Court that he knew at the time his phone number and e-mail address were listed in his block because he reviewed and approved the Amended Complaint. It was not until later that he realized that information would be available in the public record after he ran into problems trying to conceal his new phone number and e-mail address in the state court proceeding getting his legal name changed from Kevin Leonardo McDonnell to Leonardo McDonnell. Realizing his mistake, he then sought our advice on how to get this information redacted. Doc. 87.

Yet again, I've done nothing wrong despite the magistrate's erroneous, unsupported claims. The only person who has placed Mr. McDonnell at physical or other risk is the magistrate by refusing without cause or explanation to grant his Motion to Redact.

8. I object to the Court's contention that "Yet this is just one of the myriad of unanticipated risks that may result from a *pro se* person (such as Mr. Wall) attempting to represent others (such as Mr. McDonnell) in court" Doc. 85 at 2. I don't know how many times we have to say this: I am NOT attempting to represent anyone. Acting as selected lead plaintiff and class representative does not mean pretending to be an attorney. All 13 of us have been active in prosecuting this case since the Amended Complaint was filed Sept. 14. My coplaintiffs selected me as lead plaintiff, but that in no way does that mean I am "representing" them and/or

misrepresenting myself as a licensed lawyer. I am frankly growing tired of the magistrate's insinuations to the contrary.

9. The magistrate's time would be better spent reading filings in this case rather than attacking me. He wrote in a footnote "The Motion also notes that Mr. McDonnell's name has changed, such that his name in his electronic signature block [on the Amended Complaint] is not accurate. But there is no indication as to whether his name changed before or after the amended complaint was filed." Doc. 85 at 2. This is strange because Mr. McDonnell filed a Notice of Name Change on Oct. 20. Doc. 80. The state court order changing his name is attached to that Notice as an exhibit. Doc. 80-1. The magistrate does not mention this Notice anywhere in his Order (Doc. 85). If he had actually read the Notice, he would know that the court order changing Mr. McDonnell's legal name was entered Oct. 15, one month after the Amended Complaint was filed. Therefore, his name was correct on his e-signature and signature block on the Amended Complaint and subsequent documents until he filed the Notice of Name Change Oct. 20 after receiving the final document from state court. I object to the magistrate's failure to read the Notice of Name Change. Doc. 80.

10. I object to the Court disparaging Mr. McDonnell and I by writing "The Court cannot simply take the Motion at face value, as it contains an improper signature – the same improper signature used on the document filed by Mr. Wall. Thus, the Court has no confidence that his Motion is from Mr. McDonnell." Doc. 85 at 2.

8

Court rules permit the use of electronic signatures for documents submitted electronically. After the Court rejected my filing of Mr. McDonnell's motion on his behalf, he resubmitted it electronically using the *pro se* form on the Court's website. Therefore, an ink signature is not needed as the paper documents were not mailed to the Court.

It is bizarre and offensive for the Court to say it has no confidence that the motion is from Mr. McDonnell. What reason would I – or anyone else – have to invent that Mr. McDonnell is the victim of an abusive relationship and wants his phone number and e-mail address redacted? This again shows the magistrate's extreme disdain of *pro se* litigants who can't afford an attorney, disabled people, and/or those fighting for our right to be free of discrimination because we medically can't wear masks. This suggestion that I concocted a motion for another plaintiff is grounds for having the magistrate removed from this case. Mr. McDonnell has told us we should discuss whether to ask the district judge to refer this case to a different magistrate – or to take back full control of this matter himself – for constantly insulting the plaintiffs and levying false allegations against us. It's clear we can never hope to obtain a fair, just decision from this magistrate. This item is on the agenda for our next group meeting.

11. The Order goes on to state that "Mr. McDonnell is cautioned that even if the Court were to redact the Amended Complaint, his personal information (and the personal information of all the named plaintiffs) remains on the public docket of

9

this case. Again, to the extent that the named plaintiffs did not intend this, it is another unintended consequence of allowing a *pro se* party to file a document in court on their behalf." Doc. 85 at 3. I object to this latest unfounded criticism of how we are proceeding.

