# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | | |
|---|---|---|
| **LUCAS WALL** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 6:21-cv-1008-PGB-DCI |
| | : | |
| v. | : | District Judge Paul Byron |
| | : | |
| **SOUTHWEST AIRLINES** *et al.*, | : | Magistrate Judge Daniel Irick |
| | : | |
| Defendants. | : | |

## PLAINTIFF PETER MENAGE'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER <u>AGAINST DEFENDANT ALASKA AIRLINES</u>

COMES NOW plaintiff Peter Menage, *pro se*, and moves for an order temporarily restraining Defendant Alaska Airlines from refusing me transportation until a Motion for Preliminary Injunction can be filed, briefed, and argued. This motion requires emergency relief by **<u>WEDNESDAY, DEC. 8</u>**, because I am scheduled to fly home Thursday, Dec. 9, on Alaska Airlines from Deadhorse, Alaska, to Anchorage, Alaska, and Defendant Alaska is the only airline serving this route. Menage Declaration, attached hereto as Ex. 1.

## I. LEGAL STANDARD

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or

damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts to give notice and the reasons why it should not be required." Fed.R.Civ.P. 65(b). The Local Rules allow a defendant seven days to respond to a Motion for PI, therefore I don't have time to seek a PI before Dec. 9.

Local Rule 6.01 lays out additional procedures including five parts the moving party must include, four standards the legal memorandum must meet, and service upon the defendants. Each of these requirements will be addressed in the Argument section below.

To obtain a TRO, the movant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

A plaintiff seeking a TRO must show that the extraordinary remedy of an *ex parte* restraining order is warranted. Plaintiff must show that the injury is so imminent that full briefing and a hearing are impractical. *Taafee v. Robinhood Markets*, No. 8:20-cv-513-T-36SPF (W.D. Fla. March 31, 2020). This circumstance meets this criteria.

2

## II. STATEMENT OF FACTS

The facts of this case are laid out in my declaration and the supporting exhibits that are attached. I draw the Court's attention to the most relevant facts:

1. Due to my respiratory issues, I can't tolerate wearing a face mask. Covering my nose and mouth prevents proper breathing including faintness, hyper-ventilation, anxiety, and more. Ex. 1.

2. I have a medical mask exemption that was issued Dec. 18, 2020, by Dr. Packer of Wasilla, Alaska. Ex. 2.

3. I have contacted Defendant Alaska Airlines on numerous occasions, including in person at the ticket counter and via e-mail presenting my medical mask exemption. On each occasion, I was informed that it would not be accepted or recognized by the airline. Ex. 1.

4. I work as an operator for Worley in the remote Arctic oilfields in and around Prudhoe Bay, Alaska. As is common for North Slope workers, I fly Alaska Airlines from Anchorage to Deadhorse (the airport serving the Prudhoe Bay oilfields) every three weeks for work. I work three weeks straight, then return to Anchorage on Alaska Airlines. *Id.*

5. Alaska Airlines is the only carrier flying from Anchorage to Deadhorse. *Id.*

6. On Nov. 25, 2021, I boarded Alaska Flight 55 from Anchorage to Deadhorse to come to work. Once we reached cruising altitude and the flight attendants started serving drinks, I got out my own food and beverage. I proceeded to eat and drink. A flight attendant came and demanded I put a mask back on.

I had food in my hand and was chewing when she addressed me. After fin-
ishing chewing my food, I told her I was eating. She demanded again that I
put a mask on. I repeated that I am eating. She persisted, demanding I don
a mask while eating and drinking, which is impossible. It is also not the com-
pany policy or required by the Federal Transportation Mask Mandate
("FTMM").[1] *Id* & Ex. 3.

7. A flight attendant handed me a "yellow card" reminding me to wear a mask
(even though it's determinantal to my health). The card states masking is
not required when eating and drinking. Ex. 3.

8. I received a letter from Alaska Airlines on Nov. 25 in which the defendant
falsely alleged "you were unwilling to properly wear a mask or face covering
(over the mouth and nose) while onboard our aircraft, as required by Alaska
Airlines policy and federal law." Ex. 4.

