UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LUCAS WALL,**

          **Plaintiff,**

**v.**                                       **Case No: 6:21-cv-1008-PGB-DCI**

**SOUTHWEST AIRLINES,
ALASKA AIRLINES,
ALLEGIANT AIR, FRONTIER
AIRLINES, JETBLUE
AIRWAYS, SPIRIT AIRLINES,
NUMEROUS UNNAMED
EXECUTIVES OF THE 7
AIRLINES and DELTA AIR
LINES,**

          **Defendants.**
_____/

# ORDER

Third-Party Movant[1] Peter Menage ("**Menage**") moves *pro se* for the Court to issue an *ex parte* temporary restraining order ("**TRO**") enjoining Defendant Alaska Airlines from refusing Menage transportation. (Doc. 150 (the "**Motion**")). Upon consideration and review, the Motion will be denied.

---

[1] On September 13, 2021, Plaintiff Lucas Wall, along with 12 additional individuals including Peter Menage, filed an Amended Complaint "on behalf of themselves and all others similarly situated," proceeding as a *pro se* class action. (Doc 61). Following the Amended Complaint, Magistrate Judge Irick entered an Order to Show Cause why the Complaint should not be stricken because it purports to bring a *pro se* class action and it is "axiomatic that a *pro se* party cannot represent another party before this Court." (Doc. 67, p. 2). Now pending before the Court, Magistrate Judge Irick has filed a Report and Recommendation, recommending that the Amended Complaint be stricken because Plaintiff Lucas Wall cannot represent the interest of others as a *pro se* party. (Doc. 86). Thus, setting aside the issue of standing, Peter Menage has not yet been properly joined in the case as a named plaintiff.

I.  BACKGROUND

On February 1, 2021, amidst the COVID-19 pandemic, the Centers for Disease Control and Prevention entered an Order requiring those using public transportation to wear a mask over the nose and mouth to help prevent the transmission of COVID-19. *See* CTRS. FOR DISEASE CONTROL & PREVENTION, ORDER UNDER SECTION 361 OF THE PUBLIC HEALTH SERVICE ACT: REQUIREMENT FOR PERSONS TO WEAR MASKS WHILE ON CONVEYANCES AND AT TRANSPORTATION HUBS (2021).[2] On November 25, 2021, Menage boarded Alaska Airlines Flight 55 wearing a face mask. (Doc. 150, p. 3). Once on the plane, Menage proceeded to remove his mask to eat and drink, keeping it off for an extended period of time.[3] (*Id.*). After several warnings from flight attendants for failing to place the mask back on after eating and drinking, Menage was notified that he was suspended from flying Alaska Airlines and all his future Alaska Airline bookings were cancelled. (*Id.* at pp. 34; Doc. 150-1, pp. 10–13).

---

[2]  *See* https://www.cdc.gov/quarantine/pdf/Mask-Order-CDC_GMTF_01-29-21-p.pdf. The face mask requirement was recently extended through March 18, 2022. *See Fed. Mask Requirement for Transit*, FED. TRANSIT ADMIN., https://www.transit.dot.gov/TransitMaskUp (last accessed Dec. 8, 2021).

[3]  Menage argues that a passenger may remove his mask while eating and drinking on the plane because it is impossible to eat or drink while donning a mask. (Doc. 150, p. 4). However, explicitly in the Alaska Airlines' policy and referenced in the final notice of suspension, the passenger may only *temporarily* remove the mask to eat or drink, but the mask "must otherwise be worn at all times, including between sips of beverages and bites of food." (Doc. 150-1, p. 12); *see Travel Advisories: Masks are required to fly*, ALASKA AIRLINES, https://www.alaskaair.com/content/advisories/travel-advisories#:~:text=At%20a%20minimum%2C%20travelers%20will%20be%20asked%20to,old%3B%20passengers%20with%20breathing%20difficulties%20unrelated%20to%20COVID-19 (last visited December 7, 2021).

Menage now moves for a TRO enjoining Alaska Airlines from refusing to allow Menage to fly on an Alaska Airlines flight. (Doc. 150, p. 1). Filing the instant Motion as an emergency, Menage states that he is scheduled to fly from Deadhorse, Alaska to Anchorage, Alaska on December 9, 2021, requiring the Court to rule on the Motion before the scheduled flight.[4] (*Id.*).

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a district court may issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

To obtain a temporary restraining order, a party must prove "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the

---

[4] The Court notes that Menage appears to not have a scheduled plane ticket for this day as Alaska Airlines has stated that all his future flights have already been cancelled and the fares refunded. (Doc. 150-1, p. 10).

