## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **LUCAS WALL *et al.*,** | : | |
| | : | |
| Plaintiffs, | : | Case No. 6:21-cv-1008-PGB-DCI |
| | : | |
| v. | : | District Judge Paul Byron |
| | : | |
| **SOUTHWEST AIRLINES *et al.*,** | : | Magistrate Judge Daniel Irick |
| | : | |
| Defendants. | : | |

## PLAINTIFF PETER MENAGE'S TIME-SENSITIVE[1] MOTION FOR PRE-LIMINARY INJUNCTION AGAINST DEFENDANT ALASKA AIRLINES

COMES NOW plaintiff Peter Menage, *pro se*, and moves for an order preliminarily enjoining Defendant Alaska Airlines from refusing me transportation and forcing me to wear a face mask until a final judgment is entered in this case. This motion requires time-sensitive relief by **MONDAY, JAN. 3, 2022**, because I am scheduled to fly to work Thursday, Jan. 13, on Alaska Airlines from Anchorage,

---

[1] This motion should be properly labeled as an emergency, however the Court wrongly found that I "violated Local Rule 3.01(c) in the filing of the instant Emergency Motion for TRO." The Court wrote that a valid emergency "is a situation outside of Menage's control." And that's the exact situation here. I have been unlawfully discriminated and retaliated against by Defendant Alaska, a situation totally beyond my control. The Court incorrectly wrote that my "inability to follow directions from the crew to properly wear a mask, leading to [my] current suspension, is self-induced and does not rise to the level of exigency…" Doc. 153 at 10. In reality, I have an inability to medically tolerate wearing a mask, which the Court failed to acknowledge. *See* doctor's note at Doc. 150-1 at Ex. 2. As far as I'm aware, the Court nor the defendants have medical licenses to override my physician's determination.

The Court went on to threaten myself and my fellow 12 plaintiffs if we filed another emergency motion. The Court must do its job of enforcing the laws prohibiting airlines from discriminating against the disabled rather than contributing to that discrimination by threatening us with "monetary sanctions" for trying to exercise our legal rights in federal court to obtain relief from the defendants' numerous illegal acts. The Court's threat is ill taken and grossly inappropriate.

1

Alaska, to Deadhorse, Alaska, and Alaska is the only airline serving this route. Menage Declaration, attached hereto as Ex. 1. Should the Court deny this motion, I need 10 days to be able to file an appeal with the 11th Circuit and seek emergency relief there since my livelihood is at risk.

I filed a Motion for Temporary Restraining Order on Dec. 6. Doc. 150. The Court improperly denied that motion Dec. 8. Doc. 153. I now present mostly the same arguments here in moving for a preliminary injunction. I will highlight the many areas the Court got wrong in its Dec. 8 order and should reconsider. Entry of a PI is necessary to preserve the status quo of me flying Alaska Airlines to and from my remote worksite until this litigation concludes.

## I. STATEMENT OF FACTS

The facts of this case are laid out in my declaration and the supporting exhibits that are attached to this motion and the prior one. Exs. 1-6 & Doc. 150-1. I draw the Court's attention to the most relevant facts:

1. On Nov. 25, 2021, I boarded Alaska Flight 55 from Anchorage to Deadhorse to come to work. Once we reached cruising altitude and the flight attendants started serving drinks, I got out my own food and beverage. I proceeded to eat and drink. A flight attendant came and demanded I put a mask back on. I had food in my hand and **was chewing** when she addressed me. After finishing chewing my food, I told her I was eating. She demanded again that I put a mask on. I repeated that I am eating **and again had food in my**

*mouth*. She persisted, demanding I don a mask while eating and drinking, which is impossible. It is also not the company policy or required by the Federal Transportation Mask Mandate ("FTMM").[2] *Id* & Doc. 150-1 at Ex. 3.

2. My company plans to book me for a Jan. 13, 2021, flight on Alaska Airlines from Deadhorse to Anchorage. Ex. 1.

3. If this Court does not enjoin Alaska Airlines from refusing to transport me, the odds of losing my job or being placed on unpaid leave are very high, as my supervisor and the company lawyer have told me. This would constitute irreparable harm for myself and my family. *Id*.

## II. LEGAL STANDARD

Fed.R.Civ.P. 65 spells out the procedure for obtaining a PI. Those requirements are supplemented by Local Rule 6.01. I have followed these procedures.

