Plaintiff's Exhibit 1

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **LUCAS WALL *et al.*,** | : | |
| | : | |
| Plaintiffs, | : | Case No. 6:21-cv-1008-PGB-DCI |
| | : | |
| v. | : | District Judge Paul Byron |
| | : | |
| **SOUTHWEST AIRLINES *et al.*,** | : | Magistrate Judge Daniel Irick |
| | : | |
| Defendants. | : | |


## DECLARATION OF PLAINTIFF PETER MENAGE

I, Peter Menage, declare as follows:

1. I am over the age of majority.

2. I could testify to the facts set out herein if called upon to do so.

3. I reside at 3255 N. Mars Ave., Palmer, AK 99645.

4. **This declaration is the same as the one I signed Dec. 5, 2021, (Doc. 150-1 at Ex. 1) except for additions made in bold underline.**

5. I make this declaration based on my personal knowledge and to explain the impact of Defendant Alaska Airlines' illegal discriminatory mask policy and its retaliation against me for suing it in this Court.

6. I board 16-20 flights per year for both work and personal travel.

7.  Due to my medical issues, I can't tolerate wearing a face mask. Covering my nose and mouth prevents proper breathing including faintness, hyperventilation, anxiety, and more.

8.  I have a medical mask exemption that was issued Dec. 18, 2020, by Dr. Packer of Wasilla, Alaska. **Doc. 150-1 at** Ex. 2.

9.  I have flown approximately 19 times during the COVID-19 pandemic since it was declared by the World Health Organization in March 2020 and have been subject to Defendant Alaska Airlines' illegal mask mandate.

10. I have contacted Defendant Alaska Airlines on numerous occasions, including in person at the ticket counter and via e-mail presenting my medical mask exemption. On each occasion, I was informed that it would not be accepted or recognized by the airline.

11. On one occasion, upon presenting my exemption to Transportation Security Administration personnel at the security checkpoint, an Alaska Airlines representative intervened and threatened to ban me from the airport entirely – which I consider to be harassment, intimidation, and threat of false imprisonment.

12. On another occasion, Alaska's staff forbid me from consuming food or drinks for the duration of the flight even though this is allowed by the airline and the Federal Transportation Mask Mandate. I was harassed and threatened with being banned from the airline.

13. I work as an operator for Worley in the remote Arctic oilfields in and around Prudhoe Bay, Alaska. As is common for North Slope workers, I fly Alaska Airlines from Anchorage to Deadhorse (the airport serving the Prudhoe Bay oilfields) every three weeks for work. I work three weeks straight, then return to Anchorage on Alaska Airlines.

14. Alaska Airlines is the only carrier flying from Anchorage to Deadhorse.

15. On Nov. 25, 2021, I boarded Alaska Flight 55 from Anchorage to Deadhorse to come to work.

16. Once we reached cruising altitude and the flight attendants started serving drinks, I got out my own food and beverage. I proceeded to eat and drink.

17. A flight attendant came and demanded I put a mask back on. I had food in my hand and was chewing when she addressed me. After finishing chewing my food, I told her I was eating. She demanded again that I put a mask on. I repeated that I am eating. She persisted, demanding I don a mask while eating and drinking, which is virtually impossible. It is also not the company policy or required by the FTMM. After a couple minutes of this, I gave her a salute, put my food aside, and placed the mask back on (which is detrimental to my health).

18. A short bit later, another flight attendant addressed me about masks. I advised her that the first attendant was banning me from eating. The crew said something about a "yellow card" and how it could cost me my job. I couldn't

hear what else might have been said due to the noise of the aircraft and them speaking through their masks.

19. I was handed a yellow card (**Doc. 150-1 at** Ex. 3), then left alone, and returned to watching a movie with a mask on (harming my health).

20.     I deboarded the aircraft at Deadhorse airport and removed my mask. Outside, someone grabbed me from behind. I spun around and a man was standing there. He flashed a badge, which I could not make out because it was quickly put away. I believe he works for Alaska Airlines. This man demanded to see my identification and asked what company I work for. I provided the information. I consider this incident to be battery.

21.     A flight attendant was also present and asked if I knew the significance of a yellow card. I told her I did not. She then stated I was to be banned from Alaska Airlines for a minimum of 30 days. The man said I was banned from the airport terminal as well, pending further investigation.

22.     I received a letter from Alaska Airlines on Nov. 25 in which the defendant falsely alleged "you were unwilling to properly wear a mask or face covering (over the mouth and nose) while onboard our aircraft, as required by Alaska Airlines policy and federal law." **Doc. 150-1 at** Ex. 4.

23.     I never said I was unwilling to wear a mask. I was eating at the time. Also, I've presented my medical exemption to Alaska many times and been denied, a fact the letter fails to address.

