Plaintiff's Exhibit 6

lucas.travel

# JetBlue & Southwest Broke Law by Refusing Virginia Man Mask Exemptions – Quest for 243

8-10 minutes

*Decisions a Victory for Disabled Americans*

*Fighting Airlines' Exclusionary Policies*

Nov. 28, 2021

By LUCAS WALL

HENRICO COUNTY, Virginia – The U.S. Department of Transportation determined JetBlue Airways and Southwest Airlines violated federal law when they refused to grant a disabled Virginia man mask exemptions, a win for Americans with medical conditions battling the airlines over their extremely restrictive policies on face coverings.

DOT found JetBlue violated the Air Carrier Access Act by failing to provide an accommodation to a passenger with a disability with respect to the carrier's mask policy for Kleanthis Andreadakis' October 2020 request to fly maskless from Richmond, Virginia, to Boston, Massachusetts, for the birth of his first granddaughter.

"JetBlue's mask policy that was in place at the time Mr. Andreadakis planned to travel failed to provide an exemption for passengers with disabilities who cannot wear or safely wear a mask due to their disabilities," according to the Investigation Summary Sheet issued by DOT's Office of General Counsel. "As a result, JetBlue did not conduct an individualized assessment to determine whether Mr. Andreadakis could not wear or safely wear a mask due to his disability and whether a reasonable accommodation could be made that would permit Mr. Andreadakis to fly safely without a mask. Therefore, we find that JetBlue violated the ACAA."

Andreadakis, who is part of a group of 13 disabled flyers suing JetBlue, Southwest, and five other airlines for illegal mask discrimination, filed a complaint with DOT in October 2020, which took more than a year to resolve. He complained that JetBlue's website at the time stipulated that all passengers over the age of two must wear a face covering over their nose and mouth throughout their journey, with no exemptions for medical conditions.

"In the carrier's October 22, 2020, letter to Mr. Andreadakis, JetBlue confirms Mr. Andreadakis' understanding of its mask policy by stating that it requires all customers over the age of 2 to wear a face covering over their nose and mouth throughout their journey, including during check-in, boarding, in flight and deplaning," according to DOT. However, "The Air Carrier Access Act and its implementing regulation … require airlines to make reasonable accommodations, based on

individualized assessments, for passengers with disabilities who are unable to wear or safely wear a mask due to their disabilities."

DOT did not fine JetBlue for discriminating against Andreadakis, which he said is disturbing. He is considering challenging the lack of a penalty in the U.S. Court of Appeals for the Fourth Circuit in Richmond. He is already suing the Transportation Security Administration in the Court of Appeals to strike down the Federal Transportation Mask Mandate.

"For DOT to simply give JetBlue a pass on anything punitive for violating my civil rights is mind-boggling," he said. "ACAA – the law that is supposed to protect the disabled in air travel – has been the law since 1986. DOT can't abrogate airlines' legal responsibilities under the law. It's appalling that the agency charged by Congress with the protection and enforcement of civil rights for the disabled in air travel is not fining airlines for depriving me of the ability to fly, furthering the prejudices that the disabled endure daily."

DOT also found Southwest violated the ACAA by failing to provide an accommodation for Andreadakis' September 2020 request to fly maskless from Richmond to Tampa, Florida.

"Mr. Andreadakis was informed that anyone not wearing mask will not be allowed to travel on Southwest. In the carrier's September 21, 2020, reply to Mr. Andreadakis, Southwest confirms Mr. Andreadakis' allegation that a passenger who can not or refuses to wear a mask will not be allowed to travel on Southwest," DOT wrote. "Southwest's mask policy that was in place at the time Mr. Andreadakis planned to travel failed to provide an exemption for passengers with disabilities who cannot wear or safely wear a mask due to their disabilities. … Therefore, we find that Southwest violated the ACAA."

But again, DOT did not fine Southwest for its illegal discrimination against the disabled. Both rulings allege that the air carriers have informed DOT that they have amended their mask policy to comply with the ACAA, but Andreadakis said that's not true.

