## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| LUCAS WALL,                    ) | |
|                                ) | |
|            Plaintiff,          ) | Case No. 6:21-cv-1008-PGB-DCI |
|                                ) | |
| v.                             ) | |
|                                ) | |
| SOUTHWEST AIRLINES, et. al.    ) | |
|                                ) | |
|            Defendants.         ) | |
| _____) | |

## ALASKA AIRLINES, INC.'S OPPOSITION TO MOTION FOR
## <u>PRELIMINARY INJUNCTION FILED BY PETER MENAGE</u>

Alaska Airlines, Inc. ("Alaska"), by and through undersigned counsel, respectfully opposes the Motion for Preliminary Injunction filed by Non-Party, Peter Menage ("Menage"), Doc. 157 ("Motion").  The Motion should be denied because: (1) Menage is not a party to this case (the "Litigation"); (2) the relief sought in the Motion is unrelated to any claim that has been asserted in the Litigation; (3) the Court lacks personal jurisdiction and venue over Menage's claims, which involve conduct or omissions within the State of Alaska, *i.e.* events that occurred on November 25, 2021 on an Alaska Airlines flight from Anchorage, Alaska to Deadhorse, Alaska (the "Flight"), Doc. 157, at 2-3, ¶ 1; and (4) as the Court already found in its December 8, 2021 Order (Doc. 153) denying

Menage's emergency motion for temporary restraining order (Doc. 150), Alaska did not bar Menage from its flights because of any litigation he attempted to join, but rather because of his refusal to abide by Alaska requests that he comply with the law and wear a mask onboard the aircraft, as well as his aggressive, profanity-laced, and abusive conduct in disregard of the instructions of Alaska crewmembers directing Menage to wear his mask.[1]

## FACTUAL BACKGROUND

On November 25, 2021, Menage was a passenger aboard Alaska Flight No. AS55 from Anchorage, Alaska to Deadhorse, Alaska. During the flight, an Alaska flight attendant noticed that he had removed his mask and placed it on the seat while eating and drinking. *See* Declaration of David M. Beyer, attached hereto as Exhibit 1 ("Beyer Decl."), ¶7. In so doing, Menage was violating Alaska's mask policy, which requires passengers to wear their masks between bites and sips while eating and drinking. *See* Beyer Decl., ¶7.

---

[1] Although Menage claims to be proceeding *pro se*, his Motion reads as if it were drafted by another person who has been acting on behalf of Menage and other would-be plaintiffs in this matter, *i.e.* Plaintiff, Lucas Wall ("Wall"). Alaska is concerned that Wall, a non-lawyer, improperly drafted some or all of the Motion and its accompanying Declarations and believes that discerning whether Wall is the actual author of the filings is a legitimate ground of inquiry by the Court, particularly to the extent that Wall may be advising Menage and others on relief they should seek, given Wall's potential conflict of interest and the risk that, because he is not trained as a lawyer, Wall may expose them to adverse legal consequences.

.

The flight attendant instructed Menage to utilize his mask and, under federal law and Alaska's Contract of Carriage, Menage was obligated to comply with crewmember instructions. *See* Beyer Decl., ¶7; 14 C.F.R. §121.580 (prohibiting passengers from interfering with crewmember's performance of duties); Rule 11(J) of Alaska's Contract of Carriage)(attached as Exhibit A to Beyer Decl.)(authorizing Alaska in its "sole judgment" to refuse to transport or remove from an aircraft "[p]assengers who refuse to obey Alaska's rules or policies" or "who refuse to obey any federal regulations . . . or instructions given by crew members . . . "). Rather than do so, Menage responded by, among other things, calling the flight attendant a "f---ing Nazi" and directing a Nazi salute in her direction. Beyer Decl., ¶8. During subsequent interactions with Alaska flight attendants, Menage continued to act in abusive and intimidating fashion. *See* Beyer Decl., ¶¶9-11. When warned that his conduct could threaten his employment, Menage responded that he didn't care about his "f---ing job." *See* Beyer Decl., ¶9. After deplaning, Menage hurled profanities at an Alaska customer service agent and an officer working at the Deadhorse Airport. *See* Beyer Decl., ¶13. Menage's conduct and refusal to comply with Alaska's mask requirements resulted in Menage suffering a 30-day ban from Alaska flights and a separate 30-day ban imposed by the Deadhorse Airport authorities. *See* Beyer

