UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUCAS WALL,                           )
                                      )
        Plaintiff,                    )      Case No. 6:21-cv-1008-PGB-GJK
                                      )
v.                                    )
                                      )
SOUTHWEST AIRLINES, et. al.           )
                                      )
        Defendants.                   )
_____)

## DECLARATION OF DAVID M. BEYER

1.      My name is David M. Beyer. I am over the age of majority.

2.      I am the Director of Risk Management for the Alaska Air

Group, Inc. companies, including Alaska Airlines, and have held that

position since January 2010. In that capacity, I oversee claims and

litigation matters involving Alaska Airlines, including the above-styled

litigation ("Litigation").

3.      Alaska Airlines is an Alaska corporation with its principal

place of business in Seattle, Washington. Alaska flies to more than 115

destinations in the United States, Mexico, and Canada, only four of which

(Fort Lauderdale, Fort Myers, Orlando, and Tampa) are in Florida. Of

Alaska's more than 1200 daily flights, only 34 of them are to or from

Florida. Of Alaska's more than 16,000 employees, no more than 35 of them are employed in Florida.

4.    The events described in this Declaration occurred during air transportation that commenced and concluded within the State of Alaska.

5.    This Declaration is based upon corporate records of Alaska Airlines, including incident reports prepared by company personnel directly involved in the events at issue in the ordinary course of performing their job duties pursuant to corporate legal policy. The company personnel prepared their reports within 24 hours of the recorded events. The facts set forth in Paragraph Nos. 6 through 16 are developed from those records and true and accurate versions of the narratives of their reports are included at the conclusion of this Declaration.

6.    On November 25, 2021, Peter Menage ("Menage") was a passenger aboard Alaska Airlines, Flight No. 55 ("AS55") from Anchorage International Airport (ANC) in Anchorage, Alaska to Deadhorse Airport (SCC) in Deadhorse, Alaska. He was seated in Seat 23A.

7.    During the flight, and while collecting trash in the main cabin, the "A" flight attendant ("A/FA") noticed that the passenger seated in Seat 23A ("Passenger") was not wearing his mask between bites and sips of food and drink and, instead, his mask was on the seat next to him. Accordingly, the A/FA reminded the Passenger that it was necessary for him to have his mask on between bites and sips of food or drink.

8.    The Passenger became defiant and aggressive, utilizing abusive language. He referred to the A/FA as a "f---ing Nazi" and directed a Nazi salute at the A/FA. The A/FA felt intimidated and threatened and immediately reported the events to the "B" flight attendant ("B/FA") and the "C" flight attendant ("C/FA").

9.    Accompanied by the C/FA, the A/FA returned to the Passenger to attempt to de-escalate the situation. The A/FA explained the Alaska Airlines mask policy and sought the Passenger's compliance with that policy. She explained the consequences of non-compliance and mentioned that, if the Passenger was working in Prudhoe Bay, he risked losing flight benefits by failing to comply with that policy. The Passenger repeatedly utilized profanity during the exchange and at one point exclaimed that he did not care about his "f---ing job." The A/FA advised

the Passenger that she was required to give him a yellow card and that authorities would be meeting the flight. She explained that she did not wish for him to lose his job and simply wanted him to understand and comply.

10.   During certain portions of this interaction, the Passenger pointed his cellular telephone in the direction of the A/FA, presumably recording the interaction and shining a light directly into the face of the A/FA, causing her to raise her hand to shield her eyes.

11.   The A/FA returned to the front of the aircraft and the C/FA asked the Passenger to discontinue cursing and asked him to keep his mask on. He responded that he was "allowed to f---ing eat." The C/FA agreed, noting that he needed to wear his mask while he was not actively eating or drinking. Due to the aggressiveness of the Passenger's body language, the C/FA felt unsafe and joined the other flight attendants at the front of the aircraft.

12.   The flight attendants agreed that, based on the Passenger's aggressive behavior and non-compliance, issuance of a yellow card was appropriate and notified the flight crew, which called for authorities to

meet the aircraft on arrival. The A/FA provided the yellow card to the Passenger, who threw the card onto the floor of the aircraft.

13.   After arrival, the Passenger deplaned and was not wearing a mask. An Alaska Airlines Customer Service Agent ("CSA") who met the flight notified the Passenger that federal law required him to wear a mask in the airport and on the aircraft, to which the Passenger responded: "I don't give a f—k." The CSA asked whether the Passenger knew the significance of the yellow card, to which he again responded "I don't give a f—k."

14.   The CSA advised the Passenger that he was banned from flying Alaska Airlines for a period of 30 days and that his employer would be notified of the situation. The CSA also explained that corporate security for Alaska Airlines would determine whether there would be any further travel restrictions. A police officer that also met the flight notified the Passenger that he was banned from the airport for a period of 30 days.

15.   Alaska Airlines' Corporate Security Department issued a written notice of a 30-day ban from Alaska Airlines travel delivered to Menage via email on November 25, 2021

16.   On December 1, 2021, after internal evaluation of the incident and in accordance with corporate policy, Alaska Airlines imposed a permanent ban on Menage.

17.   The determinations made by Alaska Airlines in connection with Menage were not related to the claims he has attempted to raise in the Litigation and, instead, were based upon the events and conduct described in this Declaration.

18.   A true and accurate copy of the Alaska Airlines Contract of Carriage is attached to this Declaration as Exhibit A.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

DAVID M. BEYER

The text of the narrative provided by the A/FA is as follows, with typographical errors included:

While picking up trash in the main cabin, I reminded passenger 23A that he needed to have his mask on between sips & Snacks. His mask was on the seat next to him. He responded by using abusive language became very defiant & aggressive. He called me a fucking Nazi aggressively raised his arm out towards me using the body language representing Heil hitler. I felt immediately intimidated and threatened by his behavior. I proceeded to the aft galley to inform other FA's. Together we made an attempt to defuse the situation By asking for compliance again & explain the results of his actions. We told him at that time that if he was working in Prudhoe bay he could lose his flight benefits by failing to comply. I knelt down while speaking to him to avoid drawing the attention of other passengers. I explained that at this point I was required to give him a yellow card and that authorities would meet the flight we did not want to jeopardize his job and wanted to him to understand & comply. He leaned towards me in an intimidating gesture, using the F word over and over. The light from his phone was shining in my eyes I raise my hand up to block the light, informed him that his

behavior was not appropriate, Realizing that he was video taping us I Immediately stood up and removed myself from the situation to avoid being verbally assaulted further. All FA's met in fwd galley, we all felt intimidated & threatened. We inform the pilots who called for law-enforcement to meet the flight. There was an officer in three C Who stayed on board until he deplaned. Passenger Ménage proceeded to remove his mask use profanity and was aggressive & defiant with the agent an officer meeting the flight as well. By I him The agent informed me and the captain that he had been banned from Alaska airlines and the airport for 30 days due to the way he was behaving while on the jetway

The text of the narrative provided by the C/FA is as follows, with typographical errors included:

A f/a came to the aft galley, informed us (B & C f/a) passenger seated at 23A was in non compliance of the mask policy. She informed us, when she asked him to put his mask on he called her "a fucking Nazi" and proceeded to make the 'heil Hitler' salute. I accompanied the A f/a to the passenger to assist with de-escalating the situation. As soon as we approached the passenger he pointed his phone towards us and began recording. The light was shinning in the A f/a eyes she put her hand up to block the light and told him that was inappropriate. She proceeded to explain the mask compliance policy, non compliance of mask policy and the yellow card and its repercussions, including possible loss of employment from his actions (most passengers traveling to SCC are traveling there for work) he responded that he "didn't fucking care about his job". He continued to use foul language. I told him to stop cursing at us. The A f/a returned to the front of the a/c. I asked him to keep his mask on, he told me he " was allowed to fucking eat. I affirmed that was true but he needed to wear the mask while not actively doing so. His body language was very aggressive. I decided it was safest for me to exit the

situation. I went to the forward galley where the B f/a joined us. We agreed, based on his non compliance and aggressive behavior he should be given a yellow card. The A f/a informed and discussed the situation with the f/d. The A f/a issued the yellow card to Peter Ménage, he threw the yellow card on the floor.  Law enforcement meet the a/c upon arrival. The two of us in the back monitored the passenger while deplaning as we were concerned he may escalate his behavior.

The text of the narrative provided by the CSA is as follows, with typographical errors included:

Passenger Peter Ménage inbound on AS55 was not following mask mandate on aircraft. FA issued yellow card. Pilot called to have aircraft met by police. When Passenger deplaned he was not wearing mask. I advised it is still federal mandate to wear mask in airport and on aircraft. He said, "I don't give a F&@#". I asked him if he knew what the significance of a yellow card was. Again he didn't give F. I advised he is now banned for 30days from flying with us. Also advised his employer, Worley, would be informed of situation. Police officer also banned passenger from airport for thirty days. I advised passenger corporate security would determine further travel restrictions.

# EXHIBIT
## "A"

# Alaska Airlines, Inc. Contract of Carriage

## Revised September 10, 2021

Domestic Carriage and/or International Carriage of Passengers and Baggage provided by Alaska Airlines, Inc. ("Alaska"), as well as by other Carriers operating flights on behalf of Alaska under a capacity purchase or other agreement, including, but not limited to, our regional partners Horizon Air Industries, Inc. ("Horizon"), and SkyWest Airlines, Inc. ("SkyWest"), are subject to the terms and conditions of this Contract of Carriage, in addition to any terms and conditions printed on or in any Ticket or e-Ticket receipt. In addition, Alaska may sell tickets operated by one or more of our Codeshare Partners, and such tickets would also be subject to this Contract of Carriage except as stated herein. By purchasing a Ticket or accepting Domestic Carriage or International Carriage on Alaska and/or Alaska's regional partners or Codeshare Partners, the Passenger agrees to be bound by all of the terms and conditions of this Contract of Carriage, and no covenants at law or in equity shall be implied or incorporated. This Contract of Carriage is subject to applicable laws, regulations and rules imposed by U.S. and foreign governmental agencies. In the event of a conflict between the terms of this Contract of Carriage and such applicable laws, regulations or rules, the latter shall apply

# Rule 1. Definitions

Ver esta regla en español

As used in this Contract of Carriage, the following terms, whether or not capitalized, shall have the meanings ascribed below:

**Adult** means a person who has reached his/her eighteenth birthday as of the date of commencement of travel.

**Assistive Device** means any piece of equipment that assists a Qualified Individual with a Disability to cope with the effects of his or her disability. Such devices are intended to assist a Qualified Individual with a Disability to hear, see, communicate, maneuver, or perform other functions of daily life, and may include medical devices and medications.

**Baggage** means all luggage and contents contained therein, such as articles, effects and other personal property of a ticketed Passenger as are reasonably necessary or appropriate for the wear, use, comfort or convenience of the Passenger in connection with the Passenger's trip. Unless otherwise specified, Baggage shall include both Checked Baggage and Unchecked Baggage, such as suitcases, garment bags, tote bags, packages, camera and electronic bags, computer and equipment cases, and briefcases and similar articles, whether carried by the Passenger in the cabin or carried in the aircraft cargo compartments. Coats and wraps, when carried by the Passenger in the Passenger cabin, will not be considered as Baggage.

**Baggage Check or Baggage Claim Tag** mean those portions of the Ticket that identify the Carriage of a Passenger's Checked Baggage and that are issued by the Carrier as a receipt for the Passenger's Checked Baggage.

**Baggage Tag** means a document issued by the Carrier solely for identification of Checked Baggage, the portion of which is attached by the Carrier to a particular article of Checked Baggage.

**Battery-Powered Mobility Aid** means an Assistive Device used by a Qualified Individual with a Disability, such as a wheelchair or scooter when it is used as a mobility device by a person with a mobility-related disability.

**Cabin-Seat Baggage** means Carry-On Baggage that due to its size and nature requires the purchase of a seat on board the aircraft to transport the piece of Baggage.

**Carriage** means transportation of Passengers and their Baggage by air or ground, either gratuitously or for payment, together with any related services provided by the Carrier in connection with such transportation.

**Carrier** means the Carrier (air or ground) issuing the Ticket and all Carriers that carry or undertake to carry the Passenger and/or his/her Baggage thereunder.

**Carry-On Bag or Carry-On Baggage** means Baggage, other than Checked Baggage, carried on board an aircraft by a ticketed Passenger, and is also known as Unchecked Baggage, including but not limited to roller bags, duffle bags, backpacks, and garment bags, as long as by its dimensions or nature does not diminish the comfort and safety of the aircraft passengers.

**Checked Baggage** means Baggage that a ticketed Passenger has requested be carried by the Carrier and for which the Carrier has issued a Baggage Claim Tag to the Passenger.

**Child** means a person who has reached his/her second birthday but not his/her 12th birthday as of the date of commencement of travel.

**Circle Trip** means any trip, the ultimate Destination of which is the point of Origin, but which includes a stop at at least one other point, and which is not made via the same Routing in both directions. No more than two (2) Stopovers may be made in the fare construction. Two (2) Stopovers means one (1) Stopover in addition to the stop permitted at the Outward Destination.

**Codeshare Partner** means a Carrier, other than Alaska or one of our regional partners, operating a flight on which Alaska has placed its airline designator code "AS," or whose airline designator code is displayed on flights operated by Alaska or by one of our regional partners.

**Connection** means a stop at an intermediate point on the route to be traveled where a change of planes is made and which does not fall within the definition of a Stopover.

**Consequential Damages** means damages which are the result of an act but are not direct or immediate.

**Contract of Carriage** means the terms and conditions contained in this document, as it may be amended from time to time by Alaska.

**Credit** means a Credit in a specified dollar amount valid for one (1) year from the date of issuance. A Credit must be used for travel booked and flown within one (1) year from date of issuance. Credits are non-transferable unless otherwise stated herein.

**Domestic Carriage or Domestic Air Transportation ("Domestic")** means transportation in which the place of departure, the place of Destination or Stopover, and the entire transportation is between points within the United States.

**DOT Hazardous Materials Regulations** means the hazardous materials regulations issued by the DOT's Pipeline and Hazardous Materials Safety Administration and its predecessor agencies in Title 49 of the Code of Federal Regulations, Parts 171 through 180 (49 C.F.R. Parts 171-180).

**Endorsement** means the transfer of authority required when a Passenger with an international Ticket wishes to rebook to a Carrier other than the Carrier shown on the Ticket.

**Force Majeure Event** means any event outside Carrier's control, which includes, but is not limited to, weather conditions and meteorological events, such as storms, rain, wind, fire, fog, flooding, earthquakes, haze, or volcanic eruption; acts of government or airport authorities (e.g., air traffic control delays, runway closures, airport construction); acts of God; pandemics, quarantines, U.S. military or airlift emergency or substantially expanded U.S. military airlift requirements, as determined by the U.S. government; grounding of a substantial number of aircraft as a result of activation of the U.S. Civil Reserve Air Fleet; strikes, work stoppages, slowdowns, lockouts or any other labor unrest or disputes involving or affecting Carrier's service; civil commotions, disturbances or potentially volatile conditions, riots, embargoes, wars or other hostilities, whether actual, threatened or reported; government regulation, demand or requirement; damage to aircraft caused by a third party; mechanical difficulties by entities other than Alaska; inability to obtain fuel, airport gates, labor or landing facilities for the flight in question; an emergency situation requiring care, protection or response to protect persons or property; or any event that is not reasonably foreseen, predicted or anticipated by Carrier.

**Government Transportation Request (GTR)** is a form used by the U.S. federal government for Ticket payment and travel authorization for Passengers traveling on official business for the U.S. federal government.

**IATA Intercarrier Agreement on Passenger Liability** means the agreement entered into by members of the International Air Transport Association ("IATA") on October 31, 1995, in order to take action to waive the limitation on recoverable compensatory damages in Article 22, Paragraph 1 of the Warsaw Convention as to claims for death, wounding or other bodily injury of a Passenger within the meaning of Article 17 of the Convention.

**Infant** means a person who has not reached his/her second birthday as of the date of commencement of travel.

**Interline or Interline Transportation** means Carriage on the air transportation services of more than one Carrier where Carriers agree to accept each other's Tickets and Baggage.

**International Carriage or International Air Transportation ("International")** means any Carriage other than Domestic Carriage; however, when the Warsaw Convention and/or Montreal Convention apply, the definitions of "International" stated therein shall prevail.

**Local Passengers** are those who are originating their travel or those who are on a Stopover and are continuing their travel.

**Maximum Outside Linear Dimensions** means the sum of the greatest outside length plus the greatest outside width plus the greatest outside height.

**Mileage Plan** means Alaska Airlines' frequent flyer program as described at www.alaskaair.com.

**Montreal Convention** means the Convention for the Unification of Certain Rules for International Carriage by Air, signed at Montreal, May 28, 1999.

**Most Significant Carrier ("MSC")** means the Carrier performing the most significant part of the service. The Canadian Transportation Agency has stipulated that only a single set of Baggage rules may apply to any given interline itinerary. The selecting Carrier is permitted to use the MSC to determine which Carrier's Baggage rules apply to an international Interline itinerary to or from Canada, while reinforcing the role of tariffs in the determination of which Carrier's rules apply.

**On-line Tariff Data Base** means the remotely accessible, on-line version of (1) the electronically filed tariff data submitted to the "official DOT tariff database," and (2) the DOT approvals, disapprovals and other actions required by DOT, maintained by the filer.

**Oversold Flight** means a flight where there are more Passengers holding valid confirmed reservations and Tickets that check-in for the flight within the prescribed check-in time than there are available seats.

**Participating Carrier(s)** includes both the selecting Carrier and other Carriers who are identified on the Passenger's Ticket as providing interline transportation to the Passenger.

**Passenger** means any person, except members of the crew working on the flight, carried or holding a Confirmed Reservation to be carried in an aircraft with the consent of the Carrier and who is bound by this Contract of Carriage.

**Qualified Individual with a Disability** means an individual with a disability who has a physical or mental impairment that, on a permanent or temporary basis, substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment as further defined in the U.S. Department of Transportation regulations in 14 C.F.R. Section 382.3 and who (1) as a Passenger (referred to as a "Passenger with a disability") (a) with respect to obtaining a Ticket for air transportation on a Carrier, offers, or makes a good faith attempt to offer, purchase or otherwise validly obtain a Ticket; (b) with respect to obtaining air transportation, or other services or accommodations required by the U.S. Department of Transportation regulations in 14 C.F.R. Part 382 (i) buys or otherwise validly obtains, or makes a good faith effort to obtain, a Ticket for air transportation on a Carrier and presents himself or herself at the airport for the purpose of traveling on the flight to which the Ticket pertains; and (ii) meets reasonable Contract of Carriage requirements applicable to all Passengers; or (2) with respect to accompanying or meeting a traveler, using ground transportation, using terminal facilities, or obtaining information about schedules, fares, reservations, or policies, takes those actions necessary to use facilities or services offered by the Carrier to the general public, with reasonable accommodations, as needed, provided by the Carrier.

**Schedule Change** means:

A. The cancellation of a scheduled flight where no Alaska flight of comparable routing is available within sixty (60) minutes of the original time of departure; or
B. A change in the scheduled departure time of an Alaska flight which exceeds sixty (60) minutes; or
C. A change in the routing of a scheduled Alaska flight which adds one (1) or more stops to the original itinerary; or
D. A change in the routing of an Alaska scheduled flight that results in a scheduled arrival time more than sixty (60) minutes later than the original scheduled arrival time; or
E. Any change in the arrival time of an Alaska flight that results in a misconnection to any flight shown in the same reservation and Ticket.

**Schedule Irregularity** means any of the following, unless due to a Force Majeure Event:

A. Delay in scheduled departure or arrival of flight resulting in a misconnection; or
B. Flight or service cancellation, omission of a scheduled stop, or any other delay or interruption exceeding 60 minutes of the scheduled operation of an Alaska flight; or
C. Substitution of aircraft type that provides a different class of service; or
D. Schedule Changes which require rerouting of the Passenger at departure time of the original flight.

**Segment** means that part of a journey from a Passenger's boarding point to a deplaning point. Each flight coupon represents a Segment of a trip.

**Selected Carrier** means the Carrier whose Baggage rules apply to the entire interline itinerary.

**Selecting Carrier** means the Carrier whose designator code is identified on the first flight Segment of the Passenger's Ticket at the beginning of an interline itinerary issued on a single Ticket whose origin or ultimate destination is in Canada.

**Service Animal** means a dog, regardless of breed or type, that is individually trained to do work or perform tasks for the benefit of a Qualified Individual With a Disability, including a visual, sensory, psychiatric, intellectual, or other mental disability. Animal species other than dogs, emotional support animals, comfort animals, companionship animals, and service animals in training are not Service Animals.

**Special Drawing Right** ("SDR") means a special unit of currency created by the International Monetary Fund ("IMF"), the value of which in U.S. dollars fluctuates and is recalculated each banking day. These values are known to most commercial banks and are provided daily by the IMF at http://www.imf.org/external/np/fin/data/rms_sdrv.aspx.

**Standby Passengers** means Passengers who will be enplaned on a flight subject to availability of space at departure time and only after all Passengers having a confirmed reservation for such flight and all Passengers without reservations but paying fares other than Adult standby fares, have been enplaned on such flight.

**Stopover** means a deliberate or intentional interruption of a journey by a Passenger, agreed to in advance by Alaska, scheduled to exceed four (4) hours at a point between the place of departure and the place of destination.

**Ticket** means the record of agreement, including electronic Tickets or "e-Tickets," for Passenger air transportation provided by Alaska under certain terms and conditions to the Passenger named on the Ticket and in accordance with applicable governing tariffs and regulations and this Contract of Carriage. An "e-Ticket" is the record of the Ticket agreement maintained and processed within Alaska's or other Carrier's electronic reservation system. A receipt is provided to the purchaser of the Ticket that contains an alpha-numeric reference number for retrieving the record within Alaska's or other Carrier's reservation system and summary of the Ticket information. Alaska or other Carrier may require the issuance of an e-Ticket, regardless of market, Carrier, form of payment, or customer type. The Ticket constitutes Passenger's evidence of their Contract of Carriage with Carrier.

**Transit Passengers** are those onboard a flight at an en route stop, or a connecting Passenger with a Stopover, to/from other scheduled flights.

**Unaccompanied Minor** means a Child/Minor of 5 to 17 years of age when traveling alone or not accompanied on the same flight and in the same compartment by a companion Passenger of at least 18 years of age or with a legal guardian or parent.

**Unchecked Baggage** means Baggage, other than Checked Baggage, carried on board an aircraft by a ticketed Passenger, and is also known as Carry-On Baggage.

**Warsaw Convention** means the Convention for the Unification of Certain Rules relating to International Carriage by Air, signed at Warsaw, October 12, 1929, or where applicable, that Convention, as amended, including without limitation, by the Protocol signed at The Hague, September 28, 1955.

# Rule 2. Standard Format of Electronic Rules for Tariff Filing Purposes

Ver esta regla en español

Rule number reserved for Airline Tariff Publishing Company ("ATPCO") filings.

# Rule 3. Application of Contract

Ver esta regla en español

A. The terms and conditions contained in this Contract of Carriage, and any terms and conditions printed on any Alaska Ticket, constitute the conditions of Carriage upon which Alaska agrees to provide Domestic Carriage and/or International Carriage and are expressly agreed to by the Passenger. This Contract of Carriage incorporates by reference all fare rules filed with the Airline Tariff Publishing Company. The terms and conditions contained in this Contract of Carriage shall govern all published routes and services provided by Alaska, as well as fares and charges published by Alaska. This Contract of Carriage also incorporates the tariffs filed by Alaska in accordance with domestic and foreign government regulations. Unless otherwise prohibited by law, this Contract of Carriage constitutes the entire agreement between Alaska and the Passenger.

B. This Contract of Carriage is subject to applicable laws, regulations, rules, and security directives imposed by governmental agencies, including, but not limited to, those imposed during or as a result of a national emergency, war, civil unrest or terrorist activities. In the event of a conflict between any of the terms and conditions contained herein and such government laws, regulations, rules, security directives and their corresponding effects on Alaska's operation, the latter shall prevail.

C. The terms and conditions set forth herein are applicable to transportation of Passengers and Baggage provided by Alaska. See Rule 16 regarding application of these terms and conditions to Codeshare Partner services.

