UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| LUCAS WALL, | : | |
| | : | |
| Plaintiff, | : | Case No. 6:21-cv-975-PGB-DCI |
| | : | |
| v. | : | District Judge Paul Byron |
| | : | |
| CENTERS FOR DISEASE | : | Magistrate Judge Daniel Irick |
| CONTROL & PREVENTION *et al.* | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S TIME-SENSITIVE MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS CDC & HHS

COMES NOW plaintiff, *pro se*, and moves for an order preliminarily enjoining Defendant**s Centers for Disease Control & Prevention ("CDC") and Department of Health & Human Services ("HHS") – collectively "the Federal Defendants" –** from enforcing the Federal Transportation Mask Mandate **("FTMM")** and International Traveler Testing Requirement **("ITTR")** worldwide.[1] Proposed Order #1. This motion requires time-sensitive relief by <u>SATURDAY, JAN. 8, 2022</u>, because I am scheduled to fly to Germany on Monday, Jan. 10. Doc. 188 at Ex. 1.

I filed the Amended Complaint on Dec. 26 charging the Federal Defendants with a dozen counts of violating the Constitution, statutes, and regulations. Doc.

---

[1] In the alternative, should the Court determine a worldwide injunction against enforcement of the FTMM and ITTR is not warranted, I present two additional options. Proposed Orders #2 & 3.

188.[2] When the case began six months I ago, I filed a Motion for Temporary Restraining Order on June 10 (Doc. 8), which the Court denied in a short Order on June 15, addressing only irreparable harm. Doc. 28. The Motion for TRO dealt with the FTMM and upcoming domestic flights. Here my next flight is international.[3]

## I. STATEMENT OF FACTS

The facts of this case are laid out in the Amended Complaint. Doc. 188. I draw **the Court's attention to these** key facts: 1) My inability to obtain mask exemptions from multiple airlines and being blocked from flying because of the FTMM and ITTR: *Id.* at ¶¶ 1-13, 35-52, & 65-99; 2) I am fully vaccinated against COVID-19: *Id.* at ¶¶ 14-16; 3) **I can't safely wear a face mask** because of my Generalized Anxiety Disorder: *Id.* at ¶¶ 17-21; 4) Details about the FTMM: *Id.* at ¶¶ 103-124; 5) Details about the ITTR: *Id.* at ¶¶ 125-132; and 6) Congress has never passed a mask mandate or testing requirement: *Id.* at ¶¶ 133-137.

## II. LEGAL STANDARD

Fed.R.Civ.P. 65 spells out the procedure for obtaining a PI. Those requirements are supplemented by Local Rule 6.01. I have followed these procedures.

---

[2] I filed a Motion for Leave to File Second Amended Complaint on Dec. 27. Doc. 190. However, **the disposition of that motion is not relevant to the Court's consideration of this request for** a preliminary injunction as it only proposes substituting causes of action against the two Local Defendants in this case. This motion does not ask for any relief against them.

[3] In the early phase of this case, I also filed for PIs against both the FTMM and ITTR. Docs. 33 & 36. The Court struck **those motions for exceeding the Local Rule's page limits. Docs. 55 & 67. I** attempted to appeal the TRO denial to the 11th Circuit and Supreme Court, but was denied on jurisdictional grounds. No court ever addressed the merits of my PI motions, thus there **is no "law of the case" precluding me from filing this motion based on the Amended Complaint.**

The Court weighs four factors when considering whether to grant a PI. The necessary level or degree of possibility of success on the merits will vary according to the court's assessment of the other factors. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). A plaintiff does not have to show that all factors favor it. A court will **"balanc[e] the equities involved."** *Asbestos Info. Assoc./North Am. v. OSHA*, 727 F.2d 415, 418 (5th Cir. 1984). **"The first two factors of the … standard are the most critical."** *Nken v. Holder*, 556 U.S. 418, 434 (2009).

As shown below, all four factors weigh strongly in my favor. When combined with my high odds of winning on the merits, review of the other three factors reveals the equities weigh heavily in favor of granting a PI.

## III. ARGUMENT

### A. There is a substantial likelihood I will ultimately prevail on the merits of my claims against the FTMM.

A **"**movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the injunction." *Ruiz* **at 565. The review "require[s] a delicate** balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial **of preliminary relief."** *Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) (en banc).

### 1. The FTMM exceeds the Federal Defendants**'** statutory authority under the Public Health Service Act.

Public Health Service Act ("PHSA") § 361 contains no authority to adopt a worldwide[4] mask mandate for the transportation sector. As part of its response to the COVID-19 pandemic, the Federal Defendants issued a nationwide Eviction Moratorium **("EM")** based on § 361. Likewise, as authority for the FTMM, the Federal Defendants invoked that statute and CDC regulations implementing it (42 CFR §§ 70.2, 71.31(b), and 71.32(b)).

> **The HHS secretary "is authorized to make and enforce such** *regulations* as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the [secretary] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human **beings, and other measures, as in his judgment may be necessary."** 42 USC § 264(a) (emphasis added).