Mr. McDonnell told the Court his understanding is that the docket information about parties is populated based on the signature blocks in the pleadings. If his motion to redact his e-mail address and phone number were granted, it should follow that the clerk's office would remove the information from the docket.[1] Doc. 87.

Again, the magistrate shows his contempt for *pro se* parties who can't afford lawyers and are fighting discrimination by representing ourselves in court. Mr. McDonnell's confusion about whether or not redacting the Amended Complaint would automatically mean the same information is removed from the public docket has nothing to do with how we are prosecuting this case. I again object to the magistrate's disgracefully rude treatment of myself and my coplaintiffs.

12. I join Mr. McDonnell's objection to the denial of his Motion to Redact. The magistrate is putting my coplaintiff in danger by refusing to redact his e-mail address and phone number from the public record, without citing any rationale for not doing so.

---

[1] Strangely, the names of and contact information for Mr. McDonnell and the 11 other plaintiffs disappeared from the docket yesterday even though the Court denied his Motion to Redact. Also, the name of Defendant Delta Air Lines has oddly been changed to "delta air." Ex. 1. *Compare* with the docket printed Oct. 22. Ex. 2. Plaintiff Uri Marcus plans to call the clerk's office later today to inquire into these irregularities, and I will file a notice asking the clerk to correct the docket.

10

## II. I HAVEN'T ABUSED MY E-FILE ACCOUNT

13. I object to the magistrate's order prohibiting me from filing any document on behalf of any other person in this case. As noted above, all plaintiffs filed a Notice on Sept. 14 authorizing me, as lead plaintiff and class representative, to e-file. Doc. 64. It is not the Court's place to interfere with my coplaintiffs' designation. I have checked with all 12 additional plaintiffs. All confirmed they continue to authorize me to file on their behalf rather than the absurdity of all 13 of us registering for PACER accounts, filing motions for e-filing status, and then e-filing the same documents 13 times. This is hardly the model of judicial efficiency the Court has stressed in other orders. We are perplexed as to what benefit the magistrate believes the Court or the defendants would gain from having every motion, brief, notice, etc. filed 13 times.

It's important to note all plaintiffs stated in the appointment of myself to serve as lead plaintiff and consolidate group filings, "But as we are all representing ourselves, we reserve the right to make separate filings should our individual interests diverge from that of the group." Doc. 64. This agreement hardly constitutes "abuse" of my ECF account.

14. Finally, I object to the magistrate's order directing me to show cause why my electronic filing privileges in all cases before this Court should not be revoked because I "abused" permissions by electronically filing documents on behalf of other plaintiffs in this lawsuit. I again direct the magistrate to Doc. 64, where all

plaintiffs authorized me to e-file for the group to streamline the presentation of plaintiffs' case. I have not abused anything. The magistrate offers zero evidence that I have ever filed any document without every signatory's approval or otherwise "abused" use of my ECF account. It is rather the magistrate who is constantly abusing us as *pro se* disabled Americans fighting for our fights to be free of discrimination in air travel.

The magistrate's threat to revoke my e-file status would produce nothing more than additional, unnecessary work for the clerks, law clerks, the Court, and the defendants' counsel. If my ECF account were deactivated, I would have to use the Court's *pro se* webform to file documents in this case and the companion lawsuit *Wall v. Centers for Disease Control & Prevention*, No. 6:21-cv-975. All 12 coplaintiffs would have to move for e-file status or also use the webform. Each document we submit to the Court would be filed 13 times. If my e-filing were revoked and the Court denied motions to e-file for the other 12 plaintiffs, it would burden the clerk's office by having to manually docket each filing received via the webform multiplied by 13.

Defense counsel would likewise be encumbered by receiving each plaintiffs' filing 13 times. The Court and its law clerks would likely be confused with having every motion, response, reply, notice, etc. appear on the docket 13 times. Also, instead of coordinating with one lead plaintiff, defense counsel would have to contact all 13 plaintiffs individually to comply with the Court's rule that a consultation must occur before any motion is filed, among other matters.