9. There is no federal law requiring passengers wear masks. Telling passengers
so represents a fraudulent misrepresentation of the law.

10. I received another letter from Alaska on Dec. 1 informing me that "your
travel suspension remains in place until face coverings are no longer re-
quired for travel." Ex. 5.

---

[1] The Federal Transportation Mask Mandate consists of: 1) Executive Order 13998, 86 Fed. Reg. 7205 (Jan. 26, 2021); 2) Department of Homeland Security Determination 21-130 (Jan. 27, 2021); 3) Centers for Disease Control & Prevention Order "Requirement for Persons To Wear Masks While on Conveyances & at Transportation Hubs," 86 Fed. Reg. 8,025 (Feb. 3, 2021); 4) Transportation Security Administration Health Directives 1542-21-01B, 1544-21-02B, and 1582/84-21-01B (Sept. 14, 2021); and 5) TSA Emergency Amendment 1546-21-01B (Sept. 14, 2021).

11. My next booked flight is Dec. 9, 2021, on Alaska Airlines from Deadhorse to Anchorage. Ex. 1.

12. If this Court does not grant me a temporary restraining order by Wednesday, Dec. 8, stopping Alaska from banning me, I don't know by what means I will be able to get home. I do not have a car in Deadhorse. Even if I did, the only ground transportation is a rough road called the Dalton Highway (also known as the North Slope Haul Road) that runs 414 miles to Alaska Route 2. From there, it's another 408 miles to my home in Palmer for a total of 822 miles. *Id.*

13. In good weather, the drive (if I were able to find a ride; there are no rental cars available in Prudhoe Bay) would take an estimated 17 hours, not counting stops for fuel, food, bathroom, and sleeping. However, the Dalton Highway is often impassible in winter. *Id.*

14. If this Court does not restrain Alaska Airlines from refusing to transport me, the odds of losing my job are very high. This would constitute irreparable harm for myself and my family. *Id.*

15. I e-mailed Alaska's lawyers twice (Nov. 30 and Dec. 3) in an effort to resolve this matter outside of court, but they failed to respond to me. Ex. 6.

### III. I MEET THE CRITERIA REQUIRED TO
### OBTAIN A TEMPORARY RESTRAINING ORDER

Fed.R.Civ.P. 65 spells out the procedure for obtaining a TRO. Those require-
ments are supplemented by Local Rule 6.01. I will address each requirement be-
ginning first with the federal rules:

A. Fed.R.Civ.P. 65(b)(1): I gave formal notice of this motion to counsel for De-
   fendant Alaska Airlines Nov. 30 and Dec. 3, and asked to resolve the matter
   without requiring the Court's intervention. Ex. 6. They have failed to re-
   spond.

B. Fed.R.Civ.P. 65(b)(1)(A): My attached declaration (Ex. 1) clearly shows that
   immediate and irreparable injury, loss, or damage will result to me before
   the adverse party can be heard in opposition because Alaska canceled my
   Dec. 9 flight home, it's the only airline flying from Deadhorse to Anchorage,
   and there is no other reasonable mode of transportation I can utilize to get
   from Prudhoe Bay to Palmer.

C. Fed.R.Civ.P. 65(b)(1)(B): I certify, as explained above, the efforts I have
   made to give notice to the defendant. A ruling on this motion should not wait
   for Alaska's attorneys to respond because of the emergency situation, which
   will occur Thursday, Dec. 9.

D. Fed.R.Civ.P. 65(c): No security is needed in conjunction with this motion
   because the defendant would not suffer any monetary damages if the TRO is
   granted. On the contrary, the defendant would actually ***gain*** money because

I would have to repay for my Dec. 9 ticket. The TRO would simply force the defendant to comply with the law until this Court can hold a hearing on the Motion for Preliminary injunction I plan to file later this week.

E. Local Rule 6.01(a)(1): I have included "Temporary Restraining Order" in the title of this motion.

F. Local Rule 6.01(a)(2): The conduct to be restrained is set forth in the attached Proposed Order.

G. The persons subject to restraint are all employees of the defendant, including their contractors, who work in airports and on board aircraft.