3

harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted). A temporary restraining order "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. Le Pore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

### III.    DISCUSSION

Menage makes several arguments in favor of the TRO. First, he argues that he has a substantial likelihood of success on the merits due to Alaska Airlines' "blatant and outrageous" "discriminatory and retaliatory conduct." (Doc. 150, pp. 9–21). Second, he alleges that he will suffer irreparable harm if the Motion is not granted because he will have no other way to get home and may possibly lose his job. (*Id.* at pp. 21–22). Third, Menage argues that the balance of equities favors enacting the TRO as it would not harm Alaska Airlines, but instead enrich Alaska Airlines by forcing them to accept Menage's plane fare and allow him to fly. (*Id.* at pp. 22–23). Finally, he argues that it is in the public interest to prevent Alaska Airlines from illegally retaliating against Menage for his pending lawsuit. (*Id.* at pp. 23–25). The Court will address each of these arguments in turn.

#### A.    **Substantial Likelihood of Success on the Merits**

Under thirteen separate sub-headings, Menage argues repeatedly that: Alaska Airlines banned Menage from flying in retaliation for suing Alaska Airlines

for disability discrimination; Alaska Airlines discriminated against Menage for his alleged disability preventing him from wearing a mask; and Alaska Airlines is illegally practicing medicine without a license by requiring passengers to wear a mask. (*Id.* at pp. 9–21). The Court is not persuaded.

First, Menage failed to establish that Alaska Airlines banned Menage from flying in retaliation for the instant lawsuit. Retaliation is defined as "the act of doing someone harm in return for actual or perceived injuries or wrongs." *Retaliation*, BLACK'S LAW DICTIONARY (10th ed. 2014). However, Menage has not sufficiently shown any connection between his suspension from Alaska Airlines and his involvement in the present litigation.[5] Instead, like getting a ticket for failing to wear a seatbelt while traveling in a car, his suspension resulted from his refusal to follow flight crew instructions and properly wear a mask on the flight.

Menage argues that he was not required to wear a face mask while eating or drinking on the plane, and that he had food or drink in his hand each time the flight attendant requested he replace the mask on his face. (Doc. 150, pp. 3–4). However, the Airlines' policy is clear that the mask must be worn in between bites and sips. (Doc. 150-1, p. 10). Further, allowing Menage to circumvent the mask mandate by

---

[5] In support for this contention, Menage argues that "[i]t's surely not coincidental that I'm suing Alaska [Airlines] and am the only person I know here who's been issued a ban." (Doc. 150, p. 12). He then cites to two declarations from his co-workers that state they "have never observed a flight attendant telling a passenger he or she may not eat or drink [and they] believe Mr. Menage is being retaliated against for suing Alaska Airlines for discrimination." (Doc. 150-1, pp. 388, 390). First, Menage was not being told that he could not eat or drink, but that he needed to wear the mask in between bites or sips. Second, the Court cannot rely on these self-serving conclusory statements that simply state that Alaska Airlines was retaliating for the instant lawsuit.

5

only stating that he was still eating each time a flight attendant requested him to replace his mask would allow other passengers to use the food and drink exception to their advantage by feigning the consumption of food or drink during the entire flight, thereby avoiding wearing a mask at all.

Second, Menage failed to show that Alaska Airlines discriminated against him for his alleged disability preventing him from wearing a mask. Alaska Airlines is a corporation and can dictate their internal policies for accepting medical notes. Further, flying is a privilege, not a right. Similar to Menage's own argument that if other passengers are afraid of contracting COVID-19, they have the option to not fly, he also had the option to either wear a mask to fly or find alternate transportation that did not require him to wear a mask. (Doc. 150, p. 20).

Finally, the Court is unpersuaded that Alaska Airlines is illegally practicing medicine without a license by requiring passengers to wear a mask on the flight. The Alaska Airlines flight attendants were simply enforcing a federal mandate requiring all passengers to wear a mask while on the flight. As a matter of common sense, it is antithetical to reason that asking someone to wear a mask is in any way analogous to practicing medicine.

Therefore, Menage has failed to show a substantial likelihood of success on the merits, weighing heavily against the enactment of an *ex parte* TRO.

### B. Irreparable Injury

As argued, the Motion fails to demonstrate that Menage will suffer irreparable injury if relief is not granted.

Menage argues that if Alaska Airlines is not forced to allow Menage on its flights between Anchorage and Deadhorse, he may lose his job. (Doc. 150, pp. 21–22; Doc. 150-1, pp. 7, 388, 390). In the attached declaration, he states that his only possible transportation is the Alaska Airlines flight. (Doc. 150-1, p. 7). However, while it may not be the most convenient method of transportation, it is possible for Menage to drive from Deadhorse to Anchorage. (*Id.*). Furthermore, it was his own failure to comply with federal regulations and properly wear the mask while on the flight that created the possible injury.