The necessary level or degree of possibility of success on the merits will vary according to the court's assessment of the other factors. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). But an extremely high likelihood of prevailing on the merits, as I have shown here, is not required. "A substantial likelihood of success requires a showing of only likely or probable, rather than certain, success." *Home Oil Company v. Sam's East*, 199 F.Supp.2d 1236, 1249 (M.D. Ala. 2002) (emphasis

---

[2] The *ultra vires* Federal Transportation Mask Mandate consists of: 1) Executive Order 13998, 86 Fed. Reg. 7205 (Jan. 26, 2021); 2) Department of Homeland Security Determination 21-130 (Jan. 27, 2021); 3) Centers for Disease Control & Prevention Order "Requirement for Persons To Wear Masks While on Conveyances & at Transportation Hubs," 86 Fed. Reg. 8,025 (Feb. 3, 2021); 4) Transportation Security Administration Health Directives 1542-21-01B, 1544-21-02B, and 1582/84-21-01B (Sept. 14, 2021); and 5) TSA Emergency Amendment 1546-21-01B (Sept. 14, 2021).

original); *see also Ruiz*, 650 F.2d at 565. "Where the 'balance of the equities weighs heavily in favor of granting the injunction,' the movant need only show a 'substantial case on the merits.'" *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

A movant must demonstrate a "substantial likelihood," not a substantial certainty. To require more undermines the purpose of even considering the other three prerequisites. Instead, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the injunction." *Ruiz* at 565. The review "require[s] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Siegel* at 1178.

A plaintiff does not have to show that all factors favor it. A court will "balanc[e] the equities involved." *Asbestos Info. Assoc./North Am. v. OSHA*, 727 F.2d 415, 418 (5th Cir. 1984); *see also Ohio v. United States Army Corps of Eng'rs* (*In re EPA & DOD Final Rule*), 803 F.3d 804, 806 (6th Cir. 2015) (calling the stay factors "not prerequisites to be met, but interrelated considerations that must be balanced"). "The first two factors of the ... standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

As shown below, all four factors weigh strongly in my favor. When combined with my high odds of winning on the merits, review of the other three factors reveals it is obvious that the equities weigh heavily in favor of granting a PI.

## III. ARGUMENT

### A. There is a strong likelihood I will ultimately prevail on the merits of my claims.

I have a substantial likelihood of success on the merits. Contrary to the Court's quick review in deciding the Motion for TRO in just two days, a further examination will show that Alaska's illegal discriminatory and retaliatory conduct is in clear violation of several laws and regulations. This Court must intervene to put an immediate stop to the defendant's misconduct.

### 1. Refusing my mask exemption and retaliating against me for suing Alaska for discrimination are outlawed by the Rehabilitation Act.

Recipients of federal funds are prohibited from discriminating against the disabled. Defendant Alaska receives federal funds through the Essential Air Service program. Doc. 150-1 at Ex. 7. As a condition of receiving such funds, it must certify that it won't discriminate against the disabled and that it will obey the Rehabilitation Act and the Air Carrier Access Act ("ACAA"), *inter alia*. Doc. 150-1 at Ex. 8. Alaska has also received several billion dollars of federal funding during the COVID-19 pandemic to ensure airline services continue. Doc. 150-1 at Ex. 9. As a condition for receiving such funds, it must comply with the Rehabilitation Act and ACAA, *inter alia*. *Id.* at 21. Notably the Court's ruling denying my Motion for TRO does not mention the Rehabilitation Act or ACAA once.

> "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 USC §

794(a). Furthermore, "[T]he term 'program or activity' means all of the operations of ... an entire corporation, partnership, or other private organization, or an entire sole proprietorship — (i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole..." 29 USC § 794(b).

Courts have long recognized a private right of action to sue for violations of the Rehabilitation Act.

"The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq*.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 USC § 794a(2).

A recipient of federal funds is also subject to suit for injunctive relief to ensure it obeys the Rehabilitation Act. This gives the Court authority to enjoin Alaska from prohibiting me from flying because I can't medically tolerate wearing a face mask.

The Rehabilitation Act specifically outlaws retaliating against a person who asserts his rights under the act, i.e. by filing a lawsuit in federal court. Because discriminatory practices are often only raised and fixed when the disabled and their advocates report or litigate such practices, Section 504 protects us against retaliation for reporting discrimination and/or suing. Because Alaska Airlines has retaliated against me for suing it in this Court, it has violated the Rehabilitation Act.

The Court incorrectly found that I "failed to establish that Alaska Airlines banned Menage from flying in retaliation for the instant lawsuit. ... Menage has not sufficiently shown any connection between his suspension from Alaska Airlines and his involvement in the present litigation." Doc. 153 at 5. It also erroneously

found that my "suspension resulted from [my] refusal to follow flight crew instructions and properly wear a mask on the flight." *Id.*

It's well known among flight attendants who work the Anchorage-Deadhorse flights that I am suing Alaska Airlines and that I have complained numerous times about its unlawful mask policy as well as the carrier's refusal to honor my mask exemption. As noted in the declarations filed, it is common for oilfield workers to eat and drink aboard Alaska's flights without being harassed about placing the mask on between bites and sips. I was clearly targeted for suing the airline and complaining on numerous prior flights about being denied a mask exemption. My suspension did not result from my refusal to follow flight crew instructions as the instructions were not given to any other passenger engaged in the same behavior of actively eating and drinking. Also, I do not have to "properly wear a mask on the flight" because of my medical exemption and the other reasons argued below.

The Court incorrectly wrote that I "had food or drink in [my] hand each time the flight attendant requested [I] replace the mask on [my face]." *Id.* But the Court failed to note that I was actively ***chewing food*** each time the flight attendant spoke to me. Ex. 1. The Court also wrongly found that "Menage was not being told that he could not eat or drink, but that he needed to wear the mask in between bites or sips." Doc. 153 at 5, FN 5. That is not what happened. The flight attendant told me, as has occurred on other Alaska flights, that I could not eat, period. Ex. 1. There was no mention of replacing the mask between bites and sips.

Likewise the Court falsely wrote that I "proceeded to remove [my] mask to eat and drink, keeping it off for an extended period of time." Doc. 153 at 2. Not true. I was actively chewing food each time the flight attendant spoke me and told me I could not eat anything. I complied with the Alaska policy the Court cited that "the passenger may only *temporarily* remove the mask to eat or drink..." *Id.* at 2, FN 3 (emphasis original). Other passengers on the same flight engaged in the exact same conduct of eating and drinking maskless, but I was singled out because I'm suing the airline and have complained on nearly flight about the illegal mask policy.

**2. Alaska may not dictate its own policies for accepting medical notes.**

In a truly befuddling conclusion, the Court found that "Alaska Airlines is a corporation and can dictate [its] internal policies for accepting medical notes." Doc. 153 at 6. This holding is a gross violation of this Court's duty to enforce federal anti-discrimination laws. Airlines are heavily regulated by the Department of Transportation ("DOT"). They are common carriers open to the public and must obey the laws like any other corporation. Alaska may NOT dictate its own policies for accepting medical notes. In fact, it is illegal for Alaska to even ask a disabled traveler for a medical certificate, a fact the Court overlooked in the short time period it had to rule on the Motion for TRO. Based on this failure to apply the Rehabilitation Act and ACAA, the Court wrongly concluded that I "failed to show that Alaska Airlines discriminated against [me] for [my actual] disability preventing [me] from wearing a mask." *Id.*

Alaska, like any other commercial airline, must obey the ACAA.

> "In providing air transportation, an air carrier, including (subject to section 40105(b)) any foreign air carrier, may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities; (2) the individual has a record of such an impairment; (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

Also, "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a). Alaska may NOT dictate its own policies for how to treat disabled passengers. DOT has promulgated numerous rules to carry out the ACAA. 14 CFR Part 382.

The Court failed to acknowledge the statute or the regulations, and it ignored my arguments in the Motion for TRO that Alaska illegally requires a medical certificate from a passenger's doctor before he can be granted a mask exemption, but this is explicitly forbidden. I've already provided a letter from my doctor anyway.

Alaska requires customers to present a medical certificate from their physician as part of its mask-exemption process. However, medical certificates from passengers' doctors are not allowed except in limited circumstances. The Court did not apply this regulation:

> "(a) Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation. (b)(1) You may require a medical certificate for a passenger with a disability — (i) Who is traveling in a stretcher or incubator; (ii) Who needs medical oxygen during a flight; or (iii) Whose medical condition is such that there is reasonable doubt that the individual can complete the flight safely, without requiring extraordinary medical assistance during the flight." 14 CFR § 382.23.

The regulation goes on to state: "You may also require a medical certificate for a passenger if he or she ***has*** a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). Also, "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. ***Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability***," according to DOT (emphasis added).

Thus no airline may require a customer seeking a mask exemption to submit a medical certificate unless that person is known to be infected with COVID-19 or another communicable disease. The plain language of the regulation indicates the defendant may not make a presumptive determination that every single airline passenger – even those who are fully vaccinated and/or naturally immune – is infected with COVID-19. That is scientifically impossible and not permitted under 14 CFR § 382.23(c)(1). The Court overlooked all these regulations in denying my Motion for TRO. It must now correct it mistakes and apply the law properly.

### 3. Refusing my mask exemption and retaliating against me for suing Alaska for discrimination is outlawed by the Air Carrier Access Act.

Retaliation by Alaska against a disabled passenger for suing it violates not just the Rehabilitation Act but also the ACAA. Although this Court found earlier in this case in the context of Lead Plaintiff Lucas Wall's Motion for TRO that there is generally not a private right of action under the ACAA (Doc. 8), that was before the

Amended Complaint (Doc. 61) was filed asserting that because the airline defendants accept federal financial assistance, they must obey the Rehabilitation Act. Because DOT hasn't promulgated specific Rehabilitation Act regulations for the airlines it regulates because most of them usually don't receive federal funds, the Court must use the ACAA regulations as DOT's requirements to enforce the non-discrimination provisions of the Rehabilitation Act.

"You must not take any adverse action against an individual (*e.g.*, refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11 (a)(4). Clearly in this case, Defendant Alaska has taken an adverse action against me (refusing to provide transportation) because I asserted on my own behalf rights protected by the ACAA in this lawsuit.

The Court wrongly found that "The Alaska Airlines flight attendants were simply enforcing a federal mandate requiring all passengers to wear a mask while on the flight." Doc. 153 at 6. First, the FTMM is unlawful and therefore the Court may not consider it in the context of this motion. But even if it does believe the FTMM can survive challenges (which it has yet to rule on in *Wall v. CDC* and *Health Freedom Defense Fund v. Biden*), that doesn't change this situation. The FTMM explicitly permits mask removal while eating. "The requirement to wear a mask does not apply under the following circumstances: ... While eating, drinking, or taking oral medications..." TSA Health Directive SD 1544-21-02A, Doc. 150-1 at

Ex. 12. The flight attendants were not "simply enforcing" the directive. They specifically targeted me ***while I was actively chewing food*** because I'm suing the airline and have lodged numerous complaints about mask discrimination. Alaska told me in January, in blatant violation of the law, that "we do not accept medical waivers for our mask policy." Ex. 5. DOT on Feb. 5 then ordered Alaska and the other defendants to stop violating the law. Doc. 62 at Ex. 149. DOT determined last month that Defendants Southwest and JetBlue broke the law in refusing to grant any mask exemptions. Ex. 6. The Court must apply DOT's determination to Alaska Airlines here.

All my coworkers on the North Slope of Alaska commute with Alaska Airlines to Deadhorse. None of them have been banned for eating on a plane without a mask on. It's surely not coincidental that I'm suing Alaska and am the only person I know here who's been issued a ban.

"During my numerous flights on Alaska since its illegal mask mandate has been in place for the past 1½ years, it is common for passengers to take off their face coverings while eating and drinking. I have never observed a flight attendant telling a passenger be or she may not eat or drink. I believe Mr. Menage is being retaliated against for suing Alaska Airlines for discrimination." Declaration of Joseph Fine. Doc. 150-1 at Ex. 10. *See also* Declaration of Julie Gleason. Doc. 150-1 at Ex. 11.

**4. Flying is a public right, not a privilege.**

The Court did not correctly apply the law when it wrote that "flying is a privilege, not a right." Doc. 153 at 6. The opposite is true, especially for the disabled:

> "A citizen of the United States has a public **right** of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board … before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103 (emphasis added).

Furthermore, Alaska Airlines is a common carrier and has a common-law duty under Alaska law to transport every person who purchases a ticket – especially when that person is a disabled traveler protected by the Rehabilitation Act and ACAA.

**5. Defendant Alaska requires advance notice by passengers who can't wear a mask, but this is explicitly forbidden.**

In addition to illegal retaliation, Alaska's mask policies unlawfully discriminate against the disabled. The Court should consider including restraining Alaska not just from refusing me transportation but also from refusing me transportation without wearing a face covering since my doctor says I should not. Doc. 150-1 at Ex. 2. Alaska requires seven days advance notice when a disabled customer seeks to fly maskless, but advance notice is prohibited by the ACAA regulations, enforced through a private cause of action by the Rehabilitation Act.

"[Y]ou must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

**6. Defendant Alaska requires a disabled passenger seeking a mask exemption to present a negative coronavirus test prior to each flight departure. But this constitutes illegal discrimination under the Rehabilitation Act and ACAA.**

Alaska requires disabled travelers seeking a mask exemption to submit a negative COVID-19 test taken within three days of departure. Requiring a negative test for a virus is not specifically addressed in the ACAA regulations, enforced via the Rehabilitation Act, however in general: "As a carrier, you must not subject passengers with a disability to restrictions that do not apply to other passengers, except as otherwise permitted in this part…" 14 CFR § 382.33(a).

The regulations and statute are clear: The defendant may not require a negative COVID-19 test only from passengers with a disability who seek a mask exemption because this is a restriction not imposed on other passengers. Doing so constitutes illegal discrimination. The only way for the defendant to possibly be allowed to require a negative COVID-19 test from disabled passengers is to require such a test from ALL flyers. Then customers with and without a disability would be treated equally.

**7. Congress has not amended the ACAA during the pandemic or provided other authority for Defendant Alaska to disregard its legal duty to avoid discriminating against passengers with disabilities.**

Congress has ***never*** enacted a federal mask mandate. Nor has it amended the ACAA in response to the pandemic to give airlines permission to discriminate against passengers who can't tolerate covering their nose and mouth. Congressional intent is clear: Airline mask policies – and especially their discriminatory

refusal to follow the law in granting exemptions to those with disabilities – are forbidden.

## 8. Medical exemptions to the FTMM are expressly allowed, but Defendant Alaska is making them impossible to get with its discriminatory conduct.

Alaska is requiring all passengers be muzzled because of the FTMM. But that mandate – challenged as illegal and unconstitutional in two related proceedings in this Court and in six cases now before the U.S. Court of Appeals for the District of Columbia Circuit – itself exempts passengers with disabilities who can't don a mask. "This Order exempts the following categories of persons: ... A person with a dis-ability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act..."[3]

The public policy of the United States is that airlines must exempt passengers with a disability such as myself who can't safety wear a mask because of their medical condition. But the defendant is discriminating against travelers who medically can't wear a face covering with so many onerous procedures that getting an exemption is nearly impossible.

Congress enacted the Rehabilitation Act and ACAA to protect passengers such as myself who suffer from one or more medical impairments. Airlines have a legal responsibility not to discriminate against us.

---

[3] CDC Order "Requirement for Persons To Wear Masks While on Conveyances & at Transportation Hubs" 86 Fed. Reg. 8,025 (Feb. 3, 2021)

**9. The magistrate judge has recommended dismissing the Amended Complaint with leave to replead without the class action and lead plaintiff designations. But it's still the operative pleading and I have standing to seek a PI.**

The Court ruled on my Motion for TRO without addressing my standing. The district judge has yet to rule on the magistrate's R&R, therefore the Amended Complaint remains the operative pleading in this case and I have standing as a plaintiff to seek relief in the form of a PI against Defendant Alaska. Even if the district judge adopts the R&R, I will be a plaintiff in the Second Amended Complaint, so there's no question I have standing.

**10. Defendant Alaska breached its contract with me by requiring me to wear a mask.**

The Court failed to consider that Defendant Alaska's Contract of Carriage, which I had to agree to buy my plane ticket, includes no provision mandating that passengers wear face coverings. I did not agree to wear a mask when I booked my ticket. Also, even if the contract required the disabled to wear masks, "[A] contract of carriage that conflicts with federal laws or regulations may not be enforceable by the airline," according to the Congressional Research Service. Doc. 62 at Ex. 523. And Contracts of Carriage must "reflect federal regulations requiring airlines to provide specific services and facilities for passengers with disabilities," according to the Government Accountability Office. *Id.* at Ex. 525.

**11. Defendant Alaska's requirement that passengers wear masks, classified by the Food & Drug Administration as experimental medical devices, constitutes practicing medicine without a license.**

The Court wrongly concluded that "As a matter of common sense, it is antithetical to reason that asking someone to wear a mask is in any way analogous to practicing medicine." Doc. 153 at 6. But the Court ignores the reality that the Food & Drug Administration classifies face masks as medical devices. Doc. 62 at Exs. 449-466. It's a matter of common sense that doctors write prescriptions for medical devices, not airlines (nor the CDC nor the TSA for that matter). My doctor told me not to wear a mask for my health. Alaska has no power to overrule his judgment.

Defendant Alaska violates state law by having its employees practice medicine without a license by prescribing the use of face masks, which are Emergency Use Authorization products that federal law mandates passengers must have the legal option to refuse administration of. 21 USC § 360bbb-3(e)(1)(A)(ii)(III). Alaska even provides illegal and/or EUA masks to its passengers without informing us use of the device is optional and we must give informed consent. This constitutes reckless endangerment of our health. The Court must properly apply the law and find that Alaska is practicing medicine without a license and is in violation of the Food, Drug, & Cosmetic Act. 21 USC § 360bbb-3.

## 12. Defendant Alaska is engaged in fraudulent misrepresentation.

Alaska provides FDA unauthorized or EUA face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option

17

to accept or refuse administration of the product." 21 USC § 360bbb-3. Also, Alaska falsely represents on its website, in e-mails to passengers, signage at airports, etc. that "federal law" requires airline passengers wear face masks. Such language was also used in the two letters I received from the defendant. Exs. 4-5. But Congress has never enacted such a law. A mandate from CDC and TSA is not a "federal law" enacted into the U.S. Code. This is a fraudulent misrepresentation of the law.

## B. Defendant Alaska banning me from flying until it ceases illegally requiring passengers to wear masks represents irreparable injury.

The Court erred in determining "the Motion fails to demonstrate that Menage will suffer irreparable injury if relief is not granted." Doc. 153 at 6. In reality, I will suffer irreparable injury if the requested relief is not granted. Alaska is the only airline flying between Anchorage and Deadhorse. I have already been informed by my company that I am under investigation and will almost certainly lose my job or be placed on unpaid leave if Alaska is not forced to transport me. Doc. 1. This is "actual and imminent" injury, not "nothing more than speculation based on [my] inability to find suitable transportation to and from the job site." Doc. 153 at 7. The Court also fails to acknowledge my employer arranges and pays for my transportation, not me. If I can't fly on the company-booked flight, it can terminate or suspend me. I do not have a choice in how Worley books my transportation.

The Court fails to comprehend that there is no reasonable alternate mode of transport between Deadhorse and Anchorage because Alaska is the only airline that flies the route and road transportation in the Arctic is often impassable this

time of year. Doc. 1. It is false to write "while it may not be the most convenient method of transportation, it is possible for Menage to drive from Deadhorse to Anchorage." Doc. 153 at 7. In actuality, "the Dalton Highway is often impassible in winter." Ex. 1. And driving – even if I owned a suitable vehicle for the Arctic in winter, which I do not – would involve travel "along a dangerous ice-and-snow-covered two-lane road through the wilderness of interior Alaska." *Id.*

My foreman and coworkers attest to this. "If Alaska Airlines is allowed to unlawfully ban Mr. Menage from flying, he would almost certainly be suspended or terminated because he would not have a reliable means of getting to and from work." Doc. 150-1 at Ex. 10. *See also* Doc. 150-1 at Ex. 11.

It's insulting and terribly wrong for the Court to write "it was [my] own failure to comply with federal regulations and properly wear the mask while on the flight that created the ... injury." Doc. 153 at 7. First, there is nothing in the Code of Federal Regulations (or the U.S. Code) requiring any airline passenger to wear a mask. Second, I was complying with the unlawful FTMM because I was chewing food when harassed by the flight attendant. Third, I can't properly wear a mask because, as my physician determined, I am medically exempt. Fourth, Alaska can't refuse my medical exemption. *See* numerous other arguments *supra*.

When considering this prong, "it is not so much the magnitude but the irreparability that counts." *Enter. Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir.1985) (quoting *Canal Authority v. Callaway*, 489 F.2d

567, 575 (5th Cir. 1974)). Here I have both an enormous magnitude of harm plus irreparability.

The Court erroneously wrote that I have "the option to either wear a mask to fly or find alternate transportation that did not require [me] to wear a mask." Doc. 153 at 6. But as discussed above, Alaska's mask policy violates numerous laws and regulations protecting the disabled from discrimination. I can't be compelled to wear a mask when doing so harms my health. Alaska Airlines is not my doctor and can't override my doctor's note. It can't even legally ask for such a note. 14 CFR § 382.23. And there is no other reasonable alternative transportation for me to get to my remote worksite along the Arctic Ocean.

### C. A restraining order won't harm Defendant Alaska. It would actually enrich the airline by restoring my ticket and keeping my money.

Alaska can't have an interest in taking actions that violate federal antidiscrimination laws and the FTMM. The defendant therefore cannot claim to have any cognizable "injury" as a result of the issuance of a PI. The Court erred in finding that "Alaska Airlines is *properly* enforcing the [FTMM] by ensuring that all passengers wear a mask in flight." Doc. 153 at 8 (emphasis original). First, the FTMM is *ultra vires*, so the airline can't possibly be properly enforcing a policy Congress has never enacted. Also, even if the Court assumes the FTMM is legal, it requires airlines exempt passengers with medical conditions who can't safely wear a mask. I meet that requirement. The Rehabilitation Act and ACAA also prevent Alaska's enforcement of a mask mandate against me.

The Court offers nothing but conjecture when it determined that "By allowing a passenger to forego wearing a mask on the plane, Alaska Airlines would be exposing both other customers and the flight crew to a higher risk of contracting COVID-19." *Id.* The Court offers no evidence that I am infected with COVID-19 nor to support the false claim that masks do anything to reduce coronavirus transmission. The science shows the opposite is true. Doc. 62 at Exs. 200-423.

Airline executives themselves recognize the Court's conclusion is far off the mark. During recent testimony to a Senate committee, "The CEOs of two of the nation's major airlines say they don't think wearing masks on planes does much to help limit exposure to COVID." Ex. 2. Defendant "Southwest Airlines CEO Gary Kelly told U.S. senators Wednesday that the air in airplane cabins is clean enough that face masks don't provide significant additional protection to passengers from COVID-19. ... [Airlines] partnered with the Department of Defense and research universities such as Harvard to show that HEPA filtration systems on airplanes make it difficult for coronavirus to spread among passengers." Ex. 3. "Kelly told a U.S. Senate panel on Wednesday that 'masks don't add much, if anything' in fighting the spread of COVID-19 on airplanes, calling into question the reasoning behind mask mandates on flights imposed both by airlines and the Biden administration." Ex. 4.

The Court, again with no supporting evidence, inaccurately determined "the plane fare of one additional passenger does not begin to outweigh the harm to Alaska Airlines with the increased risk of exposure to COVID-19." Doc. 153 at 8.

21

But there is no increased risk of exposure to COVID-19 by passengers, particularly the disabled, not wearing face coverings, as airline executives and the scientific community have said countless times. Exs. 2-4 & Doc. 62 at Exs. 200-423. Alaska could not suffer any harm because masks do not reduce the spread of COVID-19, especially on an airplane with HEPA filters that recirculate the air every 2-3 minutes. I highly encourage the Court to at least skim the studies and articles presented into evidence to correct its misunderstanding of masks, which is sadly commonplace in our society due to false information put out by CDC and other supposed health authorities. Doc. 62 at Exs. 200-423.

This is the rare instance where not only would Alaska not suffer any harm, it would actually ***profit*** from being enjoined by this Court because it would be forced to accept my company's money for my plane tickets. The defendant cannot have an interest in taking actions that are prohibited by law. Alaska cannot claim to have any cognizable "injury" as a result of the issuance of a PI.

### D. The public interest requires restraining a defendant from retaliating against a plaintiff for bringing a lawsuit against it. It's also in the public interest to enforce nondiscrimination laws.

The Court got it wrong in finding that Alaska "was properly enforcing the federal regulations mandating that all passengers wear face mask while aboard public transportation. Doc. 153 at 8-9. There is no regulation (or law) requiring anyone wear a mask. There are only *ultra vires* CDC and TSA orders, which the Court must

determine are unenforceable. The Court must apply the *actual* laws passed by Congress and regulations duly promulgated by DOT that prohibit discrimination against disabled travelers and retaliation against those of us who exercise our legal rights under the Rehabilitation Act and ACAA. There indeed has been obvious retaliation against me, which the Court blindly overlooked and must reconsider.

The Court again erred in finding, on the basis of a *single* CDC study, that "there is substantial scientific evidence showing that masks are very effective in blocking aerosolized particles containing the COVID-19 virus and usually 'have no significant adverse health effects for the wearers.'" Doc. 153 at 9. My doctor and hundreds of thousands of others around the world strongly disagree with that false determination. The Court could spend several days reading just a sample of the scientific and medical evidence that contradicts its finding based on a solitary flawed CDC report. Doc. 62 at Exs. 200-423. At least take a look at some of the studies.

Although nobody would argue that "the public interest is ... best served by preventing the further spread of COVID-19" (Doc. 153 at 9), that does NOT occur through mask enforcement. Ex. 62 at Docs. 200-423. There are 44 states that agree with my statement and disagree with the Court's finding. Only six states currently have a mask mandate in place, down from 40 at the start of the pandemic, as the science became clear that masks do not reduce the spread of respiratory droplets. It's common sense that aerosols go out the top, bottom, and sides of a mask, rendering them useless. There is no public interest in allowing a common carrier to

illegally discriminate against the disabled and requiring masks that do nothing to stop the transmission of COVID-19.

Furthermore, the FTMM itself recognizes that there are many disabled Americans who can't tolerate wearing a face mask. Ending the defendants' illegal retaliation and discrimination against me is indisputably in the public interest The defendant's extremely harsh enforcement of their mask rules – Alaska totally banned all disabled travelers from flying from roughly June 2020 to February 2021, when the FTMM went into effect – is arbitrary and capricious. The defendant has not shown any proof that barring mask-exempt passengers from their airplanes has in any way contributed to public health.

The airline industry itself promotes how safe flying is. Studies it commissioned show airplanes are among the safest places you can be during the pandemic. Most importantly, there have not been any reported outbreaks of COVID-19 at airports or on board aircraft. Aircraft cabins have more sterile air than many hospital operating rooms.

> "Not only is there no evidence that the applicants have contributed to the spread of COVID-19 but there are many other less restrictive rules that could be adopted to minimize the risk to public interests. Finally, it has not been shown that granting the applications will harm the public. As noted, the State has not claimed that attendance at the applicants' services has resulted in the spread of the disease. And the State has not shown that public health would be imperiled if less restrictive measures were imposed." *Roman Catholic Diocese of Brooklyn v. Cuomo,* No. 20A87 (U.S. Nov. 25, 2020).

As this Court held six months ago: "COVID-19 no longer threatens the public's health to the same extent presented at the start of the pandemic or when CDC issued the conditional sailing order. ... And Florida's high likelihood of success on the merits ensures that a preliminary injunction would serve the public interest." *State of Florida v. Becerra,* No. 8:21-cv-839 (M.D. Fla. June 18, 2021); CDC's motion to stay injunction denied, No. 21-12243 (11th Cir. July 23, 2021).

> "[T]his all assumes that COVID-19 poses any significant danger to workers to begin with; for the more than 78% of Americans aged 12 and older either fully or partially inoculated against it, the virus poses – the Administration assures us – little risk at all. *See,* e.g., 86 Fed. Reg. 61,402, 61,402–03 ('COVID-19 vaccines authorized or approved by the [FDA] effectively protect vaccinated individuals against severe illness and death from COVID-19.'). ... The Mandate is staggeringly overbroad. ... one constant remains – the Mandate fails almost completely to address, or even respond to, much of this reality and common sense." *BST Holdings v. OSHA*, No. 21-60845 (5th Cir. Nov. 12, 2021).

This Court has the power to put a stop to Alaska's illegal behavior, especially considering that scientific research shows that masks do nothing to reduce coronavirus spread and are actually harmful to humans. The Court must review the 223 scientific studies, medical articles, and videos plaintiffs have put into evidence. Doc. 62 at Exs. 200-423. This documents are also available online at https://bit.ly/masksarebad.

## IV. PRAYER FOR RELIEF

WHEREFORE, I request this Court issue the attached proposed order granting me a preliminary injunction.

Respectfully submitted this 20th day of December 2021.


_____

Peter Menage, plaintiff

3255 N. Mars Ave.
Palmer, AK 99645
Telephone: 907-715-1205
E-Mail: pmenage@googlemail.com