24.    There is no federal law requiring passengers wear masks. There is an il-
legal CDC order and unlawful TSA Health Directive, which are being chal-
lenged in many courts including this one. *See Wall v. Centers for Disease
Control & Prevention*, No. 6:21-cv-975; *Health Freedom Defense Fund v.
Biden*, No. 8:21-cv-1693; and *Wall v. Transportation Security Administra-
tion*, No. **21-1220 (D.C. Cir.)**

25.    The letter alleges "During your travel, you were informed about the im-
portance of the policy and reminded that your continued noncompliance
would result in suspension of further travel." This never happened.

26.    It further alleges "Because you refused to wear a face covering after mul-
tiple reminders, you will not be permitted to fly with us again, pending the
outcome of an internal investigation." But I never refused to wear a face cov-
ering and was not given multiple reminders.

27.    I received another letter from Alaska on Dec. 1 informing me that "it is
our policy, and federal law, that all our guests wear [masks] while at the air-
port and onboard, except when briefly engaged in eating or drinking. Masks
otherwise need to cover the mouth and nose at all times (including while
sleeping and in between bites/sips)." **Doc. 150-1 at** Ex. 5. Alaska has again
committed fraudulent misrepresentation of the law, as Congress has never
enacted any law requiring anybody to wear a mask while flying (or anywhere
else).

28.     Alaska's Dec. 1 letter again fails to mention that I have a doctor's note exempting me from wearing a mask. It also doesn't note that I complied with the flight attendant's illegal request to stop eating and put my mask back on.

29.     Alaska's letter falsely asserts that its mask policy is "based on guidance of the CDC and other regulatory authorities, and supported by the best available medical evidence. It is a fact that wearing face coverings significantly reduces the transmission of the COVID-19 virus." These are lies. The scientific consensus for decades is that masks to not stop the transmission of a respiratory virus such as COVID-19 but cause dozens of harms to human health. *See* 223 scientific studies, medical articles, and videos compiled at https://lucas.travel/masksarebad as well as hundreds of such documents introduced into evidence in this case. Doc. 62.

30.     Alaska's claim that "Reports we received detail willful non-compliance of our mask policy on your part" is also a lie. Clearly I am being targeted because I am suing the airline as no one else I know who was eating on Flight 55 was served a travel ban. I have spoken to other oilfield workers who were on the same flight. They told me they were not harassed while eating. It's a little too coincidental that I was maliciously singled out and aggressively harassed, being I was the only person on the plane who is suing Alaska Airlines for illegally discriminating against the disabled who can't wear masks.

31. Alaska informed me in its Dec. 1 letter that "your travel suspension remains in place until face coverings are no longer required for travel."

32.     I believe Alaska's action banning me for eating aboard Flight 55 is retaliation for me suing the airline.

33.     **I was** booked **to fly** Dec. 9, 2021, on Alaska Airlines from Deadhorse to Anchorage.

34.     **I was unable to take this flight because of Alaska's unlawful banning of me.**

35.     **My company, which pays for my transportation to and from Deadhorse, arranged for me to ride on a small cargo plane from Deadhorse to Fairbanks on Dec. 9. I then had to take a taxi 330 miles from Fairbanks to my home in Palmer along a dangerous ice-and-snow-covered two-lane road through the wilderness of interior Alaska.**

36.     **Worley told me this special transportation was being provided only once so that I could get home from Deadhorse.**

37.     **Since getting home Dec. 9, I have spoken with my supervisor at Worley and company attorney Minhee Kuo. Ms. Kuo told me the company is conducting an internal investigation into Alaska Airlines' decision to ban me, which will determine my future with Worley. My manager told me if I am unable to reverse Alaska's ban, I will almost certainly be terminated or placed on unpaid leave.**

38.    The only ground transportation **from Deadhorse** is a rough road called the Dalton Highway (also known as the North Slope Haul Road) that runs 414 miles to Alaska Route 2. From there, it's another 408 miles to my home in Palmer for a total of 822 miles.

39.    In good weather, the drive would take an estimated 17 hours, not counting stops for fuel, food, bathroom, and sleeping. However, the Dalton Highway is often impassible in winter.

40.    **Losing my job or being placed on unpaid leave** would constitute irreparable harm for myself and my family.

41.    I e-mailed Alaska's lawyers twice (Nov. 30 and Dec. 3) in an effort to resolve this matter outside of court, but they failed to respond to me. **Doc. 150-1 at** Ex. 6.

42.    **I am scheduled to report back to work in Deadhorse on Jan. 13 after my normal three weeks off, an extra week off for the winter holidays, and one week of vacation.**

43.    **Worley plans to book me Jan. 13 on Alaska Flight 55 from Anchorage to Deadhorse. However, I won't be able to take this plane absent Alaska's reversal of my ban or this Court's intervention.**

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on Dec. 20, 2021.


_____

Peter Menage, plaintiff