"It's terrible that DOT found Southwest broke the law but imposed no penalty," Andreadakis said. "Only a month ago, Southwest denied yet another mask-exemption request from me, clearly showing it hasn't changed its policy to comply with the law. Something is very wrong at Southwest Airlines and even more so at the Department of Transportation."

Plaintiffs in the class-action lawsuit have charged the seven airlines (Southwest, Alaska, Allegiant, Delta, Frontier, JetBlue, and Spirit) with conspiracy to interfere with civil rights by barring anyone who can't wear a mask from flying. The complaint also charges the carriers with 29 other counts including infringing on the constitutional right to travel interstate and internationally; reckless endangerment; as well as breaking numerous provisions of the Air Carrier Access Act, Rehabilitation Act, and international treaties. The case is being litigated in the U.S. District Court in Orlando.

JetBlue has harshly treated those suing it for illegal discrimination, including placing the lead plaintiff in the class-action lawsuit Andreadakis is a participating in on its no-fly list last month. Lucas Wall has been stuck in Florida since early June, when Southwest Airlines and the Transportation Security Administration refused to grant him a mask exemption at Orlando International Airport. He sued the federal government June 7 to strike down the FTMM. A week

later, he filed the lawsuit against Southwest, JetBlue, and five other airlines for their illegal discriminatory mask policies that prohibit those who are medically unable to cover their faces from flying.

Wall booked a ticket Oct. 12 and requested a mask exemption from JetBlue. He was shocked to receive an e-mail the next day that his ticket was canceled – with no explanation. During a phone call, a JetBlue supervisor told Wall the security department voided his booking. The airline later confirmed it had banned Wall. He filed a complaint Oct. 14 with DOT, which hasn't been resolved.

"JetBlue continues discriminating against passengers with medical conditions who can't wear masks," he said. "DOT has shamefully failed to fine airlines for violating the Air Carrier Access Act regarding mask-exemption denials, which proliferate to this day. And it should not take 13 months to investigate a simple complaint such as the one Kleanthis filed."

Wall said these DOT determinations that JetBlue and Southwest broke the law will be excellent evidence to present in court.

"We've offered to work with all seven carriers on a consent decree to halt their illegal behavior, but they have refused," Wall said. "They must obey the Air Carrier Access Act and, at minimum, offer mask exemptions without mandating numerous illegal steps such as advance notice, coronavirus testing, and producing a doctor's letter. They shall not further conspire with each other to bar the disabled from flying."

The class-action lawsuit against seven airlines is Wall v. Southwest Airlines, No. 6:21-cv-1008, U.S. District Court for the Middle District of Florida Orlando Division. The lawsuit against TSA is Andreadakis v. Transportation Security Administration, No. 21-1237, U.S. Court of Appeals for the District of Columbia Circuit.

Donate to our legal fund on GoFundMe: Help End Federal Transportation Mask Mandate

Join our Facebook group: Americans Against Mask Mandates

View: 223 Studies, Articles, & Videos Describe How Masks Don't Reduce COVID-19 Spread But Harm Human Health



**U.S. Department of Transportation**
Office of the Secretary of Transportation

**GENERAL COUNSEL**

1200 New Jersey Ave., S.E.
Washington, DC 20590

November 12, 2021

Mr Kleanthis Andreadakis
5108 Hunters Meadow Pl
Henrico, VA 23231

Dear Mr Andreadakis:

This letter is in further reference to your disability complaint regarding JetBlue Airways. We were sorry to hear of the incident and appreciate the opportunity to advise you of the outcome of our investigation. Enclosed you will find an Investigation Summary Sheet that details the results of our investigation, which was based on the Air Carrier Access Act (ACAA), 49 U.S.C. Section 41705, and our implementing rule, 14 CFR Part 382.

In particular, the Investigation Summary Sheet identifies the applicable section of 14 CFR Part 382, provides a brief summary of that section and explains this office's view on whether the carrier has violated the ACAA and 14 CFR Part 382. If your complaint raises more than one disability issue, an additional Investigation Summary Sheet has been attached to address each issue.

If we believe the complained of incident involves a violation, the Investigation Summary Sheet indicates the action that we plan to take. We will either pursue formal enforcement action or by copy of this letter notify the airline specified in your complaint of our determination and warn it that any similar incidents could lead to formal enforcement action. Generally, we will pursue enforcement action on the basis of a number of complaints from which we may infer a pattern or practice of discrimination. However, where one or a few complaints describe particularly egregious conduct on the part of a carrier and those complaints are supported by adequate evidence, we will pursue enforcement action as our resources permit. If we decide to seek enforcement action against the airline, your complaint will be among those considered in the context of this action, which may lead to the issuance of a cease and desist order and to the assessment of civil penalties. In the event that this enforcement action leads to litigation, it is possible that we may need sworn statements or witnesses for a hearing. We will advise you if, in fact, we need your further help.

For your information, in an enforcement case, the U.S. Department of Transportation is limited to issuing cease and desist orders and assessing civil penalties not to exceed $34,174 per violation. Such action can only be accomplished through settlements or formal hearings before administrative law judges. We cannot order compensation for aggrieved parties. To obtain a personal monetary award of damages, a complainant would have to file a private legal action that may be based on private contract rights or on civil rights statutes that provide for a private right of action.

If we have insufficient evidence or it appears that the airline specified in your complaint has not violated the ACAA, we will not pursue enforcement action. Notwithstanding our decision not to pursue enforcement action, however, private legal action may be pursued in the courts based on private contract rights or on civil rights statutes that provide for a private right of action and, in such a proceeding, monetary damages may be sought.

Regardless of whether the airline has been determined to have violated the ACAA, we have entered your complaint in our computerized industry monitoring system, and the carrier's ACAA complaint totals in our monthly *Air Travel Consumer Report* reflect your complaint. Our monthly report is made available to the

aviation industry, the news media and the general public so that both consumers and air travel companies can compare the overall complaint records of individual airlines, as well as the number of disability complaints filed against particular carriers. This system also serves as a basis for rulemaking, legislation, and research.

Moreover, we also routinely monitor our complaint records to determine the extent to which carriers are in compliance with the ACAA and to track trends or spot areas of concern which we feel may warrant further action. This ongoing process also enables us to ensure prompt corrective action whenever we determine that an airline's policies or procedures are not in compliance with our ACAA regulations. Your complaint will be among those considered in the context of this overall process.

I hope this further information is useful. Thank you again for taking the time to contact us.

Sincerely,

Livaughn Chapman, Jr.
Deputy Assistant General Counsel
for Aviation Consumer Protection

/s/

By: Clereece Kroha
Senior Trial Attorney

Enclosures
cc: JetBlue Airways



**U.S. Department of Transportation**
Office of the Secretary of Transportation

GENERAL COUNSEL

1200 New Jersey Ave., S.E.
Washington, DC 20590

# INVESTIGATION SUMMARY SHEET

| | |
|---|---|
| **Case Number:** | AT2020100032 |
| **Complainant Title:** | MR |
| **Name:** | KLEANTHIS ANDREADAKIS |
| **Address:** | 5108 HUNTERS MEADOW PL<br>HENRICO, VA 23231 |
| **Passenger(s):** | Mr. Kleanthis Andreadakis |
| **Airline:** | JetBlue Airways |
| **Travel Date(s):** | Not Applicable |
| **Flight Number(s):** | Not Applicable |
| **City Pair:** | Richmond to Boston |
| **Location of Incident:** | Not Applicable |
| **Complaint/Issue:** | Failure to provide an accommodation to a passenger with a disability with respect to the carrier's mask policy. |
| **Applicable Section of 14 CFR Part 382:** | 382.19 |
| **Section Summary:** | (a) As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part.<br><br>(b) You must not refuse to provide transportation to a passenger with a disability because the person's disability results in appearance or involuntary behavior that may offend, annoy, or inconvenience crewmembers or other passengers.<br><br>(c) You may refuse to provide transportation to any passenger on the basis of safety, as provided in 49 U.S.C. 44902 or 14 CFR 121.533, or to any passenger whose carriage would violate FAA or TSA requirements or applicable requirements of a foreign government.<br><br>(1) You can determine that there is a disability-related safety basis for refusing to provide transportation to a passenger with a disability if you are able to demonstrate that the passenger poses a direct threat (see definition in §382.3). In determining whether an individual poses a direct threat, you must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain:<br><br>(i) The nature, duration, and severity of the risk;<br><br>(ii) The probability that the potential harm to the health and safety of others will actually occur; and<br><br>(iii) Whether reasonable modifications of policies, practices, or procedures will mitigate the risk.<br><br>(2) If you determine that the passenger does pose a direct threat, you |

must select the least restrictive response from the point of view of the passenger, consistent with protecting the health and safety of others. For example, you must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal.

(3) In exercising this authority, you must not act inconsistently with the provisions of this part.

(4) If your actions are inconsistent with any of the provisions of this part, you are subject to enforcement action under Subpart K of this part.

**Rule Violated?**   Yes

**Remarks:**

Mr. Andreadakis states that he has a disability that prevents him from wearing a mask. Mr. Andreadakis states that he was looking to travel to Boston for the birth of his first granddaughter and JetBlue Airways (JetBlue) offered non-stop flights. Mr. Andreadakis further states that JetBlue's website stipulates that all passengers over the age of 2 must wear a face covering over their nose and mouth throughout their journey.

In the carrier's October 22, 2021, letter to Mr. Andreadakis, JetBlue confirms Mr. Andreadakis' understanding of its mask policy by stating that it requires all customers over the age of 2 to wear a face covering over their nose and mouth throughout their journey, including during check-in, boarding, in flight and deplaning.

On February 5, 2021, the Department of Transportation's Office of Aviation Consumer Protection (OACP) issued a notice titled "Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear Masks While on Commercial Aircraft." The notice reminds U.S. and foreign air carriers of their legal obligation to accommodate the needs of passengers with disabilities when developing procedures to implement the Federal mandate on the use of masks to mitigate the public health risks associated with COVID-19. The notice makes clear that airline policies that expressly allow no exceptions to the mask requirement other than for children under the age of two violate the Air Carrier Access Act.

The Air Carrier Access Act and its implementing regulation, 14 CFR Part 382 (Part 382), require airlines to make reasonable accommodations, based on individualized assessments, for passengers with disabilities who are unable to wear or safely wear a mask due to their disabilities. It would be a violation of the ACAA and Part 382 for an airline to have an exemption for children under 2 on the basis that children that age cannot wear or safely wear a mask and not have an exemption for the limited number of individuals with disabilities who similarly cannot wear or safely wear a mask when there is no evidence that these individuals with disabilities would pose a greater heath risk to others.

JetBlue's mask policy that was in place at the time Mr. Andreadakis planned to travel failed to provide an exemption for passengers with disabilities who cannot wear or safely wear a mask due to their disabilities. As a result, JetBlue did not conduct an individualized assessment to determine whether Mr. Andreadakis could not wear or safely wear a mask due to his disability and whether a reasonable accommodation could be made that would permit Mr. Andreadakis to fly safely without a mask. Therefore, we find that JetBlue violated the ACAA and Part 382 in this instance.

Since the issuance of the notice, OACP has exercised its prosecutorial discretion and provided the airlines 45 days from the date of the Enforcement Notice to come into compliance with its obligation under the ACAA and Part 382 by amending their mask polices to provide reasonable accommodations to persons with disabilities who are unable to wear masks or to wear masks safely, so long as the airline demonstrates that it began the process of compliance as soon as this notice was issued. A copy of OACP's Enforcement Notice is available on the Department's website at:
https://www.transportation.gov/airconsumer/masks-notice-of-enforcement-policy. We note that since the time of this incident, JetBlue has informed OACP that it has amended its mask policy to comply with

the ACAA and Part 382.



**U.S. Department of Transportation**
Office of the Secretary
of Transportation

**GENERAL COUNSEL**

1200 New Jersey Ave., S.E.
Washington, DC 20590

November 22, 2021

Mr Kleanthis Andreadakis
5108 Hunters Meadow Pl
Henrico, VA 23231

Dear Mr Andreadakis:

This letter is in further reference to your disability complaint regarding Southwest Airlines. We were sorry to hear of the incident and appreciate the opportunity to advise you of the outcome of our investigation. Enclosed you will find an Investigation Summary Sheet that details the results of our investigation, which was based on the Air Carrier Access Act (ACAA), 49 U.S.C. Section 41705, and our implementing rule, 14 CFR Part 382.

In particular, the Investigation Summary Sheet identifies the applicable section of 14 CFR Part 382, provides a brief summary of that section and explains this office's view on whether the carrier has violated the ACAA and 14 CFR Part 382. If your complaint raises more than one disability issue, an additional Investigation Summary Sheet has been attached to address each issue.

If we believe the complained of incident involves a violation, the Investigation Summary Sheet indicates the action that we plan to take. We will either pursue formal enforcement action or by copy of this letter notify the airline specified in your complaint of our determination and warn it that any similar incidents could lead to formal enforcement action. Generally, we will pursue enforcement action on the basis of a number of complaints from which we may infer a pattern or practice of discrimination. However, where one or a few complaints describe particularly egregious conduct on the part of a carrier and those complaints are supported by adequate evidence, we will pursue enforcement action as our resources permit. If we decide to seek enforcement action against the airline, your complaint will be among those considered in the context of this action, which may lead to the issuance of a cease and desist order and to the assessment of civil penalties. In the event that this enforcement action leads to litigation, it is possible that we may need sworn statements or witnesses for a hearing. We will advise you if, in fact, we need your further help.

For your information, in an enforcement case, the U.S. Department of Transportation is limited to issuing cease and desist orders and assessing civil penalties not to exceed $34,174 per violation. Such action can only be accomplished through settlements or formal hearings before administrative law judges. We cannot order compensation for aggrieved parties. To obtain a personal monetary award of damages, a complainant would have to file a private legal action that may be based on private contract rights or on civil rights statutes that provide for a private right of action.

If we have insufficient evidence or it appears that the airline specified in your complaint has not violated the ACAA, we will not pursue enforcement action. Notwithstanding our decision not to pursue enforcement action, however, private legal action may be pursued in the courts based on private contract rights or on civil rights statutes that provide for a private right of action and, in such a proceeding, monetary damages may be sought.

Regardless of whether the airline has been determined to have violated the ACAA, we have entered your complaint in our computerized industry monitoring system, and the carrier's ACAA complaint totals in our monthly *Air Travel Consumer Report* reflect your complaint. Our monthly report is made available to the

aviation industry, the news media and the general public so that both consumers and air travel companies can compare the overall complaint records of individual airlines, as well as the number of disability complaints filed against particular carriers. This system also serves as a basis for rulemaking, legislation, and research.

Moreover, we also routinely monitor our complaint records to determine the extent to which carriers are in compliance with the ACAA and to track trends or spot areas of concern which we feel may warrant further action. This ongoing process also enables us to ensure prompt corrective action whenever we determine that an airline's policies or procedures are not in compliance with our ACAA regulations. Your complaint will be among those considered in the context of this overall process.

I hope this further information is useful. Thank you again for taking the time to contact us.

          Sincerely,

          Livaughn Chapman, Jr.
          Deputy Assistant General Counsel
           for Aviation Consumer Protection

          /s/

By: Stuart Hindman
    Senior Trial Attorney

Enclosures
cc: Southwest Airlines



**U.S. Department of Transportation**
Office of the Secretary of Transportation

GENERAL COUNSEL

1200 New Jersey Ave., S.E.
Washington, DC 20590

# INVESTIGATION SUMMARY SHEET

| | |
|---|---|
| **Case Number:** | AT2020100041 |
| **Complainant Title:** | MR |
| **Name:** | KLEANTHIS ANDREADAKIS |
| **Address:** | 5108 HUNTERS MEADOW PL<br>HENRICO, VA 23231 |
| **Passenger(s):** | Mr. Kleanthis Andreadakis |
| **Airline:** | Southwest Airlines |
| **Travel Date(s):** | Not Applicable |
| **Flight Number(s):** | Not Applicable |
| **City Pair:** | Richmond to Tampa |
| **Location of Incident:** | On board flights |
| **Complaint/Issue:** | Failure to provide an accommodation to a passenger with a disability with respect to the carrier's mask policy. |
| **Applicable Section of 14 CFR Part 382:** | 382.19 |
| **Section Summary:** | (a) As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part.<br><br>(b) You must not refuse to provide transportation to a passenger with a disability because the person's disability results in appearance or involuntary behavior that may offend, annoy, or inconvenience crewmembers or other passengers.<br><br>(c) You may refuse to provide transportation to any passenger on the basis of safety, as provided in 49 U.S.C. 44902 or 14 CFR 121.533, or to any passenger whose carriage would violate FAA or TSA requirements or applicable requirements of a foreign government.<br><br>(1) You can determine that there is a disability-related safety basis for refusing to provide transportation to a passenger with a disability if you are able to demonstrate that the passenger poses a direct threat (see definition in §382.3). In determining whether an individual poses a direct threat, you must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain:<br><br>(i) The nature, duration, and severity of the risk;<br><br>(ii) The probability that the potential harm to the health and safety of others will actually occur; and<br><br>(iii) Whether reasonable modifications of policies, practices, or procedures will mitigate the risk.<br><br>(2) If you determine that the passenger does pose a direct threat, you |

must select the least restrictive response from the point of view of the passenger, consistent with protecting the health and safety of others. For example, you must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal.

(3) In exercising this authority, you must not act inconsistently with the provisions of this part.

(4) If your actions are inconsistent with any of the provisions of this part, you are subject to enforcement action under Subpart K of this part.

**Rule Violated?**   Yes

**Remarks:**

Mr. Andreadakis states that he has a disability that prevents him from wearing a mask. Mr. Andreadakis states that he was looking to travel to Tamoa and he reached out to Southwest Airlines (Southwest) for information regarding a mask exemption. Mr. Andreadakis was informed that anyone not wearing mask will not be allowed to travel on Southwest.

In the carrier's September 21, 2020, reply to Mr. Andreadakis, Southwest confirms Mr. Andreaadakis' allegation that it passenger who can not or refuse to wear a mask will not be allowed to travel on Southwest.

On February 5, 2021, the Department of Transportation's Office of Aviation Consumer Protection (OACP) issued a notice titled "Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear Masks While on Commercial Aircraft." The notice reminds U.S. and foreign air carriers of their legal obligation to accommodate the needs of passengers with disabilities when developing procedures to implement the Federal mandate on the use of masks to mitigate the public health risks associated with COVID-19. The notice makes clear that airline policies that expressly allow no exceptions to the mask requirement other than for children under the age of two violate the Air Carrier Access Act.

The Air Carrier Access Act and its implementing regulation, 14 CFR Part 382 (Part 382), require airlines to make reasonable accommodations, based on individualized assessments, for passengers with disabilities who are unable to wear or safely wear a mask due to their disabilities. It would be a violation of the ACAA and Part 382 for an airline to have an exemption for children under 2 on the basis that children that age cannot wear or safely wear a mask and not have an exemption for the limited number of individuals with disabilities who similarly cannot wear or safely wear a mask when there is no evidence that these individuals with disabilities would pose a greater heath risk to others.

Southwest's mask policy that was in place at the time Mr. Andreadakis planned to travel failed to provide an exemption for passengers with disabilities who cannot wear or safely wear a mask due to their disabilities. As a result, Southwest did not conduct an individualized assessment to determine whether Mr. Andreadakis could not wear or safely wear a mask due to his disability and whether a reasonable accommodation could be made that would permit Mr. Andreadakis to fly safely without a mask. Therefore, we find that Southwest violated the ACAA and Part 382 in this instance.

Since the issuance of the notice, OACP has exercised its prosecutorial discretion and provided the airlines 45 days from the date of the Enforcement Notice to come into compliance with its obligation under the ACAA and Part 382 by amending their mask polices to provide reasonable accommodations to persons with disabilities who are unable to wear masks or to wear masks safely, so long as the airline demonstrates that it began the process of compliance as soon as this notice was issued. A copy of OACP's Enforcement Notice is available on the Department's website at:
https://www.transportation.gov/airconsumer/masks-notice-of-enforcement-policy. We note that since the time of this incident, Southwest has informed OACP that it has amended its mask policy to comply with the ACAA and Part 382.