Decl., ¶¶14-15. *See also* Rule 11(J)(3) of Alaska's Contract of Carriage)(authorizing Alaska in its "sole judgment" to refuse to transport or remove from an aircraft "[p]assengers whose conduct is or has been known to be disorderly, abusive, offensive, threatening, intimidating, violent, belligerent and/or irrational so as to be a hazard or potential hazard to Alaska employees . . . "); 49 U.S.C. §46504 ("An individual on an aircraft  . . . who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties,  . . . shall be fined under title 18, imprisoned for not more than 20 years, or both").

Menage, failing to disclose the extent of his misconduct or otherwise seeking to minimize it (e.g., admitting in his Declaration that he saluted the flight attendant without revealing that he utilized a Nazi salute), applied to this Court for a temporary restraining order, asking it to save him from his own misconduct by entering an emergency injunction against Alaska (Doc. 150). *See also* Menage Declaration, ¶¶15-18. The Court denied Menage's request (Doc. 153). Menage now again asks the Court to enter immediate injunctive relief against Alaska. The facts and the law do not support Menage's request and, indeed, the law does not even support Menage making the request. Accordingly, this Court should summarily reject Menage's Motion.

4

## ARGUMENT

### I. THE COURT SHOULD DENY THE MOTION BECAUSE MENAGE IS NOT A PARTY TO THIS LITIGATION

The Motion should be denied because Menage is not a party in this case and, therefore, may not seek relief from this Court. This Court already has determined that Menage is not a party in this matter. *See* Order, dated December 8, 2021, denying Menage's December 6, 2021 Emergency Motion for Temporary Restraining Order ("TRO Motion"), Doc. 153 at 1, n. 1 ("[S]etting aside the issue of standing, Peter Menage has not yet been properly joined in the case as a named plaintiff"). Because he is not a party in the Litigation, Menage is not entitled to participate in it as a party by filing a motion seeking injunctive relief. On that basis alone, this Court should deny Menage's Motion, as he is not properly before this Court.

### II. THE COURT SHOULD DENY THE MOTION BECAUSE IT RAISES ISSUES UNRELATED TO THOSE THAT ARE THE BASIS FOR THE LITIGATION

Even if Menage was a party to the Litigation, the Motion for Preliminary Injunction should be denied because the Motion does not relate to any of the relief sought in this Litigation. It is well-settled that a motion for preliminary

injunction must be tethered to a complaint that is before the court. *See, e.g., Hall v. Sawyer*, No. 2:20-cv-7-JLB-NPM, 2021 WL 4269573, *2 (M.D. Fla. Sept. 3, 2021) (motion "for injunctive relief is legally deficient because the new allegations . . . are unrelated to the . . . claims alleged in" the second amended complaint); *Palma v. MetroPCS Wireless, Inc.*, No. 8:13-cv-698-T-33MAP, 2013 WL 5179989, *2 (M.D. Fla. Sept. 13, 2013) (no preliminary injunction where "Plaintiffs allege retaliatory conduct on the part of Defendant, but their complaint does not include a retaliation count . . ."); *Santarsiero v. Martin*, No. 2:20-cv-00435-FTM-29NPM, 2020 WL 7419665, *3 (M.D. Fla. Nov. 17, 2020)("The Court finds that plaintiffs' Emergency Motion is not related to any of the allegedly wrongful conduct set forth in the ten-count Amended Complaint").

Menage's Motion involves events that occurred on November 25, 2021 – months after the commencement of the Litigation and months after the filing of the Amended Complaint, which the Magistrate has recommended that this Court strike in any event. None of the matters ever raised in any pleading in the Litigation concerns or relates to Menage's claim that Alaska has discriminated against him due to his involvement in the Litigation. On that basis alone his Motion for Preliminary Injunction should be denied.

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER ALASKA

The Motion also must be denied because Menage has failed to allege the existence of personal jurisdiction over Alaska in this forum under any of the provisions of the Florida Long-Arm Statute. FLA. STAT. § 48.193 ("Long-Arm Statute"). Menage seeks relief with regard to an Alaska Airlines flight from Anchorage, Alaska to Deadhorse, Alaska. Doc. 157, at 3 ¶ 2. As set forth below, conduct or omissions of Alaska Airlines with regard to flights that take off and land within Alaska – and have zero connection to Florida – fail to provide the basis for the assertion of personal jurisdiction over Alaska under the Long-Arm Statute.[2]

---

[2] Aside from being substantively defective with regard to personal jurisdiction over Alaska, the Motion is facially defective because it fails to **even allege** any basis for personal jurisdiction over Alaska under the Long-Arm Statute. *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989)("Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute . . ."); *Teva Pharmaceutical Industries v. Ruiz*, 181 So. 3d 513, 516-17 (Fla. 2d DCA 2015)("In ruling on a motion to dismiss for lack of jurisdiction, the complaint must first be examined to determine whether it alleges a basis for jurisdiction under [the Long-Arm Statute]  . . . The plaintiff may either track the language of section 48.193 without pleading supporting facts, or the plaintiff may allege 'specific facts that demonstrate that the defendant's actions fit within one or more subsections of section 48.193'" (citation omitted)). Here the Motion neither tracks the language of any provision of the Long-Arm Statute nor alleges any specific facts that would support the assertion of personal jurisdiction over Alaska under the Long-Arm Statute.

## A.    The Court Lacks Specific Personal Jurisdiction over Alaska Under the Long-Arm Statute.

The relevant provision of the Long-Arm Statute with regard to Menage's claims is Section 48.193(1)(a)(2) which provides that a nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from ... [c]omitting a tortious act within [Florida]." *See also* FLA. STAT. §48.181. "[U]nder Florida law, a nonresident defendant commits 'a tortious act within Florida' when he commits an act outside the state that causes injury within Florida." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013)(emphasis and quotation omitted). Given that Menage's allegations have no connection to the State of Florida, specific personal jurisdiction over Alaska under the Long-Arm Statute indisputably does not exist here. Menage challenges acts or omissions of Alaska which occurred entirely within the State of Alaska (or at best, Alaska's headquarters in Seattle) and which Menage does not and cannot allege caused any injury to him in the State of Florida. Thus, there is no basis for specific personal jurisdiction over Alaska in Florida under the Long-Arm Statute.

## B.    **This Court Lacks General Personal Jurisdiction Over Alaska.**

There also is no basis for exercising general personal jurisdiction over Alaska in this Court or any other court in Florida. The general jurisdiction provision of the Long-Arm Statute is set forth in Section 48.193(2). It provides

that "[a] defendant who is engaged in substantial and not isolated activity within this state . . . is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." The U.S. Supreme Court has held that regardless of the language of the specific state long arm statute, under the Due Process Clause of the Fourteenth Amendment, to assert general personal jurisdiction over a non-resident corporation, it is insufficient to demonstrate that the non-resident corporation does "continuous and systematic" business in the forum state. Instead, the non-resident corporation's "'affiliations with the [forum] [s]tate [must be] so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate.'" *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)(citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2851 (2011). *Accord BNSF Railway Co. v. Tyrrell*, 581 U.S. __, 137 S. Ct. 1549, 1559 (2017)("in-state business, we clarified in *Daimler* and *Goodyear [Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)], does not suffice to permit the assertion of general jurisdiction" in a forum where the defendant is not incorporated and in which it does not maintain its principal place of business); *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018)(holding that having a registered agent to do business in Florida is insufficient for the establishment of general personal jurisdiction and noting that "[o]utside of [being incorporated in Florida or having its principal place of business in

Florida], a defendant's operations will 'be so substantial and of such a nature as to render the corporation at home in [Florida]' only in an 'exceptional case'" (*quoting BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)), *cert. denied sub nom. Waite v. Union Carbide Corp.*, 139 S. Ct. 1384 (2019)). *See also Wang v. Korean Airlines Co., Ltd.*, No. 2:20-cv-00409-JAD-VCF, 2021 WL 76954 (D. Nev. Jan. 8, 2021)(holding that there was no general personal jurisdiction over an airline not incorporated in or maintaining its principal place of business in the forum state, notwithstanding that the airline operated flights to and from the forum state and had permanent employees in the forum state); *Tyrell, supra*, 137 S. Ct. at 1559 (general personal jurisdiction did not exist over a railroad despite the fact that it had "over 2,000 miles of railroad track and more than 2,000 employees" in the state).

Alaska is not incorporated in Florida and does not maintain its principal place of business in Florida. Rather, it is incorporated in Alaska and maintains its principal place of business – its headquarters – in Seattle, Washington. *See* Beyer Decl., ¶2. Alaska flies to more than 115 destinations in the United States, Mexico, and Canada, only four of which (Fort Lauderdale, Fort Myers, Orlando, and Tampa) are in Florida. *See* Beyer Decl., ¶3. Of Alaska's more than 1200 daily flights, only 34 of them are to or from Florida. *See* Beyer Decl., ¶3. Of Alaska's more than 16,000 employees, no more than 35 of them are employed in Florida.

*See* Beyer Decl., ¶3. Thus, Alaska's business activities in Florida do not come close to satisfying the standard for assertion of general personal jurisdiction over it in Florida. Accordingly, in addition to the Court's lack of specific personal jurisdiction over Alaska under the Long-Arm Statute, this Court also may not exercise general personal jurisdiction over Alaska under the Long-Arm Statute.

### C.     Venue Over Menage's Claims Is Improper In This Court.

This forum is not a proper venue for Menage's claims against Alaska. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." In considering whether venue is proper, "[o]nly the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1371 (11th Cir. 2003)(quotations omitted). Although a plaintiff is not required to select the venue with "the *most* substantial nexus to the dispute," it must choose a venue where a substantial part of the events giving rise to the claim occurred. *Morgan v. North Miss. Med. Ctr., Inc.,* 403 F. Supp. 2d 1115, 1122 (S.D. Ala.2005) (citations omitted). Section 1391 requires courts to focus on the activities of defendants.  *See Jenkins Brick Co., supra,* 321 F.3d at 1371-72 (recognizing that venue statute "protects defendants"). Menage has not alleged and cannot allege any facts demonstrating that any of

the relevant acts or omissions occurred within Florida, much less that a "substantial part of the events or omissions giving rise to the claim" of Menage against Alaska arose in Florida. Accordingly, venue does not properly lie in this forum with regard to Menage's claims.

## IV.  THERE IS NO MERIT TO MENAGE'S CLAIM THAT HE IS ENTITLED TO A PRELIMINARY INJUNCTION.

### A.  Applicable Standard

Aside from the numerous procedural and jurisdictional deficiencies of the Motion, the Motion should be denied because, as the Court has already found, Menage cannot satisfy the requirements for the issuance of a preliminary injunction.

In order for Menage to be entitled to a preliminary injunction, he must show: (1) a substantial likelihood of success on the merits; (2) the order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm that the order would cause to the non-movant; and (4) the order is not adverse to the public interest. *DeYoung v. Owens*, 646 F.3d 1319, 1324 (11th Cir. 2011); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Specifically, within the Eleventh Circuit, districts courts apply the standard set forth in *Winter*. *See Madera v. Detzner*, Case No. 1:18-cv-152-MW/GRJ, 325 F. Supp. 3d 1269, 1278 (N.D. Fla. Sept. 10, 2018)(citing *Winter* as the governing standard for a

preliminary injunction). A preliminary injunction is "not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

**B.    Menage Does Not Demonstrate A Substantial Likelihood Of Success On The Merits.**

**1.    Alaska Properly Barred Menage From Alaska Flights Following His Refusal To Comply With The Mask Mandate And His Abusive Treatment Of Alaska Flight Attendants.**

As noted above, Menage fails to accurately describe the circumstances in which he refused to wear a mask and was banned from Alaska. Alaska did not bar Menage from its flights because of his attempt to join this Litigation, but rather because he refused to abide by Alaska's federally-mandated mask policy and because he engaged in profanity-laced and abusive conduct toward Alaska crewmembers who were merely directing Menage to comply with its mask policy.

In his Motion, Menage asserts that there is no federal law requiring that passengers wear masks. Doc. 157, at 18. This is not true. On January 21, 2021, President Biden issued an Executive Order explaining that public-health experts "have concluded that mask-wearing, physical distancing, appropriate ventilation, and timely testing can mitigate the risk of travelers spreading COVID-19." Exec. Order 13998, *Promoting COVID-19 Safety in Domestic and*

*International Travel*, 86 Fed. Reg. 7205 (Jan. 21, 2021). "Accordingly, to save lives and allow all Americans, including the millions of people employed by the transportation industry, to travel and work safely," the President called on all relevant government agencies to "immediately take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC guidelines" on public transportation systems. *Id.*

A few weeks later, the CDC issued the transportation mask order. CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021) (cited in Complaint at 1, n. 1). Generally, the transportation mask order requires persons to "wear masks over the mouth and nose when traveling on conveyances into and within the United States" and "at transportation hubs." *Id.* at 8026.

The CDC order also explains why mask-wearing is especially important on public transportation and in commercial air travel: "Traveling on multi-person conveyances increases a person's risk of getting and spreading COVID-19 by bringing persons in close contact with others, often for prolonged periods." *Id.*

On January 27, 2021, the Acting Secretary of Homeland Security issued a Determination of a National Emergency that involved his emergency powers and directed the TSA to support "the CDC in the enforcement of any orders or other

14

requirements necessary to . . . mitigate the spread of COVID-19 through the transportation system." The TSA then issued a series of directives to implement and support enforcement of the CDC's mask order.[3]

In sum, there was a federal mask mandate in place at the time of the subject incident, which Alaska was required to enforce.

### 2. Menage Does Not Allege Actionable Discriminatory Conduct.

Menage does not raise any new substantive arguments why Alaska's enforcement of its mask mandate against him constitutes discriminatory conduct that were not already raised in his TRO Motion and rejected by this Court in its Order denying the TRO Motion. For all of the reasons set forth by the Court at pp. 5-6 of the Order denying the TRO Motion (Doc. 153), Menage cannot establish that Alaska retaliated against him for seeking to file claims against him in this Litigation or that it discriminated against him based on his alleged disability.

Menage claims that Alaska's enforcement of federal law requiring that passengers wear masks, including the CDC's transportation mask order,

---

[3] In fact, on December 2, 2021, about a week after the subject incident the federal mask mandate was extended until March 18, 2022.
https://www.transit.dot.gov/TransitMaskUp;
https://www.tsa.gov/news/press/statements/2021/12/02/statement-regarding-face-mask-extension

constitutes a violation of the Rehabilitation Act or the Americans with Disabilities Act. To deny the Motion, the Court does not need to address Defendant's contention that these federal laws do not apply to the conduct challenged here. Even assuming, *arguendo*, that these laws did apply, the fact remains that the federal Equal Employment Opportunity Commission, which is charged with enforcement of those statutes, stated as recently as December 14, 2021 that, "The EEO laws, including the ADA and Rehabilitation Act . . . **do not interfere with or prevent employers from following the guidelines and suggestions made by the CDC or state/local public health authorities about steps employers should take regarding COVID-19**." (emphasis added). https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ("What you Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws", Introduction, Technical Assistance Questions and Answers – Updated on December 14, 2021).

Accordingly, Menage continues to fail to demonstrate a substantial likelihood of success on the merits.

### C.   Menage Will Not Be Irreparably Harmed By A Denial Of The Motion.

Menage also has failed to prove that he would be irreparably harmed if his Motion is denied. As the Court previously found, if Menage continues to refuse

16

to wear a mask in violation of the federal mask mandate, he can buy, lease, rent or borrow an automobile to drive to his work location. "[W]hile it may not be the most convenient method of transportation, it is possible for Menage to drive from Deadhorse to Anchorage. . . . (Doc. 153, at 7). Furthermore, as the Court found, "it was [Menage's] own failure to comply with federal regulations and properly wear the mask while on the flight that created the possible injury" (Doc. 153, at 7). In addition, the Court correctly found that Menage's assertion that he "will probably lose his job" if he is unable to fly on Alaska Airlines between Deadhorse and Anchorage, is fatally speculative. *Id*. ("Menage has failed to establish that the possibility of losing job is nothing more than speculation based on his inability to find suitable transportation to and from the job site.").

### D. Any Alleged Harm To Menage is Outweighed By The Harm To Alaska If Forced To Allow Menage To Fly On Alaska.

Menage has failed to demonstrate that the injury he claims he will suffer without a preliminary injunction outweighs the harm that such an injunction would cause to Alaska if the carrier is ordered to allow Menage to fly onboard Alaska aircraft.   As stated above, Menage was highly abusive to Alaska's flight attendants when they asked him to wear his mask while onboard the Flight. There is a genuine concern that Alaska and its employees and passengers will experience intimidation or even physical harm if Menage is permitted to once

again abuse flight attendants merely because they ask him to comply with the federal mask mandate and Alaska's masking policy – or that he comply with any other rules with which he takes issue. Moreover, there is potential harm to the other passengers and the Alaska crew if Menage once again refuses to wear his mask or otherwise disregards crewmember instructions during an Alaska flight.

> **E.    The Public Interest Favors Enforcement Of The Mask Mandate And Of Laws Requiring Compliance With Crewmember Instructions.**

As the Court previously found, given the serious health threats created by the COVID-19 pandemic – as exacerbated by the continuation of the Delta variant and the quickly-spreading Omicron variant - the public interest clearly favors allowing Alaska to continue to enforce the federal mask mandate onboard its aircraft. Moreover, the public interest and the safety of air travel are served by rulings that emphasize the obligation of passengers to comply with crewmember instructions.

## CONCLUSION

For all of the reasons set forth above, and in the Court's prior Order denying Menage's TRO Motion, the Defendant, Alaska Airlines, respectfully requests that the Court deny the Motion for Preliminary Injunction (Doc. 157) filed by Non-Party, Peter Menage, and that it award the Defendant such further relief as this Court deems just and proper.

Date: December 27, 2021                          Respectfully submitted,


STINSON LLP                              TORRICELLA LAW PLLC
1775 Pennsylvania Avenue, N.W.           Town Center One, Suite 2217
Suite 800                                8950 Southwest 74th Court
Washington, D.C. 20006                   Miami, Florida 33156
Telephone: (202) 728-3005                Telephone: (305) 677-7644


By: /s Roy Goldberg                      By: /s Maurice J. Baumgarten
M. Roy Goldberg                          Roberto A. Torricella, Jr.
Roy.goldberg@stinson.com                 Florida Bar No. 907472
Admitted *Pro Hac Vice*                  Robert@TorricellaLaw.com
                                         Maurice J. Baumgarten
                                         Florida Bar No. 25324
                                         Maurice@TorricellaLaw.com


Counsel for Alaska Airlines, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 27, 2021, a true and correct copy of the foregoing ALASKA AIRLINES, INC.'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION was filed using CM-ECF system, and that I caused a true and accurate copy of the foregoing to be sent via First Class U.S. mail to the following persons, by placing it in the post on December 28, 2021:

Aaron Abadi
Apt. 140
82 Nassau St.
New York, NY 10038

Anthony Eades
19499 Cedar Gate Dr.
Warsaw, MO 65355

Connie Rarrick
36 Lafayette St.
Saco, ME 04072

Eric L Cila
8807 Avondale Ct
Louisville, KY 40299

Jared Rarrick
36 Lafayette St.
Saco, ME 04072

Jennifer Rarrick
36 Lafayette St.
Saco, ME 04072

Kleanthis Andreadakis
5108 Hunters Meadow Pl.
Henrico, VA 23231

Leonardo McDonnell
P.O. Box 1113
Melbourne, FL 32902

Peter Menage
3255 N. Mars Ave.
Palmer, AK 99645

Shannon Greer Cila
8807 Avondale Ct
Louisville, KY 40299

Uri Marcus
P.O. Box 126
Ojai, CA 93024

Yvonne Marcus
P.O. Box 126
Ojai, CA 93024

/s/ Roy Goldberg
Roy Goldberg