D. International Carriage may be subject to rules relating to liability established by, and to all other provisions of, the Warsaw Convention and/or Montreal Convention. Any provisions of these rules that are inconsistent with any provision of the applicable Convention shall, to that extent, but only to that extent, be inapplicable to International Carriage, except where the rules have been adopted in accordance with the terms of the IATA (International Air Transport Association) Intercarrier Agreement of October 31, 1995. Liability Rules are set forth below in Rules 8, 15 and 19.

E. Except as otherwise provided within specific fare rules, transportation is subject to this Contract of Carriage, rules, fares and charges in effect on the date on which the Ticket is issued. Rules, fares and charges quoted for ticketing are only guaranteed at the time of ticketing, unless otherwise specified in the fare rules.

   1. Where the Ticket has been purchased and issued before the effective date of an increase in the applicable fare or charges, the increase will not be collected, provided there is no change in origin, destination, Stopover point(s), flight(s) or dates shown on the original Ticket. These provisions apply whether an increase results from a change in fare level, a change in conditions governing the fare, or a cancellation of the fare itself.

F. Alaska is responsible only for transportation of Passengers and Baggage provided by Alaska, its regional partners or its Codeshare Partners. With respect to Codeshare Partner flights, different rules may apply to certain aspects of the operation of those flights. See Rule 16 regarding application of these Rules to Codeshare Partner services. When Alaska undertakes to issue a Ticket, check Baggage, or make any other arrangements for transportation over the lines of any other Carrier on an Interline basis (whether or not such transportation is part of a through service), Alaska will act only as agent for the other Carrier in these limited capacities, and will assume no responsibility for the acts or omissions of such other Carrier, including, but not limited to, providing flight status information, delays and other acts or omissions that arise from their flight operations.

G. No employee, representative, contractor or agent of Alaska has the authority to change, alter, modify, or waive any fare rules or any provision of this Contract of Carriage unless

authorized in writing by a corporate officer of Alaska. Alaska's appointed agents, contractors and representatives are only authorized to sell Tickets for air transportation pursuant to approved fares, rules, and regulations of Alaska. Failure or delay on the part of either Alaska or its appointed agents, contractors or representatives to exercise any right or power herein shall not operate as a waiver thereof. This Rule supersedes any conflicting provision contained elsewhere in this Contract of Carriage.

H. Unless specifically stated otherwise herein or where any limitation would expressly violate any applicable law, Alaska shall not be liable for any consequential, compensatory, indirect, incidental or punitive damages arising out of or in connection with the performance of its obligations under this Contract of Carriage.

I. Alaska does not guarantee Carriage on any particular type or make of aircraft and reserves the right to provide Carriage on the aircraft or Carrier of its choice. Arrival and departure times shown in Alaska's schedules, timetables, or elsewhere are not guaranteed and may be changed without notice. Alaska does not guarantee provisions of any particular class or type of service on Codeshare Partners.

J. Fares apply for travel only between the points for which they are published. Tickets may not be issued at a fare published to and/or from a more distant point than the point being traveled, even when the issuance of such Tickets would produce a lower fare. When through or connecting Passengers enplane at an intermediate point between the origin and destination shown on their Tickets, Alaska may require evidence, such as a boarding pass, of use of a preceding flight for the portion of the Ticket from point of origin to intermediate point. Absent such evidence, Alaska may require additional fare collection from the Passenger for any difference between the fare paid for the Ticket from origin to destination and the fare which would apply from the intermediate boarding point to the destination.

K. Alaska will exercise reasonable efforts to ensure that all fares it publishes are accurate and available for sale, but Alaska reserves the right to correct any erroneously published fare that Alaska did not intend to offer for sale, including $0 fares, errant discount code and mileage redemption filings, and other unintended offerings.

L. Alaska's obligations hereunder extend only to the ticketed Passenger. There are no third party beneficiaries hereunder.

M. Except where provided otherwise by law, Alaska's Contract of Carriage, rules and tariffs are subject to change without notice, provided that no such change shall apply to Tickets issued prior to the effective date of such change. To the extent there is a conflict between this Contract of Carriage and information printed on a Ticket, this Contract of Carriage governs.

N. The invalidity of any provision herein by local law shall not affect the validity of any other provision, which shall remain in full force and effect.

O. If Alaska makes arrangements for a Passenger with any third party to provide any services other than Carriage by air, or issues a Ticket or voucher relating to transportation or services (other than Carriage by air) provided by a third party such as hotel reservations or car rental, Alaska acts only as Passenger's agent in doing so. The terms and conditions of the third party service provider will apply.

P. Alaska does not maintain, operate or provide ground transfer service between airports or between airports and town centers. Any such service is performed by independent operators who are not and shall not be deemed to be agents or contractors of Alaska. Anything done by an employee, agent, contractor or representative of Alaska in assisting the Passenger to make arrangements for such ground transfer service shall in no way make Alaska liable for the acts or omissions of such independent operator. In the case of scheduled overnight stops on through service via the same or a combination of Carriers named, ground transfer charges may be borne by the Carrier.

Q. Except as otherwise provided below, fare rule provisions, local or joint fares, including Arbitraries, contained in the On-line Tariff Database maintained by Airline Tariff Publishing Company on behalf of Alaska are considered to be part of this Contract of Carriage.

R. In the event that a Passenger does not comply with the terms and conditions in this Contract of Carriage, his/her Ticket shall be invalidated, and Alaska will have the right to: 1) cancel any remaining portion of the Passenger's itinerary; 2) refuse to allow the Passenger to board aircraft or check Baggage; and/or 3) confiscate the Passenger's Ticket.

S. The obligations of the carrier under the Air Passenger Protection Regulations (APPR) form part of the tariff and supersede any incompatible or inconsistent term and condition of carriage set out in the tariff to the extent of such inconsistency or incompatibility, but do not relieve the carrier from applying terms and conditions of carriage that are more favorable to the passenger than the obligations set out in the APPR.

T. No Class Action – Any case brought pursuant to this Contract of Carriage, Alaska's Tarmac Delay Plan, or Alaska's Customer Service Commitment and/or use of or dealings with Alaska's website must be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.

U. Except for Codeshare Partner flights where a different rule or policy may apply to certain aspects of the operation of those flights, all of Alaska's policies are incorporated into this Contract of Carriage by reference and Passengers must comply with these policies as a condition of carriage. Alaska's policies, which Alaska may revise or update at any time, can be found at https://www.alaskaair.com/content/travel-info/policies/policies-overview?lid=nav:info-policies

# Rule 4. Tickets

Ver esta regla en español

A. Except as otherwise provided in this Rule or required by the applicable local law of a foreign jurisdiction, any Ticket issued by Alaska on Alaska Ticket stock will be valid for transportation for one (1) year from the date on which transportation commences at the point of origin as designated on the original Ticket or, if no portion of the Ticket is used, one (1) year from the date of issuance of the original or reissued ticket, whichever is later. When an unused published fare Ticket is reissued, the new Ticket validity on the reissued ticket will be determined from the date the Ticket was reissued. Tickets that are nonrefundable as specified in the fare rule will be valid for transportation for one (1) year from the date of issuance of the original Ticket and will be subject to any and all applicable change fees. Any portion of a nonrefundable Ticket that is not applied to future travel within the applicable time period will be forfeited and will not be refunded or applied to future travel beyond the applicable time period. Tickets that are both nonrefundable and nonchangeable as specified in the fare rule, even if unused, have no residual value and cannot be applied to the purchase of future travel.

B. A Ticket will not be issued, and Alaska will not be obligated to carry any Passenger, until the Passenger has paid the applicable fare or has complied with credit arrangements established by Alaska. A Ticket will be valid only for flight(s) for which confirmed reservation(s) have been made. No person shall be entitled to transportation except upon presentation of a valid Ticket or proof of identification acceptable to Alaska to confirm that transportation has been purchased. Such Ticket shall entitle the Passenger to transportation subject to this Contract of Carriage and only between points of origin and destination and via the routing designated thereon. The Passenger must be in compliance with any other requirements of the Passenger's fare class. A Passenger holding an unused open-date Ticket or portion thereof for onward travel, or who wishes to change a ticketed reservation to another date, shall not be entitled to any preferential right with respect to the obtaining of reservations.

C. Flight coupons will be honored only in the order in which they were intended to be used, and only if all unused flight coupons and Passenger coupons are presented together.

D.  A Ticket that has not been validated, or which has been altered, mutilated or improperly issued, shall not be valid. Tickets shall not be valid if reservations are cancelled pursuant to Rule 7 or cancelled by the Passenger or his/her representative.

E.  The purchaser of the Ticket is considered to be the owner of the Ticket. If the purchaser cannot be determined, the Passenger whose name is on the Ticket is assumed to be the purchaser.

F.  Tickets are not transferable. Alaska is not liable to the purchaser of a Ticket for honoring or refunding any Ticket when presented by a person other than the person identified as the Passenger on the Ticket. If a Ticket is used by an unauthorized person with or without the knowledge or consent of the person to whom the Ticket was issued, Alaska will not be liable for the loss, destruction, damage, or delay of such unauthorized person's Baggage or other personal property, or for the death or injury of such unauthorized person arising from or in connection with such unauthorized use. As used herein, "unauthorized person" means any person other than the person to whom the Ticket is issued.

G.  Tickets may be purchased on credit, installment, or time payment plans lawfully in effect, subject always to Alaska's approval of credit.

H.  In addition to the otherwise applicable fare, a per Ticket booking service fee will be collected for all Tickets purchased through Alaska reservations or at airport locations. This booking service fee applies in addition to all applicable charges. Tickets are available for purchase without a service fee at alaskaair.com. For information about the amount of the booking service fee, please refer to our web site at www.alaskaair.com.

I.  Any tax or other charge imposed by government authority and collectable from a Passenger will be included in or added to the published fares and charges.

J.  A Passenger may exclusively occupy two adjacent seats on any Alaska flight (including flights operated by Horizon or SkyWest on behalf of Alaska Airlines), upon advance arrangement and payment of two applicable fares for the flight or flights on which two seats will be used and before travel on the first ticketed Segment, or if determined necessary by Alaska, and subject to space availability. The second seat will be purchased at the same fare paid for the first seat. A Ticket will be issued for each seat. Passengers who are unable to lower both armrests and/or who encroach upon any portion of the adjacent seat should book the number of seats needed prior to travel. Baggage allowance: Standard Checked Baggage charges and waivers apply for each Ticket purchased; standard Carry-on Baggage allowance applies per person, not per Ticket.

K.  Alaska may mandate the issuance of an e-Ticket regardless of market, Carrier, form of payment, or customer type (including Mileage Plan and participating Carrier frequent flyer members).

L.  Lost Tickets. *See* Rule 17.D.

M.  Tickets Accepted. Alaska will accept only its own Tickets or those of its Codeshare Partners. Any Tickets issued in conjunction with travel on another Carrier will not be accepted unless required by government regulation or at Alaska's sole discretion.

N.  If the Passenger is prevented from using a Ticket, or a portion of a Ticket, during the period of Ticket validity due to an Alaska flight cancellation or because Alaska is unable to provide space on a flight, Alaska will, without additional collection of fare, extend the Ticket validity period of such Passenger's Ticket until the first flight of Alaska on which space is available in the class of service for which the fare has been paid.

O.  The date when payment is made by credit card, or the Ticket invoice date established when payment is made by other acceptable form of payment, will constitute the date a Ticket is "issued" for purposes of determining the Ticket validity period under this Rule.

P.  Boarding Passes. Boarding passes may be obtained at alaskaair.com, through the Alaska mobile application, or at the airport from Alaska at: 1) e-Ticket check-in kiosks (where available); 2) skycap podiums (where available); or 3) Ticket counters. A boarding pass that has been altered, mutilated, or improperly issued shall not be valid and will not be accepted by Alaska. Boarding passes are nontransferable unless explicitly stated on the boarding

pass. Alaska is not liable to the holder of a boarding pass for use of such a boarding pass when presented by a person other than the person to whom it was issued. If a boarding pass is used by a person other than the person to whom it was issued, Alaska shall not be liable for the loss, destruction, damage or delay of such unauthorized person's Baggage or other personal property or the death or injury of such unauthorized person arising from or in connection with such unauthorized use.

# Rule 5. Reservations

Ver esta regla en español

A. Alaska does not guarantee allocation of any particular space in the aircraft. Seat assignments, regardless of class of service, are not guaranteed and are subject to change without notice. Alaska reserves the right to reseat a Passenger for any reason, including from a seat for which an additional fee has been paid, and if a Passenger is improperly or erroneously upgraded to a different class of service. If a Passenger is removed from a seat for which a fee has been paid, and the Passenger is not re-accommodated in the same class of seat or a seat of equal or greater value, or if a Passenger is downgraded from a class of service and is not re-accommodated in a seat of an equal or greater class of service for which a fee has been paid, the Passenger may be eligible for a refund in accordance with Rule 17.

B. No person shall be entitled to transportation without a valid, confirmed reservation. No reservation shall be considered a confirmed reservation until payment in full has been received by Alaska. A reservation for space on a given flight is valid when the availability and allocation of such space is confirmed in Alaska's reservation system. Subject to payment or other satisfactory credit arrangements, a valid Ticket will be issued by Alaska or Alaska's authorized agent indicating such confirmed space once the Ticket is purchased. Unless an earlier advanced ticketing deadline is imposed by the applicable fare rule, the reservation must be paid for and ticketed at least sixty (60) minutes before posted departure time, otherwise Alaska may cancel reservations and seat assignments of Tickets not yet purchased. Exception: Where other rules, including fare rules and federal regulation, provide for the issuance, validation, purchase, or refund of a Ticket within specific time limits, these specific time limits will apply.

C. Alaska reserves the right to refuse Domestic Carriage or International Carriage to any person who has acquired a reservation in violation of applicable law or Alaska's Contract of Carriage, rules and regulations.

D. At the time of reservation, Alaska requires the full name (consisting of full first and last name) for each Passenger to be entered into the name field of the reservation. Exception: Only one name will be required for reservations for Passengers whose passport or other government-issued form of identification reflects only one name.

E. Because not all Passengers holding confirmed reservations actually use those reservations, Alaska may intentionally confirm a greater number of reservations for a flight than there are seats available in the aircraft. In that event, Alaska's obligation to the Passenger is governed by Rule 8 (Denied Boarding Compensation) and applicable law. A Passenger who obtains a Ticket that reflects confirmed space on a specific flight and date shall be regarded as having confirmed reserved space.

F. Alaska may limit the number of Passengers carried at any fare level and certain fares will not necessarily be available on all flights. The number of seats made available on a given flight will be determined by Alaska.

# Rule 6. Routing, Rerouting and Stopovers

Ver esta regla en español

A. Routing
   1. Each fare applies only to transportation via the routings specified in connection with that fare. Any local routing in connection with a fare applicable to transportation over the lines of any one Carrier between any two points shall be included in any routing in connection with:
      a. Any published joint fare which includes transportation over the lines of such Carrier between such points, unless expressly excluded from the joint fare routing or routings, or
      b. Any through fare constructed by combining a local fare with a joint fare. In such instances, the local routing of any one Carrier shall apply to its entire portion of the through routing, whether or not the Passenger travels via the point over which the fare is combined.
   2. When more than one local fare applies for the portion of passage via a Carrier participating in a joint fare, the joint fare shall apply only via the routings specified in connection with the lowest local fare.
B. Rerouting
   1. Alaska will reroute a Passenger at the Passenger's request upon presentation of the Ticket or portion thereof then held by the Passenger, but Alaska shall be required to reissue/reroute only between points on the original Ticket which it serves. Except as provided in Rule 8 (Failure to Operate on Schedule), tickets that are both nonrefundable and nonchangeable as specified in the fare rule are not eligible for rerouting and may not be applied to any travel other than as specified in the original ticket.
   2. Endorsement for Purpose of Rerouting. Except as provided Rule 7 (Cancellation of Reservations and Prohibited Practices), Alaska will endorse the Ticket, or portion thereof, then held by the Passenger for the purpose of rerouting if the request is made at least three (3) hours prior to the scheduled departure of the flight on which the Passenger holds a confirmed reservation.
   3. Fare Applicable to Rerouting or Change in Destination:
      a. Passengers may request that the routing and/or ultimate destination designated on his/her Ticket be changed in accordance with paragraph B.3.b of this Rule, provided that after transportation has commenced, a one-way Ticket will not be converted into a round-trip, Circle Trip, or open-jaw trip Ticket.
      b. Except as provided Rule 7 (Cancellation of Reservations and Prohibited Practices), the fare and charges applicable when rerouting or changing ultimate destination at the Passenger's request prior to arrival at the ultimate destination named in the original Ticket, shall be determined by reference to the fare rules that govern the Ticket. Any difference between the fare and charges so applicable and the fare and charges applicable to the original Ticket issued to the Passenger will be collected from or refunded to the Passenger, in accordance with the applicable fare rules. Note: The applicable fare and charges will be those in effect on the date the rerouting or change in ultimate destination is entered on the Passenger's Ticket.
C. Stopovers
   1. U.S. and Canada Travel. A Stopover, as used herein, will occur when a Passenger arrives at an intermediate or junction transfer point and fails to depart from the intermediate or junction transfer point on:
      a. The first flight on which space is available; or
      b. The flight that will provide for the Passenger's earliest arrival at intermediate or junction transfer point(s) or destination point, via the Carrier and class of

service shown on the Passenger's Ticket. Provided, however, that in no event will a Stopover occur when the Passenger departs from the intermediate or junction transfer point on a flight shown in Alaska's official general schedules and/or serving patterns as departing within four (4) hours after his/her arrival at such point.

2. Except as otherwise provided, Stopovers will be permitted only upon payment of the combination of applicable fares on transportation solely within the Continental United States and/or Canada.

3. For travel outside the U.S. and Canada, Stopovers will be permitted under the following conditions:

   a. Stopovers must be arranged with Alaska in advance and specified on the Ticket.

   b. Stopovers will be permitted at any point that can be included in an itinerary constructed either by the use of a mileage routing or as specified in the published routing, unless such Stopover is prohibited in Alaska rules or tariffs or governmental regulations.

   c. Stopover provisions for special fares (applicable to all fares for which Stopovers other than at the point of turnaround are prohibited or restricted in number): when travel at a through fare is interrupted by surface travel, either at intermediate points or at the point of turnaround, the points of disembarkation and re-embarkation of the interrupted portion of travel will be considered together as one Stopover or the one point of turnaround.

   d. Only one Stopover is permitted at any single point on the itinerary of a journey traveled at a one-way or half round-trip fare. The origin and destination or point of turnaround, as the case may be, may not be included in such itinerary more than once, regardless as to whether or not a Stopover is made at such point.

4. Except as otherwise provided, Stopovers will be permitted free of charge at all intermediate points on routings applicable to fares between points in the U.S.A. on the one hand and points outside the U.S.A. on the other hand.

# Rule 7. Cancellation of Reservations and Prohibited Practices

Ver esta regla en español

A. Alaska reserves the right to cancel a reservation (whether or not confirmed) and seat assignment of any Passenger whenever necessary to comply with any governmental regulation or request for emergency transportation in connection with the national defense, or whenever necessary or advisable by reason of a Force Majeure Event.

B. Alaska reserves the right to cancel a reservation (whether or not confirmed) due to the Passenger's failure to comply with the rules set forth in this Contract of Carriage, including, but not limited to, the Passenger's failure to pay for the applicable Ticket under the conditions applicable to the fare for such travel.

C. Failure to occupy space. If a Passenger fails to occupy space which has been reserved for him/her on a flight and Alaska does not receive notice of cancellation of the reservation prior to the departure of the flight, or if Alaska or another Carrier cancels the reservation of any Passenger, Alaska may cancel all reservations (whether or not confirmed) and seat assignments held by such Passenger for continuing or return space. If a Passenger must change his/her itinerary, he/she must contact Alaska prior to a flight's departure to determine how this may affect the Ticket and remaining travel. When a passenger does not notify

Alaska prior to a flight's departure that he/she is unable to travel on their confirmed flight, the passenger is considered a "No Show" passenger and all segments associated with the reservation are automatically canceled and all funds or miles used to purchase the ticket are forfeited, subject to the terms of Rule 17.

D. Duplicate, impossible/illogical, fraudulent, fictitious or abusive bookings and/or reservations, or bookings and/or reservations made by Passengers with no intention of being used, are prohibited and may be subject to cancellation. A duplicate or impossible/illogical booking includes, but is not limited to, bookings for the same Passenger on flights traveling on or about the same date between one or more of the same or nearby origin and/or destination (such as SEALAX and SEAONT or SNASEA and ONTSEA), or bookings with Connections that depart before the arrival of the inbound flight. Fraudulent, fictitious or abusive bookings are defined as any bookings made without having been requested by or on behalf of the named Passenger. Additionally, creating bookings to hold or block seats for the purpose of obtaining lower fares, Mileage Plan award inventory, or upgrades that may not otherwise be available, or to gain access to airport facilities, or to circumvent any of Alaska's fare rules or policies, is prohibited without prior authorization from Alaska.

E. Other Prohibited Practices

   1. Use of flight coupons from two or more different Tickets issued at round-trip fares for the purpose of circumventing applicable tariff rules (such as advance purchase/minimum stay requirements), commonly referred to as "Back to Back Ticketing," is not permitted. Alaska and travel agents are prohibited from issuing Tickets under such circumstance when there is obvious intent to abuse and/or misuse restricted round-trip fares.

   2. The purchase and use of round-trip Tickets for the purpose of one-way travel only, known as "Throwaway Ticketing," is prohibited by Alaska.

   3. Fares apply for travel only between the points for which they are published. Tickets may not be purchased and used at fare(s) from an initial departure point on the Ticket which is before the Passenger's actual point of origin of travel or to a more distant point(s) than the Passenger's actual destination being traveled, even when the purchase and use of such Tickets would produce a lower fare. This practice is known as "Hidden Cities Ticketing" or "Beyond Point Ticketing" and is prohibited by Alaska. Note: For this instance, co-terminals are considered to be the same point.

   4. Reissuing a nonrefundable Ticket and applying the value of the existing Ticket towards the creation of two or more new Tickets is prohibited by Alaska. A nonrefundable Ticket may only be reissued on a one-for-one basis. Any residual value to the existing Ticket may be issued as a Credit certificate if the applicable fare rules allow.

F. Alaska reserves the right to invalidate any Ticket(s) purchased or used in violation of this Contract of Carriage and Alaska's rules. Where a Ticket is invalidated as the result of the Passenger's non-compliance with any term or condition of sale or any fare rule (including prohibitions on Back to Back Ticketing, Throwaway Ticketing, Hidden Cities Ticketing or Beyond Point Ticketing), Alaska has the right in its sole discretion to take all actions permitted by law, including, but not limited to, the following: (a) cancel any remaining portion of the Passenger's itinerary, (b) confiscate unused flight coupons, (c) refuse to board the Passenger or carry the Passenger's Baggage, unless the difference between the fare paid and the fare for transportation used is collected prior to boarding, (d) refuse to refund an otherwise refundable Ticket, (e) assess the Passenger for the actual remaining value of the Ticket, which shall be no less than the difference between the fare actually paid and the lowest fare applicable to the Passenger's actual itinerary, (f) delete miles in the Passenger's frequent flyer account (Mileage Plan), revoke the Passenger's elite status, if any, in the Mileage Plan, terminate the Passenger's participation in the Mileage Plan, or take any other action permitted by the Mileage Plan "Conditions of Membership" (for additional information, see Alaska's website at https://www.alaskaair.com/content/mileage-plan/terms-and-

conditions) and/or (g) take legal action with respect to the Passenger. Alaska is not liable in the event that one or more of the duplicate, impossible/illogical, fraudulent, fictitious or abusive reservations are canceled.

G.  In the event a Ticket becomes the subject of a credit card chargeback based upon impropriety, a non-sufficient funds check, a fraud or other form of compromised payment, the ticketed Passenger is liable for the Ticket costs plus an administrative fee. A ticketed Passenger assumes all risk of loss for any Ticket not purchased from Alaska or an Alaska authorized travel agent. Failure to pay ticketing costs and fees within sixty (60) days of notification may result in initiation of legal action or collection services. The ticketed Passenger shall be liable for all attorney and collection fees.

H.  Airport Check-In Time Limits. Alaska reserves the right to cancel reservations (whether or not confirmed) and seat assignments, deny boarding and/or refuse the acceptance of Checked Baggage of any Passenger who fails to present himself/herself within the time limits preceding posted departure time of applicable flights as indicated in Section I of this Rule. Note: The time limits provided by Alaska in this Rule are minimum time requirements. Due to federal security screening measures in place at airports, Passenger processing time may differ from airport to airport. See Rule 15.C. It is the Passenger's responsibility to ascertain the departure airport's time requirements for security screening so that they comply with Alaska minimum check-in time limits.

I.  Passengers must adhere to the following minimum times, which may be revised by Alaska from time to time:

1.  Unless an earlier advanced ticketing deadline is imposed by the applicable fare rule, Tickets purchased on www.alaskaair.com, Alaska's mobile website or Alaska's mobile app must be completed at least sixty (60) minutes prior to posted departure, otherwise Alaska may cancel reservations and seat assignments of Tickets not yet purchased; and

2.  Reservations and seat assignments may be canceled if Passenger fails to meet the check-in times noted in Rule 15.C, or fails to arrive for boarding at the gate at least 30 minutes prior to scheduled departure time.

3.  The time limits provided by Alaska in this Rule are minimum time requirements. Passenger and Baggage processing time requirements may differ from airport to airport and may be subject to change.

4.  Passengers must arrive at the airport sufficiently in advance of a flight departure time to permit completion of government requirements, security procedures and departure processing. Reservations and seat assignments may be canceled and departures will not be delayed for Passengers who are improperly documented, or have not completed all security processing, have not met Alaska's check-in requirements, or are otherwise not ready to travel by the posted departure time. It is the Passenger's responsibility to arrive at the airport with enough time to complete check-in, Baggage check, and security screening processes within these minimum time limits.

5.  Alaska will not be liable for any consequential, compensatory, or other damages when it cancels the reservation (whether or not confirmed) of any Passenger in accordance with this Rule, but if a reservation is cancelled pursuant to Paragraph A of this Rule, Rule 8 (Failure to Operate on Schedule) will apply. If a reservation is cancelled pursuant to other paragraphs of this Rule, Alaska will refund in accordance with Rule 17 (Refunds-Voluntary).

6.  Early Departure. Alaska reserves the right, in its sole discretion, to depart early when all Passengers who have met the requirements set forth in this Section I are onboard the aircraft.

# Rule 8. Liability for Delays, Cancellations, and Denied Boarding

Ver esta regla en español

A. Liability of Carrier: Except to the extent provided in Paragraph D of this Rule, Alaska shall not be liable for failing to operate any flight according to schedule or for changing the schedule of any flight, with or without notice to the Passenger. This exclusion from liability includes actual and Consequential Damages.

B. Options of Passengers: The provisions of this Rule apply only to Passengers who have a valid Ticket reflecting a confirmed reservation on a flight affected by a Schedule Irregularity.

C. Carrier Options for Schedule Irregularity. In the event of Schedule Irregularity, Alaska will, for a Passenger with a confirmed reservation and Ticket for such flight, take one of the following actions:

   1. For Local Passengers:
      a. Transport Passenger to his/her destination or next ticketed Stopover point on another Alaska flight on which space is available in the same or higher class of service than reflected on the Passenger's Ticket at no additional charge; or
      b. At carrier's sole discretion, provide transportation to his/her destination or next ticketed Stopover point on another Carrier's flight in the same or higher class of service than reflected on the Passenger's Ticket at no additional charge; or
      c. Refund the unused portion of the Passenger's Ticket in accordance with Rule 17 (Involuntary Refunds). if requested by the Passenger.

   2. For Transit Passengers Connecting From an Alaska Flight:
      a. Transport Passenger to his/her destination or next ticketed Stopover point on another Alaska flight on which space is available in the same or higher class of service than reflected on the Passenger's Ticket at no additional charge; or
      b. If acceptable to the Passenger, provide transportation to his/her destination or next ticketed Stopover point on another Carrier's flight in the same or higher class of service than reflected on the Passenger Ticket at no additional charge; or
      c. If on the outbound leg, return Passenger to city of origin and refund the entire Ticket in the original form of payment. If on the return leg, refund unused portions of the Ticket in accordance with Rule 17.

   3. For Transit Passengers Connecting from Another Carrier's Flight:
      a. Transport Passenger to his/her destination or next ticketed Stopover point on another Alaska flight on which space is available in the same or higher class of service than reflected on the Passenger's Ticket at no additional charge; or
      b. If acceptable to the Passenger, provide transportation to his/her destination or next ticketed Stopover point on another Carrier's flight in the same or higher class of service than reflected on the Passenger Ticket at no additional charge; or
      c. If on the outbound leg, return Passenger to city of origin and refund the entire Ticket in the original form of payment. If on the return leg, refund unused portions of the Ticket in accordance with Rule 17.

   4. Alaska may, at its option and if acceptable to the Passenger, transport a Passenger affected by a Schedule Irregularity to his/her destination or next ticketed Stopover (or its co-terminal point specified in Rule 17) via surface transportation, or a combination of surface transportation, Alaska flights and other Carriers' flights, at no additional charge.

5. Except to the extent provided in this Rule and subject to the Warsaw Convention and/or Montreal Convention, where applicable, Alaska shall not be liable for any Schedule Irregularity.

D. Change in Schedule: Flight schedules are subject to change without notice, and the times shown on Alaska's published schedules, Tickets, timetable and advertising are not guaranteed and form no part of this Contract of Carriage. At times, without prior notice to Passengers, Alaska may need to substitute other aircraft and may change, add, or omit intermediate stops. Alaska cannot guarantee that Passengers will make Connections to other flights by Alaska or by other Carriers. In the event of flight Schedule Changes or service withdrawals, Alaska will attempt to notify affected Passengers as early as possible. Alaska will promptly provide Passengers the best available information regarding known delays, cancellations, misconnections and diversions, but Alaska is not liable for any misstatements or other errors or omissions in connection with providing such information. No employee, agent or representative of Alaska can bind Alaska legally by reason of any statements relating to flight status or other information. When a ticketed, confirmed Passenger will be delayed because of a change in Alaska's schedule as defined in Rule 1 (Schedule Change), Alaska will arrange to:

1. Transport the Passenger to his/her destination or next ticketed Stopover point on another Alaska flight on which space is available in the same or higher class of service than reflected on the Passenger's Ticket at no additional charge; or

2. Refund according to Rule 17. Exception 1: When an Alaska Schedule Change results in the cancellation of all Alaska service between two cities, Alaska will reroute Passengers holding confirmed reservations on Alaska between such cities over the lines of one or more other Carriers at no additional cost to the Passenger. Exception 2: Change in schedule does not include Force Majeure Events.

E. Passengers Rerouted by Other Carriers: When Passengers are involuntarily rerouted on Alaska by other Carriers, Alaska will have no obligation to accept another Carrier's Ticket which does not reflect a confirmed reservation on Alaska, unless the issuing Carrier reissues the Ticket for any changes in routing. In the event such Carrier is not available to do so, Alaska reserves the right to reroute the Passenger only over its own lines between the points named on the original Ticket. Note: Notwithstanding the provisions of this paragraph, Alaska will not accept Tickets issued on the Ticket stock of a Carrier that voluntarily or involuntarily has become the subject of bankruptcy proceedings or that is in substantial default of its Interline obligations (hereinafter, a "Defaulting Carrier"), except under the following condition: Tickets issued or revalidated on the Defaulting Carrier's stock prior to the date of filing of the bankruptcy petition or the date of default will be accepted over the Segments where Alaska is shown as the Carrier, on a space-available basis.

F. Amenities/Services for Delayed Passengers: Alaska will furnish amenities to Passengers holding reservations on a flight which is delayed more than three (3) hours, or canceled. The type of amenities given will be dependent upon the length of delay and shall not exceed a period of twenty-four (24) hours from time of occurrence. Exception: Alaska cannot provide the amenities outlined in this section if air traffic control, a weather situation, or another extraordinary circumstance beyond Alaska's control occurs at any city within the affected Passenger's intended flight routing. Alaska will attempt to advise the affected Passenger of weather problems before departure, but advises Passengers to check weather conditions along their route and plan accordingly.

1. More Than Three (3) Hours: If Alaska has caused the Passenger's flight to be delayed more than three (3) hours, Alaska's airport customer service agent will provide the Passenger with instructions to ensure that Alaska's customer care team can promptly contact the Passenger via email or letter with an apology and relevant discount off a future Alaska Airlines flight.

2. Canceled: If the Passenger's flight is canceled, and the city where the cancellation occurs is 100 miles away from the Passenger's home, hotel accommodations may be

provided. Accommodations include single or family rooms and round-trip ground transportation to an airport area hotel if such ground transportation is not furnished by the hotel. Alaska will provide at its option either one night's hotel accommodations, or, if no hotel accommodations are provided and upon the Passenger's request only, reimbursement for one night's hotel accommodations in the form of an electronic travel certificate that may be applied to future travel on Alaska up to a maximum amount determined by Alaska. Such accommodations will only be provided when a Passenger incurs a delay that is expected to exceed four hours between the hours of 10:00 p.m. to 6:00 a.m. local time. Where hotel accommodations have been offered but not accepted by a Passenger for whatever reason, Alaska is not liable to reimburse the Passenger for expenses relating to alternative hotel accommodations secured independently by the Passenger. Hotel accommodations will not be furnished to a Passenger whose trip is interrupted at a city which is his/her permanent domicile, origin point, or Stopover point or when such cancellation is due to circumstances outside Alaska's control, including due to Force Majeure Events. Alaska will provide ground transportation to the place of lodging via public conveyance if such ground transportation is not furnished by the hotel. Where ground transportation has been offered but not accepted by a Passenger for whatever reason, Alaska is not liable to reimburse the Passenger for expenses relating to alternative ground transportation secured by the Passenger.

3. The sole and exclusive remedies for a Passenger who has a claim under this Rule shall be those expressly provided for in this Contract of Carriage. The Passenger shall have no other claim against Alaska under law or equity for actual, compensatory, or punitive damages.

G. Notwithstanding the provisions of this Rule, Alaska will not be obligated to accept for any purposes under this Rule Passenger Tickets or related transportation documents issued by any Carrier which is in substantial default of its Interline obligations or that voluntarily or involuntarily has become the subject of bankruptcy proceedings (defined as (a "Defaulting Carrier"), except that Tickets issued by the Defaulting Carrier or its sales agent prior to the default will be accepted solely for transportation on Alaska, provided such Tickets were issued by the Defaulting Carrier in its capacity as Alaska's agent and specified transportation via Alaska. When Tickets are accepted, no adjustments in fare will be made which would require Alaska to refund money to the Passenger. Alaska will accept revenue Passengers of a Defaulting Carrier under the following conditions:

1. Acceptance for transportation will be on Alaska's route system only, between the points named in a given flight coupon of the Defaulting Carrier.
2. Transportation will be on a standby basis only and subject to the accommodation of all ticketed Passengers whether or not they hold confirmed reserved space.
3. Travel restrictions applicable to the traffic documents of the Defaulting Carrier shall apply.
4. Traffic documents of the Defaulting Carrier will be honored no later than twelve (12) months from the date validated.
5. No traffic document, or portion thereof, of the Defaulting Carrier will be refunded under any circumstance.

H. In the event of a strike or work stoppage that causes any cancellation or suspension of operations of any other Carrier, the provisions of this Rule will not apply with respect to Passengers holding Tickets for transportation on that Carrier.

Alaska may, in the event of a Force Majeure Event, without notice cancel, terminate, divert, postpone, or delay any flight or the right of Carriage or reservation (whether or not confirmed) and determine if any departure or landing should be made, without any liability on

the part of Alaska except to refund any unused portion of the Ticket in the original form of payment in accordance with involuntary refund rules.

I.   Limitation of Liability. Except to the extent provided above in this Rule 8, Alaska shall not be liable for any failure or delay in operating any flight, with or without notice, for reasons of safety or when advisable, in its sole discretion, due to Force Majeure Events or any event not reasonably foreseen, anticipated or predicted by Alaska.

J.   The provision of services in addition to those specifically set forth in this Rule to all or some Passengers shall not be construed as a waiver of Alaska's rights or an expansion of its obligations. Neither shall any delay on the part of Alaska in exercising or enforcing its rights under this Rule be construed as a waiver of such rights.

K.   Rerouting Changes Requested by Passenger. For the terms and conditions applicable to rerouting changes requested by a Passenger, including those requested due to delays or cancellations, see Rule 6.

L.   Denied Boarding Compensation

1.   If Alaska is unable to provide previously confirmed space due to more Passengers holding confirmed reservations and Tickets than there are available seats on a flight, some Passengers may be denied boarding on Alaska's flights and may be entitled to compensation. This Rule explains Alaska's obligations and the Passenger's rights in the case of an Oversold Flight in accordance with regulations of the U.S. Department of Transportation ("DOT"). Alaska will take the actions specified in the provisions of this Rule.

2.   Voluntary Denied Boarding and Request for Volunteers. If a flight is oversold (more Passengers hold confirmed reservations than there are seats available), no Passenger may be denied boarding against his or her will until Alaska's personnel first ask for volunteers who are willing to relinquish their confirmed reserved space voluntarily in exchange for compensation in an amount determined by Alaska (including, but not limited to, a check or an electronic travel certificate). The travel certificate will be valid only for Carriage on Alaska or one of our regional partners for one year from the date of issue and will have no refund value. If a Passenger is asked to volunteer, Alaska will not later deny boarding to that Passenger involuntarily unless the Passenger was informed at the time he/she was asked to volunteer that there was a possibility of being denied boarding involuntarily and of the amount of compensation to which he/she would have been entitled in that event. The request for volunteers and the selection of such persons to be denied space shall be in a manner determined solely by Alaska.

3.   Boarding If a flight is oversold (more Passengers hold confirmed reservations than there are seats available) no one may be denied boarding against his/her will until Alaska personnel first ask for volunteers who will give up their reservations willingly, in exchange for a payment of Alaska's choosing. If there are not enough Passengers who volunteer to relinquish their confirmed reserved space, Alaska may deny boarding to other Passengers involuntarily in accordance with Alaska's boarding priorities. Passengers will be boarded in the following order until all available seats are occupied: (1) All Passengers holding confirmed seat assignments will be boarded; and (2) Passengers who are not holding confirmed seat assignments will be boarded in order of the time they check in (Note: Alaska's reservations system records the time of check-in when seat requests cannot be immediately accommodated). Possible exceptions may be made in the case of Unaccompanied Minors, Qualified Individuals with a Disability, or any other Passenger, who in Alaska's opinion, may suffer severe hardship. Business commitments will not, of themselves, constitute a severe hardship. Accompanied children under 12 years of age will be included in the same category as their accompanying Adult Passenger.

4. Transportation for Passengers Denied Boarding: Alaska will transport Passengers denied boarding, whether voluntarily or involuntarily, without Stopover on its next flight on which space is available at no additional cost to the Passenger regardless of class of service, and if unable to provide onward transportation acceptable to the Passenger, at Alaska's sole discretion and the request of the Passenger, will transport the Passenger by other Carrier or combination of Carriers without Stopover on its (their) next flight(s) in the same class of service as the Passenger's original outbound flight(s), or if space is available on a flight(s) of a different class of service acceptable to the Passenger. Such flight(s) will be used without Stopover at no additional cost to the Passenger only if it (they) will provide an earlier arrival at the Passenger's destination, next Stopover point, or transfer point.

5. Compensation for Involuntary Denied Boarding Due to an Oversale: In addition to providing transportation as described in Paragraph 4 above, Passengers involuntarily denied boarding will be compensated for Alaska's failure to provide confirmed space in accordance with the provisions below.

6. In order to receive denied boarding compensation, the Passenger holding a Ticket for confirmed reserved space must have presented himself/herself for Carriage in accordance with this Contract of Carriage, and must have complied fully with Alaska's requirements as to ticketing, check-in, and boarding requirements within the time limits and at the location set out in Rule 15.C. In addition, the flight for which the Passenger holds confirmed reserved space must be unable to accommodate the Passenger and departs without him/her, except that the Passenger will not be eligible for compensation if: (i) the flight on which he/she holds confirmed reserved space is cancelled or is unable to accommodate him/her because of government requisition of space, operational or safety reasons, or substitution of aircraft type of lesser capacity and Alaska took all reasonable measures to avoid the substitution or it was impossible to take such measures; (ii) on a flight operated with an aircraft having 60 or fewer seats, the Passenger is denied boarding due to a safety-related weight/balance restriction that limits payload; (iii) the Passenger is offered accommodations in a section of the aircraft other than specified in their Ticket, at no extra charge (a Passenger seated in a section for which a lower fare is charged must be given an appropriate refund); (iv) Alaska is able to place the Passenger on another flight or flights that are planned to reach the Passenger's next Stopover or final destination within one hour of the planned arrival time of their original flight; or (v) the Passenger is an employee of Alaska or of another Carrier or of another Passenger traveling without a confirmed reserved space. Note: Failure to comply with Alaska check-in time limits will result in the cancellation of the Passenger's reservation and will render him/her ineligible for denied boarding compensation.

7. Amount of Denied Boarding Compensation

**Domestic Transportation:** Passengers traveling between points within the United States (including U.S. Territories and possessions), subject to the exceptions noted in section L.6 of this Rule, who are denied boarding involuntarily from an Oversold Flight are entitled to:

1. No compensation if Alaska offers alternate transportation that, at the time the arrangement is made, is planned to arrive at the Passenger's destination or first Stopover not later than one (1) hour after the planned arrival time of the Passenger's original flight; or

2. At least 200% of the fare to the Passenger's destination or first Stopover, or $775, whichever is lower, if Alaska offers alternate transportation that, at the

time the arrangement is made, is planned to arrive at the Passenger's destination or first Stopover more than one (1) hour but less than two (2) hours after the planned arrival time of the Passenger's original flight; or

3.  At least 400% of the fare to the Passenger's destination or first Stopover, or $1,550, whichever is lower, if Alaska does not offer alternate transportation that, at the time the arrangement is made, is planned to arrive at the airport of the Passenger's destination or first Stopover more than two (2) hours after the planned arrival time of the Passenger's original flight.

| Length of Delay | Compensation Due |
| --- | --- |
| 0 to 1 hour arrival delay | No Compensation |
| 1 to 2 hour arrival delay | 200% of One-Way fare (no more than $775) |
| Over 2 hours arrival delay | 400% of One-Way fare (no more than $1550) |

**International Transportation:** Passengers traveling from the United States to a foreign point, subject to the exceptions noted in section L.6 of this Rule, who are denied boarding involuntarily from an Oversold Flight originating at a U.S. airport are entitled to:

d.  No compensation if Alaska offers alternate transportation that, at the time the arrangement is made, is planned to arrive at the Passenger's destination or first Stopover not later than one (1) hour after the planned arrival time of the Passenger's original flight; or

e.  At least 200% of the fare to the Passenger's destination or first Stopover, or $775, whichever is lower, if Alaska offers alternate transportation that, at the time the arrangement is made, is planned to arrive at the Passenger's destination or first Stopover more than one (1) hour but less than four (4) hours after the planned arrival time of the Passenger's original flight; or

f.  At least 400% of the fare to the Passenger's destination or first Stopover, or $1,550, whichever is lower, if Alaska does not offer alternate transportation that, at the time the arrangement is made, is planned to arrive at the airport of the Passenger's destination or first Stopover more than four (4) hours after the planned arrival time of the Passenger's original flight.

| Length of Delay | Compensation Due |
| --- | --- |
| 0 to 1 hour arrival delay | No Compensation |
| 1 to 4 hour arrival delay | 200% of One-Way fare (no more than $775) |
| Over 4 hours arrival delay | 400% of One-Way fare (no more than $1550) |

**Transportation Originating in Canada:** Passengers traveling from Canada to a foreign point, including to the United States, subject to the exceptions noted in

section L.6 of this Rule, who are denied boarding involuntarily from an Oversold Flight originating at a Canadian airport are entitled to:

g.  No compensation if Alaska offers alternate transportation that, at the time the arrangement is made, is planned to arrive at the Passenger's destination or first Stopover not later than one (1) hour after the planned arrival time of the Passenger's original flight; or

h.  A maximum payment of $400 CAD if Alaska offers alternate transportation that, at the time the arrangement is made, is planned to arrive at the Passenger's destination or first Stopover more than one (1) hour but less than four (4) hours after the planned arrival time of the Passenger's original flight; or

i.  A maximum payment of $800 CAD if Alaska offers alternate transportation that, at the time the arrangement is made, is planned to arrive at the Passenger's destination or first Stopover more than four (4) hours after the planned arrival time of the Passenger's original flight.

**Transportation Originating from Points Outside the U.S.A. or Canada:** Where there is an Oversold Flight that originates outside the U.S.A. or Canada, no compensation will be provided except where required by local or international laws regulating Oversold Flights.

• If an offer of compensation is made by Alaska and accepted by the Passenger, such payment will constitute full compensation for all actual or anticipatory damages incurred or to be incurred as a result of the failure to provide confirmed reserved space. Passengers who are offered such compensation will not be provided with amenities and services offered under the provisions of Rule 8.

• Method of Payment. Except as provided below, Alaska will give each Passenger who qualifies for involuntary denied boarding compensation, except for those traveling from Canada, a payment by cash or check for the amount specified above, on the day and at the place the involuntary denied boarding occurs. However, if Alaska arranges alternate transportation for the Passenger's convenience that departs before the payment can be made, the payment shall be sent by mail or other means to the Passenger within 24 hours after the time the denied boarding occurs. Alaska may offer free or discounted air transportation in place of the cash payment due under this Rule, if the value of the air transportation offered is equal to or greater than the monetary compensation otherwise due and Alaska informs the Passenger of the amount and that the Passenger may decline the transportation benefit and receive monetary compensation. In that event, Alaska must disclose all material restrictions on the use of the free or discounted transportation before the Passenger decides whether to accept the transportation in lieu of a cash or check payment. The Passenger may insist on the cash/check payment or refuse all compensation and bring private legal action.

• Limitation of Liability for Denied Boarding. Acceptance of the compensation by the Passenger pursuant to the above provisions in this Rule constitutes full compensation for all actual or anticipatory damages incurred or to be incurred by the Passenger as a result of Alaska's failure to provide the Passenger with confirmed reserved space and relieves Alaska from any further liability to the Passenger caused by Alaska's failure to honor the confirmed reservation. If Alaska's offer of compensation pursuant to the above provisions is not accepted, Alaska's liability is limited to actual damages proved not to exceed $1550 USD per ticketed Passenger as a result of Alaska's failure to provide the Passenger with confirmed reserved space. Passenger will be responsible for providing documentation of all actual damages claimed. Alaska shall not be liable for any punitive, consequential or special damages arising out of or in connection with Alaska's failure to provide the

Passenger with confirmed reserved space. However, the Passenger may decline the payment and seek to recover damages in a court of law or in some other manner.

# Rule 9. Travel Documents—Responsibility of Passenger

Ver esta regla en español

A. Compliance with Regulations: The Passenger shall comply with all laws, regulations, orders, demands, or travel requirements of countries to be flown from, into, or over, and with all rules, regulations, and instructions of Alaska. Alaska shall not be liable for any aid, assistance or information provided by any agent or employee of Alaska to any Passenger in connection with obtaining necessary documents or complying with such laws, regulations, orders, demands, requirements, or instructions, whether given orally, in writing, or otherwise, or for the consequences to any Passenger resulting from his/her failure to obtain such documents or to comply with such laws, regulations, orders, demands, requirements, or instructions.

B. Each Passenger desiring transportation across any international boundary is responsible for obtaining and presenting all necessary travel documents, including documentation required for entry and exit from each country, which shall be in good condition, and for complying with the laws of each country flown from, through or into which he/she requests transportation. Alaska reserves the right to seek reimbursement from the Passenger for any loss, damage, or expense suffered or incurred by Alaska by reason of such Passenger's failure to do so. Where legally permitted, Alaska reserves the right to hold, photocopy or otherwise reproduce a travel document presented by any Passenger. Alaska also reserves the right to deny boarding to any Passenger whose necessary travel documents are not in good condition or which otherwise do not comply with laws of the specific country the Passenger is departing from, transiting through, or traveling to.

C. Subject to applicable laws and regulations, the Passenger must pay the applicable fare whenever Alaska, on government order, is required to return a Passenger to his/her point of origin or elsewhere due to the Passenger's inadmissibility into/or deportation from a country. The fare will be the applicable fare in effect at the time of the original Ticket's issuance. Any difference between the applicable fare and the fare paid will be collected from or refunded to the Passenger, as the case may be. Alaska will apply to the payment of such fares any funds paid by the Passenger for unused Carriage or any funds of the Passenger in possession of Alaska. The fare collected for Carriage to the point of refusal of entry or deportation will not be refunded by Alaska unless the law of such country requires that the fare be refunded.

D. Customs Inspection: If required, the Passenger must attend inspection of his/her Baggage, checked or unchecked, by customs or other government officials. Alaska accepts no responsibility toward the Passenger if the latter fails to observe this condition. If damage is caused to Alaska because of the Passenger's failure to observe this condition, the Passenger shall indemnify Alaska therefor.

E. Government Regulation: No liability shall be attached to Alaska if Alaska in good faith determines that what it understands to be applicable law, government regulation, demand, order or requirement, requires that it refuse and it does refuse to carry a Passenger.

F. This Rule and its limitations includes, but is not limited to, travel documents related to travel by minors. Some countries require special documents for minors traveling with only one parent to/from an international destination. This includes, but is not limited to, the Mexico Minor Letter of Consent, which is available on alaskaair.com. Parents/legal guardians of minors are responsible for compliance with all requirements and procedures for minors traveling internationally, which may include, but may not be limited to, documentary

evidence, such as a notarized letter of relationship and permission for the Child's travel from the birth parent(s) or legal guardian(s) not present.

# Rule 10. Screening of Passengers and Baggage

Ver esta regla en español

Passengers and/or their Baggage are subject to security screening, including but not limited to, security profiling, physical pat-downs and inspections, x-ray screening, manual bag searches, questioning of Passengers, and use of electronic or other detectors or screening or security devices, in the sole discretion of the government, airport or Alaska, and with or without the Passenger's presence, consent or knowledge. Neither Alaska nor its employees or agents is liable for any damage, loss, delay (including refusal to transport), confiscation of property, injury or other harm relating to or arising out of security screening conducted by an agent of the airport or any local, state, or federal agency or a Passenger's failure to submit to or comply with such security screening.

# Rule 11. Refusal to Transport

Ver esta regla en español

Alaska may, in its sole discretion, refuse to transport, or may remove from an aircraft at any point, any Passenger in any circumstance not prohibited by law. Below is a non-exhaustive list of reasons and/or acts for which transport may be refused.

A. Breach of Contract of Carriage - Failure by Passenger to comply with the rules of this Contract of Carriage.
B. Whenever such action is necessary, with or without notice, for reasons of safety.
C. Force Majeure Event. Whenever required or, in Alaska's exclusive judgment, advisable due to a Force Majeure Event, whether actual, threatened or reported.
D. When Necessary to Comply with Government Directive, Request or Regulations. Passengers may be refused transport whenever necessary to comply with any government regulation, security directive, or to comply with any governmental request for emergency transportation in connection with the national defense.
E. Refusal of Passenger to permit the search of his/her person or property by Alaska or a government agency for explosives, hazardous materials, contraband, or a concealed, deadly or dangerous weapon or article.
F. Refusal of Passenger upon request to produce positive identification acceptable to Alaska or when presenting a Ticket to board, failure to provide identification that matches the name on the Ticket. Alaska shall have the right, but not be obliged, to require positive identification of persons purchasing Tickets and/or presenting a Ticket(s) for the purpose of boarding aircraft.
G. Failure to Pay - Whenever a Passenger has not paid the appropriate fare for a Ticket, Baggage, or applicable service charges for services required for travel, or produced satisfactory proof to Alaska that the Passenger is an authorized non-revenue Passenger or has engaged in a prohibited practice as specified in Rule 4.
H. Any Passenger traveling across any international boundary where:
   1. The travel documents of such Passenger are not in order and the Passenger has not obtained and completed all documentation required for entry into and exit from each country, or has failed to comply with the laws, requirements or procedures of each country listed on the Passenger's itinerary.
   2. For any reason, the Passenger's embarkation from, transit through, or entry into, any country from, through, or to which the Passenger desires transportation, would be unlawful.

I.   Incompatible Medical Requirements. Alaska will refuse to transport Passengers requiring the following medical equipment or services, which either are not authorized or cannot be accommodated on Alaska's aircraft: medical device requiring electrical power or medical oxygen for use onboard the aircraft except Federal Aviation Administration ("FAA")-approved and Alaska-accepted Portable Oxygen Concentrators ("POCs"); incubators; or travel on a stretcher.

J.   Comfort, Health and Safety. In the following categories where, in Alaska's sole judgment, refusal or removal may be necessary for the comfort, health and safety of Passengers or crew members, including but not limited to:

1.   Passengers who refuse to obey Alaska's rules or policies.

2.   Passengers who refuse to obey any federal regulations, security directives, or instructions given by crew members, station management or supervisory personnel.

3.   Passengers whose conduct is or has been known to be disorderly, abusive, offensive, threatening, intimidating, violent, belligerent and/or irrational so as to be a hazard or potential hazard to Alaska employees, other Passenger(s), and/or him/herself (including verbal harassment related to race, color, gender, religion, national origin, disability, age, ethnicity or sexual orientation). Federal law, including but not limited to 49 U.S.C. Section 46503, protects Federal, airport, and air carrier employees who have security duties within an airport. Assault on such employees or interference with the performance of their duties is strictly prohibited.

4.   Passengers who interfere or attempt to interfere with the duties of any member of the flight crew.

5.   Passengers who, as a result of their conduct, cause a disturbance such that the captain or member of the cockpit crew must leave the cockpit in order to attend to the disturbance.

6.   Passengers who are barefoot or whose conduct, attire, hygiene, or odor creates an unreasonable risk of offense or annoyance to other passengers.

7.   Passengers who are unable to sit in a single seat with the seatbelt properly fastened, or are unable to put the seat's armrests down when seated, unless they comply with Rule 4.J.

8.   Passengers who appear to be intoxicated or under the influence of drugs to a degree that the Passenger may endanger him/herself or any other Passengers or members of the crew (other than a Qualified Individual with a Disability whose appearance or involuntary behavior may make them appear to be intoxicated or under the influence of drugs).

9.   Passengers who wear or have on or about their persons concealed or unconcealed deadly or dangerous weapons; provided, however, that Alaska will carry Passengers who meet the qualifications and conditions established under 49 C.F.R. Section 1544.219.

10.  Prisoners (persons charged with or convicted of a crime) under escort of law enforcement personnel; other persons in the custody of law enforcement personnel who are being transported while wearing manacles or other forms of restraint; persons who have resisted or may reasonably be believed to be capable of resisting escorts; or escorted persons who express to Alaska an objection to being transported on the flight.

11.  Non-Smoking Policy. Passengers who are unwilling or unable to abide by Alaska's non-smoking rules and federal laws prohibiting smoking onboard the aircraft, as required under 49 U.S.C. Section 41706.

12.  Passengers who have made a misrepresentation, which becomes evident upon arrival at the airport, and the misrepresentation renders the person unacceptable for Carriage.

13.  Passengers who are incapable of completing a flight safely, without requiring extraordinary medical assistance during the flight, as well as Passengers who appear

to have symptoms of or have a communicable or contagious disease, infection, or condition that could pose a direct threat as defined in 14 C.F.R. Section 382.3 to the health or safety of others on the flight, or who refuse a screening for such disease or condition. (Alaska requires a medical certificate for Passengers who wish to travel under such circumstances.)

14. Passengers who fail to travel with the required safety assistant(s), provide advance notice and/or comply with other safety requirements pursuant to Rule 12.

15. Passengers who do not qualify as acceptable Non-Ambulatory Passengers (see Rule 12).

16. Passengers who are mentally deranged or mentally incapacitated whose behavior may be hazardous to himself/herself, the crew, or other Passengers. However, Alaska will accept such patients if escorted and if the requesting mental health authority furnishes a medical certificate which states that the patient may be transported safely with an escort. The escort must accompany the escorted Passenger at all times; and

17. Unaccompanied Passengers who are both blind and deaf, unless such Passenger is able to communicate with representatives of Alaska by either physical, mechanical, electronic, or other means. Such Passenger must inform Alaska of the method of communication to be used.

18. Passengers whose animals threaten the safety or health of Passengers or crew members or cause delays or damage to aircraft or other Passengers.

K. Alaska is not liable for refusal to transport any Passenger or for removal of any Passenger in accordance with this Rule. The fare of any Passenger denied transportation or removed from Alaska's aircraft en route under the provisions of this Rule will be refunded in accordance with Rule 17 of this Contract of Carriage. The sole recourse of any Passenger refused Carriage or removed for any reason specified in this Rule shall be the recovery of the refund value of the unused portion of his/her Ticket as provided in Rule 17. Under no circumstances shall Alaska be liable to any Passenger for any type of special, incidental, or Consequential Damages.

L. Solicitation, Distribution and Commercial Filming. Passengers are prohibited from soliciting or distributing literature and/or other materials, or commercial filming, while on board Alaska's aircraft without the prior written consent of Alaska Airlines, Inc. Failure to comply with this provision may result in removal from the aircraft and refusal of future travel.

M. Alaska reserves the right in its sole judgment to refuse to transport, on a temporary or permanent basis, any Passenger who has been removed or refused transportation for any conduct described in this Rule.

N. Any Passenger who, by reason of engaging in any of the above activities in this Rule 11, causes Alaska any loss, damage or expense of any kind, consents and acknowledges that he or she shall reimburse Alaska for any such loss, damage or expense. In addition, the activities enumerated in this Section J shall constitute a material breach of contract, for which Alaska shall be excused from performing its obligations under this Contract of Carriage.

O. Smoking (including use of electronic simulated smoking materials and smokeless cigarettes) is not permitted on any flights operated by Alaska. Federal law also prohibits smoking in an airplane lavatory and tampering with, disabling, or destroying any smoke detector installed in any airplane lavatory. Federal law provides for a penalty of up to $2,000 for tampering with the smoke detector installed in the lavatory. Individuals are subject to FAA enforcement action and substantial monetary penalties for violation of this law and related regulations. By purchasing a Ticket or accepting transportation, the Passenger agrees to comply with Alaska's policy on smoking and use of other smokeless materials, as well as applicable federal law, and Alaska reserves the right to seek reimbursement from any Passenger whose failure to do so causes Alaska any loss, damage or expense.

# Rule 12. Special Services

Ver esta regla en español

A.  Non-Ambulatory Persons who are unable to walk or move themselves or need the support of another person to walk or move, but who are otherwise capable of caring for themselves without assistance throughout a flight are considered Non-Ambulatory. Non-Ambulatory Passengers and persons with impairments or physical disabilities which would cause them to require special attention or assistance from Alaska's personnel will be accepted for transportation without an attendant subject to the following conditions:
    1.  The Passenger must be able to occupy a cabin seat in an upright position. An Orthotic Positioning Device (OPD) may be used if it does not impede any other Passenger's access to the aisle and the seatbelt can be secured around the person.
    2.  Alaska will provide or make arrangements to assist Passengers in boarding and deplaning.
    3.  Any expense for services not required to be provided without charge by Alaska under 14 C.F.R. Part 382 will be borne by the Passenger.
    4.  Two Non-Ambulatory Passengers will not be seated across the aisle from each other in the same seating row and a non-ambulatory Passenger will not be seated in an emergency exit row due to FAA safety requirements.
    5.  If a Passenger uses a wheelchair for convenience, the Passenger is not considered to be Non-Ambulatory.
    6.  A Child or Infant is not considered to be Non-Ambulatory merely because of his/her age.
B.  Qualified Individuals with a Disability. Alaska requires a Passenger, including a Qualified Individual with a Disability, to provide up to forty-eight (48) hours' advance notice and check-in one (1) hour before the check-in time for the general public for flights if such Passenger requests to receive any of the following service accommodations:
    1.  Transportation of an electric wheelchair on an aircraft with fewer than 60 seats;
    2.  Provision by Alaska of hazardous materials packaging for a battery for a wheelchair or other Assistive Device that requires such packaging;
    3.  Accommodation of a group of ten (10) or more Qualified Individuals with a Disability who make reservations and travel as a group;
    4.  Provision of an on-board wheelchair on an aircraft with more than 60 seats that does not have an accessible lavatory;
    5.  Use of a ventilator, respirator, Continuous Positive Airway Pressure (CPAP) machine, or Passenger's own Portable Oxygen Concentrator (POC);
    6.  For information on transportation of a Service Animal, please refer to Rule 14 and www.alaskaair.com.
C.  When a Travel Assistant is Required. If Alaska determines that an assistant is essential for safety, Alaska may require that a Passenger, including a Qualified Individual with a Disability, meeting any of the following criteria, travel with an assistant as a condition of being provided Domestic Carriage and/or International Carriage:
    1.  A Passenger who, because of a mental disability, is unable to comprehend or respond appropriately to safety instructions from Alaska personnel, including the safety briefing required by 14 C.F.R. Sections 121.571(a)(3), (a)(4), and 135.117(b);
    2.  A Passenger with a mobility impairment so severe that the Passenger is unable to physically assist in his or her own evacuation of the aircraft; or
    3.  A Passenger who has both severe hearing and severe vision impairments if the Passenger cannot establish some means of communication with Alaska personnel adequate to permit the transmission of the required safety briefing.

If Alaska determines that a Passenger meeting these criteria must travel with an assistant, contrary to the Passenger's self-assessment that he/she is capable of traveling independently, Alaska will not charge for the transportation of the assistant. For Passengers traveling to/from Canada, Alaska will accept a disabled Passenger's determination of his/her self-reliance, and Alaska will not provide a safety assistant.

Alaska flight attendants and other crew members cannot provide medical services to Passengers nor assist Passengers with actual eating or within the lavatory.

D.   Passenger-Provided POCs. POCs approved by the FAA may be carried and used on board flights operated by Alaska, at no charge, in accordance with FAA requirements. Passengers utilizing POCs are required to provide Alaska a minimum forty-eight (48) hours advance notice and check-in one hour before the check-in time for the general public for Domestic Carriage and International Carriage and must also meet the following conditions:

1.   FAA-approved and Alaska-accepted POCs may be used onboard an Alaska aircraft. Passengers are referred to alaskaair.com and 14 C.F.R. Part 121, SFAR No. 106 for details regarding Carriage of POCs and a list of POCs that are approved for use on aircraft;

2.   Non-FAA-approved POC brands and models that do not contain compressed or liquid oxygen may be carried in the cabin if they meet Alaska's Carry-On Baggage size and weight requirements. Alternatively, they may be transported as Checked Baggage. Alaska may accept other brands and models for use on board in the future as they become approved by the FAA and Alaska.

3.   Passengers must satisfy specific requirements prior to boarding the aircraft. The Passenger must:

    a.   provide advance notice in the reservation record that he/she is planning to use a POC on board the flight;

    b.   ensure that he/she has sufficient batteries to power the POC for the duration of his/her flight plus three (3) additional hours to allow for unanticipated delays and any ground Connection time where the POC is planned to be used. (Aircraft in-seat electrical power is not available for Passenger use with POCs).

    c.   ensure that all extra batteries are properly protected from short circuiting by either:

        1.   having recessed battery terminals or;

        2.   packing the batteries so that they do not contact metal objects including the terminals of other batteries.

4.   Failure to meet the requirements will result in denied use of the POC during travel. Passengers planning on traveling with POCs are responsible for advising Alaska as soon as reservations are confirmed, regardless of whether the reservations were made through a travel agent, on the internet or directly with Alaska, in order to confirm specific requirements and to provide Alaska with required information.

5.   When travelling on or connecting to or from any flight other than Alaska (including flights operated by Horizon or SkyWest on behalf of Alaska Airlines), the Passenger is responsible for notifying and making independent arrangements directly with the other Carrier.

6.   POCs are Assistive Devices for Passengers with disabilities. As such, they do not count toward Carry-On Baggage or Checked Baggage limits, whether or not they are used on board. They must be able to fit underneath the seat or in an overhead storage compartment. A Passenger using a POC may not sit in an exit row or bulkhead seat.

7.   Alaska is not liable for POC equipment failures, failure of the batteries that power the POC, or any other losses or damages alleged by the Passenger or any other person

arising out of the use or possession of the POC, unless caused by the gross negligence or willful misconduct of Alaska.

# Rule 13. Acceptance of Children

Ver esta regla en español

A. Unaccompanied Minors: Alaska considers children ages 12 and under who are traveling without a parent, guardian, or other responsible Adult age 18 or older to be Unaccompanied Minors and subject to the policies described below. Children ages 13 years old through 17 years old are not subject to the policies and fees applicable to Unaccompanied Minors when traveling on Alaska unless they are connecting to another Carrier that uses different age thresholds to define Unaccompanied Minors. When two or more Unaccompanied Minors are traveling together, the most restrictive age requirement will apply.
   1. Children under the age of five (5) years will not be accepted under any conditions without an accompanying Adult Passenger on the same flight and in the same class of service. Alaska does not accept Infants in incubation.
   2. Children ages five (5), six (6), or seven (7) years old may travel as Unaccompanied Minors on Alaska (including flights operated by our regional carriers), but cannot be booked on flights involving transfers or Connections.
   3. Children ages eight (8) years old through twelve (12) years old may travel as Unaccompanied Minors on Alaska and may be booked on flights involving transfers or Connection only to Alaska (including flights operated by our regional partners), provided the Unaccompanied Minor holds a confirmed Ticket to a point where he/she is to be met by their parent or responsible Adult upon deplaning.
   4. Alaska Airlines reserves the right to limit the number of Unaccompanied Minors that may be transported on a Segment, whether for safety or administrative or other reasons.
B. Alaska offers Unaccompanied Minors the escorted services described below. Such escorted service is mandatory for Unaccompanied Minors ages five (5) to twelve (12) years of age and is optional for Unaccompanied Minors ages thirteen (13) to seventeen (17) years of age. Unaccompanied Minors must be brought to the departure airport by their parent, legal guardian or responsible Adult who must remain with their Unaccompanied Minor in the boarding area until the Unaccompanied Minor's flight has departed and is airborne and who must furnish Alaska with satisfactory evidence that the Unaccompanied Minor will be met by another parent or responsible Adult upon deplaning at his/her final destination. If the Unaccompanied Minor's itinerary involves a connecting flight, he/she must not be booked on the last connecting flight of the day to the destination, or a connecting flight departing between 2100 and 0500, unless it is the only flight of the day. The Unaccompanied Minor will not be accepted for transport if any flight on which the Unaccompanied Minor holds a reservation is expected to terminate short of or by-pass his/her destination or Connection point. Alaska reserves the right to require and charge the applicable service charge for Unaccompanied Minor service when an Unaccompanied Minor ages five (5) to twelve (12) years is traveling with a Passenger who is not at least eighteen (18) years old or parent or legal guardian.
C. Assisted Transfers
   1. On-line Transfers: Alaska personnel will assist Unaccompanied Minors in connecting to/from other Alaska flights, including flights operated by regional partners, provided the scheduled period between ticketed flights is two hours or less. If the scheduled period between ticketed flights is more than two hours, the parent or legal guardian must pre-arrange to have the Unaccompanied Minor transferred by a responsible Adult.

    2. Interline Transfer: Alaska will not transfer Unaccompanied Minors to/from flights on other Carriers, except for flights operated by our regional partners. The parent or legal guardian must pre-arrange to have the Unaccompanied Minor transferred by a responsible Adult for all other Carrier Connections.

D. A Guardian Contact Form provided by Alaska must be completed and signed by the parent or legal guardian of a Unaccompanied Minor under the age of 13, and must include the following information:

    1. The name and phone number of the Adult who brings the Unaccompanied Minor to the origin airport; and

    2. The name and phone number of the Adult who will meet the Unaccompanied Minor at each Stopover point and at the destination point. Note 1: Alaska has the right, but is not obligated, to require the parent, legal guardian, or responsible Adult meeting the Unaccompanied Minor at his/her transfer point or final destination to present valid government-issued photo identification and sign a release form designated by Alaska. Note 2: Alaska does not assume any financial or guardianship responsibilities for Unaccompanied Minors.

E. Infants' Fares and Unaccompanied Minor Service Fees.

    1. One Infant not occupying a seat may travel with a parent, or an Adult fare-paying Passenger who is at least 18 years old on Alaska and/or its regional partners. Taxes and airport fees of up to USD/CAD 75 may apply for international carriage. Note: This Rule applies to fare only and not to any other special charges. Each additional Infant accompanied by the same Passenger who is traveling with the first Infant will be charged the same fare as the fare for an Adult Passenger traveling in the same class of service. Infants for whom a seat at the applicable Adult fare has not been purchased may not occupy a seat. Our Codeshare Partners may have their own rules, fares and service fees applicable to Infant travel.

    2. Unaccompanied Minors.

        1. Service fees for Unaccompanied Minors for air transportation (a) operated by Alaska and/or its regional partners within the U.S. or between the U.S. and points outside Canada and (b) operated by Codeshare Partners may be found on our web site at www.alaskaair.com.

        2. Fees for air transportation operated by Alaska and/or its regional partners between the U.S. and Canada. Children age 2-12 years old, whether accompanied or unaccompanied, are required to purchase a Ticket and will be charged the same fare as for an Adult Passenger in the same class of service. Such children are required to occupy a seat and use a separate seat belt. Infants reaching their second birthday after outbound flights will be required to purchase a Ticket and occupy a seat for continuing/return flights only.

| Ages | Unaccompanied Minor Service | Fees | Flight Restrictions | Gate Escort & Guardian Contacts |
|------|------------------------------|------|---------------------|----------------------------------|
| 5-7 | Required | $50 USD/CAD each way per child non-stop/direct | No departures between 9 pm and 5 am. No | Required |

| | | flights | connections. | |
|---|---|---|---|---|
| 8-12 | Required | $50 USD/CAD each way per child non-stop/direct flights<br><br>$75 USD//CAD each way per child for connecting flights. | No departures between 9 pm and 5 am. | Required |
| 13-17 | Optional | $50 USD/CAD each way per child non-stop/direct flights;<br><br>$75 USD//CAD each way per child for connecting flights if service is requested. | No departures between 9 pm and 5 am. | Required when using the Unaccompanied Minor Service |

3. Unaccompanied Minor Service fees are waived for **children** who have attained MVP®, MVP® Gold, or Gold 75K Mileage Plan™ status. Escorted service fees for Unaccompanied Minors are subject to change at Alaska's discretion. The fare for Unaccompanied Minors ages five (5) to seventeen (17) includes the applicable Adult fare in addition to the escorted service fee assessed.

4. For the purpose of this Rule, escorted services means that Alaska will provide reasonable supervision for the Unaccompanied Minor from the time of boarding until the Unaccompanied Minor is met at the Stopover point or final destination.

5. Proof of Infant's, Child's, or Minor's age may be requested at time of purchase, check in, and/or boarding. Either government-issued photo

identification or another identification document acceptable to Alaska bearing the birth date of the Infant, Child, or Minor who is traveling on a fare must be presented to Alaska.

6. The age limits referred to in this Rule shall be those in effect on the date of commencement of Carriage.

7. Children unable to sit upright with a seat belt fastened must be carried in an approved Infant/Child restraint device, except for Infants not occupying a seat as provided for in section E.1 of this Rule.

8. Unless unoccupied seats are available on a flight, Alaska requires a reservation and purchase of a Ticket for Carriage of a child restraint device onboard the aircraft to ensure that a child restraint device may be used during flight. Only federally-approved child restraint devices are permitted for use aboard Alaska's aircraft and must be clearly marked with the original NHTSA label. Federal regulations prohibit the use of child booster seats and harness-or-vest-type restraining devices, unless such devices have been specifically approved by the FAA. Child restraint devices must be used in unoccupied aircraft seats and cannot be held in an Adult's lap or used in an emergency exit row. Such devices must remain properly secured to an aircraft seat at all times unless stored as Carry-On Baggage. Child restraint devices will be considered as items of Carry-On Baggage counting toward the Adult Passenger's Carry-On Baggage allowance, unless the Child has been ticketed and a seat reserved for use of the child restraint device.

# Rule 14. Acceptance of Service Animals

Ver esta regla en español

To extent required by U.S. Department of Transportation regulations (14 C.F.R. Part 382), which can be accessed at https://www.transportation.gov/airconsumer/disability-issues-updated-version-of-Part-382 and other laws and regulations as applicable to the Passenger on his/her date(s) of travel, Alaska accepts for transportation, without charge, a Service Animal accompanying a Passenger who is a Qualified Individual with a Disability and who requires a Service Animal to assist him/her by doing work or performing tasks for the benefit of that Passenger. If you wish to travel with a Service Animal, you must review and comply with the requirements set forth at www.alaskaair.com. Where a flight is operated by a Codeshare Partner, the Codeshare Partner's Contract of Carriage governs with respect to the transport of Service Animals. Where we make arrangements for transportation over the lines of any other Carrier on an Interline basis (whether or not such transportation is part of a through service), the Interline Carrier's Contract of Carriage governs, including with respect to transport of Service Animals.

1. The Passenger assumes full responsibility for the safety, health, well-being, and conduct of his/her Service Animal, including the interaction of the Service Animal with other Passengers and crew members who may come in contact with the Service Animal while on board the aircraft.

2. Passengers with Service Animals will not be seated in emergency exit rows. Service Animals may not obstruct an aisle or other area that must remain unobstructed in order to facilitate an emergency evacuation.

3. Alaska accepts for transportation, without charge, a properly harnessed dog trained in law enforcement, explosive detection, drug search, and search and rescue, or other specific functions, when accompanied by its handler on official business as authorized by an appropriate federal, state, or local government agency. Such official duty status must be documented in writing to the satisfaction of Alaska. The dog will be permitted to accompany

its handler into the cabin, but not to occupy a seat. A Passenger traveling with such a dog must present a letter of mission and a copy of the dog's certification. Alaska retains the right, at its sole discretion, to refuse to transport any Animal that exhibits aggressive behavior or any characteristics that appear to Alaska to be incompatible with air travel at the airport, in the boarding gate area, or onboard the aircraft.

4. Local laws and regulations at the Passenger's final or intermediate destination(s) may apply and impose certain requirements or restrictions on the transport of Service Animals. Qualified Individuals with a Disability assume full responsibility for compliance with all governmental laws, regulations and requirements, including, but not limited to, health certificates, permits, and vaccinations required by the country, state or territory from and/or to which the Service Animal is being transported. Alaska is not liable for any assistance or information provided by Alaska or any employee or agent of Alaska to any Qualified Individual with a Disability relating to compliance with such laws and regulations. Subject to applicable laws and regulations, a Qualified Individual with a Disability is solely responsible for any expenses incurred or any consequences resulting from his or her failure to comply with applicable laws and regulations. Alaska expressly reserves the right to seek reimbursement from a Qualified Individual with a Disability for any loss, damage, or expense suffered or incurred by Alaska resulting from such Qualified Individual with a Disability's failure to comply with applicable laws and regulations.

5. (A) For International Carriage, a health certificate and other documentation may be required for Service Animals depending on the Passenger's country of destination. It is the Passenger's responsibility to ensure compliance with all such requirements. Alaska will not be responsible for any costs incurred should the Passenger not have obtained his/her animal's required health and vaccination requirements or other documentation for his/her destination. Failure to ensure that all proper steps have been taken and documentation provided may result in the Passenger's animal being placed in quarantine on arrival. Any costs related to the care of the Passenger's animal in quarantine, issued fines, and any fee associated with returning the animal to its origin will be the Passenger's responsibility.

(B) Hawaii. Service Animals must meet the State of Hawaii entry requirements in order to accompany a Passenger with a disability to/from Hawaii without quarantine. The only Service Animal permitted into Hawaii is a service dog. In addition to Alaska's general Service Animal policies, the Hawaii Department of Agriculture requires the owners of service dogs to present appropriate health documentation. The only pets or other animals permitted into Hawaii is a cat or dog. Owners must follow the standard cat or dog pet entry requirements. Animals that do not fall into the State of Hawaii Department of Agriculture definitions of a guide or Service Animal must travel as a pet in cabin or animal in the cargo hold provided the animal meets the State of Hawaii pet entry requirements. Service Animals or other animals arriving without proper documentation may be quarantined for up to 120 days in Honolulu at the owner's expense. Alaska is not responsible for any costs incurred should the Passenger arrive in Hawaii without the proper health documentation.

# Rule 15. Acceptance of Baggage

Ver esta regla en español

A. Application to both Domestic and International Carriage. Except where otherwise stated, all terms of this Rule 15 apply to Domestic Carriage and International Carriage.

B. General Conditions of Baggage Acceptance. Passengers may check Baggage for Carriage in the cargo compartment of the aircraft and/or may carry Baggage on board the aircraft subject to the provisions in this Rule. Alaska will accept for transportation as Baggage such personal property as is necessary or appropriate for the wear, use, comfort, or convenience of the Passenger for the purpose of their trip, subject to the following conditions:

1. All Baggage is subject to monitoring and inspection by Alaska and/or authorized government agencies with or without the Passenger's consent or knowledge; however, Alaska shall not be obligated to perform monitoring and inspection. Alaska may refuse to transport on any flight or may remove at any point Baggage that the Passenger refuses to submit for inspection.
2. Alaska may refuse to transport Baggage on any flight other than the one carrying the Passenger. Checked Baggage will generally be carried on the same aircraft as the Passenger unless such carriage is deemed impractical by Alaska, in which event Alaska will make arrangements to transport the Baggage on the next flight on which space is available. Alaska may also refuse to accept property (except for Assistive Devices) for transportation whose size, weight, contents, type of packaging or character renders it unsuitable for transportation on the particular aircraft which is to transport it; which cannot be accommodated without harming or annoying Passengers; or which is not suitably or adequately packaged to withstand ordinary handling.
3. Each piece of Checked Baggage tendered to Alaska must have a current identification tag or label with the Passenger's name, address, and telephone number. It is the Passenger's responsibility to attach proper identification to Baggage, and Alaska is not liable for a Passenger's failure to do so. It is also the Passenger's responsibility to claim the Checked Baggage at the Baggage claim area, and Alaska assumes no obligation to verify the identity of the owner of the Baggage at the destination airport.
4. Alaska will not accept Baggage that, because of its nature, contents, or characteristics (e.g., sharp objects, paint, corrosives, or other prohibited hazardous materials), might cause injury to Passengers or Alaska, damage to aircraft or other equipment, or damage to other Baggage.
5. Alaska will not accept Baggage that it determines cannot safely be carried in the Baggage compartment of the aircraft for any reason.
6. Alaska will not accept, store or hold Baggage from a Passenger on the day of travel at Alaska's airport Ticket counter or curbside check-in locations (where available) if tendered to Alaska earlier than four (4) hours in advance of flight departure time.

C. Checked and Carry-On Baggage. The suitability of Baggage, as to weight, size, contents, or character, and place of storage of Baggage to be carried in the Passenger compartment of the aircraft will be determined solely by Alaska. Alaska reserves the right to check a Passenger's Carry-on Baggage for any reason, including if the Carry-on Baggage cannot be safely stowed. Alaska will check Baggage, acceptable under Alaska's rules, which is tendered by a Passenger holding a valid Ticket for transportation on Alaska, or over the lines of Alaska and one or more other Carriers, subject to payment of the applicable fee (see below) and the following conditions:

1. Minimum Times for Checked Baggage: Alaska may refuse to accept any article of Checked Baggage that has not been presented, checked in, and processed in accordance with our policies on minimum required check-in and boarding cut-off times, available on our website at https://www.alaskaair.com/content/travel-info/at-the-airport/airport-boarding-times. Baggage checked in less than the minimum time required may be accepted and Alaska will make reasonable efforts, but cannot guarantee, to transport such Baggage on the Passenger's flight(s). Alaska will not assume responsibility for delivery charges if such Baggage arrives at the Passenger's destination on a subsequent flight.

   Additional passenger and baggage check-in requirements may apply on flights operated by Alaska's Codeshare Partners. These requirements may be found in the Codeshare Partners' contracts of carriage, which are available on those Carriers' websites.

Note: The time limits provided by Alaska in this Rule are minimum time requirements. Due to federal security screening measures in place at airports, Passenger and Baggage processing time may differ from airport to airport.

2. Alaska will accept Checked Baggage up to four (4) hours prior to scheduled departure time. Exception: Ticket counters which open less than four (4) hours prior to departure will accept bags when the Ticket counter opens.
3. The Passenger's name, address, and telephone number must appear on the Baggage. Alaska will supply free Baggage identification labels.
4. Alaska will issue (for identification purposes only) a Baggage Claim Tag for each piece of Baggage so delivered and covered by the Baggage Check. All Checked Baggage must be properly packed in suitcases or similar containers in order to ensure safe Carriage with ordinary care in handling.
5. Baggage will not be checked:
   a. To a point that is not on the Passenger's routing
   b. Beyond the Passenger's next point of Stopover or, if there is no Stopover, beyond the final destination designated on the Ticket.
   c. Beyond a point at which the Passenger wants to reclaim the Baggage or any portion thereof.
   d. Beyond the point to which all applicable charges have been paid.
   e. Beyond a point at which the Passenger is to transfer to a connecting flight, if that flight is scheduled to depart from an airport different from the one at which the Passenger is scheduled to arrive.
6. Live Animals will not be checked beyond a point of transfer to another Carrier, except on flights operated by one of our regional partners.
7. When Baggage is carried on board the aircraft, it must be stored under a seat or in an overhead compartment. The suitability of Baggage as to weight, size, contents, and character will be solely determined by Alaska.

D. Free Carry-On Baggage Allowance. Alaska will transport a fare-paying Passenger's Carry-On Baggage between points on its lines for which a valid Ticket is presented without charge, subject to the following:

1. Each ticketed Passenger is allowed one Carry-On Bag and one small personal item.
   a. The Carry-On Bag dimensions must not exceed 9" in height by 14" in width by 22" in length.
   b. Small personal items include items such as purses, briefcases, laptop computer cases, small musical instruments, small cameras, pet kennels and diaper bags.
   c. To qualify as Carry-On Baggage or as a small personal item, a Passenger's small musical instrument must be able to be stowed safely in the overhead compartment in the aircraft cabin or under the Passenger's seat, in accordance with the requirements for Carriage of Carry-On Baggage established by the FAA, and there must be space for such stowage at the time the Passenger boards the aircraft. If a musical instrument is too large to stow safely in the overhead compartment in the aircraft cabin or under the Passenger's seat or such stowage space is unavailable at the time the Passenger boards the aircraft, the musical instrument must be carried onboard the aircraft as Cabin-Seat Baggage subject to the terms and conditions set forth in Section 15.K below or as Checked Baggage subject to the terms and conditions set forth in Sections 15.E, F and H below.
   d. Carry-On Baggage and small personal items must be capable of being carried onboard the aircraft by one Passenger without additional assistance (except for a Qualified Individual with a Disability requiring assistance due to

their disability) and must be capable of being stowed under a seat or in an overhead compartment.

2. Items exceeding the free allowance (see exceptions below) will be charged as indicated in Section 15.F and tagged for delivery to Baggage claim at the Passenger's destination.

3. All items brought onboard count toward the Carry-On Baggage and small personal item piece limit except the following:
   a. Coats, hats, or umbrellas;
   b. Reasonable amount of reading material;
   c. Infant/Child safety seats, baby carrier backpack, strollers (based on space availability; space guaranteed only with the purchase of a Ticket for the Infant);
   d. Mobility/Medical Assistive Devices, such as wheelchairs, canes, crutches, continuous positive airway pressure (CPAP) machines, POC, etc.;
   e. Service Animals;
   f. Food for immediate consumption; and
   g. A pillow for personal use.

4. The following items count as the "one" free Carry-On Bag and may exceed the Carry-On Baggage dimensions as long as they can be safely accommodated in a proper stowage compartment in the cabin of the aircraft:
   a. Human organs;
   b. Art/Advertising portfolios;
   c. Paintings;
   d. Delicate scientific equipment;
   e. Fishing poles; or
   f. Duty Free Items.

5. Alaska reserves the right to further restrict the number of Carry-On Bags and small personal items carried onboard its flights.

E. Checked Baggage Charges. Baggage exceeding the free Carry-On Baggage allowance shall be checked and will be accepted for transportation (subject to aircraft load conditions) only upon payment of the following charges. Charges are assessed to the destination or first Stopover of twelve (12) hours or more. Checked Baggage charges must be paid again by Passengers who continue their journey and check bags after a Stopover of twelve (12) hours or more. If a piece of Checked Baggage falls into more than one charge category (e.g. Checked Baggage, overweight and/or oversize), only the greater of the charges shall apply. Due to limited aircraft size, limited cargo hold capacity and restricted gross take-off weights, excess, oversized and/or overweight Baggage presented or transferred at departure time without a prearranged reservation for space may travel on a space-available basis.

F. When Alaska Airlines' Baggage policy applies (see 15.R below), the applicable rules and fees can be found on www.alaskaair.com, provided that the following rules and fees are in effect for air transportation operated by Alaska and/or its regional partners between the U.S. and Canada:

   1. Checked Baggage Charges

### Checked Baggage Piece

| 1st | $30 USD/CAD |
|-----|-------------|

**Checked Baggage Piece**

| | |
|---|---|
| 2nd | $40 USD/CAD |
| 3rd | $100 USD/CAD |
| 4th plus | $100 USD/CAD each |

2. **Exception 1:** Charges for MVP Gold 75k level Mileage Plan/**one**world Emerald members.

3.

**Checked Baggage Piece**

| | |
|---|---|
| 1st | Free |
| 2nd | Free |
| 3rd | Free |
| 4th plus | $100 USD/CAD each |

4. **Exception 2:** Charges for MVP and MVP Gold Level Mileage Plan/**one**world Ruby and Sapphire members, Club 49 members, and Passengers confirmed in first class at the time of check-in/Baggage acceptance.

5.

**Checked Baggage Piece**

| | |
|---|---|
| 1st | Free |
| 2nd | Free |

**Checked Baggage Piece**

| | |
|---|---|
| 3rd | $100 USD/CAD each |
| 4th plus | $100 USD/CAD each |

6. Note: Club 49 Members must be traveling on a Ticket that contains at least one Alaskan city in the itinerary, and have their Alaska Airlines Mileage Plan number in the reservation to qualify for the Baggage exception.

7. **Exception 3:** Charges for active duty U.S. military Passengers or military recruit Passengers (with active duty U.S. military ID), and dependents of active duty U.S. military Passengers or military recruit Passengers (with active duty U.S. military ID and travel orders).

8.

**Checked Baggage Piece**

| | |
|---|---|
| 1st | Free |
| 2nd | Free |
| 3rd | Free |
| 4th | Free |
| 5th | Free |
| 6th | $100 USD/CAD each |

9. **Exception 4:** Charges for MVP Gold 75k level Mileage Plan/**one**world Emerald members whose entire Ticket and itinerary are wholly within the state of Alaska.

10.

**Checked Baggage Piece**

| | |
|---|---|
| 1st | Free |
| 2nd | Free |
| 3rd | Free |
| 4th | Free |
| 5th plus | $100 USD/CAD each |

11. **Exception 5:** Passengers whose entire Ticket and itinerary are wholly within the state of Alaska.

12.

**Checked Baggage Piece**

| | |
|---|---|
| 1st | Free |
| 2nd | Free |
| 3rd | Free |
| 4th plus | $100 USD/CAD each |

13. **Exception 6:** Car seats, baby carrier backpacks, strollers, and Assistive Devices may be checked without incurring a Baggage service charge. Passengers departing Honolulu, Kona, Maui, and Lihue are allowed to check one box of pineapples without charge on domestic itineraries. The box must be inspected by the U.S. Department of Agriculture prior to check-in.

14.

15. Overweight Charge - Checked Baggage (including Baggage accepted free of charge) may not exceed 50 pounds without incurring an overweight charge.

    a.  For reservations ticketed on or before December 4, 2018, each piece over 50 pounds, the charge shall be $75.00 USD/CAD.
    b.  For reservations ticketed on or after December 4, 2018 each piece over 50 pounds, the charge shall be $100.00 USD/CAD.

Exception: Active duty U.S. military Passengers and military recruit Passengers and their dependents eligible for the U.S. military Baggage charge waiver may check bags which weigh 70 pounds or less without incurring an overweight fee. Bags weighing 71-100 pounds shall follow the standard overweight charge noted above.

16.  Oversized Charge - Checked Baggage may not exceed 62 inches without incurring an oversize charge.
    a.  For reservations ticketed on or before December 4, 2018 each piece over 62 inches in length, the charge shall be $75.00 USD/CAD.
    b.  For reservations ticketed on or after December 5, 2018 each piece over 62 inches in length, the charge shall be $100.00 USD/CAD.

Exception: Active duty U.S. military Passengers and military recruit Passengers and their dependents eligible for the U.S. military Baggage charge waiver may check bags up to 115 linear inches without incurring an oversize charge.

Exception: Some sporting equipment may be accepted above the free standard weight or size dimensions without incurring overweight or oversize fees. Refer to the Sporting Equipment section below for additional information.

17.  Excess, oversize and/or overweight Baggage may not be accepted on certain flights as solely determined by Alaska.
18.  Alaska may, at its sole discretion, change, consider and make exceptions to its Baggage Allowance policy (e.g., to the number, size, weight, type, and/or applicable service charges) for certain Mileage Plan members, active duty U.S. military Passengers, and/or other Passengers depending on the fare class purchased or cities flown.

G.  Conditions and Charges for Acceptance of Live Animals Other Than Service Animals Alaska will accept domesticated cats, dogs, ferrets, guinea pigs, hamsters, household birds, non-poisonous reptiles, potbellied pigs, rabbits, and tropical fish for transportation at Alaska's discretion, and subject to the conditions below:

1.  Passengers seeking Carriage for a live animal other than a Service Animal must review and comply with Alaska's pet policy, available at https://www.alaskaair.com/content/travel-info/policies/pets-traveling-with-pets
2.  Alaska reserves the right to refuse Carriage of animals in cabin or as cargo at any time.
3.  Dogs and cats must comply with Alaska's minimum age limits for animal transport as set forth in Alaska's pet policy.
4.  Alaska Airlines reserves the right to require a health certificate for animals being checked as Baggage. It is the Passenger's responsibility to ensure all animal entry requirements are met. Alaska Airlines will not be responsible for any costs incurred should the Passenger not meet their animal's health and vaccination requirements for their destination.
5.  Muzzled, pregnant, injured or ill animals will not be accepted for Carriage.

6. Animals will be accepted for Carriage on Alaska flights or flights operated by Horizon or SkyWest on behalf of Alaska Airlines. Passengers connecting to another Carrier must collect the animal from Alaska at the Connection city and recheck the animal with the other Carrier. If there is more than a 4-hour Connection for an animal in the cargo hold (AVIH), the animal must be short checked from point to point. Passengers have the option to check their animal point-to-point with a 2-hour Connection.

7. Advance arrangements must be made. Space must be reserved for animals in either the Passenger or cargo compartment. Animals without reserved space will be accepted, if space is available, only after the animals for whom space has been reserved have been accommodated. The pet fare listed in Section 14 below must be collected prior to flight, is nonrefundable, and may not be applied toward future travel if unused. Passengers traveling with an animal must check the animal in at the airport Ticket counter before proceeding to the departure gate.

8. The animals must be healthy, harmless, inoffensive, odorless, and require no attention during transit. If the pet becomes ill during the flight, oxygen or other first aid procedures will not be administered. In the event of an emergency, an oxygen mask will not be available for the pet. Alaska assumes no liability for the health or wellbeing of carry-on animals. Alaska retains the right, at its sole discretion, to refuse to transport any animal that exhibits aggressive behavior or any characteristics that appear to Alaska to be incompatible with air travel at the airport, in the boarding gate area, or onboard the aircraft. In the event the animal becomes offensive or causes a disturbance during transit, the animal may be removed, at the captain's discretion, at the first stop and placed on an alternative Carrier or carried as cargo by Alaska at the Passenger's expense.

9. The Animal must be confined in a cage or container subject to inspection and approval by Alaska before acceptance and in conformance with 9 C.F.R. or IATA live animal regulations.

10. Environmental conditions must pose no hazard to the safety or comfort of the animal.

11. The Passenger must make all arrangements and assume full responsibility for complying with all applicable laws, customs, and/or other governmental regulations, requirements, or restrictions of the country, state, or territory to which the animal is being transported, including furnishing a valid health and rabies vaccination certificate when required. Alaska will not be liable for loss or expense due to the Passenger's failure to comply with this provision, and Alaska will not be responsible if any pet is refused passage into or through any country, state, or territory.

12. Animals will be transported in either the Passenger or the belly cargo compartment. However, if transported in the Passenger compartment, animals will also be subject to the additional conditions and charges specified below. Alaska reserves the right to limit the number of cages or containers per flight.

   a. Carriage of animals is limited to one cage or container in the first class Passenger compartment and a maximum of five cages or containers in the coach compartment. Only one pet cage or container is allowed per Passenger. The cage or container may contain up to two animals of the same species. Unaccompanied Minors may not travel with an animal. Animals will be accepted on a first-come, first-served basis.

   b. The cage or container must be stored under the seat directly in front of the Passenger's seat at all times, and the animal must remain in the cage or container (including head and tail) while in the gate area, during boarding and deplaning, and on board the aircraft at all times. Passengers traveling with an animal will not be permitted to be seated in a row immediately behind a bulkhead with no forward under-seat stowage, or adjacent to an emergency exit. Maximum cage or hard-sided container size is 17 in. by 11 in. by 7 1/2 in. Maximum soft-sided container size is 17 in. by 11 in. by 9.5 in. The cage

or container must be leak-proof and well-ventilated, and the pet must be able to stand up and move around the cage or container with ease. Containers made totally of wire are not accepted. The cage or container must be small enough to fit under the seat in front of the Passenger and must remain stowed under the seat in front of the Passenger during the entire duration of the flight. Passengers are responsible for ensuring that the containers meet all governmental requirements for the safe and humane transportation of the animal being transported.

c.  The only animals permitted in the Passenger compartment are: domesticated cats and dogs.

d.  Brachycephalic (short-nosed) dogs and cats are subject to respiratory problems resulting from air travel, stress, and warmer temperatures. The following breeds of brachycephalic dogs and cats (or any mix thereof), are not accepted for transport as Checked Baggage:

Dogs: Boston Terrier, Boxer (All Breeds), Bull Dog (All Breeds), Bull Terrier, Brussels Griffon, Chow Chow, English Toy Spaniel, Japanese Spaniel/Japanese Chin, Mastiff (All Breeds), Pekingese, Pit Bull (All Breeds), Pug (All Breeds), Shih Tzu, Staffordshire Terrier.

Cats: Burmese, Exotic Shorthair, Himalayan, Persian

13. Certain unusual animals/reptiles pose unavoidable safety and/or public health concerns and Alaska will not accept dogs of the Pit Bull breed (unless Service Animal), snakes, other reptiles, ferrets, rodents and spiders as in-cabin Carry-On Baggage. Carriage of any other animals as in-cabin Carry-On Baggage will be at Alaska's discretion.

14. Alaska will not be liable for illness or injury to an animal or death of an animal due to illness or injury when the animal has been handled by Alaska with ordinary standards of safety and care or when Alaska has acted in the interests of the entire flight such as in an emergency or a Force Majeure Event.

15. Charge for Live Animal Transportation – All occupied pet cages or containers are subject to the applicable pet fare. For each live animal transported by Alaska or its regional partners, applicable pet fares may be found on our web site at www.alaskaair.com, provided that, for travel between the U.S. and Canada, the charge shall be as follows:

| Pet and Carrier Combined Weight | Pet in Cabin | Pet in Baggage |
| --- | --- | --- |
| Up to 150 lbs | $100.00 USD/CAD each way | $100.00 USD/CAD each way |
| 151 lbs or more | Contact Cargo for Pricing | Contact Cargo for Pricing |

16. For policies and information about live animal transportation (or pet fares) on flights operated by a Codeshare Partner, please visit the Codeshare Partner's website, including its contract of carriage.

17. The charges outlined are applicable for all Passengers, including those whose Checked Baggage charges are waived.

18. If the animal is not called for within 6 hours after flight arrival, the animal will be placed in a local kennel at the Passenger's expense. An animal that is unclaimed by its owner or its owner's agent for a period of more than ten (10) days after the scheduled Carriage has occurred or was to occur, shall be deemed abandoned and may be turned over to a local animal shelter or pound or otherwise handled as Alaska may deem proper without any liability to Alaska. Any costs associated with reuniting an animal deemed abandoned with its owner or owner's agent shall be borne solely by the owner or owner's agent.

19. Hawaii Exceptions:
    a. Dogs and cats are the only animals accepted to/from Hawaii.
    b. Interline transfers are not permitted to Hawaii. Cats and dogs are only allowed to be transported to Honolulu Airport, unless a Passenger has a valid Neighbor Island Inspection permit for direct release at Kona, Lihue, and Kahului airports.

H. Conditions and Charges for Acceptance of Special Items. The following special items or types of items will be accepted as Baggage subject to the conditions shown. Charges are applicable from the point at which the item is accepted to the point to which the item is transported.

1. Animals, Live. *See* Paragraph G of this Rule.

2. Bassinets and Infant Carrying Seats: Bassinets are not accepted. Infant carrying seats approved by the U.S. DOT or comparable foreign agency are accepted free of charge. If the parent desires a confirmed seat for an Infant with carrying seat, a Ticket must be purchased. Use of the carrying seat onboard is on a space available basis and is contingent upon the adjacent seat being unoccupied.

3. Bicycles - see Sporting Equipment below.

4. Bowling - see Sporting Equipment below.

5. Firearms - Firearms and ammunition will be accepted as Checked Baggage only. See also Sporting Equipment below.

6. Fragile, Bulky or Perishable Items
    a. Upon request and subject to operational needs or space availability, a fragile and/or bulky item will be carried as Cabin-Seat Baggage subject to the provisions of Section 15.K below).
    b. Fragile and/or perishable items (for examples, see Paragraph d below) will be accepted as Checked Baggage in accordance with this Rule only if they are appropriately packaged in an original factory-sealed carton, cardboard mailing tube, or container or case designed for shipping such items or packed with protective internal material. Fragile, perishable or inappropriately packaged articles may be accepted from time-to-time. In such cases, Alaska is not responsible or liable for loss or damage of contents or delay in delivery resulting in damage or loss of the checked baggage where such loss or damage results solely from the inherent defect, quality or vice of the baggage or is due to fair wear and tear resulting from ordinary handling of baggage.
    c. Alaska is not liable for damage to a Passenger's Carry-On Baggage or other in-cabin property that contains fragile or perishable items when such damage is caused by the fragile or perishable items. Passengers are responsible for all damage caused by their property, whether such damage is to their own property or to someone else's property.
    d. The classes of items listed below are deemed to be fragile or perishable or otherwise unsuitable as Checked Baggage and are subject to the conditions of acceptance set forth in paragraph b above.

1. Artistic items: Paintings; drawings; pictures; sculpture; plastics; plaster of paris molds and casts; antique items; ornamental or decorator items such as vases, figurines, trophies, display models, souvenirs, heirlooms, and other art objects, and curios.
2. Chinaware/Ceramics/Pottery (see also glass) chinaware, pottery, ornamental and other articles made of baked clay, earthenware, porcelain, ivory, marble, alabaster, or other similar material, including ceramics, pots, bowls, dishes, glasses, crockery, ornaments, and decorator and other items.
3. Dry ice. A maximum of 5.5 pounds (2.5 kilograms) of dry ice per Passenger will be accepted for carriage as Checked Baggage or Carry-On Baggage provided the Baggage is properly designed to permit the release of carbon dioxide, and the container is labeled, "DRY ICE" or "CARBON DIOXIDE SOLID." The packaging must also show the net weight and identify the perishable item being preserved by the dry ice. Each container cannot have more than the maximum allowed per customer. Multiple Passengers cannot pool their portions together, even within the same traveling party.
4. Electronic and Mechanical Items: Electrical and mechanical items for business or home use, including but not limited to computers and related components, tablets, software, cellular and smart phones, pagers, fax machines, photocopiers, scanners, calculators, typewriters, dictation equipment, sewing machines, water picks, coffee pots, toasters, televisions, radios (including citizen band), stereos, recorders, amplifiers, speakers, headphones, compact disc players, compact discs, video tapes, video games, video cartridges, records, audio tapes, and turntables.
5. Garment Bags: Garment bags (and contents thereof) that are made of paper or vinyl material designed for carrying and not for shipping and garment bags (and contents thereof) that contain articles other than garments.
6. Glass (see also chinaware/ceramics/pottery): Glassware, crystal, lamps, mirrors, bottles, and other glass containers and any liquids contained therein, telescopes, binoculars, barometers and eyeglasses and contact lenses that are not in their hard cases.
7. Household articles: Lamps, lamp shades, furniture and picture frames.
8. Liquids.
9. Liquor cartons: Alcoholic beverages in retail packaging may be checked as Baggage subject to the following conditions: (a) For alcoholic beverages less than 24 percent alcohol by volume (including most wines and beers) there are no restrictions on the amount that may be accepted in Checked Baggage or purchased after completing security screening at the checkpoint (Duty Free). If traveling internationally, alcoholic beverages may be subject to customs limits in the arrival country; (b) For alcoholic beverages between 24 and 70 percent alcohol by volume, there is a limit of 5 liters (1.3 gallons) per Passenger that may be accepted in Checked Baggage, or that may be purchased after completing security screening at the checkpoint (Duty Free). Packaging must be in receptacles smaller than 5 liters. Alcoholic beverages more than 70 percent alcohol by volume will not be accepted; (c) All alcoholic beverages must be packed to prevent leakage and damage to other

Baggage. Alaska shall not be liable for breakage or spillage of alcoholic beverages. Normal Checked Baggage allowance limits, excess charges and Carry-On Baggage limits apply; (d) Up to 3 oz. (100ml) of an alcoholic beverage may be taken through the security checkpoint provided it is less than 70 percent alcohol by volume, in a container that is 3 oz. or smaller, and is carried in a plastic zip-top bag; (e) Alcohol transported on an airplane cannot be consumed on board.

10. Musical Instruments and Equipment: Guitars, violins and other stringed instruments, organs, horns, percussion, wind and brass instruments, amplifiers or speakers in conjunction with electronic instruments may be carried as Checked Baggage or as Cabin-Seat Baggage (subject to the provisions in section 15.K below). As part of a Passenger's one piece of Carry-On Baggage plus one personal item allowance and subject to Alaska's Carry-On Baggage conditions specified in section 15.D above, a small musical instrument such as a violin or a guitar can be carried in lieu of Carry-On Baggage if it can be stowed safely in an overhead bin or under a Passenger seat and there is space for its stowage at the time the Passenger boards the aircraft. If the musical instrument appears too large or irregularly shaped to fit under the seat or in the overhead compartment, or, if at the time the Passenger boards the aircraft, there is no space to stow it, it will not be accepted for in-cabin stowage except as Cabin-Seat Baggage in accordance with Section 15K below. All musical instruments, whether as Carry-On Baggage or Checked Baggage, should be in a hard sided case, and stringed instruments should have the strings loosened to protect the neck from damage due to expansion and contraction which result from temperature variations. Checked instruments cannot exceed 165 pounds and 150 linear inches (or the applicable weight/size restriction for the aircraft) and will be included in determining the Baggage allowance, and when in excess (over 2 checked items), overweight or oversize, will be subject to the excess, oversize, and overweight Baggage charge. Except for certain International Carriage subject to the terms of the Montreal Convention or Warsaw Convention, whichever may apply, Alaska is not liable for damage to musical instruments or musical instrument cases.

11. Paper: Advertising displays, business documents, models, sketches, blueprints, maps, mechanical drawings, charts, historical documents and photographs.

12. Perishable Items: Floral and nursery stock such as flower, fruit, and vegetable plants, cut flowers and foliage, floral displays, and bulbs, foodstuffs (fresh and frozen) such as fruits, vegetables, meat, fish, cheese, poultry, bakery, dairy products, medicines, plants and foliage such as branches and blossoms of flowers, spices, fruits, and vegetables.

13. Photographic/Cinematographic and Precision Equipment: Cameras, disposable cameras, photoflash equipment, photometers, spectroscopes, phototubes or other devices using sensitive tubes or plates, projectors, lenses, film, flash bulbs, microscopes, oscilloscopes, sensitive medical instruments, prostheses (other than mobility aids); dental, orthodontic, and orthotic devices, watches, and clocks and other sensitive calibrated tools and equipment.

14. Recreational and Sporting Goods: Backpacks, sleeping bags, knapsacks, (and contents thereof) made of cloth, plastic, vinyl, or other easily torn material and those that have aluminum frames, outside pockets, straps, buckles, and other protruding parts, tennis racquets, bicycles, fishing rods, skis, snowboards, boogie boards, water-skis, windsurfing equipment, firearms, sculls, surfboards, scuba-diving gear.

15. Toys: Dolls, games, dollhouses, and models.

16. Miscellaneous: Attached Articles: articles that are retied, taped, wired, or strapped to the exterior of any piece of Checked Baggage, including luggage straps. Boxes/Sacks/Bags: boxes, sacks, and bags (and contents thereof) that do not have sufficient durability, a secure closure, or provide sufficient protection from damage to the container and its contents. Brittle Items. Over-packed Baggage. Uncrated/Unprotected/Unsuitable Items: Infant strollers, baby carrier backpack, car seats, umbrellas, bag carts, and other items whose shape, material, or characteristics render them susceptible to damage. Footlockers: Footlockers of thin fiberboard base construction, metal clad with edges metal trimmed.

17. Wet Ice: Alaska will not accept wet ice or items containing wet ice as Checked Baggage or Carry-On Baggage.

e. Release Advisory: Where Passengers elect to transport fragile items without appropriate packaging, Alaska will not be liable for damage to such items in Checked Baggage, where damage results solely from the unsuitability of such items as Checked Baggage and/or the inherent defect, quality or vice of the Checked Baggage, except for certain International Carriage of such fragile items subject to the terms of the Montreal Convention or Warsaw Convention, whichever may apply. Nor will Alaska be liable for spoilage or substantial loss of value or potency which results from delay in delivery of Checked Baggage when such spoilage results solely from the unsuitability of such items as Checked Baggage and/or the inherent defect, quality or vice of the Checked Baggage, except for certain International Carriage of such items subject to the terms of the Montreal Convention or Warsaw Convention, whichever may apply.

7. Other Checked Baggage Items - The items listed below will be accepted as Baggage by Alaska in accordance with the following specified provisions.

a. Government-approved Child/Infant seat - A government-approved Child/Infant seat that conforms to all applicable Federal Motor Vehicle standards and approved in accordance with 14 C.F.R. Section 121.311, including car seats approved for airline travel, will be accepted in addition to a Passenger's Baggage allowance. When checked as Baggage, all oversize and overweight charges will apply. First and second bag charges do not apply. A government-approved Child/Infant seat for use in the Passenger compartment is permitted only when an additional seat is reserved for the Infant, a Ticket is purchased, and the seat can be secured properly by a seat belt. The accompanying Adult Passenger is responsible for ensuring that the seat functions correctly, that the Infant does not exceed the seat's limitations, that the Infant is properly secured in the seat and that the seat is secured to the aircraft seat. Except for certain International Carriage subject to the terms of the Montreal Convention or Warsaw Convention, whichever may apply, Alaska is not liable for damage to Child/Infant seats when carried as Checked Baggage.

    b. Strollers – Alaska accepts one collapsible stroller in addition to a Passenger's Baggage allowance. One non-collapsible stroller may be carried as Checked Baggage in lieu of one piece of Baggage (62 inches Maximum Outside Linear Dimensions). This item will be included in determining the Baggage allowance, and when in excess, overweight or oversize, such item will be subject to the excess Baggage charge. Except for certain International Carriage subject to the terms of the Montreal Convention or Warsaw Convention, whichever may apply, Alaska is not liable for damage to strollers when carried as Checked Baggage. Excess valuation may not be purchased for strollers.

    c. Wheelchairs - One wheelchair per Passenger will be accepted as Baggage by Alaska at no extra charge in addition to the Passenger's Baggage allowance. Excess and/or oversize/overweight Baggage charges pursuant to this Rule 15 may apply for checking in additional wheelchair(s) that are used for recreational purposes. In-cabin stowage of a wheelchair shall be in accordance with 14 C.F.R., Part 382, Subpart I. If no in-cabin storage space is available, the wheelchair will be carried in the cargo compartment of the aircraft. All types of wheelchairs will be accepted (collapsible, noncollapsible or electric-powered with wet or dry cell batteries). Alaska has the ultimate responsibility to confirm an electric-powered wheelchair has its cables disconnected and terminals protected against electrical shortages before carriage. For a wet cell battery-powered wheelchair, the Passenger must notify Alaska at least twenty-four (24) hours in advance, the Passenger must check in at least one (1) hour before the check-in time for the general public, and the battery must be disconnected and terminals protected against electrical shortages. Wheelchairs containing lithium ion batteries with a watt hour rating of 300 WH and above will not be accepted under any circumstances. Wheelchairs containing non-spillable batteries or lithium ion batteries with a watt hour rating of 300 WH or less may be carried on as Baggage or may be checked.

I. Restricted articles. Articles listed in the DOT Hazardous Materials Regulations (49 C.F.R. Parts 171-180) and/or IATA dangerous goods regulations and revisions and reissues thereof, will not be accepted for Carriage as Baggage except for dry ice and small arms ammunition (as specified in Paragraph J(12) of this Rule).

J. Sporting Equipment - Unless otherwise noted in this section, Alaska's standard checked Baggage Fees and Allowances shall apply. Items over 115 linear inches (length plus height plus width) shall not be accepted as checked baggage unless noted in this section. Items that are 100 lbs or greater shall not be accepted as Checked Baggage. When special items are carried over the lines of more than one Carrier, check with each Carrier for acceptance policies and rates. The sporting equipment listed below will be accepted as Baggage by Alaska in accordance with the following provisions and/or special item handling charges specified. Charges are based on a one-way trip and are applicable from the point at which the item is accepted to the point to which the item is transported. Where an item is not included in the Baggage Allowance, it will be subject to both the Excess Baggage Charge (but not Oversize/Overweight Baggage charges) and the service charges below. Other items listed below will be treated as Checked Baggage and included in the normal Checked Baggage allowance, or checked as excess Baggage. Except for certain International Carriage subject to the terms of the Montreal Convention or Warsaw Convention, whichever may apply, Alaska is not liable for damage to the items specified below when carried as Checked Baggage.

    1. Antlers: Antlers will only be accepted as Checked Baggage when they are properly packaged in an enclosed container acceptable to Alaska and meet normal size and weight restrictions. Antlers must be as free of residue as possible and the skull must

be wrapped and tips protected. The Passenger must make all arrangements and assume full responsibility for complying with any applicable laws, customs, and/or other governmental regulations, requirements, or restrictions of the county, state territory, or country to and from which the antlers are being transported.

2.  Archery equipment: One piece of archery equipment consisting of a proper soft or hard archery case containing bows and arrows may be checked in lieu of one piece of Checked Baggage as long as the bow and arrows are encased in a container acceptable to Alaska for withstanding normal Baggage handling without sustaining damage to the equipment. Checked archery pieces weighing 51 pounds or greater, or exceeding 62 linear inches may be checked without being assessed an oversize/overweight charge.

3.  Bicycles: One item of bicycling equipment is defined as one bicycle, non-motorized, with single or tandem Alaska will only accept bicycles properly packed in a hard-sided bicycle box or container, with handlebars turned sideways, protruding pedals and accessories removed, and all sharp protrusions padded so as not to be damaged by or cause damage to other Baggage. Checked bicycles weighing 51 pounds or greater, or exceeding 62 linear inches, may be checked without being assessed an oversize/overweight charge.

4.  Bowling equipment: One piece of bowling equipment consists of a proper soft or hard sided bowling ball case acceptable to Alaska, with no limit to the items inside the case. Pieces weighing 51 pounds or greater, or exceeding 62 linear inches, may be checked without being assessed an oversize/overweight charge.

5.  Camping equipment: Tents, backpacks, knapsacks or sleeping bags acceptable as Baggage, must meet all normal Baggage restrictions. Camping equipment and fuel containers that once contained liquid fuel (i.e. camping stoves, portable heaters and flammable liquid lanterns) are allowed as long as the fuel system is completely dry with no fuel remaining in the tank or in any hoses or parts and no remaining fuel odor is evident. Any type of fuel is forbidden from transport in Checked Baggage in accordance with DOT Hazardous Materials Regulations. Fuel can be shipped as regulated dangerous goods through the cargo facility. Self-heating meals (i.e. MREs, flameless ration meals) are not permitted as Carry-On Baggage or Checked Baggage due to the risk of unintentional activation of the heating source. Passengers may transport these via air cargo only. Propane and empty propane tanks may only be shipped on all-cargo aircraft. No matches/lighters are permitted in Checked Baggage.

6.  Fishing equipment: One piece of fishing equipment is defined as two rods, two reels, and one tackle box. Fishing poles that cannot be broken down adequately to be stowed on board in an overhead bin must be encased in a cylindrical fishing rod container acceptable to Alaska for withstanding normal Checked Baggage handling without sustaining damage to the rod and must be checked. Fishing equipment weighing 51 pounds or greater, or exceeding 62 linear inches, may be checked without being assessed an oversize/overweight charge.

7.  Golfing equipment: One piece of golfing equipment consists of equipment in a proper soft or hard sided golf case acceptable to Alaska. There is no limit to the number of items inside the golf case. Golf equipment weighing 51 pounds or greater, or exceeding 62 linear inches, may be checked without being assessed an oversize/overweight charge.

8.  Hockey/Lacrosse equipment: One piece of hockey/lacrosse equipment consists of hockey/lacrosse sticks not in a bag/box (multiple sticks must be taped/attached together) and miscellaneous hockey/lacrosse equipment in a bag/box (skates, pads, pucks, gloves, etc.). Sticks may be checked separately for no additional charge and may exceed 62 linear inches, but must not exceed 115 linear inches, without incurring an oversize charge. Hockey/Lacrosse equipment weighing 51 pounds or

greater or exceeding 62 linear inches, may be checked without being assessed an oversize/overweight charge.

9. Kayaks: Kayaks will be accepted as Checked Baggage subject to the following restrictions: Kayaks are subject to standard overweight or oversize charges with maximum dimensions of 115 linear inches and maximum weight of 100 lbs. One set of kayak paddles may be included in this charge and must be securely taped to the kayak or boxed. Alaska does not provide paddle boxes at the counter. Only kayaks of polyethylene construction are acceptable to Alaska. Kayaks of glass construction are not accepted. Kayaks are not accepted on Alaska flights operated by Horizon or SkyWest on behalf of Alaska Airlines.

10. Pole vaulting equipment will be accepted on Alaska mainline flights only. It is not accepted on Alaska flights operated by Horizon or SkyWest on behalf of Alaska Airlines. One piece of pole vaulting equipment may contain up to two pole vaults. Such equipment does not require a case. Maximum dimensions of 6 in. x 6 in. x 17 ft. are allowed with 737 aircraft and 6" x 6" x 15' on Airbus Aircraft.

11. Scuba equipment: One piece of scuba equipment consists one scuba gear container. The scuba gear container is limited to one regulator, one tank harness, one pressure gauge, one mask, two fins, one snorkel, one knife, one spear gun, and one safety vest. On flights operated solely by Alaska, Horizon, or Skywest on behalf of Alaska, one scuba tank may be included as part of the scuba gear container and checked at no additional charge. The tank's regulator valve must be disconnected, and the tank must have an opening for visual inspection. Scuba tanks shall not be accepted on flights operated with Airbus Aircraft.

12. Shooting equipment (sporting firearms): Each individually checked firearm case is subject to standard Checked Baggage, overweight and/or oversize charges. There is no limit to the number of items contained in a rifle, shotgun or pistol case, up to 50 lbs, 62 linear inches maximum. Overweight or oversize items shall be subject to applicable charges.

Note: The term "firearm" describes any weapon that will or is designed to or may be readily converted to expel a projectile by the action of an explosive, or the frame or receiver of any such weapon. This includes: sporting rifles, shotguns, and handguns; handguns of authorized law enforcement officers while traveling on official duty; silencers/suppressors; starter pistols, compressed air or BB guns, and flare pistols; and antique firearms.

   a. Firearms must be unloaded and packed in (1) a manufacturer's crush-proof type container, manufactured specifically for the firearm or (2) a hard case acceptable to Alaska. Handguns checked as Baggage must be contained in a hard-sided, lockable case, or in a hard-sided container inside a soft-sided case acceptable to Alaska. Firearm containers must lock with a key or lock combination that remains in possession of the Passenger and must be locked by the Passenger in the presence of Alaska. No exceptions. Baggage containing firearms will be transported in an area, other than the cockpit, that is inaccessible to the Passenger.

   b. Baggage containing firearms will not knowingly be accepted for transportation at point of origin or at an online or interline connecting point unless a declaration, signed and dated on the day the Baggage is accepted for transportation, is placed inside the case containing the firearms, declaring that the firearms are not loaded.

   c. Ammunition up to 50 lbs. for domestic travel and up to 11 lbs. for international travel is permitted on Alaska mainline flights and Horizon flights operated on behalf of Alaska Airlines only. Passengers checking in or

connecting to SkyWest flights operated on behalf of Alaska Airlines are limited to 11 lbs. of ammunition.

d. Ammunition must be securely packed in the original manufacturer's package or in a container designed for ammunition and of sufficient strength to protect it from accidental crushing or discharge (i.e. wood, fiber, plastic, or metal). The projectile must be no larger than 11/16" in diameter, the size of a dime. Ammunition may be checked with or separately from the firearm. It can only be accepted inside an ammunition clip if enclosed inside a suitcase, firearm case, etc. Ammunition purchased over the counter for rifles and pistols (.50 caliber or smaller, and 8, 10, 12, 16, 20, 28 and .410 shotgun shells) are acceptable as Baggage provided they are packaged properly. Dragon Breath shotgun shells are forbidden.

e. Firearms (all rifles), other than handguns, must be packed with the bolt (if included) removed when possible, and/or the action in an open position. Passengers picking up their rifle case(s) are required to present photo ID or claim checks at the Baggage claim or Ticket counter area.

f. Firearms and ammunition may not be checked to foreign destinations involving a Connection to another Carrier. Passengers need to reclaim their firearms(s) and ammunition at the final Alaska destination and check it directly with the other Carrier.

g. Firearms and ammunition may be checked for domestic travel involving a Connection to another Carrier other than Alaska subject to the acceptance policy of the other Carrier. The Passenger shall verify the specific policy of the other Carrier prior to checking these items.

h. Minors under 18 may not transport a firearm(s)/ammunition.

i. The Passenger must obtain prior to travel any necessary government permits, supporting documents, or notice of additional government requirements/restrictions to carry firearms to/from/via international points, including Canada and Mexico.

13. Skateboards: A maximum of one skateboard if not in a case will be considered one piece of Checked Baggage. If in a proper case, there is no limit to the number of items as long as, it does not exceed 50 lbs., 62 linear inches maximum.

14. Skiing Equipment: One piece of skiing equipment consists of one ski bag and one ski boot/helmet bag. Skiing equipment must be packaged in a proper soft or hard ski/snowboard/boot bag acceptable to Alaska. Ski equipment may exceed 62 inches without incurring an oversize charge. However, if additional items are packed with the ski/snowboard equipment, standard overweight fees may apply.

15. SurfboardsPaddleboards: One item of surfing or paddle equipment is defined as a surfboard or paddleboard case with up to two boards inside. On flights operated solely by 737 aircraft, the equipment may measure up to 115" (9 ft., 7 in.) in length alone. For flights operated by Horizon E175, Q400 or SkyWest ERJ 175 aircraft, the equipment may not exceed 115" in combined linear dimensions (height + length + width). The maximum single dimensions for E175 and Q400 aircraft is 8 feet.

16. Windsurfing equipment: Windsurfing equipment is not required to be in a case and consists of one windsurfing board and one mast, boom, and sail. On Airbus aircraft, the maximum mast length is 15 ft. On Alaska flights operated by Horizon E175, Q400 or Skywest ERJ 175 aircraft on behalf of Alaska Airlines, the maximum single dimension is 8 ft.

K. Cabin-Seat Baggage Charges. When a Passenger requests that item(s) of Baggage be carried in the Passenger cabin of the aircraft, and Alaska determines in its sole and absolute discretion that the item is acceptable as Cabin-Seat Baggage but is so fragile and/or bulky as to require the use of a seat, the Baggage must be carried aboard the aircraft by the Passenger and secured in the seat next to the Passenger's seat. Alaska will charge 100% of

the applicable Adult fare. Alaska will not include the Cabin-Seat Baggage in determination of free Baggage allowance or excess Baggage charges. There are specific seating requirements when transporting Cabin-Seat Baggage. Alaska reservations can verify seating requirements for the flight. Note: For transportation to/from/between Alaska flights operated by Horizon or SkyWest on behalf of Alaska Airlines charges/Carriage restrictions of Cabin-Seat Baggage is to be consistent through to the destination using the highest applicable rate and the most restrictive rules for acceptance. The following provisions apply to Cabin-Seat Baggage:

1. Cabin-Seat Baggage is subject to inspection.
2. Such items must be able to withstand the rigors of flight and must be packaged or covered, as necessary, to prevent contents from escaping and to avoid possible injury to other Passengers. It is prohibited for either the instrument or the case to contain any object not otherwise permitted to be carried in an aircraft cabin by the rules contained in this Contract of Carriage, or any applicable law, regulation, rule, and/or security directive.
3. Cabin-Seat Baggage must be carried aboard the aircraft and strapped in a seat adjacent to the owner using the seatbelt securely fastened (eliminating the possibility of shifting).
4. The weight of the item (including any case or covering) is not to impose any load on the aircraft's seats or floor structure that exceeds the load limitations for these components, and cannot exceed 165 pounds, or the applicable weight restrictions for the aircraft.
5. No article secured to a seat may obstruct access to, or use of, any emergency or regular exit; block or protrude into any aisle or exit path; or obstruct any Passenger's view of the overhead fasten seatbelt and no smoking signs or any required exit sign or video monitor/screens.
6. No Cabin-Seat Baggage may be secured in an emergency exit seat.
7. A seat for ticketed Cabin-Seat Baggage must be reserved in advance and the applicable charges must be paid.
8. Cabin-Seat Baggage may not be accepted on some aircraft with weight/size restrictions.
9. Alaska personnel, including flight attendants and other crew members, cannot assist with the movement or placement of Cabin-Seat Baggage.

L. Liability – Baggage and Personal Property for International Carriage Governed by the Montreal Convention and the Warsaw Convention

For the purposes of International Carriage governed by the Montreal Convention or Warsaw Convention, whichever may apply, the liability rules set out in the Montreal Convention and Warsaw Convention are fully incorporated by reference herein and shall supersede and prevail over any provisions of this Contract of Carriage which may be inconsistent with those rules.

Destruction, Loss, or Delay of Baggage. Alaska's liability for damages sustained in the case of destruction or loss of, damage to, or delay of Checked Baggage and Unchecked Baggage governed by the Montreal Convention or Warsaw Convention, is provided in the following paragraphs:

1. Except as provided below, the liability of Alaska is limited to 1,288 Special Drawing Rights ("SDRs") for each Passenger in the case of destruction, loss, damage, or delay of Baggage, whether checked or unchecked, under the Montreal Convention or the Warsaw Convention, whichever may apply. Unless the Passenger proves otherwise: (a) all Baggage checked by a Passenger shall be considered to be the property of that Passenger; (b) a particular piece of Baggage, checked or unchecked,

shall not be considered to be the property of more than one Passenger; (c) Unchecked Baggage shall be considered to be the property of the Passenger in possession of the Baggage at the time of embarkation.

2. If a Passenger makes, at the time Checked Baggage is handed to Alaska, a special declaration of interest and has paid a supplementary sum, if applicable, Alaska will be liable for destruction, loss, damage, or delay of such Checked Baggage in an amount not exceeding the declared amount, unless Alaska proves that the declared amount is greater than the Passenger's actual interest in delivery at destination. The declared amount, and Alaska's liability, shall not exceed the total amount of declaration permissible under Alaska's regulations, inclusive of the limitation of paragraph L(1) hereof. In the case of transportation under the Warsaw Convention, no supplementary sum shall apply unless the declared amount exceeds 19 SDRs per kilogram of the total recorded weight of the Checked Baggage at the time the Baggage is handed to Alaska. Nevertheless, Alaska may impose charges for pieces of Baggage in excess of any free allowance Alaska may provide.

3. For purposes of determining liability with respect to lost, damaged or destroyed Baggage under the Warsaw Convention, the weight of each piece of such Baggage shall be deemed to be the maximum allowable weight for each piece of such Baggage under the applicable restrictions, unless the actual weight is stated on the Baggage Check.

4. In the event of delivery to the Passenger of part but not all of the Passenger's Checked Baggage, or in the event of damage to part but not all of such Baggage, the liability of Alaska with respect to the undelivered or damaged portion under the Warsaw Convention shall be reduced proportionately on the basis of weight, regardless of the value of any part of the Baggage or contents thereof.

5. Alaska is not liable for destruction, loss, damage, or delay of Baggage not in the charge of Alaska, including Baggage undergoing security inspections or measures not under the control and direction of Alaska.

6. Alaska is liable for damage sustained in case of destruction or loss of Checked Baggage upon condition only that the event which caused the destruction or loss took place on board the aircraft or during any period within which the Checked Baggage was in the charge of Alaska. However, Alaska is not liable if and to the extent that the damage resulted from the inherent defect, quality or vice of the Baggage. Further, Alaska's liability for the destruction, loss, damage or delay of Baggage is subject to the terms, limitations and defenses set forth in the Warsaw Convention and the Montreal Convention, whichever may apply, in addition to any limitation or defense recognized by a court with proper jurisdiction over a claim.

7. Alaska reserves all defenses and limitations available under the Montreal Convention and the Warsaw Convention, whichever may apply, to such claims including, but not limited to, the defense of Article 20 of the Warsaw Convention and Article 19 of the Montreal Convention, and the exoneration defenses of Article 21 of the Warsaw Convention and Article 20 of the Montreal Convention, except that Alaska shall not invoke Article 22(2) and (3) of the Warsaw Convention in a manner inconsistent with paragraph 1 hereof. The limits of liability shall not apply in cases described in Article 25 of the Warsaw Convention or Article 22 (5) of the Montreal Convention, whichever may apply.

M. Notice of Irregularity and Filing of Claim: Except to/from Canada. An incident involving loss of, or damage to, or delay in the delivery of Baggage or personal property accepted into the custody of Alaska must be reported in writing to an Alaska representative within twenty-four (24) hours. All claims for loss are subject to the rules sets forth in Rule 15.O.

N. Limitations of liability for Domestic Carriage: Maximum total liability of Alaska, if any, for substantiated damages in the event of loss, physical damage, or delay in the delivery of Checked Baggage, with the exception of wheelchairs, mobility aids, and Assistive Devices

used by a Qualified Individual with a Disability, shall be limited to the proven amount of damage or loss, but in no event shall be greater than USD $3,800.00 per ticketed Passenger pursuant to 14 C.F.R. Section 254.4, unless the Passenger at time of check-in has declared the value of the Baggage to be in excess of USD $3,800.00 ("excess valuation") and has paid an additional charge for higher liability as provided below. This limitation shall also apply to Baggage or personal property accepted for temporary storage at a city or airport Ticket office or elsewhere before or after the Passenger's trip. Alaska will compensate the Passenger for reasonable, documented damages incurred as a direct result of the loss, damage to, or substantial delay in the delivery of such Baggage, up to the limit of liability, or declared value, whichever is higher, provided the Passenger has exercised reasonable efforts and good judgment to minimize the amount of damage. Actual value for reimbursement of lost or damaged property shall be determined by the documented original purchase price less depreciation for prior usage. Passenger will be responsible for documenting and proving the actual value of the loss. For Baggage claims, reimbursement for any expenses will be based upon proof of claim acceptable to Alaska. When transportation is over the lines of Alaska and one or more Carriers with a limitation of liability other than USD $3,800.00 for each fare-paying Passenger and responsibility for the loss, damage or delay in delivery of Baggage cannot be determined, total liability of the combined Carriers will be the lowest maximum liability. Exception 1: Alaska's maximum liability for a lost, damaged or destroyed wheelchair or other Assistive Device, is the original, documented purchased price of the device. Exception 2: Liability limit on game meat: Alaska will be liable for loss, but not damage or spoilage of "game meat" as Checked Baggage. Game meat includes any type of meat that was obtained by the Passenger by means other than purchasing in a store, for example: fresh caught fish or meat obtained from a hunt. Liability will be based on a flat rate of $10.00 per pound up to maximum liability of USD $3,800 per ticketed Passenger.

1. Exclusions from Liability:
   a. Alaska does not assume liability for claims of missing or damaged items if a Passenger's Checked Baggage is not damaged, delayed, or lost.
   b. Minor damage to Baggage: When Alaska has exercised ordinary standard of care, it assumes no liability for incidental damage such as scuffs, dents, stains, punctures, marks, dirt, scratches, and cuts that result from normal wear and tear.
   c. Previously damaged items: Alaska assumes no responsibility and will not be liable for further damage to previously damaged items. Alaska may, but is not obligated to, conditionally accept previously damaged items.
   d. Damage to wheels/handles/pockets: Alaska shall not be liable for damage to protruding parts of Checked Baggage, including, but not limited to, wheels or feet, pockets, hanger hooks, pull handles, straps, zippers, locks, or telescoping handles that are attached to the exterior of Checked Baggage where such damage results from the inherent defect, quality or vice of the Checked Baggage. Furthermore, Alaska assumes no liability for defects in Baggage manufacture or for fair wear and tear resulting from ordinary handling of Checked Baggage. These exclusions apply whether or not the Passenger is advised by the customer service agent.
   e. Carry-On Baggage/unchecked property: Alaska will not be liable for damage, loss or theft of items taken on board an aircraft and remaining in the personal possession and care of the Passenger. Carry-On Baggage is the sole responsibility of the Passenger, and Alaska is liable only to the extent the damage resulted from its fault, or that of its contractors or agents. Assistance provided by flight crew members to properly store such items does not transfer liability to Alaska.

f. Unsuitable, valuable articles: The following items are judged to be unsuitable as contents of Checked Baggage. Except for certain International Carriage of such items subject to the terms of the Montreal Convention or Warsaw Convention, whichever may apply, Alaska assumes no liability for loss, theft, damage or delay in the delivery of:

1. cash, currency;
2. negotiable papers;
3. securities;
4. business or personal contracts, documents;
5. jewelry, watches;
6. cameras, videos and photographic equipment, camcorders, audio equipment, film, camera equipment, photographs;
7. electronic equipment/devices and personal electronic equipment/devices, including components thereof;
8. computers and related components;
9. binoculars, telescopes, optical devices including eyeglasses;
10. silverware, pottery, porcelain and china;
11. precious metals, stones or materials;
12. art objects, sculptures, paintings;
13. historical artifacts;
14. original manuscripts;
15. irreplaceable books, publications, collectibles (such as baseball cards);
16. antiques, heirlooms, collector's items, and artifacts;
17. keys;
18. sales samples and items intended for sale;
19. medications;
20. furs, including coats, gloves, hats; or
21. game trophies, antlers, and pelts.

Note: When transportation is via Alaska and one or more Carriers which exclude certain items in Checked Baggage from their liability, Alaska will not be liable for the excluded items, except for certain International Carriage of such items subject to the terms of the Montreal Convention or Warsaw Convention, whichever may apply.

g. Attached items: Alaska will not be liable for tents, sleeping bags, or similar articles which are strapped, taped, or tied to another piece of Baggage and may become separated as a result of normal handling during transportation.

h. Pets: Passengers presenting pets for checking as Baggage or Carriage in the Passenger cabin will be responsible for compliance with all government regulations and restrictions, including furnishing valid health and vaccination certifications when required. Alaska will not be responsible for any expenses or loss that might result when any pet is refused passage into or through any country, state or territory.

i. Unclaimed Baggage: Alaska will not be liable for Baggage not claimed within 30 minutes after Baggage has been made available for claiming in a public Baggage claim area.

Note: TSA accepted locks are suggested, as TSA may need to physically inspect a piece of luggage. If a bag is locked, TSA may cut the lock off. Alaska is not liable for locks damaged or missing as a result of TSA inspection.

2. Declaration of Higher Value for Checked Baggage: When checking in for a flight and presenting Baggage to be checked for transportation, a Passenger may declare a value higher than the maximum amounts specified above, up to a maximum of USD $5,000.00 in which event Alaska's liability shall not exceed such higher declared value. The one-way charge for the declaration of higher value shall be USD $1.00 per USD $100.00 of additional declared value. Excluded items listed in Rule 15(N)(1) above are not acceptable for higher value declaration. When excess value is declared, the Passenger's Baggage and its contents may be inspected by Alaska. Such Baggage must be checked, and excess valuation coverage will apply only to the point to which it is checked by Alaska and claimed by the Passenger.

3. Excess value charges will be payable on a one-way basis at the point of origin for the entire journey to the final destination, provided that, if at a Stopover en route, a Passenger declares a higher excess value than that originally declared, additional value charges for the increased value from Stopover to the final destination will be due from the Passenger. Exception: Excess value charges will be due from the Passenger to Alaska only to the point to which the Baggage is checked, or to the point of transfer to another Carrier, if such point is before the point to which Baggage is checked.

4. Alaska has the discretion to not accept Baggage of any one Passenger having a declared value higher than $5,000 USD, unless special arrangements have been made in advance by the Passenger with Alaska.

5. Interline Variations on Liability: When personal property, including Baggage, is tendered for transportation via Alaska in conjunction with another Carrier having a different limit of liability and/or declared higher value, Alaska shall not be liable for any amount in excess of its limits as specified herein.

O. Time Limitations on Claims. For International Carriage, no action shall be maintained for any loss of, or damage to, or any delay in the delivery of, any property or Baggage, or on any other claim (except claims for personal injury or death), arising out of or in connection with transportation of, or failure to transport any Passenger or property or Baggage unless the claim is presented in writing to an office of Alaska or its agent, or in the case of interline transportation, to the Carrier alleged to be responsible therefore immediately after the discovery or at the latest, within seven (7) days from the date of receipt of Checked Baggage. In the case of delay, the complaint must be made at the latest within twenty-one (21) days from the date on which the Baggage has been returned; reimbursement will be based upon acceptable proof of claim. For Domestic Carriage, notice and proof of loss must be presented in writing to an office of Alaska within forty-five (45) days after the alleged occurrence of the events giving rise to the claim, and any legal action arising from those events must be initiated within two (2 years). Any written notification received within 45 days after which clearly indicates the nature of the claim is sufficient to meet the requirements for timely notice. Failure to give the above notice shall not be a bar if the claimant can show good cause for his/her failure to bring the claim within 45 days.

P. Baggage Delivery. Alaska will pay delayed Checked Baggage delivery charges only so long as such Baggage was tendered to Alaska by the Passenger in accordance with the minimum check-in times set forth in Section 15.C Where timely tender is made, Alaska will make reasonable efforts, but cannot guarantee, to transport such Baggage on the Passenger's flight(s), and Alaska will not assume responsibility for delivery charges if such Baggage arrives at the Passenger's destination on a subsequent flight.

Q. The provisions of Tariff AS-1 NTA(A) No. 378 (Acceptance of Baggage - General) are wholly incorporated by reference in this Rule 15 and are applicable to transportation to/from Canada, provided, however, that for the purposes of International Carriage governed by the Montreal Convention, the liability rules set out in the Montreal Convention are fully incorporated herein and shall supersede and prevail over any provisions of this Contract of Carriage which may be inconsistent with those rules.

R.  For International Carriage to/from Canada, the following rules apply:

1.  The provisions of this Rule 15 are applicable to travel to/from Canada where such travel is intraline (online) or Interline and Alaska's Baggage rules apply to an entire itinerary. To the extent that the liability rules of the Montreal Convention conflict with Rule 15, the Montreal Convention shall supersede Rule 15.

2.  For other interline itineraries issued on a single Ticket whose origin or ultimate ticketed destination is in Canada, Baggage rules will be selected as set forth below. For the purposes of interline Baggage acceptance:

   a.  The Carrier whose designator code is identified on the first Segment of the Passenger's interline Ticket will be known as the Selecting Carrier.

   b.  Any Carrier who is identified as providing Interline transportation to the Passenger by virtue of the Passenger's Ticket will be known as a Participating Carrier.

3.  Baggage Rule Determination by Selecting Carriers - Checked Baggage: The Selecting Carrier will:

   a.  Select and apply its own Baggage rules to the entire interline itinerary. OR

   b.  Select the Most Significant Carrier, as determined by IATA Resolution 302 and conditioned by the Canadian Transportation Agency, in order for that Carrier's Baggage rules, as established in its tariff, to apply to the entire Interline itinerary.

   The Carrier identified by means of (a) or (b) will be known as the Selected Carrier.

4.  Baggage Rule Determination by Selecting Carriers - Carry-On Baggage: Each operating Carrier's Carry-On Baggage allowances will apply to each flight Segment in an interline itinerary. Notwithstanding, the Carry-On Baggage charges that will apply to the entire Interline itinerary will be those of the Selected Carrier.

5.  Baggage Rule Application by Participating Carrier: Where Alaska is not the Selected Carrier on an interline itinerary but is a Participating Carrier that is providing transportation to the Passenger based on the Ticket issued, Alaska will apply the Baggage rules of the Selected Carrier throughout the interline itinerary.

6.  Disclosure of Baggage Rules.

   Summary Page at the end of an Online Purchase and E-Ticket Disclosure.

   a.  For Baggage rules provisions related to a Passenger's first and second Checked Bag and the Passenger's Carry-On Baggage (i.e., the Passenger's "standard" Baggage allowance), when Alaska sells and issues a Ticket for an interline itinerary, it will disclose to the Passenger on any summary page at the end of an online purchase and on the Passenger's itinerary/receipt and e-Ticket at the time of ticketing the Baggage information relevant to the Passenger itinerary as set out in paragraph (b) below. The disclosed information will reflect the Baggage rules of the Selected Carrier.

   b.  Alaska will disclose the following information:
      ▪  Name of the Carrier whose Baggage rules apply;
      ▪  Passenger's free Baggage allowance and/or applicable fees;
      ▪  Size and weight limits of the Baggage, if applicable;
      ▪  Terms or conditions that would alter or impact a Passenger's standard Baggage allowances and charges (e.g. frequent flyer status, early check-in, pre-purchasing Baggage allowances with a particular credit card);

- Existence of any embargoes that may be applicable to the Passenger's itinerary; and,
- Application of Baggage allowances and charges (i.e., whether they are applied once per direction or if they are applicable at each Stopover point).

c. Alaska will provide this information in text format on the Passenger's e-Ticket confirmation. Any fee information provided for Carry-On Baggage and the first and second Checked Bag will be expressed as specific charges.

7. Web site Disclosure. Alaska will disclose on its web site, in a convenient and prominent location, a complete and comprehensive summary of all of Alaska's own Baggage rules, including information concerning:

   a. The maximum weight and dimensions of Passenger Baggage, if applicable, both checked and unchecked;
   b. The number of Checked Baggage and Unchecked Baggage that can be transported and the applicable charges;
   c. Excess and oversized Baggage charges;
   d. Charges related to check in, collection and delivery of Checked Baggage;
   e. Acceptance and charges related to special items, e.g. surf boards, pets, bicycles, etc.;
   f. Baggage provisions related to prohibited or unacceptable items, including embargoes;
   g. Terms or conditions that would alter or impact the Baggage allowances and charges applicable to Passengers (e.g. frequent flyer status, early check in, pre-purchasing Baggage allowances with a particular credit card); and,
   h. Other rules governing treatment of Baggage at Stopover points, including Passengers subject to special Baggage allowances or charges, etc.

m

# Rule 16. Codeshare Services

Ver esta regla en español

A. Alaska has arrangements with other Codeshare Partners to enable Alaska to provide services to Passengers on flights operated by these other Codeshare Partners. Transportation provided by Alaska under an arrangement with a Codeshare Partner is designated by a flight number that includes Alaska's two-letter airline designator code, "AS".

B. The rules set forth in this Contract of Carriage with respect to ticketing, reservations, cancellations, fares, and refunds apply to services on flights operated by Codeshare Partners. However, each Codeshare Partner has established rules with respect to the operation of its own flights, which may differ from those set forth in this Contract of Carriage, including but not limited to rules governing:

- Check-in time limits;
- Unaccompanied minors;
- Carriage of animals(including Service Animals);
- Refusal to transport;
- Oxygen service;
- Irregular operations;
- Denied boarding compensation; and
- Carriage of musical instruments.

Each of the Codeshare Partner rules referenced above, which are found in the Codeshare Partner's contract of carriage, are incorporated by reference in this Contract of Carriage and apply to services provided on a flight operated by the Codeshare Partner. Those Codeshare Partner rules supersede any Alaska rule set forth in this Contract of Carriage that would otherwise apply. Notwithstanding the foregoing, the Baggage acceptance and liability provisions set forth in Rule 15 shall govern the acceptance of baggage and baggage liability of Alaska with respect to any transportation subject to this Contract of Carriage.

C. When a Codeshare Partner operates a flight on which Alaska's designator code "AS" appears, the Codeshare Partner's contingency plan for lengthy tarmac delays will apply to that flight.

# Rule 17. Refunds

Ver esta regla en español

A. General: If a ticketed reservation is cancelled prior to the ticketed departure time, refund by Alaska for an unused ticket or portion thereof will be made in accordance with the following conditions, except as otherwise provided in this rule:
   1. The fare paid for unused travel by Passengers who purchase a fully refundable, unrestricted Ticket/Document, including taxes, security fees, and Passenger Facility Charges, may, for any reason, be refunded. Such refund must be requested within the Ticket's validity period. Refund will not be honored after the Ticket's validity date has expired. If the ticketed reservation is not changed or cancelled prior to the ticketed departure time, the value of the refundable ticket may be applied as travel credit toward the purchase of future travel on Alaska. Such travel credit must be requested within the ticket's validity period. Credit requests will not be honored after the ticket's validity period has expired.
   2. Persons requesting a refund must surrender to Alaska all unused flight coupon(s) of the Ticket or document.
   3. Alaska will refuse a refund on a Ticket which has been presented to government officials of a country or to Alaska as evidence of intention to depart therefrom unless the Passenger establishes to Alaska's satisfaction that he/she has permission to remain in the country or that he/she will depart from there by another Carrier or conveyance.
   4. Alaska shall make all or any individual refunds in the country/currency of issuance. All Tickets purchased in Mexico will be treated as deferred refunds and will be forwarded to Alaska's Mexico-based accounting offices for processing. No refunds will be made at Alaska's Mexico-based regional sales offices.
   5. Any tax or other charge that is imposed by a government authority and required to be collected from a Passenger will be in addition to the published fare. Such taxes and other government-imposed charges are refundable only if the purchased fare is itself refundable according to Alaska's fare rules.
   6. Alaska shall make eligible refunds in the same form as the original payment. Refunds for Tickets purchased with a credit card shall be processed for crediting to the same credit card account no later than seven (7) business days from the date the refund request is received by Alaska. Refunds for Tickets purchased with cash will be issued by check no later than twenty (20) business days after the refund request is received by Alaska.
B. Currency: All refunds will be subject to government laws, rules, regulations, or orders of the country in which the Ticket was originally purchased and of the country in which the refund is being made. Refunds will be made subject to the following provisions:

       1. Voluntary refunds of Tickets or documents purchased in currency other than U.S. dollars shall be made in the currency used for such purpose.
       2. Voluntary refunds of Tickets or documents purchased in U.S. dollars may be made in U.S. dollars or local currency in any country provided such refund is not prohibited by local governmental exchange control regulations at point of refund.
       3. Involuntary refunds of Tickets or documents shall be made in the currency used for such purchase, whenever possible. However, U.S. dollar refunds or refunds in the currency of the country where the involuntary refund is necessary may be made on request of the Passenger provided the refund in such currency is not prohibited by local governmental exchange control regulations.
       4. Refunds will be made in the currency in which the fare was paid, or in lawful currency of the country of the Carrier making the refund or of the country where the refund is made or in the currency of the country in which the Ticket was purchased, in an amount equivalent to the amount due in the currency in which the fare or fares for the flight covered by the Ticket as originally issued was collected. Note: Despite the foregoing provisions, Alaska will reserve the right to refuse to make any refund authorized by this Contract of Carriage in a currency other than that used in the purchase of the Ticket to be refunded or at a place other than that at which payment for such Ticket was made.

C. Person to Whom Refund is Made: Except as provided below, Alaska will refund in accordance with this Rule only to the person named as the Passenger on the Ticket.
       1. Exception 1: Tickets issued against a credit card or Universal Air Travel Plan (UATP) card or Government Transportation Request (GTR) honored by Alaska will be refunded only to the account of the person/subscriber to whom the form of payment was issued.
       2. Exception 2: If, at the time of purchase, the purchaser designates on the Ticket or document another person or entity to whom a refund shall be made, the refund will be made to the person so designated. A refund made in accordance with this procedure to a person representing him/herself as the person so designated on the Ticket or document shall be deemed a valid refund, and Alaska will not be liable to the true Passenger for another refund.
       3. Exception 3: If at the time of application for refund, evidence is submitted that a company purchased the Ticket or document on behalf of its employee, or the travel agent has made a refund to its client, such refund will be made directly to the employee's company or the travel agent.

D. Lost Tickets. When a Passenger loses his/her Ticket, or the unused portion thereof, Alaska, if it issued the Ticket, will refund the following amount:
       1. If no portion of the Ticket has been used, an amount equal to the fare and charges paid.
       2. If a portion of the Ticket has been used, and
          a. The Passenger has purchased a new Ticket covering the same transportation as that covered by the unused portion of the lost Ticket, an amount equal to the fare and charges paid for such new Ticket.
          b. The Passenger has not purchased a new Ticket covering the same transportation as that covered by the unused portion of the lost Ticket, an amount equal to the difference between the fare and charges paid and the fare and charges applicable to the transportation of the Passenger covered by the used portion of the Ticket.

E. Involuntary Refunds. The amount Alaska will refund upon surrender of the unused portion of the Passenger's Ticket, pursuant to Rule 11 (Refusal to Transport), Rule 13 (Acceptance of Children), or Rule 8 (Liability for Delays/Cancellations and Denied Boarding), will be:
       1. If no portion of the Ticket has been used and no portion of the transportation has been provided: An amount equal to the fare and charges paid. Exception: Alaska

shall not be obligated to refund any portion(s) of a fully unused Ticket which does not reflect a confirmed reservation on an Alaska flight involved in a schedule irregularity, unless such Ticket was issued by Alaska.

2. If a portion of the Ticket has been used or a portion of the transportation has been provided, the refund will be equal to the difference, if any, between the fare and charges paid for the ticket, and the fare and charges applicable to the used portion of the Ticket.

3. If alternative surface transportation is provided and is acceptable to the Passenger, no refund will be provided.

4. If fare is for transportation solely on substitute service flights involuntary refunds are deferred to the respective substitute service carrier's accounting office for computations.

F. Alaska will make no refund if transportation is provided from the point of Schedule Irregularity to the ticketed destination or Stopover airport, or a co-terminal as determined by Alaska. Examples of co-terminal airports include, but are not limited to:

1. Burbank/BUR, Long Beach/LGB, Los Angeles/LAX, Ontario/ONT, Orange County/SNA

2. Orange County/SNA, San Diego/SAN

3. Houston Bush/IAH, Houston Hobby/HOU

4. Palm Springs/PSP, Ontario/ONT

5. Oakland/OAK, San Francisco/SFO, San Jose/SJC

6. Washington-Reagan/DCA, Washington-Dulles/IAD, Baltimore/BWI

7. Newark/EWR, New York/JFK, New York/LGA

8. Seattle/SEA, Bellingham/BLI

9. Bellingham/BLI, Vancouver/YVR

10. Seattle/SEA, Everett Paine Field/PAE

G. Time Limitation for Refund Requests: Refunds will not apply for Tickets presented later than one (1) year from the date of issuance of the original Ticket.

H. Voluntary Refunds. When Rules 11 (Refusal to Transport), 13 (Acceptance of Children), or 8 ( Liability for Delays/Cancellations and Denied Boarding) are not applicable, the following rules apply to passenger requests only if (i) Alaska is named in the routing, (ii) the ticketed reservations is cancelled prior to the ticketed departure time, and (iii) the unused portion of the Alaska-issued ticket including the passenger receipt is surrendered. In such cases, Alaska will refund to the passenger on the following basis:

1. Any refund will be subject to fare rules of the Ticket purchased. A Credit certificate may be given for any Ticket that is nonrefundable according to its fare rules. Any tax or other charge that is imposed by a government authority and required to be collected from a Passenger is in addition to the published fare. Such taxes and charges are refundable only if the fare on which the tax or charge is assessed is itself refundable according to its fare rules.

2. If no portion of the Ticket has been used, the refund will be an amount equal to the fare, taxes, and charges paid.

3. If a portion of the Ticket has been used, the refund will be equal to the difference, if any, between the fare and charges paid for the Ticket, and the fare and charges applicable to the used portion of the Ticket.

4. Refunds will be made in accordance with section 2 or section 3 provided that the unused flight coupons are surrendered to Alaska within one (1) year of the Ticket issue date.

5. Alaska assumes no obligation to issue a voluntary refund unless such Ticket was issued on Alaska Ticket stock. The term "Alaska Ticket stock" means Tickets bearing the Alaska Carrier code (027) as the first three digits of the Ticket serial number.

Note: If a ticketed reservation is canceled prior to the ticketed departure time, any refund will be subject to fare rules of the original Ticket. A Credit certificate may be given for any Ticket that is nonrefundable according to its fare rules.

    f. Application for Refund
        1. Time limit: Application for refund of a lost Ticket must be made no later than one (1) month after the expiration date of the lost Ticket.
        2. Application must be made on forms prescribed by Alaska for such refunds, and refunds will not be issued earlier than four (4) months after receipt of proof of loss.
    g. Refund will be made only provided that the lost Ticket or lost portion thereof has not previously been honored for transportation or refunded to any person.
    h. Alaska will make such refund only provided that the person to whom refund is made agrees, in such forms as Alaska may require, to indemnify Alaska for any loss or damage which it may sustain by reason of such refund.
    i. A $60.00 USD/CAD per Ticket service charge shall be imposed for handling lost Ticket refund requests, except that no service charge shall be imposed when transportation is paid for with a US Government Issued credit card. Exception: If a lost ticket is found and returned to Alaska within four (4) months from date of reported loss, the service charge will be waived.

I. Alaska reserves the right to refuse to make any refund in a currency other than that used in the purchase or at a place other than that at which payment was made.

J. Alaska will collect a service charge on any returned check of $25.00 USD/CAD, or the maximum permitted by applicable law, if less. This charge is nonrefundable and is not subject to any discount.

K. Nonrefundable Tickets as specified in the fare rules. The fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets is not eligible for refunds. Taxes, security fees, and Passenger Facility Charges associated with a nonrefundable fare are also not eligible for refund except as required by applicable regulations. Exception: The fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets, including taxes, security fees, and Passenger Facility Charges, may be applied as travel Credit toward the purchase of future travel on Alaska, when requested directly with Alaska prior to scheduled departure time.

L. Nonrefundable and nonchangeable Tickets as specified in the fare rules. The fare paid for unused travel by passengers who purchase restricted, nonrefundable and nonchangeable Tickets is not eligible for refunds or travel credit. Taxes, security fees, and Passenger Facility Charges associated with a nonrefundable fare are also not eligible for refund except as required by applicable regulations.

# Rule 18. Fares, Charges and Currency

Ver esta regla en español

A. Transportation is subject to the fares and charges in effect when the Ticket is purchased. The fare is guaranteed once a reservation is made and a Ticket is purchased. If a Ticket is purchased before an increase in the fare becomes effective, the Ticket shall be honored for transportation between the airports and at the fare for which it was purchased.

B. Changes to any portion of a Ticket initiated by the purchaser, Passenger, or his/her authorized agent after its original issue will be subject to the fares, fare rules, and charges in effect on the date the change is initiated. A change constitutes a change in flight number, origin, destination, intermediate points, flight date, class of service, or fare.

C. Statement of Fares and Charges. All fares and charges governed by this Contract of Carriage are stated as follows:
   1. In United States dollars for transportation between the U.S.A. and Canada when travel commences in Canada. Amounts will be converted to Canadian dollars at the applicable banker's rate at time of purchase.
   2. In United States dollars for transportation between the U.S.A. and Canada when travel to Canada commences in the U.S.A.
D. Payments for Tickets shall be:
   1. In Canadian dollars at the Canadian dollar fare, or its equivalent in United States dollars converted to Canadian dollars at the banker's buying rate of exchange, when travel commences in Canada.
   2. In United States dollars at the U.S. dollar fare, or its equivalent Canadian dollars converted to U.S. dollars at the banker's buying rate of exchange, when travel to Canada commences in the U.S.A.
E. For the purpose of this Rule, the Banker's Buying Rate of Exchange means:
   1. In Canada, the unit rate published in the *Toronto Globe and Mail* Friday edition each week, as the foreign exchange mid-market rate in Canadian funds. When a national holiday falls on a Friday, the rates quoted on the previous business day will be used. These rates will be applicable from Monday of the following week up to and including the following Sunday.
   2. In theS.A., the rate published each Tuesday in the *Wall Street Journal* under the heading *Foreign Exchange*. This rate will be applicable from Wednesday of each week up to and including the Tuesday of the following week. When a national holiday falls on a Monday, foreign exchange rates do not appear in the Tuesday edition of the *Wall Street Journal*. In such exceptional cases, the previous week's rates are used through Wednesday instead of Tuesday, and the Wednesday edition of the *Wall Street Journal* will be used for the period Thursday through Tuesday of the following week.
   3. In other countries, the rate at which, for the purpose of the transfer of funds through banking channels (i.e. other than transactions in bank notes, travelers checks, and similar banking instruments) a bank will purchase a given amount of foreign currency in exchange for one unit (or units) of the country in which the exchange transaction takes place.
F. Construction of Fares. When the fare between any two points is not specifically published via the desired routing, such fare shall be constructed by combining those fares, applicable via the desired routing from the Passenger's point of origin to point of destination, which produce the lowest fare for the class of service used; provided, however, that such fare will not exceed the lowest fare determined in accordance with paragraphs (1), (2), (3), and (4) of this Rule.
   1. Circle Trip/Round-Trip Maximum - If the fare constructed for such routing exceeds the fare for a Circle Trip or round-trip constructed from the same point of origin which would include such routing, the Circle Trip or round-trip fare shall apply.
   2. Interrupted Travel - If a fare constructed for a trip interrupted by travel other than via participating Carriers exceeds the applicable through fare for uninterrupted travel via the routing, the applicable through fare shall apply.
   3. Maximum Fare - For travel via the same or different classes of service, a combination of fares of the same or different classes of service (see note below) shall not exceed the lowest of the allowed fares or combination of fares via the same Carrier(s) between and via the same point:
      a. A combination of fares via the class of service used for a portion of the transportation and fares for a higher class of service used for the remainder of the transportation; or
      b. A combination of fares via higher class of service; or

   c.  A through published fare via a higher class of service. Exception: A through published fare via a higher class of service to or from a more distant point may not be used to construct a fare for an intermediate point(s) if there is a published fare for the same higher class of service to or from such intermediate point(s).

NOTE: For the purpose of paragraphs (a), (b), and (c), fares are published in the following descending order of classes of service:

| Ticket Issue | On/before February 23, 2021 | February 24, 2021 - March 30, 2021 |
|---|---|---|
| Travel | On/before February 01, 2022 | On/before March 30, 2021 |

1.  F Fare Types - Booking Code: F
2.  P Fare Types - Booking Code: P
3.  I Fare Types - Booking Code: I
4.  Y Fare Types - Booking Code: Y
5.  S Fare Types - Booking Code: S
6.  B Fare Types - Booking Code: B
7.  M Fare Types - Booking Code: M
8.  H Fare Types - Booking Code: H
9.  Q Fare Types - Booking Code: Q
10. L Fare Types - Booking Code: L
11. V Fare Types - Booking Code: V
12. K Fare Types - Booking Code: K
13. G Fare Types - Booking Code: G
14. T Fare Types - Booking Code: T
15. R Fare Types - Booking Code: R
16. X Fare Types - Booking Code: X

| Ticket Issue | On/after February 24, 2021 |
|---|---|
| Travel | On/after March 31, 2021 |

17. F Fare Types - Booking Code: F
18. A Fare Types - Booking Code: A
19. J Fare Types - Booking Code: J
20. C Fare Types - Booking Code: C
21. D Fare Types – Booking Code: D

22. I Fare Types - Booking Code: I
23. Y Fare Types - Booking Code: Y
24. B Fare Types - Booking Code: B
25. H Fare Types - Booking Code: H
26. K Fare Types - Booking Code: K
27. M Fare Types - Booking Code: M
28. L Fare Types - Booking Code: L
29. V Fare Types - Booking Code: V
30. S Fare Types - Booking Code: S
31. N Fare Types - Booking Code: N
32. Q Fare Types - Booking Code: Q
33. O Fare Types - Booking Code: O
34. G Fare Types -Booking Code: G
35. X Fare Types - Booking Code: X

4. Construction of Fares for Combination of Jet and Propeller Transportation in the Same Class of Service: Where no through one-factor fare is published from point of origin to point of destination via the route or movement for a journey in one class of service, partly on jet aircraft and partly on propeller aircraft, the applicable fare for such transportation shall be constructed as follows: where a through one-factor fare for propeller aircraft is published from point of origin or destination via the route of movement for the class of service used, the applicable fare shall be such through one-factor fare, plus the difference between the fares for jet and propeller aircraft, for the class of service used, between the points where jet aircraft is used. For the purpose of applying paragraph (4) only, the classes of service are:
   1. When specifically published via the desired routing, the applicable round-trip fare specifically published by or on behalf of such Carrier(s).
   2. When not specifically published via the desired routing, the sum of the one-way Segments or the sum of the round-trip Segment fares if these are published.

G. Currency of Payment. Except as otherwise provided below, fares and charges are payable in any currency acceptable to Alaska. When payment is made in a currency other than the currency in which the fare is published, such payment will be made at the rate of exchange established for such purpose by Alaska, the current statement of which is available for inspection by the Passenger at Alaska's office where the Ticket is purchased. The provisions of this paragraph are subject to applicable exchange laws and government regulations.
   1. Payment of fares for travel originating in the U.S shall be in U.S. currency when payment is made in the USA for issuance of the Ticket or document.
   2. Payment of fares for travel originating at a point outside the U.S. destined to a point in the U.S. may be made in the currency of the country of origin or U.S. currency. When the fare in the currency of the country of origin is converted to U.S. currency at the local bankers' buying rate of exchange.
   3. In case of cancellation or rerouting which results in a partial refund of the original fare, the value of the unused portion of the Ticket shall be calculated in the currency of the country of transportation origination. Such amount may be refunded in the currency of the country of transportation origination or may be converted into the currency of the country of refund or reissuance at the local bankers' buying rate in effect at the time refund takes place. Note: Alaska will pay the refund in the same form (i.e., cash, check, credit card, etc.) that was used in purchasing the original transportation document. Alaska, in making the refund, will observe any refund

restriction that may be published in the applicable rules governing the original transportation document.

4. Where an additional collection is to be made as a result of the rerouting, the additional amount may be collected in the currency of the country of transportation origination or may be converted into the currency of the country in which the rerouting takes place at the local bankers' buying rate in effect at the time of rerouting. Such amount shall not be greater than the fare published in the currency of country of transportation origination for the transportation actually used and/or to be used.

5. "Bankers' Buying Rate" means the rate at which, for the purpose of the transfer of funds through banking channels (i.e., other than transactions in bank notes, travelers checks, and similar banking instruments), a bank will purchase a given amount of foreign currency in exchange for one unit (or units) of the national currency of the country in which the exchange transaction takes place.

Exception 1: In the U.S.A., the Bankers' Buying Rate means the rate published each Tuesday in the *Wall Street Journal* under the heading of "selling prices for bank transfers in the U.S. for payment abroad." This rate will be applicable from Wednesday of each week up to and including the Tuesday of the following week.

Exception 2: When a national holiday falls on Monday, foreign exchange rates do not appear in the Tuesday edition of the *Wall Street Journal*. In such exceptional cases, the previous week's rates are used through Wednesday instead of Tuesday, and the Wednesday edition of the *Wall Street Journal* will be used for the period Thursday through Tuesday.

Exception 3: In Canada, the Bankers' Buying Rate means the rate published each Saturday in the *Toronto Globe & Mail* under the heading *Foreign Exchange - Mid Market Rate in Canadian Funds*. This rate will be applicable from Monday of the following week up to and including the Sunday following after. When exceptional circumstances prevent the publication of exchange rates in the Saturday edition of the *Toronto Globe & Mail*, the currently applicable exchange rates will remain effective until two (2) days after superseding exchange rates are published. Such superseding rates will be effective through the first Sunday following their publication dates.

# Rule 19. Additional Liability Limitations for International Carriage

Ver esta regla en español

A. For purposes of International Carriage governed by the Montreal Convention or the Warsaw Convention, the liability rules set out in the Montreal Convention and the Warsaw Convention, whichever may apply, are fully incorporated by reference herein and shall supersede and prevail over any provisions of this Contract of Carriage which may be inconsistent with those rules.

B. Successive Carriers - Carriage to be performed under one Ticket or under a Ticket and any conjunction Ticket issued in connection therewith by several successive Carriers is regarded as a single operation.

C. Alaska shall avail itself of the limitations of liability provided in the Montreal Convention and the Warsaw Convention, whichever applies, for recoverable compensatory damages sustained in the case of death or bodily injury of a Passenger, as provided in the following paragraphs:

1. (a) Alaska shall not avail itself of any exoneration defense under the Montreal Convention or Warsaw Convention with respect to that portion of such claim for death or bodily injury of a Passenger which does not exceed 128,821 SDRs for each Passenger.

   (b) Alaska shall not be liable for damages to the extent that they exceed 128,821 SDRs for each Passenger if Alaska proves that: (i) such damage was not due to the negligence or other wrongful act or omission of Alaska or its contractors or agents; or (ii) such damage was solely due to the negligence or other wrongful act or omission of a third party.

   (c) Alaska reserves all other defenses and limitations available under the Warsaw Convention or the Montreal Convention, whichever applies, to such claims, including, but not limited to, the exoneration defense of Article 20 of the Montreal Convention and Article 21 of the Warsaw Convention, except that Alaska shall not invoke Articles 20 and 22(l) of the Warsaw Convention in a manner inconsistent with paragraph 1 hereof.

   (d) With respect to third parties, Alaska reserves all rights of recourse against any other person, including without limitation, rights of contribution and indemnity.

   (e) Alaska agrees that, subject to applicable law, recoverable compensatory damages for such claims may be determined by reference to the laws of the domicile or permanent residence of the Passenger.

2. In cases of bodily injury or death, Alaska shall make an advance payment where Alaska determines it is necessary to meet the immediate economic needs of, and hardship suffered by, a Passenger as provided in the following paragraphs:

   (a) Unless a dispute arises over the identity of the person to whom an advance payment shall be made, Alaska shall, without delay, make the advance payment to the Passenger in an amount or amounts determined by Alaska in its sole discretion. In the event of death of a Passenger, the amount of the advance payment shall not be less than 16,000 SDRs, which shall be paid to a representative of the Passenger's next of kin eligible to receive such advance payment as determined by Alaska in its sole discretion.

   (b) Alaska shall make the advance payment as an advance against Alaska's liability under the Montreal Convention or the Warsaw Convention, whichever may apply. An advance payment shall not constitute recognition of liability. An advance payment shall be offset against, or deducted from the payment of, any settlement or judgment with respect to any claim for compensation on behalf of the Passenger.

   (c) Alaska, in making an advance payment, does not waive any rights, defenses, or limitations available under the Montreal Convention or the Warsaw Convention, whichever may apply, to any claim, nor shall acceptance of an advance payment constitute a release of any claim, whatsoever, by any person.

   (d) Alaska, in making an advance payment, preserves its right to seek contribution or indemnity from any other person for such payment, which shall not be deemed to be a voluntary contribution or contractual payment on the part of Alaska.

   (e) Alaska may recover an advance payment from any person where it is proven that Alaska is not liable for any damage sustained by the Passenger, or where it is proven that the person was not entitled to receive the payment, or where and to the extent

that it is proven that the person who received the advance payment caused, or contributed to, the damage.

D. Alaska shall not be liable for damage occasioned by the delay in the Carriage of Passengers by air, as provided in the following paragraphs:
1. Alaska shall not be liable if it proves that it and its contractors and agents took all measures that could reasonably be required to avoid the damage, or that it was impossible for it or them to take such measures.
2. Airport, air traffic control, security, and other facilities or personnel, whether public or private, not under the control and direction of Alaska are not contractors or agents of Alaska, and Alaska is not liable to the extent the delay is caused by these kinds of facilities or personnel and Alaska took all reasonable measures to avoid the delay.
3. Damages occasioned by delay are subject to the terms, limitations and defenses set forth in the Warsaw Convention and the Montreal Convention, whichever may apply, in addition to any limitation or defense recognized by a court with proper jurisdiction over a claim.
4. Alaska reserves all defenses and limitations available under the Warsaw Convention or the Montreal Convention, whichever may apply, to claims for damage occasioned by delay, including, but not limited to, the exoneration defense of Article 20 of the Montreal Convention and Article 21 of the Warsaw Convention. Under the Montreal Convention, the liability of Alaska for damage caused by delay is limited to 5,346 SDRs per Passenger. The limits of liability shall not apply in cases described in Article 22 (5) of the Montreal Convention or Article 25 of the Warsaw Convention, whichever may apply.

E. Time Limitations on Claims and Actions
1. For Baggage claims, see Rule 15.O.
2. Any right to damages against Alaska shall be extinguished unless an action is brought within two (2) years from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the Carriage stopped. No claims for overcharge shall be valid and no action shall be maintained thereon more than one (1) year after date of sale of the Ticket.

F. Liability for Carriage Not Governed by the Montreal Convention or Warsaw Convention

For purposes of all other Carriage not governed by the Montreal Convention, Warsaw Convention or other applicable international law, the following liability limitations and other exclusions apply:

(a) Alaska shall not be liable for any death, injury, delay, loss or other damage of whatsoever nature (hereafter referred to collectively as "damage") arising out of or in connection with Carriage or other services performed by Alaska, unless such damage is proven to have been caused by the sole negligence or willful misconduct of Alaska and there has been no contributory negligence on the part of the Passenger.

(b) Alaska shall not be liable for any damage arising out of Alaska's compliance with any laws, government regulations, orders, rules, requirements or security directives or as a result of a Passenger's failure to comply with such laws, government regulations, orders, rules, requirements or security directives or as a result of Passenger's reliance on advice provided by Alaska regarding such laws, regulations, orders, rules, requirements or security directives.

(c) Alaska shall not be liable for any punitive, consequential or special damages arising out of or in connection with Carriage or other services performed by Alaska, whether or not Alaska had knowledge that such damage might be incurred.

(d) Any limitations or exclusions of liability of Alaska shall apply to and be for the benefit of Alaska's agents, employees, contractors and representatives acting within the scope of their employment and also to any person whose aircraft is used by Alaska and its agents, employees or representatives acting within the scope of their employment.

(e) Nothing herein shall be deemed to affect the rights and liability of Alaska with regard to any claims brought by, on behalf of, or in respect to any person who has willfully caused damage which resulted in death, wounding, or other bodily injury of a Passenger.

G. Overriding Law: In so far as any provision contained or referred to in the Ticket or in this Contract of Carriage may be contrary to a law, international treaty, government regulation, order or requirement which severally cannot be waived by agreement of the parties, such provisions shall remain applicable and be considered as part of the Contract of Carriage to the extent only that such provision is not contrary thereto. The invalidity of any provision shall not affect any other part.

H. Modification and Waiver: No agent, contractor, or representative of Alaska has authority to alter, modify, or waive any provisions of this Contract of Carriage.

I. Alaska's liability for damage, if any, shall be limited to damage occurring on its own flights.

J. Alaska's shall not be liable for the death or injury of a Passenger not occurring on its own operated flights.