This law **authorizes the HHS secretary only to** "make and enforce such *regulations...*" **(emphasis added). The FTMM and ITTR are** *orders,* not *regulations.* **Orders have not been promulgated by Administrative Procedure Act ("APA")-**required procedures (proposed rulemaking, notice and comment, then final rulemaking). **Importantly the title of this statute is** "*Regulations* to control communicable diseases**." (emphasis added).**

Numerous federal courts struck down the EM, which the Supreme Court sustained, holding that Congress never gave CDC the staggering amount of power it claims to supposedly reduce the transmission of COVID-19. The 11th Circuit also

---

[4] The FTMM applies aboard flights to and from the United States, even when the aircraft is outside U.S. airspace. It likewise applies to ships calling on U.S. ports even when such vessels are in the open sea thousands of miles from American shores, far outside U.S. jurisdiction.

strongly signaled it disagrees with CDC's broad reading of § 264(a). Although not a merits decision, the dissenting judge on a 2-1 panel concluded CDC exceeded its authority by ordering the EM. And the two judges who denied a PI wrote: "We have doubts about the district court's ruling on the first factor: whether the plaintiffs are likely to succeed on the merits. ... the second sentence of § 264(a) appears to clarify any ambiguity about the scope of the CDC's power under the first." *Brown v. HHS*, No. 20-14210 (11th Cir. July 14, 2021). The Federal Defendants did not prevail on the merits in any case challenging the EM.[5]

> "It would be one thing if Congress had specifically authorized the action that the CDC has taken. But that has not happened. Instead, the CDC has imposed a nationwide moratorium on evictions in reliance on a decades-old statute that authorizes it to implement measures like fumigation and pest extermination. It strains credulity to believe that this statute grants the CDC **the sweeping authority that it asserts. ... the sheer scope of the CDC's** claimed authority under § [264](a) would counsel against the Government's interpretation. We expect Congress to speak clearly when authorizing an **agency to exercise powers of 'vast 'economic and political significance.'' ...** That is exactly the ki**nd** of power that the CDC claims here. ... the Government's read of § [264](a) would give the CDC a breathtaking amount of authority. It is hard to see what measures this interpretation would place outside the CDC's reach...**" *Alabama Ass'n of Realtors v. HHS, No. 21A23 (U.S. Aug. 26, 2021).*

> "**Though the** [PHSA] grants the Secretary broad authority to make and enforce regulations necessary to prevent the spread of disease, his authority is not limitless. ... These 'other measures' must therefore be similar in nature to those listed in § 264(a). ... And consequently, like the enumerated measures, these 'other measures' are limited in two significant respects: first, they must be directed toward 'animals or articles,' 42 U.S.C. § 264(a), and second, those 'animals or articles' must be 'found to be so infected or conta**min**ated as to be sources of dangerous infection to human beings,' ...

---

[5] *Tiger Lily v. HUD*, No. 2:20-cv-2692, 2021 WL 1171887 (W.D. Tenn. Mar. 15, 2021); *Tiger Lily v. HUD*, No. 21-5256 (6th Cir. July 23, 2021); ***Alabama Ass'n of Realtors v. HHS***, No. 20-cv-3377 (D.D.C. May 5, 2021); ***Alabama Ass'n of Realt****ors v. HHS*, No. 21A23 (U.S. Aug. 26, 2021).; *Skyworks v. CDC*, No. 5:20-cv-2407 (N.D. Ohio March 10, 2021); and *Terkel v. CDC*, No. 6:20-cv-564, 2021 WL 742877 (E.D. Tex. Feb. 25, 2021).

> In other words, any regulations enacted pursuant to § 264(a) must be directed toward specific targets 'found' to be sources of infection.' *Alabama Ass'n of Realtors v. HHS*, No. 20-cv-3377 (D.D.C. May 5, 2021).

This Court recently enjoined CDC's Conditional Sailing Order ("CSO") regulating cruiseship operations. "[I]f CDC promulgates regulations the director finds 'necessary to prevent' the interstate or international transmission of a disease, the enforcement measures must resemble or remain akin to 'inspection, fumigation, disinfection, sanitation, pest extermination, destruction of infected animals or articles.'" *State of Florida v. Becerra,* No. 8:21-cv-839 (M.D. Fla. June 18, 2021); CDC's motion to stay PI denied, No. 21-12243 (11th Cir. July 23, 2021).

This Court declared CDC's interpretation of § 264(a) dead wrong, using strong language to condemn the agency for acting unlawfully:

> "[N]ever has CDC implemented measures as extensive, disabling, and exclusive as those under review in this action. However, in this action CDC claims a startlingly magnified power. ... CDC's assertion of a formidable and unprecedented authority warrants a healthy dose of skepticism. ... Both text and history confirm that the conditional sailing order exceeds the authority granted to CDC by Section 264(a). And if Section 264 fails to confer the statutory authority for the conditional sailing order, the regulations implementing Section 264 can grant no additional authority." *State of Florida.*

Maskwearing does not comport to the statute's allowance for CDC to require the "sanitation ... of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." 42 USC § 264(a). Wearing a mask does not reduce the transmission of viral particles and the statute directs that any "sanitation" be directed at "animals or articles," not human faces. The use of the exact words "human beings" in the same sentence of § 264(a) conclusively shows Congress did not conceive the word "animals" as including humans. Plus

"sanitation" measures may be directed solely to things "found to be so infected or contaminated..." not at every single person (the vast majority of whom do not have coronavirus).

> "[§ 264(a)] does not grant the CDC the power it claims. ... [T]he first sentence grants the Secretary rulemaking authority. But that authority is not as capacious as the government contends. When we interpret statutes, we must give effect to each clause and word. ... Plainly, the second sentence narrows the scope of the first. ... There is no clear expression of congressional intent in § 264 to convey such an expansive grant of agency power, and we will not infer one. ... [CDC's] interpretation is both textually implausible and constitutionally dubious." *Tiger Lily v. HUD*, 992 F.3d 518, 520 (6th Cir. 2021).

Unlike the EM, which Congress did authorize for two short periods of time, Congress has never enacted into law a mandate that travelers wear masks. The Federal Defendants may not exercise their authority in a manner that is inconsistent with the administrative structure that Congress has created.

> "The Department's interpretation goes too far. The first sentence of § 264(a) is the starting point in assessing the scope of the Secretary's delegated authority. But it is not the ending point. While it is true that Congress granted the Secretary broad authority to protect the public health, it also prescribed clear means by which the Secretary could achieve that purpose. ... An overly expansive reading of the statute that extends a nearly unlimited grant of legislative power to the Secretary would raise serious constitutional concerns, as other courts have found. ... Congress did not express a clear intent to grant the Secretary such sweeping authority." *Alabama Ass'n of Realtors* (D.D.C. May 5, 2021).

"CDC claims authority to impose nationwide any measure, unrestrained by the second sentence of Section 264(a), to reduce to 'zero' the risk of transmission of a disease – all based only on the director's discretionary finding of 'necessity.' That is a breathtaking, unprecedented, and acutely and singularly authoritarian claim." *State of Florida.*

The regulations the Federal Defendants cite to authorize the FTMM do no such thing. Like the statute, they **only allows sanitation "of animals or articles,"** not measures such as forced masking and testing directed at human beings.

> "This kind of catchall provision at the end of a list of specific items warrants application of the *ejusdem generis* **canon, which says that 'where general** words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.' *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 114–15 (2001) (citation omitted). The residual phrase in § **264(a) is** 'controlled and defined by reference to the enumerated categories ... before it,' *Id.* at 115, such that the 'other measures' envisioned in the statute are measures like 'inspection, fumigation, disinfection, sanitation, pest extermination' and so on, 42 U.S.C. § 264(a)." *Tiger Lily.*

Finally, if the Court finds the PHSA does authorize the FTMM, it should hold that § 361 is an unconstitutional delegation of legislative power. Doc. 188 at ¶¶ 333-339. *See Mistretta v. United States*, 488 U.S. 361, 371–72 (1989); *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019); *BST Holdings v. OSHA*, No. 21-60845 (5th Cir. Nov. 12, 2021).

> "The court declares that the challenged [EM] ... exceeds the power granted to the federal government to 'regulate Commerce ... among the several States' and to 'To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers.' U.S. Const. Art. 1, § 8. That [CDC eviction] order is held and declared unlawful as 'contrary to constitutional ... power.' 5 U.S.C. § 706(2)(B)." *Terkel v. CDC*, No. 6:20-cv-564 (E.D. Tex. Feb. 25, 2021).

### 2. The Federal Defendants failed to observe the notice-and-comment procedure required by law before ordering the FTMM.

The FTMM was issued without following APA procedures including notice and comment. **"Legislative rules have the 'force and effect of law' and may be promulgated only after public notice and comment.** *INS v. Chadha*, **462 U.S. 919, 986..."**

*Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014). The Federal Defendants incorrectly argue the FTMM is **not subject to APA's notice**-and-comment requirements and that there was good cause to proceed without the required process because COVID-19 presents urgent circumstances. But violation of the FTMM carries severe legal consequences including fines starting at $500 and refusal to board flights, buses, trains, etc. The mandate is not an interpretive rule or policy statement that can evade public comment.

As this Court explained in June, COVID-19 began in December 2019 and was declared a global pandemic in March 2020. The Federal Defendants had nearly 11 months to put the FTMM **through APA's required notice**-and-comment procedures, but failed to do so.

> The CSO **"ca**rries identifiable legal consequences, such as the prospect of **criminal penalties, substantial fines, and suspension of sailing. ...** [CSO] carries the force of law and bears all of the qualities of a legislative rule. Accordingly, the [CSO]**'s prospective, ge**neralized application invites the conclusion that the order is a 'rule.' In plain words, if it reads like a rule, is filed like a rule, is treated like a rule, and imposes the consequences of a rule, it's probably a rule. Because the [CSO] is a rule, CDC was obligated to follow the procedures applying to the promulgation of a rule..." *State of Florida.*

The government can't claim the "good cause" exemption found in 5 USC § 553(b)(3)(B) because it can't self-create an "emergency" 10½ months into a declared pandemic. COVID-19 is again surging out of control despite the FTMM – proving this policy has failed and was never in the public interest. The government's beg for a "good cause" exception would be more plausible if the policy actually worked. But the evidence is clear: **it doesn't**.

"Precedent demonstrates how infrequently the exception should receive acceptance. *See, e.g., Am. Fed'n of Gov't Emp., AFL-CIO v. Block*, 655 F.2d 1153, 1158 (D.C. Cir. 1981) ('[A]dministrative agencies should remain conscious that such emergency situations are indeed rare.'); *N. Carolina Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 767 (4th Cir. 2012) (explaining that the circumstances permitting reliance on the 'good cause' exception are exceedingly 'rare'). ... The 'good cause' exception, 'narrowly construed and only reluctantly countenanced,' *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012) (quoting *Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001)), excuses the APA's notice-and-comment procedures in an 'emergency situation.' *Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C. Cir. 2004)." *State of Florida.*

Had the Federal Defendants put the FTMM through the required APA notice-and-comment period, I would have submitted the concerns listed in ¶ 317 of the Amended Complaint. Doc. 188.

## 3.  The FTMM is arbitrary, capricious, and an abuse of discretion.

CDC's mandate forcing me to wear a mask (even though my medical condition prohibits it) as a condition of using any form of public transportation is the perfect example of arbitrary and capricious executive policies that the law demands be stopped. 5 USC § 706(2)(A). I incorporate by reference my allegations in ¶¶ 321-329 of the Amended Complaint. *See also* ¶¶ 138-271. Doc. 188.

The Federal Defendants' actions in promulgating the FTMM are not rational, reasonably considered, or reasonably explained. Although the 11th Circuit gives a large degree of deference to an agency when it is evaluating scientific data, a court may not ignore contrary evidence such as 223 scientific studies, medical articles, and videos demonstrating that masks are ineffective and harmful. https://lucas.travel/masksarebad.

An agency decision is arbitrary and capricious if it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view**...**" *Motor Vehicle Manufacturers Ass'n v. State Farm Auto Mutual Ins. Co.*, 463 U.S. 29, 43 (1983). All three factors are in play here with the FTMM. **CDC's determination that transportation poses a greater risk than numerous other activities is arbitrary and capricious.**

The FTMM is about politics, not public health. President Biden made a national mask mandate a top campaign pledge last year. Despite admitting he knew it was unconstitutional, Biden acted in bad faith by signing the FTMM and ITTR executive order Jan. 21, 2021, (his second day in office) anyway. An agency policy created due to politics and not reasoned science is arbitrary and capricious. *Midwater Trawlers Coop. v. Dep't of Commerce*, 282 F.3d 710, 720 (9th Cir. 2002).

4. The FTMM violates the 10th Amendment.

The mask mandate applies to noncommercial intrastate transportation and commandeers state employees to enforce a federal order. There are presently 44 **states that don't** require maskwearing. Doc. 188 at Ex. 28. CDC and HHS have no power to override the sovereign decisions of state governments regarding public health and intrastate transport.

> "**Our reading of the statute's text accords with the principle that Congress** does not casually authorize administrative agencies to interpret a statute to push the limit of congressional authority. That principle has yet greater force when the administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power"

such as public health and intrastate transportation. "Agencies cannot discover in a broadly worded statute authority to supersede state ... law. Instead, Congress must 'enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power and the power of the Government over private property'" such as rideshare cars and privately owned buses, trains, ferries, airplanes, etc. *Tiger Lily*.

When an "administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power," there must be "a clear indication that Congress intended that result." *Solid Waste Agency of N. Cook Cnty. v. U.S.* **Army Corps of Eng'rs**, 531 U.S. 159, 172-73 (2001). **"[T]**he regulation of health and safety matters is primarily, and historically, a matter of local concern. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. at 230**."** *Hillsborough County v. Automated Medical Labs*, 471 U.S. 707, 720 (1985).

CDC and HHS **can't overrule state mask rules such as those in** at least eight states including Florida that *prohibit* any public entity from requiring face coverings. The Federal Defendants unconstitutionally commandeer state officials such as the heads of airport and transit authorities (as well as their subordinates) to require face coverings on state-owned transportation conveyances and in state-operated transport hubs.[6]

> "[E]ven if the law could be interpreted as ... the United States suggest[s], it would still violate the anticommandeering principle ... The anticommandeering doctrine may sound arcane, but it is simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.*, the decision to withhold from Congress the power to issue orders directly to the **States.**" *Murphy v. NCAA*, 138 S. Ct. 1461 (2018).

---

[6] I'm suing in this case two state agencies, the **Central Florida Regio**nal Transportation Authority and the Greater Orlando Aviation Authority, for enforcing the FTMM in violation of the Florida Constitution and state law.

Importantly the PHSA itself protects the states from federal over-**reach.** "Nothing in this section ... or the regulations promulgated under ... may be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States)..." **42 USC** § 264(e).

"**It is an 'ordinary rule of statutory construction that if Congress intends to alter** the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the stat**ute.**' *Will v. Mich.* **Dep't of State Police**, 491 U.S. 58, 65 (1989) (quotation marks and citation omitted); **Solid Waste Agency v. U.S. Army Corps of Eng'rs**, 531 U.S. 159, 172–**73 (2001).**" *Tiger Lily.*

"**As the district court noted, the broad construction of § 264 the government** proposes raises not only concerns about federalism, but also concerns about the delegation of legislative power to the executive branch. **...** We will not make such **an unreasonable assumption.**" *Id.*

## 5. The FTMM violates the Fifth Amendment.

I have attempted to obtain medical exemptions from the FTMM from multiple airlines, but all have denied me. Doc. 188 at ¶¶ 1-21, 35-52, & 65-99. The due-process problem is that the Federal Defendants delegate enforcement of the FTMM to private companies with no opportunity to appeal to a neutral federal decisionmaker. *Id.* at ¶¶ 349-357. The purported disability exemption in the FTMM is in reality a farce. It is futile to demand exemptions from the airlines.

If the Federal Defendants mandate masks and claim to allow disability exceptions, they constitutionally must provide due process in the form of a rapid pre-deprivation hearing to determine whether an airline wrongly applied the FTMM in denying a disabled person transportation.

## 6. The FTMM violates the constitutional right to freedom of travel for Americans **such as myself who medically can't** wear a face mask.

The FTMM is unreasonable as it imposes an impossible burden on millions of travelers with disabilities such as myself – having to wear a face covering that is medically dangerous and intolerable – for no public benefit **since masks don't reduce the spread of respiratory viruses and harm human health.** https://lucas.travel/masksarebad. **I don't own** a car. Using public transport is my only way of traveling interstate and internationally. As this Court recently held:

> **"the lost opportunity to go to Germany, alone, constitutes a concrete, particularized, actual injury in fact.** *Cf. Kent v. Dulles*, 357 U.S. 116 (1958) (recognizing a liberty right to international travel subject to regulation within the bounds of the Fifth Am**endment's Due Process Clause).** 'Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values. Our nation ... has thrived on the principle that, outside areas of plainly harmful conduct, every American is left to shape his own life as he thinks best, do what h**e pleases, go where he pleases.'** *Id*. at 126 (internal quotations omitted).**"** Doc. 187 at 17.

The right to travel is one of the implied and unenumerated rights reserved under the Constitution to the people. In the instant matter of visiting my brother and his wife in Germany, there is no mode of transport available other than airplane. Even if I owned a car, I could not drive it across the Atlantic Ocean to Europe.

> "To make one choose between flying to one's destination and exercising one's constitutional right appears to us, as to the Eighth Circuit, *United States v. Kroll*, 481 F.2d 884, 886 (8th Cir. 1973), in many situations a form of coercion, however subtle. *Cf. Lefkowitz v. Turley*, 414 U.S. 70, 79-82 ... (1973). While it may be argued there are often other forms of transportation available, it would work a considerable hardship on many air travelers to be forced to utilize an alternate form of transportation, assuming one exists at all." *United States v. Albarado*, 495 F.2d 799 (2nd Cir. 1974).

The Eighth Circuit held in *Kroll* that "flying may be the only practical means of transportation;" when limited, it deprives an individual of the right to travel.

> "The impact on a citizen who cannot use a commercial aircraft is profound. He is restricted in his practical ability to travel substantial distances within a short period of time, and the inability to fly to a significant extent defines the geographical area in which he may live his life. ... An inability to travel by air also restricts one's ability to associate more generally, and effectively limits educational, employment, and professional opportunities." *Mohamed v. Holder*, 2014 WL 243115, at *6 (E.D.Va. Jan. 22, 2014).

I am not able to travel with a mask because it would be detrimental to my health. Doc. 188 at Ex. 19. "Strict scrutiny is a searching examination, and it is the government that bears the burden" of proof. *Fisher v. University of Texas*, 570 U.S. 297, 310 (2013). Specifically, the government must establish that a mandate is "justified by a compelling governmental interest and ... narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 531-532 (1993). Congress affirmed the constitutional right to fly for disabled Americans by enshrining it into statute:

> "A citizen of the United States has a public *right* of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board ... before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103 (emphasis added).

"The constitutional right to travel from one State to another, and necessarily to use the highways *and other instrumentalities of interstate commerce* in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *United States v. Guest*, 383 U.S. 745, 757 (1966) (emphasis added).

There is no evidence that airplanes have contributed to the spread of COVID-19 and there are less restrictive systems already in place the Federal Defendants aren't using to stop infected passengers from traveling. Doc. 188 at ¶¶ 138-143.

"[T]he government has the burden to establish that the challenged law satisfies strict scrutiny. ... [N]arrow tailoring requires the government to show that measures less restrictive of the [constitutionally protected] activity could not address its interest in reducing the spread of COVID." *Tandon v. Newson*, No. 20A151 (April 9, 2021).

7. The FTMM violates the Air Carrier Access Act.

The FTMM blatantly discriminates against Americans with medical conditions who can't wear masks in violation of the ACAA. 49 USC § 41705(a). CDC and HHS may not issue an order that is contrary to statute. The Federal Defendants are disingenuous when claiming that a medical exemption is already provided. As explained in detail in the Amended Complaint (Doc. 188 at ¶¶ 113-114, 278-284, & 367-381), the mask mandate allows airlines to violate the ACAA by requiring numerous hurdles for a disabled person to jump through that aren't allowed under

DOT regulations (14 CFR Part 382), making it pretty much impossible for anyone with a medical condition who **can't tolerate wearing a mask to get such an exemption. I've applied for exemptions numerous times and been denied.**

Regulations the FTMM violate include 14 CFR §§ 382.11(a)(1), 382.17, 382.19(a); 382.19(c)(1), 382.21, 382.23(a), 382.23(c)(1), 382.23(d), 382.25, and 382.87(a). Congress enacted the ACAA to protect passengers such as myself who suffer from medical impairments. The Federal Defendants have a legal responsibility not to issue orders that violate statutes and duly promulgated regulations, but have done so here with the FTMM. When courts review the legal interpretations of an agency such as CDC regarding its compliance with statutes it does not **administer, "such review can be more stringent: Courts sometimes review such** matters *de novo*, **or without any deference at all to the agency's interpretation."** *Freeman v. DirecTV*, 457 F.3d 1001, 1004 (9th Cir. 2006).

## B. There is a strong likelihood I will ultimately prevail on the merits of my claims against the ITTR.

Almost all of my arguments against the FTMM also apply to the ITTR. I will address where the testing requirement differs materially from the mask mandate.

### 1. The ITTR exceeds the **Federal Defendants'** statutory authority under the Public Health Service Act.

I incorporate by reference my arguments in Section III-A-1 *supra*. No portion of the PHSA authorizes CDC and HHS to make every person flying into the United States obtain a negative COVID-19 test within one day of departure. Congress has

never enacted an ITTR. The PHSA **authorizes "inspection ... of animals or articles** found to be so infected or contaminated as to be sources of dangerous infection to **human beings."** 42 CFR § 264(a). Humans are not animals or articles, and the testing is directed at *all* **international air passengers, not those "found to be so infected or contaminated"** with a disease. **Even if the statute did authorize** testing as **"inspection,"** it would only be allowed for **"arriving passengers,"** not those air travelers *departing* foreign nations. 42 CFR § 71.32(b).

> "[T]he [PHSA] codifies the limited regulatory power typical of preventing diseases caused by a discrete item or a person at *a major port of entry.* ... The text of the [PHSA] lends support to a narrower quarantine power for CDC. ... The second sentence of Section 264(a) discloses, illustrates, exemplifies, and limits to measures similar in scope and character the measures contemplated and authorized by Congress when enacting the statute. *Yates v. United States*, 574 U.S. 528, 546 (2015) (applying specific statutory terms to cabin the meaning of a broad statutory term)." *State of Florida* (emphasis added).

**"Congress directed the actions set forth in Section 361 to certain** *animals or articles*, those so infected as to be a dangerous source of infection to people. On the face of the statute, the agency must direct other measures to specific targets **'found' to be sources of infection** − not to amorphous disease spread but, for example, to *actually infected animals ...*" *Skyworks v. CDC*, No. 5:20-cv-2407 (N.D. Ohio March 10, 2021) (emphasis added).

If the Court finds the PHSA does authorize the ITTR, it should find that § 361 is an unconstitutional delegation of legislative power. Doc. 188 at ¶¶ 406-412.

2. The ITTR does not comply with the notice-and-comment process that is mandatory under the APA.

I incorporate by reference my arguments in Section III-A-2 *supra*. The ITTR suffers the same fatal procedural flaw as the FTMM. It's a legislative rule – but hasn't been adopted into the Code of Federal Regulations – because it prevents me from flying into the my country of citizenship without obtaining an expensive, time-consuming, and unnecessary COVID-19 test. Any U.S. citizen who is unable to submit a negative COVID-19 test taken within a day before boarding a flight to the United States is *banned from entering our own country* in violation of international law. Doc. 188 at ¶¶ 255-260. Such rapid testing is not available in many countries in the world, including regions of the United States. *Id.* at 288-297 & Ex. 134.

> "Violation of the [CSO] triggers a serious consequence... The [CSO] is a rule ... The APA therefore obligates CDC to ... provide notice and comment. ... To satisfy its notice-and-comment obligations under the APA, 'an agency must consider and respond to significant comments received during the period for public comment.' *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). Therefore, the [CSO] violates the APA..." CDC lacked 'good cause' to evade the statutory duty of notice and comment." *State of Florida.*

Good cause does not excuse CDC's failure to comply with the process. 5 U.S.C. § 553(b)(3)(B). The latest version challenged in my Amended Complaint was put into place to supposedly stop the Omicron variant of COVID-19 from entering the United States, but public comments would have revealed this plan was destined to fail. CDC admits that 73% of new coronavirus infections in the past week are the Omicron variant. The ITTR did not stop it from entering America. News reports today state the United States hit a record high seven-day average of more than 254,000 new positive COVID-19 tests. The ITTR (and FTMM) are huge flops.

## 3. The ITTR is arbitrary and capricious.

I incorporate by reference my arguments in Section III-A-3 *supra*. I also incorporate my allegations in ¶¶ 285-303 & 397-403 of the Amended Complaint. Doc. 188. **The Federal Defendants' actions in promulgating the** ITTR are not rational, reasonably considered, or reasonably explained. Interestingly the ITTR directly contradicts the FTMM. if masks are effective in stopping COVID-19 transmission **as the government argues, then there's no need for a testing requirement because** everyone flying muzzled would not spread the virus. The Federal Defendants did not consider the devastating consequences of being stranded in a foreign nation without access to rapid testing to meet the strict one-day timeframe.

The Federal Defendants also fail to explain why fully vaccinated/boosted Americans flying home need a COVID-19 test to enter the country but not illegal aliens (who are mostly unvaccinated and much more likely to be infected)[7] and others crossing the land borders from Mexico and Canada. Nor why the requirement **doesn't apply to travelers arriving by sea when cruiseships have long been a hotbed** of coronavirus infections. Yet studies have shown airplanes are among the safest places you can be during the pandemic. Doc. 188 at ¶¶ 144-162.

## 4. The ITTR interferes with the constitutional right to travel.

---

[7] U.S. Customs & Border Protection have apprehended 1,855,023 illegal immigrants at the southern border since the ITTR took effect in January 2021. https://tinyurl.com/4286et4h (visited Dec. 28, 2021). Not subjecting these illegal aliens to the ITTR but enforcing it on American citizens flying into the country is the utter definition of a severe abuse of agency discretion.

I incorporate by reference my arguments in Section III-A-6 *supra.* Like the FTMM, the ITTR violates my constitutional right to travel internationally, a right this Court has already recognized. Doc. 187 at 17. The ITTR also violates international law. Doc. 188 at ¶¶ 298-303. The ITTR **"therefore is patently not a regulation 'narrowly drawn to prevent the supposed evil,'** *cf. Cantwell v. Connecticut*, 310 U.S. **307."** *Aptheker v. Secretary of State,* 378 U.S. 500 (1964).

## C. My inability to travel represents irreparable harm.

I'm suffering irreparable harm of being banned from the nation's entire public-transportation system due to the FTMM because I **medically can't wear a face mask even though I've been fully vaccinated and boosted as the CDC urges**. The government's violation of my rights will continue to cause irreparable harm absent a PI. The Federal Defendants have already caused me numerous irreparable injuries by prohibiting me from traveling since June 2. Doc. 188 at ¶¶ 1-21, 35-52, & 65-99.

Put simply, a **"violation of a constitutional right constitutes irreparable injury ..."** *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013). And as this Court already held in a CDC case, **failure "to provide notice and comment ... establishes irreparable injury. ... the harm flowing from a procedural violation can be irreparable."** *State of Florida.* Abridged liberty **can't** be compensated with cash, especially since the **APA doesn't allow for monetary damages.**

The Supreme Court has spoken forcefully on the issue of pandemic restrictions that violate constitutional rights. An American is "irreparably harmed by the loss

of [constitutionally protected] rights 'for even minimal periods of time'; the State has not shown that 'public health would be imperiled' by employing less restrictive measures." *Tandon.*

> "It is clear that a denial of the petitioners' proposed stay would do them irreparable harm. For one, the Mandate threatens to substantially burden the liberty interests ... For the individual petitioners, the loss of constitutional freedoms 'for even minimal periods of time ... unquestionably constitutes irreparable injury.' *Elrod v. Burns*, 427 U.S. 347, 373 (1976)." *BST Holdings.*

I have already had to cancel more than 10 trips because of the FTMM and ITTR. If a PI is granted, I again won't be able to take my next flight (Jan. 10) to see my family in Germany. There exists no other way to get across the Atlantic Ocean to Germany than by plane. The right of free movement is not tied to any specific mode of transportation. *United States v. Albarado.* I face a strong possibility I would suffer the irreparable injury of being stranded abroad if access to rapid COVID-19 testing within a day of departure is not available. Doc. 188 at ¶¶ 288-297.

## D. The equities weigh strongly in favor of a preliminary injunction.

The injuries **I'm suffering because of the** FTMM and ITTR outweigh the harm the requested interim relief would inflict on the Federal Defendants. Whereas I have been deprived of my constitutional and statutory rights to due process, freedom to travel, and to be free of disability discrimination, *inter alia*, the government would suffer no harm if the Court grants a PI. A "stay will do OSHA no harm whatsoever. Any interest OSHA may claim in enforcing an unlawful (and likely unconstitutional) [Mandate] is illegitimate. Moreover, any abstract 'harm' a stay might

cause the Agency pales in comparison and importance to the harms the absence of a stay **threatens to cause countless individuals...**" *BST Holdings.*

 **The government's own experience with the FTMM shows the policy doesn't stop** infection. TSA admits that more than 12,000 of its employees – all of whom must wear masks – have tested positive for COVID-19. Doc. 188 at Ex. 82. Likewise the FTMM and **ITTR didn't stop the Omicron variant from rapidly spreading to the** United States. The Federal Defendants cannot have an interest in taking actions that are outside of their statutory and/or constitutional authority. They therefore **cannot claim to have any cognizable "injury" as a result of the issuance of a PI.**

 The government would be enriched by a worldwide injunction against the FTMM and ITTR as travel to, from, and within the United States would skyrocket as millions of people including myself **who haven't flown because of th**e mandates would release our pent-up wanderlust, generating significant direct federal tax revenue and economic stimulus, especially for the hard-hit travel industry.

## E. The public interest requires enjoining the FTMM and ITTR.

 A PI **is warranted because "it is always in the public interest to prevent the vio-lation of a party's constitutional rights."** *Am. Bev. Ass'n v. City and C*nty. of S.F., 916 F.3d 749, 758 (9th Cir. 2019) (en banc)**. "[I]t is too late for the State to defend extreme measures with claims of temporary exigency, if it ever could."** *South Bay* (Gorsuch, J.). **It's in the public interest to enforce congressional intent.** There is no law (or regulation) requiring anyone wear a mask or get tested for COVID-19. The

Court must apply the *actual* laws passed by Congress and regulations duly promulgated by DOT that prohibit discrimination against disabled travelers, not to mention the Constitution.

There is "no public interest in the perpetuation of unlawful agency action." *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021). A PI that "maintains the separation of powers and ensures that a major new policy undergoes notice and comment" is also in the public interest. *Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015). Airline executives themselves recognize the FTMM is ineffective and should be abolished. Doc. 188 at ¶¶ 158-162. There is no increased risk of exposure to COVID-19 by passengers not wearing face coverings, as airline executives and the scientific community have said countless times. *Id.* and https://lucas.travel/masksarebad.

Studies have shown airplanes are among the safest places you can be during the pandemic. Doc. 188 at ¶¶ 144-162 & Ex. 73. And robust scientific research shows that masks do nothing to reduce coronavirus spread and are actually harmful to humans. *Id.* at ¶¶ 163-214 & https://lucas.travel/masksarebad.

> "Not only is there no evidence that the applicants have contributed to the spread of COVID-19 but there are many other less restrictive rules that could be adopted to minimize the risk to public interests. Finally, it has not been shown that granting the applications will harm the public. As noted, the State has not claimed that attendance at the applicants' services has resulted in the spread of the disease. And the State has not shown that public health would be imperiled if less restrictive measures were imposed." *Roman Catholic Diocese of Brooklyn v. Cuomo,* No. 20A87 (U.S. Nov. 25, 2020).

**It's not** in the public interest to ban millions of Americans such as myself who **can't wear face coverings because of medical conditions from using all modes of** public transportation nationwide. Also demonstrating the public interest is that regulation of public health is historically the province of the states, 44 of which do not require people to cover their nose and mouth. **Congress decides what's in the** public interest, not unelected bureaucrats at CDC and HHS. **Government "actors** have been moving the goalposts on pandemic-related sacrifices for months, adopting new benchmarks that always seem to put restoration of liberty just around the **corner."** *South Bay* (Gorsuch, J.). *See also* Doc. 188 at ¶¶ 215-228.

## IV. PRAYER FOR RELIEF

WHEREFORE, I request this Court issue one of the three attached proposed orders granting me a PI. Equitable principles favor a worldwide PI against the FTMM and ITTR since **"the scope of injunctive relief is dictated by the extent of** the violation established, not by the geographical extent of the plaintiff..." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). A worldwide injunction would promote the public interest of equal treatment under the law for the disabled and be consistent with basic administrative law principles. ***Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs***, 145 F.3d 1399, 1408-10 (D.C. Cir. 1998).[8]

---

[8] It would make little sense if this Court, having found that the FTMM and/or ITTR are likely unconstitutional and/or unlawful, merely enjoined its/their application only to me while allowing the Federal Defendants to continue enforcing their *ultra vires* mandates around the globe, including against the millions of other disabled Americans who are being excluded from the transportation sector every day. That said, I understand some judges are leery of such wide-sweeping **injunctions, so I propose two alternatives for the Court's consideration.**

Respectfully submitted this 28th day of December 2021.

*Lucas Wall*

Lucas Wall, plaintiff
435 10th St., NE
Washington, DC 20002
Telephone: 202-351-1735
E-Mail: Lucas.Wall@yahoo.com