Plaintiffs have a constitutional right to freely associate and collectively petition the government (here the Judicial Branch) for a redress of grievances.

> "It cannot be seriously doubted that the First Amendment's guarantees of free speech, petition, and assembly give railroad workers the right to gather together for the lawful purpose of helping and advising one another in asserting the rights Congress gave them … statutory rights which would be vain and futile if the workers could not talk together freely as to the best course to follow." *Brotherhood of Railroad Trainmen v. Virginia ex. rel. Virginia State Bar*, 377 U.S. 1 (1964).

The Court's interference with the disabled plaintiffs' right to associate by prosecuting this lawsuit together – including selecting a lead plaintiff to coordinate filings – would create "the gravest danger of smothering all discussion … of litigation on behalf of the rights of members of an unpopular minority." *NAACP v. Button*, 371 U.S. 415 (1963).

Plaintiffs have a constitutionally guaranteed right to assist and advise each other, including voluntary appointment of a lead plaintiff to consolidate filings for the efficiency of the Court and opposing parties. "The right of members to consult with each other … necessarily includes the right to select a spokesman from their number who could be expected to give the wisest counsel." *Brotherhood of Railroad Trainmen*.

> "Laymen cannot be expected to know how to protect their rights when dealing with practiced and carefully counseled adversaries, *cf. Gideon v. Wainwright*, 372 U.S. 335 … and for them to associate together to help one another to preserve and enforce rights granted them under federal laws cannot be condemned as a threat to legal ethics. The State can no more keep these workers from using their cooperative plan to advise one another than it could use more direct means to bar them from resorting to the courts to vindicate their legal rights. The right to petition the courts cannot be so handicapped." *Id*.

The Supreme Court later ruled that, in the context of prisons, a knowledgeable nonlawyer has the right to assist others in the preparation of legal documents – even in cases where the nonlawyer is not a plaintiff.

> "In the case of all except those who are able to help themselves – usually a few old hands or exceptionally gifted prisoners – the prisoner is, in effect, denied access to the courts unless such help is available. … in depriving prisoners of the assistance of fellow inmates, Tennessee has [], in substance, deprived those unable themselves, with reasonable adequacy, to prepare their petitions, of access to the constitutionally and statutorily protected availability of" legal action to defend their rights. *Johnson v. Avery*, 393 U.S. 483 (1969).

Here I function not as a person "abusing" any e-file capability but as a chosen, capable lead plaintiff to help guide the group through the challenges of federal litigation against giant corporations with enormous legal and financial resources.

> "Without the assistance of fellow prisoners, some meritorious claims would never see the light of a courtroom. … Laymen – ***in and out of prison*** – should be allowed to act as 'next friend' to any person in the preparation of any paper or document or claim, so long as he does not hold himself out as practicing law or as being a member of the Bar. The cooperation and help of laymen, as well as of lawyers, is necessary if the right of '[r]easonable access to the courts' is to be available to the indigents among us." *Id*. (emphasis added).

If the Court continues to be concerned about each plaintiff's ability to receive service, we proposed a simple remedy in our response to the prior Order to Show Cause:

> "Should the Court determine otherwise, each plaintiff is willing and able to sign up for a PACER account and register to receive direct e-mail service. If the Court rules this is the way to proceed, plaintiffs request it issue an order directing the Clerk to accept CM/ECF account requests from all 12 joined plaintiffs. However, plaintiffs prefer our current selected method of service, which has been working fine and does not involve all of us having to create PACER accounts." Doc. 72 at 21, FN 2.

In conclusion, the proposed revocation of my e-file account and ability to file on behalf of other plaintiffs as they have authorized in Doc. 64 would accomplish nothing but additional labor for everyone involved in this case. My ECF account should remain active, and my ability to e-file on behalf of other plaintiffs (with their permission, of course) should be restored pursuant to Doc. 64.

Respectfully submitted this 2nd day of November 2021.

*Lucas Wall*
Lucas Wall, lead plaintiff and class representative
435 10th St., NE
Washington, DC 20002
Telephone: 202-351-1735
E-Mail: Lucas.Wall@yahoo.com