H. Local Rule 6.01(a)(3): As stated above, no security is required. The Court maintains broad discretion to determine the amount of security and may, if appropriate, waive the security. *Johnston v. Tampa Sports Auth.*, 8:05-cv-2191, 2006 WL 2970431 at *1 (M.D. Fla. Oct. 16, 2006).

I. Local Rule 6.01(a)(4): My legal memorandum is contained in the Argument section below.

J. Local Rule 6.01(a)(5): A proposed order is attached and an editable Microsoft Word version will be e-mailed to chambers.

K. Local Rule 6.01(b): I address the four requirements of the legal memorandum in the Argument section below.

L. Local Rule 6.01(c): Service of all documents will take place to defendant's counsel immediately upon the clerk's filing using the Court's ECF system.

The necessary level or degree of possibility of success on the merits will vary according to the court's assessment of the other factors. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). But an extremely high likelihood of prevailing on the merits, as I have shown here, is not required. "A substantial likelihood of success requires a showing of only likely or probable, rather than certain, success." *Home Oil Company v. Sam's East*, 199 F.Supp.2d 1236, 1249 (M.D. Ala. 2002) (emphasis original); *see also Ruiz*, 650 F.2d at 565. "Where the 'balance of the equities weighs heavily in favor of granting the [TRO],' the movant need only show a 'substantial case on the merits.'" *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

A movant must demonstrate a "substantial likelihood," not a substantial certainty. To require more undermines the purpose of even considering the other three prerequisites. Instead, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the injunction." *Ruiz* at 565. The review "require[s] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Siegel* at 1178.

An applicant does not have to show that all factors favor it. A court will "balanc[e] the equities involved." *Asbestos Info. Assoc./North Am. v. OSHA*, 727 F.2d 415, 418 (5th Cir. 1984); *see also Ohio v. United States Army Corps of Eng'rs* (*In re EPA & DOD Final Rule*), 803 F.3d 804, 806 (6th Cir. 2015) (calling the stay factors "not prerequisites to be met, but interrelated considerations that must be

balanced"). "The first two factors of the ... standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

As shown below, all four factors weigh strongly in my favor. When combined with my high odds of winning on the merits, review of the other three factors reveals it is obvious that the equities weigh heavily in favor of granting a TRO.

## IV. ARGUMENT

### A. There is a strong likelihood I will ultimately prevail on the merits of my claims.

I have a substantial likelihood of success on the merits. Defendants' illegal discriminatory and retaliatory conduct is so blatant and outrageous, there is no need for the Court to conduct any additional evidentiary inquiry to grant me a TRO. This Court must intervene to put an immediate stop to the defendant's misconduct.

### 1. Retaliating against me for suing Alaska for discrimination is outlawed by the Rehabilitation Act.

Recipients of federal funds are prohibited from discriminating against the disabled. Defendant Alaska receives federal funds through the Essential Air Service program. Ex. 7. As a condition of receiving such funds, it must certify that it won't discriminate against the disabled and that it will obey the Rehabilitation Act and the Air Carrier Access Act ("ACAA"), *inter alia*. Ex. 8. Alaska has also received several billion dollars of federal funding during the COVID-19 pandemic to ensure airline services continue. Ex. 9. As a condition for receiving such funds, it must comply with the Rehabilitation Act and ACAA, *inter alia*. *Id*. at 21.

> "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 USC § 794(a). Furthermore, "[T]he term 'program or activity' means all of the operations of ... an entire corporation, partnership, or other private organization, or an entire sole proprietorship — (i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole..." 29 USC § 794(b).

Courts have long recognized a private right of action to sue for violations of the Rehabilitation Act.

> "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq*.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 USC § 794a(2).

A recipient of federal funds is subject to suit for compensatory damages, which traditionally includes damages for both pecuniary and nonpecuniary injuries. Examples of nonpecuniary damages include pain and suffering, emotional trauma/distress, deprivation of constitutional and legal rights, and diminished quality of life. A recipient of federal funds is also subject to suit for injunctive relief to ensure it obeys the Rehabilitation Act. This gives the Court authority to restrain Alaska from prohibiting me from flying because I can't medically tolerate wearing a face mask.

The Rehabilitation Act specifically outlaws retaliating against a person who asserts his rights under the act, i.e. by filing a lawsuit in federal court. Because discriminatory practices are often only raised and fixed when the disabled and their

advocates report or litigate such practices, Section 504 protects us against retaliation for reporting discrimination and/or suing. Because Alaska Airlines has retaliated against me for suing it in this Court, it has violated the Rehabilitation Act. The Court should grant me a TRO.

## 2. Retaliating against me for suing Alaska for discrimination is outlawed by the Air Carrier Access Act.

Retaliation by Alaska against a disabled passenger for suing it also violates the ACAA. Although this Court found earlier in this case in the context of Lead Plaintiff Lucas Wall's Motion for Temporary Restraining Order that there is generally not a private right of action under the ACAA (Doc. 8), that was before the Amended Complaint (Doc. 61) was filed asserting that because the airline defendants accept federal financial assistance, they must obey the Rehabilitation Act. Because the Department of Transportation hasn't promulgated specific Rehabilitation Act regulations for the airlines it regulates because most of them usually don't receive federal funds, the Court must use the ACAA regulations as DOT's requirements to enforce the nondiscrimination provisions of the Rehabilitation Act.

"You must not take any adverse action against an individual (*e.g.*, refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11 (a)(4). Clearly in this case, Defendant Alaska has taken an adverse action against me (refusing to provide transportation) because I asserted on my own behalf rights protected by the ACAA in this lawsuit.

All my coworkers here on the North Slope of Alaska commute with Alaska Airlines to Deadhorse. None of them have been banned for eating on a plane without a mask on. It's surely not coincidental that I'm suing Alaska and am the only person I know here who's been issued a ban.

"During my numerous flights on Alaska since its illegal mask mandate has been in place for the past 1112 years, it is common for passengers to take off their face coverings while eating and drinking. I have never observed a flight attendant telling a passenger be or she may not eat or drink. I believe Mr. Menage is being retaliated against for suing Alaska Airlines for discrimination." Declaration of Joseph Fine, attached hereto as Ex. 10. *See also* Declaration of Julie Gleason, attached hereto as Ex. 11.

"As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

My boss at Workman and other coworkers are preparing declarations, which I will file when they are ready. The Court should grant me a TRO.

### 3. Retaliating against me for suing Alaska for discrimination is prohibited by this Court's inherent equitable powers.

Defendant Alaska's action offends this Court's inherent authority to hear cases and controversies under Article III of the Constitution. Taking a blatantly retaliatory action such as banning a plaintiff for doing nothing more than challenging the airlines' discriminatory policies in this legal proceeding infringes on this Court's

authority to protect litigants from reprisal by a defendant, especially one who benefits from taxpayer financial assistance. Alaska's action against me is designed to strike fear in any citizen who dares to consider exercising his legal right to assert his rights under federal nondiscrimination laws including the Rehabilitation Act and ACAA.

This Court has not only the constitutional authority but also statutory authority to issue a TRO compelling Defendant Alaska to transport me. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 USC § 1651(a).

I attempted to resolve this problem with Alaska's counsel before requiring the Court's intervention. I wrote counsel Nov. 30 and Dec. 3. Ex. 6. Per the typical behavior of defense counsel in this case (*see* motion to compel at Docs. 129 & 131), the attorneys representing Alaska failed to respond. The Court should grant me a TRO.

## 4. Defendant Alaska requires advance notice by passengers who can't wear a mask, but this is explicitly forbidden.

In addition to illegal retaliation, Alaska's mask policies unlawfully discriminate against the disabled. The Court should consider including restraining Alaska not just from refusing me transportation but also from refusing me transportation without wearing a face covering since my doctor says I should not. Ex. 2. Alaska requires seven days advance notice when a disabled customer seeks to fly maskless,

but advance notice is prohibited by the ACAA regulations, enforced through a private cause of action by the Rehabilitation Act.

"[Y]ou must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25. The Court should grant me a TRO.

## 5. Alaska illegally requires a medical certificate from a passenger's doctor before he can be granted a mask exemption, but this is explicitly forbidden. And I've already provided a letter from my doctor anyway.

Defendant Alaska requires customers to present a medical certificate from their physician as part of its mask-exemption process. However, medical certificates from passengers' doctors are not allowed except in limited circumstances:

> "(a) Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation. (b)(1) You may require a medical certificate for a passenger with a disability — (i) Who is traveling in a stretcher or incubator; (ii) Who needs medical oxygen during a flight; or (iii) Whose medical condition is such that there is reasonable doubt that the individual can complete the flight safely, without requiring extraordinary medical assistance during the flight." 14 CFR § 382.23.

A passenger who can't wear a face mask because of a medical condition does not meet the three criteria listed for when airlines may demand a medical certificate. The regulation goes on to state: "You may also require a medical certificate for a passenger if he or she *has* a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). Also, "May I ask an individual what his or her dis-

ability is? Only to determine if a passenger is entitled to a particular seating ac-

commodation pursuant to section 382.38. ***Generally, you may not make in-***

***quiries about an individual's disability or the nature or severity of the***

***disability***," according to DOT (emphasis added).

Thus no airline may require a customer seeking a mask exemption to submit a

medical certificate unless that person is known to be infected with COVID-19 or

another communicable disease. The plain language of the regulation indicates the

defendant may not make a presumptive determination that every single airline

passenger – even those who are fully vaccinated and/or naturally immune – is in-

fected with COVID-19. That is scientifically impossible and not permitted under 14

CFR § 382.23(c)(1). The Court should grant me a TRO.

**6. Defendant Alaska requires a disabled passenger seeking a mask ex-
emption to present a negative coronavirus test prior to each flight de-
parture. But this constitutes illegal discrimination under the Rehabili-
tation Act and ACAA.**

Alaska requires disabled travelers seeking a mask exemption to submit a nega-

tive COVID-19 test taken within three days of departure. Requiring a negative test

for a virus is not specifically addressed in the ACAA regulations, enforced via the

Rehabilitation Act, however in general: "As a carrier, you must not subject passen-

gers with a disability to restrictions that do not apply to other passengers, except

as otherwise permitted in this part…" 14 CFR § 382.33(a).

Also look at the overall nondiscrimination mandate in the ACAA statute:

"In providing air transportation, an air carrier, including (subject to section
40105(b)) any foreign air carrier, may not discriminate against an otherwise

> qualified individual on the following grounds: (1) the individual has a phys-
> ical or mental impairment that substantially limits one or more major life
> activities; (2) the individual has a record of such an impairment; (3) the in-
> dividual is regarded as having such an impairment." 49 USC § 41705(a).

The regulations and statute are clear: The defendant may not require a negative COVID-19 test only from passengers with a disability who seek a mask exemption because this is a restriction not imposed on other passengers. Doing so constitutes illegal discrimination. The only way for the defendant to possibly be allowed to require a negative COVID-19 test from disabled passengers is to require such a test from ALL flyers. Then customers with and without a disability would be treated equally. The Court should grant me a TRO.

## 7. Congress has not amended the ACAA during the pandemic or provided other authority for Defendant Alaska to disregard its legal duty to avoid discriminating against passengers with disabilities.

Congress has *never* enacted a federal mask mandate. Nor has it amended the ACAA in response to the pandemic to give airlines permission to discriminate against passengers who can't tolerate covering their nose and mouth. Congressional intent is clear: Airline mask policies – and especially their discriminatory refusal to follow the law in granting exemptions to those with disabilities – are forbidden. The Court should grant me a TRO.

## 8. Medical exemptions to the FTMM are expressly allowed, but Defendant Alaska is making them impossible to get with its discriminatory conduct.

Alaska is requiring all passengers be muzzled because of the FTMM. But that mandate – challenged as illegal and unconstitutional in two related proceedings in

this Court and also currently before Chief Justice John Roberts at the U.S. Supreme Court[2] – itself exempts passengers with disabilities who can't don a mask. "This Order exempts the following categories of persons: ... A person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act..."[3] TSA's order enforcing the FTMM also "exempts the following categories of persons from wearing masks: ... People with disabilities who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 *et seq*.)." TSA Health Directive SD 1544-21-02A, Ex. 12.

The public policy of the United States is that airlines must exempt passengers with a disability such as myself who can't safety wear a mask because of their medical condition. But the defendant is discriminating against travelers who medically can't wear a face covering with so many onerous procedures that getting an exemption is nearly impossible.

"Due to my medical issues, I can't tolerate wearing a face mask. Covering my nose and mouth prevents proper breathing including faintness, hyperventilation, anxiety, and more." Ex. 1 at ¶ 6.

---

[2] *Wall v. Centers for Disease Control & Prevention*, No. 6:21-cv-975 (M.D. Fla.); *Health Freedom Defense Fund v. Biden*, No. 8:21-cv-1693 (M.D. Fla.); *Wall v. Transportation Security Administration*, No. 21A198 (U.S.)

[3] CDC Order "Requirement for Persons To Wear Masks While on Conveyances & at Transportation Hubs" 86 Fed. Reg. 8,025 (Feb. 3, 2021)

If the defendant is permitted to continue refusing transportation to disabled customers who can't wear a face mask, there would be no end to what it could do to further discriminate against those with other disabilities. Alaska could, for example, stop providing wheelchairs for mobility-impaired customers since this is a costly service. It could even flat-out ban anyone who can't walk from flying. Congress enacted the Rehabilitation Act and ACAA to protect passengers such as myself who suffer from one or more medical impairments. Airlines have a legal responsibility not to discriminate against us. The Court should grant me a TRO.

**9. Alaska's ban on providing me transportation because I took off my mask while eating violates the Federal Transportation Mask Mandate.**

Even if the Court believes the FTMM can survive challenges, which it has yet to rule on in *Wall* and *Health Freedom Defense Fund*, that doesn't change my current situation. The FTMM explicitly permits mask removal while eating. "The requirement to wear a mask does not apply under the following circumstances: … While eating, drinking, or taking oral medications…" TSA Health Directive SD 1544-21-02A, Ex. 12. The Court should grant me a TRO.

**10. The magistrate judge has recommended dismissing the Amended Complaint with leave to replead without the class action and lead plaintiff designations. But it's still the operative pleading and I have standing to seek a TRO.**

One issue to address is my standing to seek this TRO. The magistrate has issued a Report & Recommendation advising the district judge to dismiss the Amended Complaint (Doc. 61) with leave to file a Second Amended Complaint because a

group of *pro se* litigants may not prosecute a class action or appoint a lead plaintiff. Doc. 86. The district judge has yet to rule on that R&R, therefore the Amended Complaint remains the operative pleading in this case and I have standing as a plaintiff to seek relief in the form of a TRO against Defendant Alaska. Even if the district judge adopts the R&R, I will be a plaintiff in the Second Amended Complaint, so there's no question I have standing. The Court should grant me a TRO.

## 11. Defendant Alaska breached its contract with me by requiring me to wear a mask.

Defendant Alaska's Contract of Carriage, which I had to agree to to buy my plane ticket, includes no provision mandating that passengers wear face coverings. I did not agree to wear a mask when I booked my ticket.  Also, even if the contract required the disabled to wear masks, "[A] contract of carriage that conflicts with federal laws or regulations may not be enforceable by the airline," according to the Congressional Research Service. Doc. 62 at Ex. 523. And Contracts of Carriage must "reflect federal regulations requiring airlines to provide specific services and facilities for passengers with disabilities," according to the Government Accountability Office. *Id.* at Ex. 525. The Court should grant me a TRO.

## 12. Defendant Alaska's requirement that passengers wear masks, classified by the Food & Drug Administration as experimental medical devices allowed only under an Emergency Use Authorization, constitutes practicing medicine without a license.

Defendant Alaska violates state law by having its employees practice medicine without a license by prescribing the use of face masks, which are EUA products

that federal law mandates passengers must have the legal option to refuse admin-istration of. 21 USC § 360bbb-3(e)(1)(A)(ii)(III). Alaska even provides illegal and/or EUA masks to its passengers without informing us use of the device is op-tional and we must give informed consent. This constitutes reckless endangerment and practicing medicine without a license.

Alaska employees have no medical license to order passengers to obstruct our breathing, causing numerous harms (Doc. 62 at Ex. 200), to perhaps spare another customer from catching a virus. Passengers willingly take on the risk of catching a communicable disease when they buy an airline ticket, knowing they will squeezed into a metal tube like sardines in a can. If they don't want to take that risk, they have the option not to fly – but they nor the defendant have a medical license to demand others suffer to mitigate the fear and anxiety of those paranoid about catching COVID-19.

A person may freely choose to accept medical risks for the benefit of others; they cannot be compelled by the defendant. We don't harvest organs without con-sent, even if doing so would save many lives. Those who make such sacrifices for others must truly be volunteers, not conscripts. The Court should grant me a TRO.

## 13. Defendant Alaska is engaged in fraudulent misrepresentation.

Alaska provides FDA unauthorized or EUA face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the

extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3. Also, Alaska falsely represents on its website, in e-mails to passengers, signage at airports, etc. that "federal law" requires airline passengers wear face masks. Such language was also used in the two letters I received from the defendant. Exs. 4-5. But Congress has never enacted such a law. A mandate from CDC and TSA is not a "federal law" enacted into the U.S. Code. This is a fraudulent misrepresentation of the law. The Court should grant me a TRO.

### B. Defendant Alaska banning me from flying until it ceases illegally requiring passengers to wear masks represents irreparable injury because I will likely lose my job if I can't take the only airline that flies between Anchorage and Deadhorse.

I will without a doubt suffer irreparable injury if the requested relief is not granted. Alaska is the only airline flying between Anchorage and Deadhorse. I have already been informed by my company that I will probably lose my job if Alaska is not forced to transport me. There is no reason alternate mode of transport between Deadhorse and Anchorage because Alaska is the only airline that flies the route and road transportation in the Arctic is often impassable this time of year. Doc. 1 at ¶¶ 33-34. "If this Court does not restrain Alaska Airlines from refusing to transport me, losing my job is a certainty. This would constitute irreparable harm for myself and my family." *Id.* at ¶ 35.

My foreman and coworkers attest to this. "If Alaska Airlines is allowed to unlawfully ban Mr. Menage from flying, he would almost certainly be suspended or

terminated because he would not have a reliable means of getting to and from work." Ex. 10. *See also* Ex. 11. Waiting a year or more for final resolution of this case could in no way restore my loss of employment and the enormous financial and emotional damage it would inflict on my family.

When considering this prong, "it is not so much the magnitude but the irreparability that counts." *Enter. Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir.1985) (quoting *Canal Authority v. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974)). Here I have both an enormous magnitude of harm plus irreparability.

The Court has authority to issue interim relief "based on all the circumstances of the case," without its order being "construed as an expression of the Court's views on the merits" of the underlying claim. *Little Sisters of the Poor Home for the Aged v. Sebelius*, 571 U.S. 1171 (2014). The Court should grant me a TRO.

### C. A restraining order won't harm Defendant Alaska. It would actually enrich the airline by restoring my ticket and keeping my money.

The balance of equities factor focuses on the "effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). Alaska can't have an interest in taking actions that violate federal antidiscrimination laws and the FTMM. The defendant therefore cannot claim to have any cognizable "injury" as a result of the issuance of a TRO.

The threatened injury to me far outweighs the harm the relief I request in this TRO motion would inflict on the defendant. In fact, not only would Alaska not suffer any harm, it would actually ***profit*** from being restrained by this Court by way of not having to cancel and refund the plane ticket I purchased for Dec. 9 in addition to numerous tickets I'll be purchasing in the future.

The defendant cannot have an interest in taking actions that are prohibited by law. Alaska cannot claim to have any cognizable "injury" as a result of the issuance of a TRO. The Court should grant me a TRO.

**D. The public interest requires restraining a defendant from retaliating against a plaintiff for bringing a lawsuit against it. It's also in the public interest to enforce nondiscrimination laws.**

Entry of the requested TRO would serve the public interest in ensuring plaintiffs who sue a defendant are not illegally retaliated against. It's also in the public interest to ensure airlines are not discriminating against travelers with disabilities. For decades, it has been the policy of Congress that disabled Americans should have the same rights to go about our lives as those who are fortunate enough not to suffer from a crippling medical condition. In addition to the Rehabilitation Act and ACAA, Congress requires all segments of society to give the disabled fair treatment under the Americans with Disabilities Act.

Furthermore, the FTMM itself recognizes that there are many disabled Americans who can't tolerate wearing a face mask. Ending the defendants' illegal retali-

ation and discrimination against me is indisputably in the public interest The defendant's extremely harsh enforcement of their mask rules – Alaska totally banned all disabled travelers from flying from roughly June 2020 to February 2021, when the FTMM went into effect – is arbitrary and capricious. The defendant has not shown any proof that barring mask-exempt passengers from their airplanes has in any way contributed to public health.

The airline industry itself promotes how safe flying is. Studies it commissioned show airplanes are among the safest places you can be during the pandemic. Most importantly, there have not been any reported outbreaks of COVID-19 at airports or on board aircraft. In weighing the public interest, the Court needs to take into account that airplanes have high-efficiency filters that bring fresh air into the cabin every 3-4 minutes. Aircraft cabins have more sterile air than many hospital operating rooms.

> "Not only is there no evidence that the applicants have contributed to the spread of COVID-19 but there are many other less restrictive rules that could be adopted to minimize the risk to public interests. Finally, it has not been shown that granting the applications will harm the public. As noted, the State has not claimed that attendance at the applicants' services has resulted in the spread of the disease. And the State has not shown that public health would be imperiled if less restrictive measures were imposed." *Roman Catholic Diocese of Brooklyn v. Cuomo,* No. 20A87 (U.S. Nov. 25, 2020).

As this Court held six months ago: "COVID-19 no longer threatens the public's health to the same extent presented at the start of the pandemic or when CDC issued the conditional sailing order. ... And Florida's high likelihood of success on the merits ensures that a preliminary injunction would serve the public interest."

*State of Florida v. Becerra,* No. 8:21-cv-839 (M.D. Fla. June 18, 2021); CDC's motion to stay injunction denied, No. 21-12243 (11th Cir. July 23, 2021).

> "[T]his all assumes that COVID-19 poses any significant danger to workers to begin with; for the more than 78% of Americans aged 12 and older either fully or partially inoculated against it, the virus poses – the Administration assures us – little risk at all. *See,* e.g., 86 Fed. Reg. 61,402, 61,402–03 ('COVID-19 vaccines authorized or approved by the [FDA] effectively protect vaccinated individuals against severe illness and death from COVID-19.'). ... The Mandate is staggeringly overbroad. ... one constant remains – the Mandate fails almost completely to address, or even respond to, much of this reality and common sense." *BST Holdings v. OSHA*, No. 21-60845 (5th Cir. Nov. 12, 2021).

This Court has the power to put a stop to Alaska's illegal behavior, especially considering that scientific research shows that masks do nothing to reduce coronavirus spread and are actually harmful to humans. Doc. 62 at Ex. 200. The Court should grant me a TRO.

## V. PRAYER FOR RELIEF

WHEREFORE, I request this Court issue the attached proposed order granting me a temporary restraining order.

Respectfully submitted this 6th day of December 2021.

Peter Menage, plaintiff
3255 N. Mars Ave.
Palmer, AK 99645
Telephone: 907-715-1205
E-Mail: pmenage@googlemail.com