Additionally, Menage is asserting that he "will probably lose his job" if he is unable to fly on Alaska Airlines between Deadhorse and Anchorage. For a TRO to properly issue, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Siegel*, 234 F.3d at 1176–77 (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). In the instant case, Menage has failed to establish that the possibility of losing job is nothing more than speculation based on his inability to find suitable transportation to and from the job site.

Therefore, the Court finds the arguments unpersuasive. Given Menage has failed to establish that he will suffer an irreparable injury that would justify the "extraordinary and drastic" remedy of an *ex parte* TRO, the Court could deny the TRO on this ground alone, but it will continue its analysis of why the TRO is unwarranted in this case. *See Siegel*, 234 F.3d at 1176 (collecting cases).

### C. Balance of Equities

Additionally, Menage has failed to show that the threatened injury outweighs the harm the relief would inflict on the non-movant, Alaska Airlines. Menage has a two-fold argument. First, Alaska Airlines cannot claim any injury because it cannot have an interest in violating federal antidiscrimination laws and the Federal Transportation Mask Mandate. Second, Menage's injury far outweighs the harm to Alaska Airlines because Alaska Airlines would inevitably profit from Menage's plane fare if forced to allow Menage to fly again.

As previously stated, Alaska Airlines is *properly* enforcing the Federal Transportation Mask Mandate by ensuring that all passengers wear a mask in flight. *See supra* III.A. By allowing a passenger to forego wearing a mask on the plane, Alaska Airlines would be exposing both other customers and the flight crew to a higher risk of contracting COVID-19. Further, the plane fare of one additional passenger does not begin to outweigh the harm to Alaska Airlines with the increased risk of exposure to COVID-19. Therefore, the Court is unpersuaded, and the balance of equities factor also favors denying the TRO.

### D. Public Interest

Finally, Menage has failed to show how the entry of the TRO would serve the public interest.

First, Menage argues that enforcing anti-retaliation laws is in the public interest. (Doc. 150, p. 23). As discussed previously, Alaska Airlines was not retaliating against Menage for filing a civil lawsuit, but instead was properly

enforcing the federal regulations mandating that all passengers wear a face mask while aboard public transportation. *See supra* III.A. Therefore, there cannot be any public interest in enforcing anti-retaliatory laws when there has not been any retaliation.

Second, Menage posits that it is in the public interest to ensure airlines are not discriminating against travelers with disabilities. (Doc. 150, pp. 23–25). In support of this argument, Menage states that Alaska Airlines has failed to show how barring mask-exempt passengers has helped alleviate the COVID-19 public health crisis and going so far as to say that "masks do nothing to reduce coronavirus spread and are actually harmful to humans." (*Id.* at p. 24–25). However, there is substantial scientific evidence showing that masks are very effective in blocking aerosolized particles containing the COVID-19 virus and usually have "no significant adverse health effects for the wearers." CTRS. FOR DISEASE CONTROL & PREVENTION, SCIENCE BRIEF: COMMUNITY USE OF MASKS TO CONTROL THE SPREAD OF SARS-COV-2 (2021).[6] Therefore, the public interest is actually best served by preventing the further spread of COVID-19 through mask enforcement.

Therefore, the TRO would be a disservice to the public interest and, thus, the public interest factor weighs in favor of denying the TRO.

---

[6] *See* https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

### E. Emergency Motion Designation

Additionally, the Court notes that Menage has violated Local Rule 3.01(e) in the filing of the instant Emergency Motion for TRO. Menage's plans to fly on December 9, 2021 do not constitute an "emergency." A valid "emergency" is a situation outside of Menage's control. However, Menage's inability to follow directions from the crew to properly wear a mask, leading to his current suspension, is self-induced and does not rise to the level of exigency that justifies time-sensitive attention and relief. Menage and the other third-party movants are now on notice that another unwarranted designation of a filing as an "emergency" will result in this Court imposing monetary sanctions on the parties. *Harris Corp. v. Fed. Express Corp.*, No. 6:07-cv-1819, 2010 WL 11474444, at *1 (M.D. Fla. Mar. 3, 2010) (citing *Zocaras v. Castro*, 465 F.3d 479, 490 (11th Cir. 2006)) ("A trial court has the inherent power to impose sanctions for a party's failure to comply with court orders or the Federal Rules of Civil Procedure.").

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Third-Party Movant Peter Menage's Emergency Motion for Temporary Restraining Order Against Defendant Alaska Airlines is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on December 8, 2021.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties