Plaintiff's Exhibit 14

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

ANTHONY EADES,                                     :
                                                   :
    Petitioner,                  :
                                                   :
v.                                                 :          Case No. 21-1236
                                                   :
TRANSPORTATION SECURITY                            :
ADMINISTRATION,                                    :
                                                   :
    Respondent.                  :


**PETITIONER'S EMERGENCY MOTION FOR**
STAY OF TSA ENFORCEMENT OF FEDERAL
<u>TRANSPORTATION MASK MANDATE</u>


## I. INTRODUCTION & PROCEDURAL HISTORY

COMES NOW Petitioner Anthony Eades, *pro se*, a Purple Heart disabled

Army veteran who **can't** medically wear a mask, and asks this Court to grant

a stay to immediately halt Respondent Transportation Security Administra-

**tion ("TSA")'s nationwide enforcement** of the Federal Transportation Mask

Mandate **("FTMM")**[1] until this Court or the U.S. Court of Appeals for the Fifth

---

[1] The Federal Transportation Mask Mandate consists of: 1) Executive Order 13998, 86 Fed. Reg. 7205 (Jan. 26, 2021); 2) Department of Homeland Security Determination 21-130 (Jan. 27, 2021); 3) Centers for Disease Control **& Prevention Order "Requirement for Persons To Wear Mask**s While on Conveyances & at Transportation Hubs," 86 Fed. Reg. 8,025 (Feb. 3, 2021); 4) Transportation Security Administration Health Directives 1542-21-01B,

Circuit)[2] determines this Petition for Review. In the alternative, I ask for the Court to enjoin TSA's rules severely restricting mask exemptions for the disabled who medically can't tolerate having our breathing obstructed. *See* Section III-H below.

I respectfully ask for relief no later than <u>MONDAY, DEC. 20</u>, because I have a flight booked Dec. 21 on American Airlines from Kansas City, Missouri, to Colorado Springs to visit my 15-year-old son from a previous marriage for Christmas. **I don't get to see my son often and it's critically important** for me to be able to spend Christmas with him.

"I was previously booked from Kansas City to Colorado Springs Nov. 18 to spend Thanksgiving with my son but had to cancel the ticket because American Airlines is unlawfully denying mask exemptions to passengers with **disabilities and TSA isn't doing anything about it. ...** It was crushing to miss such **an important holiday with my son.**" App. 11-17 . "I submitted a mask-exemption demand to American, but it e-mailed me twice Nov. 8 to deny my request

---

1544-21-02B, and 1582/84-21-01B (Sept. 14, 2021); and 5) TSA Emergency Amendment 1546-21-01B (Sept. 14, 2021).

[2] I filed this Petition for Review in the U.S. Court of Appeals for the Eighth Circuit (No. 21-**3362). On TSA's motion, the case was transferred to the D.C.** Circuit (No. 21-1236). I have moved to have it sent with four similar cases to the Fifth Circuit. *See* Joint Letter filed Dec. 15.

unless I agreed to submit to numerous illegal procedures including submitting a medical certificate from my doctor, negative COVID-19 test, and consultation with a third-party medical vendor." *Id.*

"**Due to my military injury of a gunshot wound to the chest, a**sthma, and breathing difficulties, it is unbearable and sometimes impossible to maintain **normal breathing. I can't tolerate wearing a face mask. Covering my nose and** mouth brings back my severe Post-Traumatic Stress Disorder from being in Iraq, in the way of after I was shot, I was not able to breathe due to where I was shot. So my PTSD affects me and prevents me from properly wearing the **mask.**" *Id.*

The Supreme Court has issued at least six emergency injunctive orders[3] in the past year or so unequivocally holding that governments may not restrict constitutional rights or disregard clear statutory terms even in the name of fighting a pandemic. Because TSA unlawfully issued Health Directives without congressional, statutory, regulatory, or constitutional authority, this Court must immediately enjoin enforcement of the FTMM – as numerous

---

[3] *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 66 (2020); *Robinson v. Murphy*, 141 S.Ct. 972 (2020); *High Plains Harvest Church v. Polis*, 141 S.Ct. 527 (2020); *South Bay United Pentecostal Church v. Newsom*, 141 S.Ct. 716 (2021); *Tandon v. Newsom*, 141 S.Ct. 1294 (2021); and *Alabama Ass'n of Realtors v. HHS,* No. 21A23 (U.S. Aug. 26, 2021).

tribunals have done in halting similar pandemic measures[4] – hopefully entirely nationwide but at a minimum for the disabled with medical exemptions.

I already attempted to obtain interim relief from the Eighth Circuit and was denied Nov. 17 without any explanation. App. 9. I submitted an Emergency Application for Stay to the Supreme Court on Dec. 4. Brief at Ex. 1; Appendix ("App.") at Ex. 2. I received a package Dec. 15 from the Supreme Court returning my Emergency Application because even though the Eighth Circuit denied my motion for stay, the case was transferred to this circuit and I must again move for a stay here before I can ask the Supreme Court for interim relief. Ex. 3.

Therefore I submit this motion as a condensed version of my Supreme court Emergency Application and refer the Court to that document for my full arguments. Ex. 1.

---

[4] *Tiger Lily v. HUD*, No. 2:20-cv-2692, 2021 WL 1171887 (W.D. Tenn. Mar. 15, 2021); *Tiger Lily v. HUD*, No. 21-5256 (6th Cir. July 23, 2021); *Alabama Ass'n of Realtors v. HHS*, No. 20-cv-3377 (D.D.C. May 5, 2021); *Alabama Ass'n of Realtors v. HHS,* No. 21A23 (U.S. Aug. 26, 2021).; *Skyworks v. CDC*, No. 5:20-cv-2407 (N.D. Ohio March 10, 2021); *Terkel v. CDC*, No. 6:20-cv-564, 2021 WL 742877 (E.D. Tex. Feb. 25, 2021); *State of Florida v. Becerra*, No. 8:21-cv-839 (M.D. Fla. June 18, 2021); *State of Florida v. Becerra,* No. 21-12243 (11th Cir. July 23, 2021); and *BST Holdings v. OSHA*, No. 21-60845 (5th Cir. Nov. 12, 2021).

## II. THE FEDERAL TRANSPORTATION MASK MANDATE

A detailed description of the FTMM is attached. Ex. 1 at 5-15.

## III. ARGUMENT

**A. Under the statute authorizing review of TSA orders, only "good cause" is required to obtain interim relief.**

I will explore below the traditional four-part test for obtaining a stay or preliminary injunction. But first, I must point out that I need not meet such a high bar in this application because the statute authorizing courts to review TSA orders requires a lesser standard. "[T]he court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order... After reasonable notice to the ... Administrator of the Transportation Security Administration ... the court may grant interim relief by staying the order or taking other appropriate action *when good cause for its action exists*." 49 USC § 46110(c) (emphasis added).

*See* additional argument in Emergency Application. Ex. 1 at 19-20.

**B. Even if the Court declines to use the more lenient "good cause"** standard of 49 USC § 46110(c), I meet all four prongs of the typical judicial standard to obtain a stay of agency action.

Although the statute demands I only **show "good cause" for staying TSA's** Health Directives and Emergency Amendment, I meet the four typical factors used to determine whether preliminary injunctive relief should be granted.  *See* argument in Emergency Application. Ex. 1 at 20-22.

C. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates exceed **TSA's statutory and regulatory authority.**

I have a substantial likelihood of success on the merits for at least 12 reasons, starting with my first point: **TSA doesn't have any authority from Congress to mandate what travelers must place on our faces. TSA isn't assigned** the job of health inspector or disease preventer. Its mission is transportation security, period. Masks have nothing to do with security.

Unfortunately a panel of this Court erroneously decided this issue last week. *Corbett v. TSA*, No. 21-1074 (D.C. Cir. Dec. 10, 2021). Therefore, I refer the Court to my extensive discussion of this topic (Ex. 1 at 23-30) and move on to my other 11 arguments.

D. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates, issued at the direction of CDC, exceed CDC's statutory authority under the Public Health Service Act.

Because TSA's directives were issued at the instruction of CDC, the Court has to take note of the illegality of CDC's action. Congress never gave CDC

the staggering amount of power it claims, a fact the Supreme Court forcefully **opined on recently in reviewing the agency's Eviction Moratorium. The Court resoundingly rejected CDC's position that it has immense authority under** the PHSA to ban evictions to supposedly reduce the transmission of COVID-19. *Alabama Ass'n of Realtors*.

In the administrative record, CDC nor TSA have provided evidence proving that masks reduce the spread of a virus. Whereas I have offered 223 documents posted to https://lucas.travel/masksarebad showing the opposite.[5]

**TSA's Health Directives were only put into place because of CDC's demand. It follows that if the CDC order is unlawful, so are the TSA mandates.** Congress has *never* enacted into law a mask mandate. *See* additional argument in Emergency Application. Ex. 1 at 30-36.

E. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates run afoul of the 10th Amendment.

---

[5] I don't submit all 223 documents into evidence separately because the Court would be overwhelmed with some 2,000 pages of material showing **that scientists have known for decades that masks don't prevent transmis**sion of respiratory viruses and actually cause harm to human health. I submit in the appendix just one of these studies — **"Is a Mask That Cove**rs the Mouth and Nose Free from Undesirable Side Effects in Everyday Use and Free of **Potential Hazards?" published in the International Journal of Environmen**tal Research & Public Health in April 2021 — to illustrate the findings of many of the others. App. 215-256.

The FTMM violates the 10th Amendment because TSA's directives apply to intrastate travel, including taking a rideshare car or transit bus just one mile, **during which there is no nexus to interstate commerce. TSA's directives** are in direct contradiction to the mask polices of 44 states. App. 198. TSA **can't overrule state mask rules such as those such in** several states that *prohibit* any public entity from requiring face coverings. *Id.* States without mask mandates have fewer COVID-19 infections than the few remaining states that require muzzling. App. 199-200.

CDC's eviction **"moratorium intrudes into an area that i**s the particular **domain of state law ... '**Our precedents require Congress to enact exceedingly clear language if it wishes to significantly alter the balance between federal **and state power...'"** *Alabama Ass'n of Realtors*. Likewise this Court must find that the FTMM intrudes into areas (intrastate transport and public health) that are the particular domain of state law. **The "Mandate raises serious con**stitutional concerns that either make it more likely that the petitioners will succeed on the merits, or at least counsel against **adopting OSHA's broad reading of § 655(c) as a matter of statutory interpretation."** *BST Holdings.*

Unlike TSA, the states are the appropriate authorities – as both a constitutional and practical matter – to determine whether imposing mask mandates is necessary to mitigate COVID-19. *See* additional argument in Emergency Application. Ex. 1 at 36-42.

## F. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate the constitutional guarantee of freedom to travel.

**TSA's mask directives restrict the free movement of disabled Americans** such as myself **who can't wear face masks. The right to travel includes more than the ability to drive one's own car. "The constitutional right to travel from** one State to another, and necessarily to use the highways *and other instrumentalities of interstate commerce* in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has **been firmly established and repeatedly recognized."** *United States v. Guest*, 383 U.S. 745, 757 (1966) (emphasis added).

The FTMM violates the constitutional freedom to travel without undue **governmental interference. "It is a familiar and basic principle, recently re**affirmed in *NAACP v. Alabama*, **377 U.S. 288, 307 ... that 'a governmental** purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly

and thereby invade the area of protected freedoms.'" *Aptheker v. Secretary of State,* 378 U.S. 500 (1964). "[T]he 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence. ... the right is so important that it is 'assertable against private interference as well as governmental action ... a virtually unconditional personal right, guaranteed by the Constitution to me all.'" *Saenz v. Roe*, 526 U.S. 489, 498 (1999).

The Supreme Court consistently applies strict scrutiny to restrictions on the right to interstate travel. *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969).

Congress affirmed the constitutional right to fly for disabled Americans by enshrining it into statute:

> "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board ... before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103.

See additional argument in Emergency Application. Ex. 1 at 42-47.

G. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate the Fifth Amendment right to due process.

Travelers, including myself, have a liberty interest in not being forced to wear something that we **don't want to wear to block** our breathing — a function essential for human life — or alternatively being barred from all modes of public transportation.

The FTMM deprives travelers of due process by assigning determinations on mask-exemption requests to private companies such as airlines with no opportunity to appeal a denial to a neutral federal decisionmaker. **TSA's** Health Directives purport to allow the disabled to get mask exemptions, but the reality is the government and airlines have made it nearly impossible. I **have qualified disabilities but can't get exemptions.** I have experienced numerous denials when requesting mask exemptions from airlines (App. 11 *et seq.*) **— and there's no procedure to appeal to TSA or any other federal agency.**

If TSA mandates masks and claims to allow disability exceptions, TSA itself constitutionally must provide due process in the form of a rapid pre-deprivation hearing to determine whether an airline wrongly applied the Health Directives in denying a disabled person transportation.

The Supreme Court recently spoke forcefully to the issue of pandemic restrictions that violate **constitutional rights. An American is "irreparably harmed by the loss of [constitutionally protected] rights 'for even minimal**

periods of time'; the State has not shown that 'public health would be imperiled' by employing less restrictive measures." *Tandon*.

## H. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate the Air Carrier Access Act.

TSA's mask mandate blatantly discriminates against Americans with medical conditions who can't wear masks in violation of the ACAA. 49 USC § 41705(a). TSA may not issue a directive that is contrary to statute.

Numerous DOT regulations illustrate how the FTMM is illegal. DOT, violating its own regulations, has allowed airlines to prohibit all passengers with disabilities who can't wear face masks from flying and/or impose numerous onerous requirements to obtain an exemption. App. 185-192.

TSA's contention that I "may request an exemption from the relevant airline" is disingenuous because I've already done so many times and been refused. Documentation of my health problems have been provided to airlines, yet refusals still abound. *See* my Veterans Administration medical records. App. 71-101.

In an earlier decision in a related case (*Wall v. TSA*, No. 21-1220), this Court ignored that health experts strongly advise that tens of millions of Americans with a variety of medical conditions can't safely wear a mask. App.

208-256. And there is no "readily available" exemption process. It's a total farce.

TSA makes numerous false claims **that the FTMM doesn't unlawfully bar those with medical conditions who can't wear masks from traveling**. The FTMM violates the ACAA in at least eight ways. **Here's an e**xcerpt of TSA Health Directive 1544-21-02B with illegal sections highlighted in bold underline and corresponding DOT regulations placed in brackets:

> "**Aircraft operators** may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask [1], including medical consultation by a third party [2], medical documentation by a licensed medical provider [3], and/or other information as determined by the aircraft operator [4], as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-CoV-2 viral test or documentation of recovery from COVID-19 [5]. ... **Aircraft o**perators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances [6], or seating or otherwise situating the individual in a less crowded section of the conveyance [7] or airport. Aircraft operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance [8]." App. 136.

**Regulations TSA's Health Directives and Emergency Amendment violate:**

1. **"[Y]ou must not refuse to provide transportation to a passenger with a** disability on the basis of his or her disability, except as specifically permitted by this part**." 14 CFR § 382.19(a).**

2. Since airlines may not require a medical certificate for a passenger unless he/she has a communicable disease (14 CFR § 382.23(a)), they may also not require a third-**party medical consultation. "[Y]ou may** require that a passenger *with a medical certificate* undergo additional medical review by you if there is a legitimate medical reason for believing that there has been a significant adverse change in the pas-**senger's condition since the issuance of the medical certificate..." 14** CFR § 382.23(d) (emphasis added).

3. **"Except as provided in this section, you must not require a passenger** with a disability to have a medical certificate as a condition for being **provided transportation." 14 CFR § 382.23(a). "You may also require a** medical certificate for a passenger if he or she *has* a communicable disease or condition that could pose a direct threat to the health or **safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added).** This requirement does not include speculation or presumption that a

person might have a communicable disease such as COVID-19; evidence is required that the passenger *has* a communicable disease, e.g. has tested positive for coronavirus.

4. Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the **passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.21.** TSA's Health Directive illegally assumes every single traveler is infected with COVID-19, even those who are fully vaccinated and/or have natural **immunity. This violates the regulation that "In determining whether** an individual poses a direct threat, you must make an *individualized* *assessment.*" **14 CFR § 382.19(c)(1) (emphasis** added).

5. No provision of the ACAA or its accompanying regulations permits TSA to allow airlines to require that passengers submit a negative test for any communicable disease. Mandating disabled flyers needing a mask exemption submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. **"You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation..." 14** CFR § 382.11(a)(1).

15

6. "[Y]ou must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17.

7. "[Y]ou must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

8. "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

I. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates were issued without notice and comment required by the Administrative Procedure Act.

TSA's Health Directives were issued without following APA procedures including notice and comment. "Legislative rules have the 'force and effect of law' and may be promulgated only after public notice and comment. *INS v. Chadha*, 462 U.S. 919, 986..." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014). A court must "hold unlawful and set aside agency action ... found to be ... without observance of procedure required by law." 5 USC § 706(2)(D).

TSA claims that if it determines a security directive must be issued imme-diately, notice and comment are waived. Because the FTMM is not a security policy, the mask mandate does not fall under this exemption. COVID-19 be-gan in December 2019 and was declared a global pandemic in March 2020. **TSA had nearly 11 months to put the FTMM through APA's required notice**-and-comment procedures,[6] but failed to do so. *See* additional argument in Emergency Application. Ex. 1 at 55-57.

---

[6] Had TSA put its mask directives through the required APA notice-and-com-ment period, I would have submitted the following concerns: (1) data shows states without mask mandates suffered fewer deaths per capita than states that imposed such requirements; (2) the FTMM is out of step with the cur-rent policies of nearly every state p**lus numerous businesses who don't re**-quire their customers cover their faces; (3) requiring masks in the transpor-tation sector leads to widespread chaos in the skies and on the ground, en-dangering aviation and transit safety; (4) the FTMM unlawfully discrimi-**nates against travelers who can't wear a face covering due to a disability; (5)** the gargantuan amount of scientific and medical evidence showing that masks have proven to be totally ineffective in reducing COVID-19 spread and deaths (*see* 223 scientific studies, medical articles, and videos at https://lu-cas.travel/masksarebad); (6) scientists have known for a long time that **masks aren't effective in reducing transmission of respiratory viruses (***Id.***);** (7) masks pose serious health risks to humans forced to wear them (*Id.*); (8) many experts consider forcing kids to wear masks child abuse; (9) masks have contributed to a surge in serious crime; (10) masks contribute to the huge problem of racism in America; (11) masks are damaging the environ-ment (*Id.*); (12) unlike masks, vaccines are extremely effective in reducing COVID-19 infections and deaths; (13) people who have recovered from COVID-19 have long-lasting immunity; and (14) airplane cabins pose little risk for coronavirus spread and there have been few, if any, reports of coro-navirus transmission on aircraft.

J. I have a substantial likelihood of success on the merits of my claim that the challenged mandates must be vacated because they are arbitrary and capricious in violation of the APA.

**TSA's mandate** forcing me to wear a mask (even though my medical conditions prohibit it) as a condition of using any form of public transportation is the perfect example of arbitrary and capricious executive policies that the **law demands be stopped. A court must "hold unlawful and set aside agency action ... found to be ... arbitrary, capricious, [or] an abuse of discretion." 5** USC § 706(2)(A). *See* additional argument in Emergency Application. Ex. 1 at 57-60.

K. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate the Food, Drug, & Cosmetic Act.

**TSA's mask mandate** must be stayed because it violates federal law prohibiting the mandatory use of any medical device approved under an Emer-**gency Use Authorization ("EUA") by the Food & Drug Administration ("FDA")**. Individuals to whom any EUA product is offered must be informed **"of the option to accept** *or refuse administration of the product*...**" 21** USC § 360bbb-**3(e)(1)(A)(ii)(III) (emphasis added). TSA can't force travelers** to use EUA products such as masks. TSA may only *recommend* masks.

By supplying surgical masks to passengers at its airport checkpoints, TSA is a distributor of FDA EUA medical devices and is subject to the law's restrictions that any person may refuse administration of the product. By **distributing EUA masks, TSA is carrying out an activity "for whic**h an authorization ... is issued" under the FDCA.** *See* additional argument in Emergency Application. Ex. 1 at 60-64.

L. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate Occupational Health & Safety Administration regulations for transportation workers.

The FTMM applies to transportation employees as well as passengers. Its **Health Directives don't comply with OSHA's extensive** rules regulating maskwearing in the workplace. 29 CFR § 1910.134. The fact OSHA stringently regulates employee masking shows the severe dangers the practice imposes. TSA has no authority to impose those dangers on transit passengers or workers. *See* additional argument in Emergency Application. Ex. 1 at 64-66.

M. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate several international treaties the U.S. has ratified.

**TSA's mask re**quirements break several provisions of international law.

*See* argument in Emergency Application. Ex. 1 at 66-69.

N. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates **can't survive strict scrutiny.**

"Strict scrutiny is a searching examination, and it is the government that bears the burden" of proof. *Fisher v. University of Texas*, 570 U.S. 297, 310 (2013). Specifically, the government must establish that a mandate is "justified by a compelling governmental interest and ... narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 531-532 (1993). The FTMM fails strict scrutiny because there are far less restrictive options available to advance the federal government's asserted interest in combatting the spread of COVID-19.

> "[T]he government has the burden to establish that the challenged law satisfies strict scrutiny. ... [N]arrow tailoring requires the government to show that measures less restrictive of the [constitutionally protected] activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the [constitutionally protected] exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for [constitutionally protected] exercise too." *Tandon*.

Although the virus is still circulating at low levels in the United States – as it likely always will – the public-health system is not under any strain.

States such as Florida and Missouri that have never required masks are see-ing low rates of COVID-19 infection compared to other states and localities that do mandate face coverings. App. 199-203. *See* additional argument in Emergency Application. Ex. 1 at 69-72.

O. I**'m** suffering irreparable harm of being banned from the na-**tion's entire public**-t**ransportation system due to TSA's** FTMM en-forcement because I **medically can't wear a face mask.**

If the requested relief is not granted, I will suffer the irreparable harm of being denied the ability to spend Christmas with my 15-year-old son who lives in another state, since driving the long distance from my home in War-saw, Missouri, to Colorado Springs is not practical, especially given hazard-ous winter highway conditions I would likely encounter. The effects of my gunshot wound make long car trips impractical and intolerable. If this Christmas passes without me being able to fly to see my son, there is no way any future relief I might obtain could ever rewind time and restore that hol-iday joy I hope to share with him. App. 12.

As this Court has held, **a "violation of a constitutional right** constitutes irreparable injury**...**" *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013). And failure **"to provide notice and comment ... establishes irreparable injury. ...** the harm flowing fr**om a procedural violation can be irreparable."** *State of Florida.*

The Supreme Court frowns on pandemic restrictions that violate consti-
tutional rights. An American is "irreparably harmed by the loss of [constitu-
tionally protected] rights 'for even minimal periods of time'; the State has not
shown that 'public health would be imperiled' by employing less restrictive
measures." *Tandon.*

"It is clear that a denial of the petitioners' proposed stay would do them
irreparable harm. For one, the Mandate threatens to substantially burden
the liberty interests of reluctant individual recipients put to a choice between
their job(s) and their jab(s). For the individual petitioners, the loss of consti-
tutional freedoms 'for even minimal periods of time ... unquestionably con-
stitutes irreparable injury.' *Elrod v. Burns*, 427 U.S. 347, 373 (1976)." *BST
Holdings. See* additional argument in Emergency Application. Ex. 1 at 72-74.

P. The equities weigh strongly in favor of a stay.

The equities strongly tip in my favor because, as the Supreme Court has
**held many times, an executive agency can't be harmed by being enjoined**
from enforcing unlawful orders. And the public policy of the United States is
to ensure the disabled shall not be discriminated against.

The injuries I'm suffering **because of TSA's FTMM enforcement outweigh**
the harm the requested interim relief would inflict on the agency. Whereas I
have been denied the ability to use airline tickets I have paid for and been

deprived of my constitutional rights to due process and freedom to travel, the government would suffer no harm if the Court grants a stay. The relief requested would actually match the **federal government's hands**-off mask policy in every other realm of society and the no-mask rules of 44 states. App. 198.

A "**stay will do OSHA no harm whatsoever. Any interest OSHA may claim** in enforcing an unlawful (and likely unconstitutional) [Mandate] is illegitimate. Moreover, any abstract '**harm' a stay might cause the Agency pales in** comparison and importance to the harms the absence of a stay threatens to **cause countless individuals...**" *BST Holdings.*

TSA admits more than 11,000 of its employees have been infected with COVID-19. App. 205. But TSA workers are forced to don face coverings. If masks are effective, why have so many TSA workers tested positive? The agency fails to answer this critical question.

Q. Entry of a stay stopping TSA from enforcing the FTMM would serve the public interest.

A stay is warranted because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Bev. Ass'n v. City and Cty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc). "[I]t is too late for

the State to defend extreme measures with claims of temporary exigency, if **it ever could.**" *South Bay* (Gorsuch, J.).

TSA has produced no evidence showing that face masks are effective in reducing COVID-19. In fact, masking has been totally ineffective in reducing coronavirus infections and deaths. https://lucas.travel/masksarebad. "**The public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions** – even, or perhaps *particularly*, when **those decisions frustrate government officials.**" *BST Holdings* (emphasis original).

**It's in the public interest to prevent discrimination against travelers with medical conditions who can't wear masks.** 49 USC § 41705. **There is "no public interest in the perpetuation of unlawful agency action."** *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021). **A stay that "m**aintains the separation of powers and ensures that a major new policy undergoes notice and **comment" is also in the public interest.** *Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015).

The Court must take into account that airplanes are among the safest places you can be during the pandemic due to high-efficiency filters that bring fresh air into the cabin every 3-4 minutes. Aircraft cabins have more

sterile air than many hospital operating rooms. Most importantly, there have not been any reported outbreaks of COVID-19 at airports or on board aircraft or other transportation hubs or conveyances.

Because of the FTMM, tens of millions of **Americans who can't wear face** coverings because of medical conditions are essentially banned from using all modes of public transportation nationwide for no rational reason. This can hardly be deemed to be in the public interest.

Also demonstrating the public interest is that regulation of public health is historically the province of the states, 44 of which do not require people to cover their nose and mouth. App. 198. And **let's not forget Congress decides what's in the public interest, not unelected bureaucrats at CDC and TSA.** Congress has *never* enacted a federal mask mandate.

The FTMM negatively impacts transportation security because it has created chaos in the sky and on the ground with several thousand reports of unruly passenger and crew behavior as a direct result of the mask mandate. Numerous a**irline executives recognize it's in the public interest to improve** transportation security by ending the mask mandate. Just yesterday multiple airline CEOs told a Senate committee that masks are doing nothing to reduce COVID-19 spread on airplanes. Exs. 4-6. Executives of other air carriers

started speaking out against the FTMM six months ago. https://bit.ly/FG062321.

Government "actors have been moving the goalposts on pandemic-related sacrifices for months, adopting new benchmarks that always seem to put restoration of liberty just **around the corner.**" *South Bay* (Gorsuch, J.).

## IV. CONCLUSION

Equitable principles favor a nationwide **stay of TSA's Heal**th Directives and Emergency Amendment **as "the scope of injunctive relief is dictated by** the extent of the violation established, not by the geographical extent of the **plaintiff class."** *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Here, the FTMM is effective nationwide. A nationwide stay would promote the public interest of equal treatment under the law for the disabled and be consistent with basic administrative law principles. ***Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs***, 145 F.3d 1399, 1408-10 (D.C. Cir. 1998). It would make little sense if this Court, having found that the FTMM is likely unconstitutional and/or unlawful, merely enjoined its application only to me while allowing TSA to continue enforcing the *ultra vires* mask mandate against the tens of millions of other Americans who use and/or work in the transportation sector every day.

WHEREFORE, I request this Court issue an order granting the following relief:

1. **TSA's three Health Directives and one Emergency Amendment chal-**lenged in this Petition for Review are hereby STAYED pending a final ruling in this case;

2. TSA and all of its officers, agents, servants, employees, contractors, and attorneys are hereby ENJOINED from enforcing the Federal Transportation Mask Mandate nationwide;

3. TSA is ORDERED to remove all signs from all airports stating masks are required and to scrub its website of any mention of face coverings; and

4. Because all airlines and other transportation providers nationwide who are subject to the FTMM**'s enforcement provi**sions are in active concert or participation with the enjoined federal agency in enforcing the mask mandate, all airlines and other transportation providers nationwide are also hereby ENJOINED from requiring that any passenger wear a face covering unless such a such a restriction is imposed by valid state or local law.

Respectfully submitted this 16th day of December 2021.

*Anthony Eades*

Anthony Eades, petitioner
19499 Cedar Gate Dr.
Warsaw, MO 65355
Telephone: 813-786-8960
E-Mail: teades2603@live.com

CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the requirements of FRAP 27(d) because it has been prepared in 14-point Georgia, a proportionally spaced font, and it conforms with the limit of 5,200 words because this document contains 5,190 words, according to the count of Microsoft Word (excluding sections not counted pursuant to FRAP 32(f)).

Petitioner's Exhibit 1

No. 21A_____

# In the Supreme Court of the United States

————————

ANTHONY EADES,

*APPLICANT,*

*v.*

TRANSPORTATION SECURITY ADMINISTRATION,

*RESPONDENT.*

————————

To the Honorable Brett Kavanaugh
Associate Justice of the U.S. Supreme Court
& Circuit Justice for the Eighth Circuit

————————

**EMERGENCY APPLICATION FOR STAY
RELIEF REQUESTED BY MONDAY, DECEMBER 20, 2021**

————————

ANTHONY EADES
19499 Cedar Gate Dr.
Warsaw, MO 65355
813-786-8960
teades2603@live.com

*Applicant pro se*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................ 1

II. PARTIES ....................................................................................... 3

III. JURISDICTION ............................................................................. 3

IV. DECISIONS BELOW ...................................................................... 4

V. QUESTIONS PRESENTED ............................................................... 4

VI. THE FEDERAL TRANSPORTATION MASK MANDATE .................................. 5

    A. PRESIDENTIAL ACTION ............................................................... 5
    B. DEPARTMENT OF HOMELAND SECURITY ACTION ................................. 7
    C. CENTERS FOR DISEASE CONTROL & PREVENTION ACTION ..................... 8
    D. TRANSPORTATION SECURITY ADMINISTRATION ACTIONS ...................... 10

VII. PROCEDURAL HISTORY ................................................................ 15

VIII. ARGUMENT ............................................................................. 16

    A. THIS COURT HAS THE POWER TO GRANT ME A STAY. .......................... 16

    B. UNDER THE STATUTE AUTHORIZING REVIEW OF TSA ORDERS, ONLY "GOOD CAUSE" IS REQUIRED TO OBTAIN INTERIM RELIEF ................................. 19

    C. EVEN IF THE COURT DECLINES TO USE THE MORE LENIENT "GOOD CAUSE" STANDARD OF 49 USC § 46110(C), I MEET ALL FOUR PRONGS OF THE TYPICAL JUDICIAL STANDARD TO OBTAIN A STAY OF AGENCY ACTION. ................. 20

    D. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES EXCEED TSA'S STATUTORY AND REGULATORY AUTHORITY. .......................... 23

    E. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES, ISSUED AT THE DIRECTION OF CDC, EXCEED CDC'S STATUTORY AUTHORITY UNDER THE PUBLIC HEALTH SERVICE ACT. ...................................................... 30

F. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES RUN AFOUL OF THE 10TH AMENDMENT. ........................................................................................ 36

G. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES VIOLATE THE CONSTITUTIONAL GUARANTEE OF FREEDOM TO TRAVEL. ........................................... 42

H. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES VIOLATE THE FIFTH AMENDMENT RIGHT TO DUE PROCESS. ............................................................ 47

I. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES VIOLATE THE AIR CARRIER ACCESS ACT. ........................................................................................ 49

J. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES WERE ISSUED WITHOUT NOTICE AND COMMENT REQUIRED BY THE ADMINISTRATIVE PROCEDURE ACT. ................................................................................................................................ 55

K. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE CHALLENGED MANDATES MUST BE VACATED BECAUSE THEY ARE ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE APA. .................................................................... 57

L. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES VIOLATE THE FOOD, DRUG, & COSMETIC ACT. .............................................................................. 60

M. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES VIOLATE OCCUPATIONAL HEALTH & SAFETY ADMINISTRATION REGULATIONS FOR TRANSPORTATION WORKERS. ...................................................................................... 64

N. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES VIOLATE SEVERAL INTERNATIONAL TREATIES THE U.S. HAS RATIFIED. ..................................... 66

O. I HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF MY CLAIM THAT THE FTMM MUST BE VACATED BECAUSE THE CHALLENGED MANDATES CAN'T SURVIVE STRICT SCRUTINY. ...................................................................................................... 69

P. I'M SUFFERING IRREPARABLE HARM OF BEING BANNED OR SEVERELY RESTRICTED FROM THE NATION'S ENTIRE PUBLIC-TRANSPORTATION SYSTEM DUE TO TSA'S FTMM ENFORCEMENT BECAUSE I MEDICALLY CAN'T WEAR A FACE MASK. THE GOVERNMENT'S VIOLATION OF MY CONSTITUTIONAL AND STATUTORY RIGHTS WILL CONTINUE TO CAUSE IRREPARABLE HARM ABSENT A STAY. .......................................................................... 72

Q. THE EQUITIES WEIGH STRONGLY IN FAVOR OF A STAY. THE INJURIES I (AND TENS OF MILLIONS OF SIMILARLY SITUATED DISABLED AMERICANS) ARE SUFFERING BY BEING EXCLUDED FROM ALL FORMS OF PUBLIC TRANSPORTATION ACROSS THE ENTIRE COUNTRY OUTWEIGH THE HARM A STAY WOULD INFLICT ON TSA. ............................ 75

R. ENTRY OF A PRELIMINARY INJUNCTION STOPPING TSA FROM ENFORCING THE FTMM WOULD SERVE THE PUBLIC INTEREST. ........................................................... 76

IX. CONCLUSION ..................................................................................................... 81

# I. INTRODUCTION

Applicant Anthony Eades, a Purple Heart disabled Army veteran who can't medically wear a mask, asks this Court to grant a stay to immediately halt Respondent Transportation Security Administration ("TSA")'s nationwide enforcement of the Federal Transportation Mask Mandate ("FTMM")[1] until the U.S. Court of Appeals for the District of Columbia Circuit (or Eighth Circuit)[2] determines this Petition for Review and pending the timely filing and disposition by this Court of a petition for writ of certiorari.

I respectfully ask for relief no later than **MONDAY, DEC. 20**, because I have a flight booked Dec. 21 on American Airlines from Kansas City, Missouri, to Colorado Springs to visit my 15-year-old son from a previous marriage for Christmas. I don't get to see my son often and it's critically important for me to be able to spend Christmas with him.

"I was previously booked from Kansas City to Colorado Springs Nov. 18 to spend Thanksgiving with my son but had to cancel the ticket because American Airlines is unlawfully denying mask exemptions to passengers with disabilities and TSA isn't doing anything about it. … It was crushing to miss such an important holiday with

---

[1] The Federal Transportation Mask Mandate consists of: 1) Executive Order 13998, 86 Fed. Reg. 7205 (Jan. 26, 2021); 2) Department of Homeland Security Determination 21-130 (Jan. 27, 2021); 3) Centers for Disease Control & Prevention Order "Requirement for Persons To Wear Masks While on Conveyances & at Transportation Hubs," 86 Fed. Reg. 8,025 (Feb. 3, 2021); 4) Transportation Security Administration Health Directives 1542-21-01B, 1544-21-02B, and 1582/84-21-01B (Sept. 14, 2021); and 5) TSA Emergency Amendment 1546-21-01B (Sept. 14, 2021).

[2] I filed this Petition for Review in the U.S. Court of Appeals for the Eighth Circuit (No. 21-3362). On TSA's motion, the case was transferred to the D.C. Circuit (No. 21-1236). I have moved to have it returned to the Eighth Circuit.

my son." Eades Declaration, App. 11-17 . "I submitted a mask-exemption demand to American, but it e-mailed me twice Nov. 8 to deny my request unless I agreed to submit to numerous illegal procedures including submitting a medical certificate from my doctor, negative COVID-19 test, and consultation with a third-party medical vendor. … These procedures are all prohibited by Air Carrier Access Act regulations. *Id*.

"Due to my military injury of a gunshot wound to the chest, asthma, and breathing difficulties, it is unbearable and sometimes impossible to maintain normal breathing. I can't tolerate wearing a face mask. Covering my nose and mouth brings back my severe Post-Traumatic Stress Disorder from being in Iraq, in the way of after I was shot, I was not able to breathe due to where I was shot. So my PTSD affects me and prevents me from properly wearing the mask." *Id*.

This Court has issued at least six emergency injunctive orders[3] in the past year or so unequivocally holding that governments may not restrict constitutional rights or disregard clear statutory terms even in the name of fighting a pandemic. Because TSA issued the challenged orders without constitutional, statutory, or regulatory authority, this Court must immediately block TSA's enforcement of the FTMM, as numerous tribunals have done in halting similar pandemic measures.[4] Today I ask the

---

[3] *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 66 (2020); *Robinson v. Murphy*, 141 S.Ct. 972 (2020); *High Plains Harvest Church v. Polis*, 141 S.Ct. 527 (2020); *South Bay United Pentecostal Church v. Newsom*, 141 S.Ct. 716 (2021); *Tandon v. Newsom*, 141 S.Ct. 1294 (2021); and *Alabama Ass'n of Realtors v. HHS,* No. 21A23 (U.S. Aug. 26, 2021).

[4] *Tiger Lily v. HUD*, No. 2:20-cv-2692, 2021 WL 1171887 (W.D. Tenn. Mar. 15, 2021); *Tiger Lily v. HUD*, No. 21-5256 (6th Cir. July 23, 2021); *Alabama Ass'n of Realtors v. HHS*, No. 20-cv-3377 (D.D.C. May 5, 2021); *Alabama Ass'n of Realtors v. HHS,* No. 21A23 (U.S. Aug. 26, 2021).; *Skyworks v. CDC*, No. 5:20-cv-2407 (N.D. Ohio March 10, 2021); *Terkel v. CDC*, No. 6:20-cv-564, 2021 WL 742877 (E.D.

Court to also hold that other constitutional rights – including the freedom to travel, to due process, and states' rights under the 10th Amendment – also can't be suspended by the government because of COVID-19. Because TSA unlawfully issued Health Directives without congressional, statutory, regulatory, or constitutional authority, this Court must immediately enjoin enforcement of the FTMM.

## II. PARTIES

Applicant is Anthony Eades, petitioner in the U.S. Court of Appeals for the Eighth Circuit and for the District of Columbia Circuit. I am proceeding *pro se*.

Respondent here and in the Eighth and D.C. circuits is the Transportation Security Administration, an agency within the Department of Homeland Security ("DHS"). TSA is responsible for ensuring transportation **security**, but by ordering all transit passengers and employees to wear face masks, it has illegally taken on an additional role not authorized by Congress as the Transportation Health & Disease Control Administration.

## III. JURISDICTION

The Court has jurisdiction to grant this application for a stay pursuant to 28 USC § 1651. A stay of TSA's Health Directives is also permitted by statute. "[T]he court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order... After reasonable notice to the … Administrator of the Transportation Security Administration … the court may grant interim relief by staying the order or taking

---

Tex. Feb. 25, 2021); *State of Florida v. Becerra*, No. 8:21-cv-839 (M.D. Fla. June 18, 2021); and *State of Florida v. Becerra,* No. 21-12243 (11th Cir. July 23, 2021).

other appropriate action when good cause for its action exists." 49 USC § 46110(c). I have already attempted to obtain interim relief from Eighth Circuit and was denied. App. 9.

## IV. DECISIONS BELOW

All decisions in the lower courts are styled *Eades v. Transportation Security Administration*.

The Nov. 17, 2021, order of the U.S. Court of Appeals for the Eighth Circuit denying my Emergency Motion to Stay or Preliminary Injunction Pending Review and granting TSA's Motion to Transfer Petition for Review to D.C. Circuit is attached at App. 9.

## V. QUESTIONS PRESENTED

1. Does applicant show "good cause" under 49 USC § 46110 for staying TSA's enforcement of the FTMM pending a determination of this Petition for Review in the D.C. or Eighth circuits and pending the timely filing and disposition by this Court of a petition for writ of certiorari, a less demanding statutory standard for emergency relief than the typical four-part judicial standard?

2. If the Court uses the typical four-prong judicial standard, does applicant demonstrate a substantial likelihood of success on the merits of my claims that the FTMM must be vacated because TSA issued it: 1) in excess of its statutory and regulatory authority; 2) based solely on a Centers for Disease Control & Prevention ("CDC") order that the agency issued in excess of its statutory and

regulatory authority under the Public Health Service Act ("PHSA"); 3) in violation of the 10th Amendment; 4) in violation the constitutional guarantee of freedom to travel; 5) in violation of my Fifth Amendment right to due process; 6) in violation of the Air Carrier Access Act ("ACAA"); 7) without notice and comment required by the Administrative Procedure Act ("APA") (5 USC § 551 *et seq*.); 8) in an arbitrary and capricious manner in violation of the APA; 9) in violation of the Food, Drug, & Cosmetic Act ("FDCA"); 10) in violation of Occupational Health & Safety Administration ("OSHA") regulations; 11) in violation of several international treaties the United States has ratified; and 12) in a way that can't survive strict scrutiny?

3. Is applicant suffering irreparable harm of being banned or severely restricted from the nation's entire public-transportation system due to TSA's enforcement of the FTMM because I medically can't wear a face mask?

4. Do the injuries to applicant outweigh the harm a stay would inflict on TSA if the Court enjoins enforcement of the FTMM?

5. Would entry of a stay stopping TSA from enforcing the FTMM serve the public interest?

## VI. THE FEDERAL TRANSPORTATION MASK MANDATE

### A. Presidential Action

The day after taking office, President Joseph Biden issued Jan. 21, 2021, "Executive Order Promoting COVID-19 Safety in Domestic & International Travel." E.O.

13998, 86 Fed. Reg. 7205 (Jan. 26, 2021); App. 169-174. This executive order set in motion the FTMM issued by CDC and TSA.

> It "is the policy of my Administration to implement these public health measures consistent with CDC guidelines on public modes of transportation and at ports of entry to the United States." Heads of agencies "shall immediately take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC guidelines in or on: (i) airports; (ii) commercial aircraft; (iii) trains; (iv) public maritime vessels, including ferries; (v) intercity bus services; and (vi) all forms of public transportation as defined in section 5302 of title 49, United States Code." *Id*.

"To the extent permitted by applicable law, the heads of agencies shall ensure that any action taken to implement this section does not preempt State, local, Tribal, and territorial laws or rules…" *Id*. But, as discussed below, the FTMM does pre-empt the current mask laws of 44 states, including Missouri, my state of residence. Missouri is one of 10 states that never imposed a statewide mask mandate. App. 198.

President Biden's action marked an abrupt change of policy from the former administration. The U.S. Department of Transportation ("DOT") in October 2020 rejected a petition to require masks on airplanes, subways, and other forms of transportation, with then-Transportation Secretary Elaine Chao's general counsel saying the department "embraces the notion that there should be no more regulations than necessary."

Likewise the Federal Aviation Administration last year deferred to airlines on masks, with FAA Administrator Stephen Dickson telling senators at a June 2020 hearing "I do not plan to provide an enforcement specifically on that issue." Such matters are more appropriately left to federal health authorities, Dickson argued. "As

Secretary Chao has said, I believe that my space is in aviation safety, and their space is in public health," Dickson said, referring to CDC and other health officials.

## B. Department of Homeland Security Action

To carry out E.O. 13998, TSA's parent agency, DHS, issued Determination 21-130 on Jan. 27, 2021, signed by David Pekoske, TSA's administrator who was then serving as acting secretary of homeland security: "Determination of a National Emergency Requiring Actions to Protect the Safety of Americans Using & Employed by the Transportation System." App 175-176.

DHS claims it possesses authority under 49 USC § 114(g) to determine that a national emergency exists. Mr. Pekoske directed TSA "to take actions consistent with the authorities in ATSA as codified at 49 USC sections 106(m) and 114(f), (g), (l), and (m) to implement the Executive Order to promote safety in and secure the transportation system." *Id*.

> "This includes supporting the CDC in the enforcement of any orders or other requirements necessary to protect the transportation system, including passengers and employees, from COVID-19 and to mitigate the spread of COVID-19 through the transportation system, to the extent appropriate and consistent with applicable law. I specifically direct the Transportation Security Administration to use its authority to accept the services of, provide services to, or otherwise cooperate with other federal agencies, including through the implementation of countermeasures with appropriate departments, agencies, and instrumentalities of the United States in order to address a threat to transportation, recognizing that such threat may involve passenger and employee safety." *Id*.

## C. Centers for Disease Control & Prevention Action

Without providing public notice or soliciting comment in violation of the APA, CDC issued an order "Requirement for Persons To Wear Masks While on Conveyances & at Transportation Hubs" on Feb. 1, 2021, effective immediately. 86 Fed. Reg. 8,025 (Feb. 3, 2021); App. 177-182. CDC

> "announces an Agency Order requiring persons to wear masks over the mouth and nose when traveling on any conveyance (e.g., airplanes, trains, subways, buses, taxis, ride-shares, ferries, ships, trolleys, and cable cars) into or within the United States. A person must also wear a mask on any conveyance departing from the United States until the conveyance reaches its foreign destination. Additionally, a person must wear a mask while at any transportation hub within the United States (e.g., airport, bus terminal, marina, train station, seaport or other port, subway station, or any other area that provides transportation within the United States). Furthermore, operators of conveyances and transportation hubs must use best efforts to ensure that persons wear masks as required by this Order." *Id*.

CDC falsely asserts the FTMM is required to "mitigate the further introduction, transmission, and spread of COVID–19 into the United States and from one state or territory into any other state or territory…" *Id*.

"This Order will remain in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 USC 247d) that a public health emergency exists." *Id*.

The Secretary of Health & Human Services issued the first COVID-19 Public Health Emergency Declaration on Jan. 31, 2020. It has since been extended seven times, mostly recently effective Oct. 18, 2021. App. 193. It appears the secretary can extend it indefinitely so long as he believes COVID-19 presents a public-health emergency.

As authority for the FTMM, CDC invoked § 361 of the PHSA (42 USC § 264) and CDC regulations implementing that statute (42 CFR §§ 70.2, 71.31(b), and 71.32(b)), but CDC provided no analysis of this authority in the FTMM Order. App. 177-182.

CDC's FTMM Order requires that:

> "(1) Persons must wear masks over the mouth and nose when traveling on conveyances into and within the United States. Persons must also wear masks at transportation hubs as defined in this Order. (2) A conveyance operator transporting persons into and within the United States must require all persons onboard to wear masks for the duration of travel. … (4) Conveyance operators must use best efforts to ensure that any person on the conveyance wears a mask when boarding, disembarking, and for the duration of travel. Best efforts include: • Boarding only those persons who wear masks; • instructing persons that Federal law requires wearing a mask on the conveyance and failure to comply constitutes a violation of Federal law; • monitoring persons onboard the conveyance for anyone who is not wearing a mask and seeking compliance from such persons; • at the earliest opportunity, disembarking any person who refuses to comply … (5) Operators of transportation hubs must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask." *Id.*

CDC's FTMM Order defines "interstate traffic" as having "the same definition as under 42 CFR 70.1, meaning "(1): (i) The movement of any conveyance or the transportation of persons or property, ***including any portion of such movement or transportation that is entirely within a state or possession***; (ii) From a point of origin in any state or possession to a point of destination in any other state or possession …" *Id.* (emphasis added). CDC's FTMM Order thus applies to wholly intrastate transportation, including taking a rideshare, city bus, subway, or other mode of transit less than one mile – or even just sitting alone at a city bus stop or train station reading a newspaper or talking on a cellphone without any intent to travel.

> "This Order applies to persons on conveyances and at transportation hubs directly operated by U.S. state, local, territorial, or tribal government authorities, as well as the operators themselves. U.S. state, local, territorial, or tribal government authorities directly operating conveyances and transportation

hubs may be subject to additional federal authorities or actions, and are encouraged to implement additional measures enforcing the provisions of this Order regarding persons traveling onboard conveyances and at transportation hubs operated by these government entities." *Id*.

"Transportation hub means any airport, bus terminal, marina, seaport or other port, subway station, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States." *Id*. Thus stationery buildings that can't possibly move among the states are subject to the FTMM, in clear violation of the 10th Amendment and E.O. 13998's specific guidance that "To the extent permitted by applicable law, the heads of agencies shall ensure that any action taken to implement this section does not preempt State, local, Tribal, and territorial laws or rules…" App. 169-174.

CDC then delegated enforcement of the FTMM to TSA: "To address the COVID-19 public health threat to transportation security, this Order shall be enforced by the Transportation Security Administration under appropriate statutory and regulatory authorities including the provisions of 49 USC 106, 114, 44902, 44903, and 46301; and 49 CFR part 1503, 1540.105, 1542.303, 1544.305, and 1546.105." App. 177-182. However, CDC's FTMM Order does not cite any authority whereby it may delegate its supposed statutory authority to another governmental agency.

### D. Transportation Security Administration Actions

Based on CDC's questionable delegation of its authority, TSA issued three "Security Directives" (actually Health Directives) and one Emergency Amendment Feb. 1, 2021, to transportation operators requiring them to vigorously enforce the FTMM.

These four orders were effective until May 11, 2021. TSA then extended the three Health Directives and one Emergency Amendment mandating masks until Sept. 13, 2021. TSA Administrator Pekoske signed Aug. 20, 2021, the second extension, currently in place until Jan. 18, 2022.[5] App. 145-147. These are the four TSA orders challenged in my Petition for Review:

- Health Directive SD 1542-21-01B issued to airport operators. App. 148-152.

- Health Directive SD 1544-21-02B issued to aircraft operators. App. 153-157.

- Health Directive SD 1582/84-21-01 issued to operators of passenger railroads, intercity bus services, and other public transportation. App. 158-162.

- Emergency Amendment EA 1546-21-01 issued to foreign air carriers for all flights to, from, or within the United States. App. 163-167.

Under TSA's erroneous reading of the law, the agency could continue extending these directives forever if not enjoined by this Court.

---

[5] President Joseph Biden announced Dec. 2 he's ordering TSA to extend the three Health Directives and one Emergency Amendment from Jan. 18 to March 18, 2022. "The Administration will continue to require masking during international or other public travel – as well as in transportation hubs such as airports or indoor bus terminals – through March 18 as we continue to battle COVID-19 this winter. The Transportation Security Administration will extend its implementing orders to maintain these requirements through March 18. Fines will continue to be doubled from their initial levels for noncompliance with the masking requirements – with a minimum fine of $500 and fines of up to $3,000 for repeat offenders." App. 194-196. TSA's administrator has yet to sign an order extending FTMM enforcement by two additional months.

## 1. Airports

TSA claims its statutory authority to issue Health Directive SD 1542-21-01B to airport operators – most of which are public agencies run by states or their subdivisions, triggering 10th Amendment concerns – comes from 49 USC §§ 114 & 44903 as well as 49 CFR § 1542.303.

"TSA is issuing this [Health Directive] requiring masks to be worn to mitigate the spread of COVID-19 during air travel. TSA developed these requirements in consultation with the Federal Aviation Administration and CDC. The requirements in this directive apply to all individuals, ***including those already vaccinated***." App. 148-152 (emphasis added).

Airport operators, most of whom are state employees, must adopt the following measures:

> "A. The airport operator must make best efforts to provide individuals with prominent and adequate notice of the mask requirements to facilitate awareness and compliance. This notice must also inform individuals of the following: 1. Federal law requires wearing a mask at all times in and on the airport and failure to comply may result in removal and denial of re-entry. 2. Refusing to wear a mask in or on the airport is a violation of federal law; individuals may be subject to penalties under federal law. B. The airport operator must require that individuals in or on the airport wear a mask … If individuals are not wearing masks, ask them to put a mask on. 2. If individuals refuse to wear a mask in or on the airport, escort them from the airport. C. The airport operator must ensure direct employees, authorized representatives, tenants, and vendors wear a mask at all times in or on the airport…" *Id.*

> "If an individual refuses to comply with mask requirements, follow incident reporting procedures in accordance with the Airport Security Program and provide the following information, if available: 1. Date and airport code; 2. Individual's full name and contact information; 3. Name and contact information for any direct airport employees or authorized representatives involved in the incident; and 4. The circumstances related to the refusal to comply." *Id.*

TSA sent signs to airport operators and demanded they display them throughout every airport across America, overturning the no-mask policies in place in 44 states. App. 198.

## 2. Airlines

TSA issued Health Directive SD 1544-21-02B to aircraft operators  requiring them to apply it to "all persons onboard a commercial aircraft operated by a U.S. aircraft operator, including passengers and crewmembers, *including those already vaccinated*." App. 153-157 (emphasis added).

> "ACTIONS REQUIRED: A. The aircraft operator must provide passengers with prominent and adequate notice of the mask requirements to facilitate awareness and compliance. At a minimum, this notice must inform passengers, at or before check-in and as a pre-flight announcement, of the following: 1. Federal law requires each person to wear a mask at all times throughout the flight, including during boarding and deplaning. 2. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law. … B. The aircraft operator must not board any person who is not wearing a mask … C. The aircraft operator must ensure that direct employees and authorized representatives wear a mask at all times while on an aircraft or in an airport location under the control of the aircraft operator …" *Id*.

"Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips." *Id*.

"Passengers who refuse to wear a mask will not be permitted to enter the secure area of the airport, which includes the terminal and gate area. Depending on the circumstance, those who refuse to wear a mask may be subject to a civil penalty for attempting to circumvent screening requirements, interfering with screening personnel, or a combination of those offenses." App. 183-184.

EA 1546-21-01A applies to foreign air carriers for all flights to, from, or within the United States. It requires foreign airlines to apply the EA to "to all persons onboard a commercial aircraft operated by a foreign air carrier, including passengers and crewmembers, and ***those already vaccinated***." App. 163-167 (emphasis added).

The actions required of foreign airlines are similar to those required of U.S. airlines. *Id*.

### 3. Owners & Operators of Vehicles Used for Public Transportation

Health Directive SD 1582/84-21-01B applies to owners and operators of public-transportation vehicles "identified in 49 CFR 1582.1(a); each owner/operator identified in 49 CFR 1584.1 that provides fixed-route service as defined in 49 CFR 1500.3." App. 158-162.

> "The requirements in this [Health Directive] must be applied to all persons in or on one of the conveyances or a transportation facility used by one of the modes identified above, ***including those already vaccinated***. TSA developed these requirements in consultation with the Department of Transportation (including the Federal Railroad Administration, the Federal Transit Administration, and the Federal Motor Carrier Safety Administration) and the CDC." *Id*. (emphasis added).

> "For the purpose of this [Health Directive], the following definitions apply: Conveyance has the same definition as under 42 CFR 70.1, meaning 'an aircraft, train, road vehicle, vessel .. or other means of transport, including military.' … Transportation hub/facility means any airport, bus terminal, marina, seaport or other port, subway stations, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States." *Id*.

The actions required of public-transportation operators are similar to those required of airports and airlines. *Id*. "If an individual's refusal to comply with the mask

requirement constitutes a significant security concern, the owner/operator must re-port the incident to the Transportation Security Operations Center…" *Id*.

## VII. PROCEDURAL HISTORY

I filed Oct. 19, 2021, a Petition for Review of the four TSA mask mandates with the U.S. Court of Appeals for the Eighth Circuit. *Eades v. Transportation Security Administration*, No. 21-3362. App. 2-8. TSA appeared Oct. 25 and moved Nov. 2 to transfer the case to the U.S. Court of Appeals for the District of Columbia Circuit, where the first petition challenging TSA's FTMM enforcement was filed Feb. 26, 2021, but has still not been decided.[6]

I filed Nov. 8 an Emergency Motion for Stay or Preliminary Injunction Pending Review. TSA opposed the motion Nov. 17. Later that same day, the Eighth Circuit denied my motion to stay without explanation and, in the same order, transferred the Petition for Review to the D.C. Circuit (new case number 21-1236). This is the order I challenge in this application.

Since then, the D.C. Circuit issued Nov. 19 a Clerk's Order holding my case in abeyance pending further order of the court. I filed a motion Nov. 24 to transfer the case back to the Eighth Circuit or, in the alternative, to vacate the Clerk's Order and issue an expedited briefing schedule. TSA opposed my motion, asking the D.C. Circuit to consolidate my Petition for Review with four others (but not *Corbett*, the only one that's been fully briefed). The D.C. Circuit has yet to decide this motion.

---

[6] *Corbett v. Transportation Security Administration*, No. 21-1074 (D.C. Cir).

Also Nov. 24, I submitted a motion to compel TSA to restore my Pre-Check status, which it revoked in illegal retaliation because I filed this lawsuit against it. "Only three weeks after I sued TSA, I received a letter from the agency stating 'As a result of recurrent checks and based on a comprehensive background check, TSA was unable to determine that you pose a sufficiently low risk to transportation and national security to continue to be eligible for expedited airport security screening through the TSA Pre-Check Application Program. As a result, TSA has determined that you are no longer eligible to participate in the TSA Pre-Check Application Program." App. 54. The D.C. Circuit has yet to decide this motion.

# VIII. ARGUMENT

## A. This Court has the power to grant me a stay.

The All Writs Act, 28 USC § 1651(a), authorizes an individual justice or the full Court to issue a stay when: 1) the circumstances presented are "critical and exigent"; 2) the legal rights at issue are "indisputably clear"; and 3) injunctive relief is "necessary or appropriate in aid of the Court's jurisdiction." *Ohio Citizens for Responsible Energy v. NRC*, 479 U.S. 1312 (1986) (Scalia, J., in chambers) (citations and alterations omitted). The Court also has discretion to issue interim relief "based on all the circumstances of the case," without its order being "construed as an expression of the Court's views on the merits" of the underlying claim. *Little Sisters of the Poor Home for the Aged v. Sebelius*, 571 U.S. 1171 (2014).

Caselaw has established four general criteria that an applicant normally must satisfy for the Court to grant a stay: 1) that there is a "reasonable probability" that

four justices will grant certiorari, or agree to review the merits of the case; 2) that there is a "fair prospect" that a majority of the Court will conclude upon review that the decision below on the merits was erroneous; 3) that irreparable harm will result from the denial of the stay; 4. finally, in a close case, the circuit justice may find it appropriate to balance the equities, by exploring the relative harms to the applicant and respondent, as well as the interests of the public at large.

In my case, there's no doubt that at least four justices would grant certiorari to consider the FTMM, a novel question of pandemic law, since this Court frowns on administrative agencies issuing orders outside their congressionally assigned areas of expertise (i.e. an agency assigned to ensure the security of our transportation system has no authority to dictate health measures, especially when there is strong scientific evidence showing face masks do not reduce the spread of respiratory viruses and cause dozens of harms to human health. *See* 223 studies, articles, and videos compiled at https://lucas.travel/masksarebad.

Second, there is "fair prospect" that a majority of the Court will conclude the FTMM is *ultra vires* given its recent decision striking down CDC's Eviction Moratorium. *Alabama Ass'n of Realtors v. HHS,* No. 21A23 (U.S. Aug. 26, 2021).

Third, I will suffer the irreparable harm of being denied the ability to spend Christmas with my 15-year-old son who lives in another state, since driving the long distance from my home in Warsaw, Missouri, to Colorado Springs is not practical, especially given hazardous winter highway conditions I will would likely encounter. The effects of my gunshot wound make long car trips impractical and intolerable. If this Christmas passes without me being able to fly to see my son, there is no way any

future relief I might obtain in the Court of Appeals or from this Court could ever rewind time and restore that holiday joy I hope to share with my son.

Fourth, the equities strongly tip in my favor because, as this Court has held many times, an executive agency can't be harmed by being enjoined from enforcing unlawful orders. And the public policy of the United States is to ensure the disabled – and especially those disabled due to injuries serving this nation's armed forces – shall not be discriminated against.

This Court should follow its recent precedent by granting relief from overbearing COVID-19 restrictions when applicants "have shown that their [constitutional] claims are likely to prevail, that denying them relief would lead to irreparable injury, and that granting relief would not harm the public interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 66 (2020); *see also Robinson v. Murphy*, 141 S.Ct. 972 (2020); *High Plains Harvest Church v. Polis*, 141 S.Ct. 527 (2020); *South Bay United Pentecostal Church v. Newsom*, 141 S.Ct. 716 (2021); *Tandon v. Newsom*, 141 S.Ct. 1294 (2021); and *Alabama Ass'n of Realtors*.

A circuit justice or the full Court may also grant relief if there is a "significant possibility" that the Court would grant certiorari "and reverse, and if there is a likelihood that irreparable injury will result if relief is not granted." *Am. Trucking Ass'ns v. Gray*, 483 U.S. 1306, 1308 (1987) (Blackmun, J.); *see also Lucas v. Townsend*, 486 U.S. 1301, 1304 (1988) (Kennedy, J., in chambers) (considering whether there is a "fair prospect" of reversal).

Because the Eighth Circuit's denial of my Emergency Motion for Stay or Preliminary Injunction Pending Review is clearly erroneous, this Court must grant this application and issue me a stay halting nationwide enforcement of the FTMM until the Court of Appeals decides my petition on the merits and this Court has the opportunity to dispose of any potential petition for a writ of certiorari. The Court should stay TSA's Health Directives and Emergency Amendment.

## B.  Under the statute authorizing review of TSA orders, only "good cause" is required to obtain interim relief.

I will explore in detail below the traditional four-part test for obtaining a stay or preliminary injunction. But first, I must point out that I need not meet such a high bar in this application because the statute authorizing courts to review TSA orders requires a lesser standard. "[T]he court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order... After reasonable notice to the ... Administrator of the Transportation Security Administration ... the court may grant interim relief by staying the order or taking other appropriate action *when good cause for its action exists*." 49 USC § 46110(c) (emphasis added).

Here, good cause not only exists, it is abundant. As I'll argue below, TSA's Health Directives and Emergency Amendment requiring all travelers and employees to don masks throughout the nation's entire transportation system must be set aside for at least 12 reasons. They were issued: 1) in excess of TSA's statutory and regulatory authority; 2) based solely on a CDC order that the agency issued in excess of its statutory and regulatory authority under the PHSA; 3) in violation of the 10th Amendment; 4) in violation the constitutional guarantee of freedom to travel; 5) in violation

19

of my Fifth Amendment right to due process; 6) in violation of the ACAA; 7) without notice and comment required by the APA; 8) in an arbitrary and capricious manner in violation of the APA; 9) in violation of the FDCA; 10) in violation of OSHA regulations; 11) in violation of several international treaties the United States has ratified; and 12) in a way that can't survive strict scrutiny.

These numerous points showing the FTMM is *ultra vires* shows plenty of good cause for why this Court should stay TSA's Health Directives and Emergency Amendment.

## C. Even if the Court declines to use the more lenient "good cause" standard of 49 USC § 46110(c), I meet all four prongs of the typical judicial standard to obtain a stay of agency action.

Although the statute demands I only show "good cause" for staying TSA's Health Directives and Emergency Amendment, I meet the four typical factors used to determine whether preliminary injunctive relief should be granted, which are whether the movant has established: 1) a substantial likelihood of success on the merits; 2) that irreparable injury will be suffered if the relief is not granted; 3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and 4) that entry of the relief would serve the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

Reversal of a Court of Appeals decision refusing interim relief is appropriate if it applied an incorrect legal standard, applied improper procedures, relied on clearly erroneous fact-finding, or if it reached a conclusion that is clearly unreasonable or incorrect. *Klay v. United Healthgroup*, 376 F.3d 1092, 1096 (11th Cir. 2004); *Chicago*

20

*Tribune v. Bridgestone/Firestone*, 263 F.3d 1304, 1309 (11th Cir. 2001). In this case, the Court of Appeals in its ruling Nov. 17 (App. 9) on my Emergency Motion for Stay or Preliminary Injunction Pending Review applied an incorrect legal standard in refusing to use the "good cause" requirement, evaluating my claims of irreparable harm, and failing to consider appropriate caselaw – including this Court's decisions – concerning the dozen major arguments I make. The Court of Appeals reached a conclusion denying my emergency motion for a stay that was clearly unreasonable and incorrect, yet offered zero explanation for its reasoning. *Id*.

The first of the four prerequisites to temporary injunctive relief (likely success on the merits) is generally the most important. *Gonzalez v. Reno*, No. 00-11424, 2000 WL 381901 at \*1 (11th Cir. 2000). The necessary level or degree of possibility of success on the merits will vary according to the court's assessment of the other factors. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). But an extremely high likelihood of prevailing on the merits, as I have shown here, is not required. "A substantial likelihood of success requires a showing of only *likely* or probable, rather than certain, success." *Home Oil Company v. Sam's East*, 199 F.Supp.2d 1236, 1249 (M.D. Ala. 2002) (emphasis original); *see also Ruiz*, 650 F.2d at 565. "Where the 'balance of the equities weighs heavily in favor of granting the [stay],' the movant need only show a 'substantial case on the merits.'" *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

A movant must demonstrate a "substantial likelihood," not a substantial certainty. To require more undermines the purpose of even considering the other three

prerequisites. Instead, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the injunction." *Ruiz*, 650 F.2d at 565. The review "require[s] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Siegel*, 234 F.3d at 1178.

An applicant does not have to show that all factors favor it. A court will "balanc[e] the equities involved." *Asbestos Info. Assoc./North Am. v. OSHA*, 727 F.2d 415, 418 (5th Cir. 1984); *see also Ohio v. United States Army Corps of Eng'rs (In re EPA & DOD Final Rule)*, 803 F.3d 804, 806 (6th Cir. 2015) (calling the stay factors "not prerequisites to be met, but interrelated considerations that must be balanced"). "The first two factors of the … standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). As shown below, all four factors weigh strongly in my favor.

When combined with my extremely high odds of winning on the merits, review of the other three factors reveals it is obvious that the equities weigh heavily in favor of granting a stay. First, there is no doubt I have already suffered, and will continue to suffer, irreparable harm as a direct result of the TSA's enforcement of the FTMM. Second, the relief would inflict no injury on TSA because an executive agency can't suffer any damages from adopting a policy that violates the Constitution, laws, regulations, and treaties. Third, the injunction is in the public interest. The Court should stay TSA's Health Directives and Emergency Amendment.

**D.  I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates exceed TSA's statutory and regulatory authority.**

I have a substantial likelihood of success on the merits for at least 12 reasons, which I will explore starting with the heart of this case: TSA doesn't have any authority from Congress to mandate what travelers must place on our faces. TSA isn't assigned the job of health inspector or disease preventer. Its mission is transportation security, period. Congress named respondent the Transportation *Security* Administration, not the Transportation *Health & Disease Control* Administration. TSA, trying to become THDCA, has massively exceeded its statutory authority by, for the first time, claiming authority to regulate nonsecurity matters such as face masks.

Congress created TSA after the terrorist attacks of Sept. 11, 2001, the Aviation & Transportation Security Act ("ATSA"), to address "security in all modes of transportation." 49 USC § 114(d). TSA's function is limited to address *security threats*. Health measures are outside its scope. Nowhere in TSA's enabling legislation does Congress confer upon it the power to end pandemics. The regulations under which TSA's Health Directives and Emergency Amendment were issued clearly state they are to be used for security threats, not public health. "When TSA determines that additional security measures are necessary to respond to a *threat assessment or to a specific threat* against civil aviation, TSA issues a Security Directive setting forth mandatory measures." 49 CFR § 1542.303(a) (emphasis added). TSA has no congressional authority to expand its domain from transportation security to enforcing public-health orders.

23

"When an agency claims to discover in a long-extant statute an unheralded power ... we typically greet its announcement with a measure of skepticism. We expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance. ... An agency has no power to tailor legislation to bureaucratic policy goals by rewriting unambiguous statutory terms." *Utility Air Regulatory Group v. EPA*, 573 U.S. 302 (2014).

When reviewing an agency's construction of a statute it administers, courts apply the two-step *Chevron* framework. Where the statute is unambiguous, that is the end of the matter; a court applies it as written. Such is the situation here: TSA invented authority to force passengers and employees to wear masks. It thus receives no *Chevron* deference.

The honorable justices of this Court might view the FTMM and masks in general as good or bad public policy. Americans disagree passionately about this. But this case turns on whether Congress has authorized TSA to adopt a nationwide mask mandate. Congress has not – despite ample opportunity to pass a law amending ATSA during the 21-month-long pandemic.

"[B]efore deferring to an administrative agency's statutory interpretation, courts 'must first exhaust the traditional tools of statutory interpretation and reject administrative constructions' that are contrary to the clear meaning of the statute." *Black v. Pension Benefit Guar. Corp.*, 983 F.3d 858, 863 (6th Cir. 2020).

"Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000).

Congress' mandate to TSA is to regulate passenger and cargo screening, manage intelligence relating to aviation threats, deploy technology to detect weapons and explosives, supervise air marshals, etc. Never did Congress imagine a transportation *security* agency focused on ensuring planes aren't hijacked or blown up would get involved in *health* enforcement. "To avoid 'giving unintended breadth to the Acts of Congress,' courts 'rely on the principle of *noscitur a sociis* – a word is known by the company it keeps.' *Yates v. United States*, 574 U.S. 528, 543 (2015) (cleaned up)." *BST Holdings v. OSHA*, No. 21-60845 (5th Cir. Nov. 12, 2021). Here, TSA's attempt to shoehorn an airborne virus into the equivalent of protecting the transportation sector from security threats is beyond absurd.

TSA has invented authority to force passengers and employees in the nation's entire transportation system wear face masks everywhere – from the check-in counter, to security checkpoints, bathrooms, food courts, airline lounges, boarding areas, and on conveyances themselves, without any regard to physical distancing and whether a passenger or employee is vaccinated and/or possesses natural immunity to coronavirus.

TSA greatly disturbs the status quo with its foray into nonsecurity matters. This is especially troubling because the science is clear: Masks do nothing to prevent COVID-19 but harm our health in numerous ways. S*ee* 223 studies, medical articles, and videos compiled at https://lucas.travel/masksarebad.

TSA may only deny boarding to "a passenger who does not consent to a search." 49 USC § 44902(a). It can't stop someone not wearing a mask from embarking. TSA's mission is to prevent "violence and piracy," not a disease. 49 USC § 44903.

OSHA's Vaccine Mandate, like the FTMM, "involves broad medical considerations that lie outside of OSHA's core competencies, and purports to definitively resolve one of today's most hotly debated political issues. Cf. *MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 231 (1994) … There is no clear expression of congressional intent in § 655(c) to convey OSHA such broad authority, and this court will not infer one." *BST Holdings*.

The mask mandate actually ***negatively*** impacts transportation security because it has created chaos in the sky with thousands of reports to TSA and the Federal Aviation Administration of oxygen-starved passengers taking their masks off to breathe and being assaulted and/or harassed by flight attendants and other passengers.

TSA's mask directives go far above and beyond the few state rules for face coverings still in effect. The FTMM is in direct contradiction to the mask polices of 44 states and violate CDC's own May 13, 2021, guidance that "vaccinated people don't need masks … ***people who are fully vaccinated can stop wearing masks*** or maintaining social distance…" CDC finally admitted May 13: "The science is clear***: If you are fully vaccinated, you are protected, and you can start doing the things that you stopped doing because of the pandemic***…"

TSA's directives are so far-reaching they explicitly require those who are eating and drinking at any transportation facility in the nation to wear masks "between bites and sips" – a policy found nowhere else in the country, even during the peak of the pandemic. This is hardly a matter of transportation "security" enforcement Congress envisioned when it passed ATSA after the terrorist attacks of Sept. 11, 2001.

"[H]ealth agencies do not make housing policy, and occupational safety administrations do not make health policy. … In seeking to do so here, OSHA runs afoul of the statute from which it draws its power and, likely, violates the constitutional structure that safeguards my collective liberty." *BST Holdings*.

Nowhere in any statute has TSA ever been assigned responsibility for health matters. Never did Congress imagine that TSA could fine passengers starting at $500 for refusing to obstruct their breathing. "It is incumbent on the courts to ensure decisions are made according to the rule of law, not hysteria … One hopes that this great principle – essential to any free society, including ours – will not itself become yet another casualty of COVID-19." *Dept. of Health & Human Services v. Manke*, No. 20-4700-CZ (Mich. 2020) (Viviano, J., concurring).

If TSA is permitted to regulate what a person wears on his/her face, there would be no end to its powers. There is no distinction between the authority it claims to stop a virus and the authority that would be required to set crew sleep requirements, maintenance standards for the escalators between arrivals and departures levels of an airport, or the speed limit on the roads entering a parking garage at any transportation hub.

TSA's FTMM includes harsh enforcement methods not authorized by law:

> "If a passenger refuses to comply with an instruction given by a crew member with respect to wearing a mask, the aircraft operator must: 1. Make best efforts to disembark the person who refuses to comply as soon as practicable; and 2. Follow incident reporting procedures in accordance with its TSA-approved standard security program and provide the following information, if available: a. Date and flight number; b. Passenger's full name and contact information; c. Passenger's seat number on the flight; d. Name and contact information for any crew members involved in the incident; and e. The circumstances related to the refusal to comply." App. 156.

I don't dispute COVID-19 is deadly in a small percentage of humans, but the virus does not infect infrastructure and thus can't possibly pose a grave threat to transportation security. Also it's notable that in its arguments below, TSA didn't address any of the 223 scientific studies, medical articles, and videos discrediting the notion that masks prevent virus transmission and don't harm our health. https://lucas.travel/masksarebad.

During a national emergency, TSA has statutory power to coordinate and provide notice about threats to transportation. But a disease is not a "threat to transportation." COVID-19 does not shut down airplane engines. Trains do not stop running if they encounter COVID-19. A disease is a threat to human beings, not transportation.

TSA has authority to issue security directives necessary to protect all modes of transportation. But labeling a Health Directive a "Security Directive" is not permitted. Transportation does not need protection from a virus. There's a reason Congress assigned TSA a narrow, specific mission: Veering off into spheres unrelated to security makes our nation's transportation system more vulnerable to attack.

TSA's attempt to define "security" as including stopping a virus can't be upheld. No person heading to the doctor would say "I have an appointment at the security office." Or that "for my security, I am going to take this new medication, start exercising more, and eating better." TSA by regulation limits its ability to issue Security Directives to when additional *security measures* are necessary. In no way does a mask constitute a "security measure."

The fact the Department of Homeland Security has declared a national emergency is of no relevance here. First, an "emergency" indicates a short duration, not nearly

two years. Second, TSA may coordinate with other agencies to ensure the emergency doesn't negatively impact the *security* of transportation. TSA's authority, even during a supposed "emergency," is still quite limited.

The agency's contention below that "TSA's efforts to protect passengers from a deadly disease fit comfortably within" the definition of security is laughable when reviewing the types of security measures Congress allows TSA to target. 49 USC § 114;[7] § 44903[8]. Never before has TSA issued a Health Directive as is the case here with the mask mandate. This novel interpretation warrants no *Chevron* deference.

TSA admits that more than 11,000 of its employees[9] – all of whom must wear masks – have tested positive for COVID-19 (App. 205) but fails to answer my question: "If masks are effective, why have so many TSA workers tested positive?"

---

[7] These include security screening operations for passenger air transportation; hiring and training personnel to provide security screening; receive, assess, and distribute intelligence information related to transportation security; serve as the primary liaison for transportation security to the intelligence and law enforcement communities; identify and undertake research and development activities necessary to enhance transportation security; ensure the adequacy of security measures for the transportation of cargo; require background checks for airport security screening personnel, individuals with access to secure areas of airports, and other transportation security personnel; use information from government agencies to identify individuals on passenger lists who may be a threat to civil aviation or national security; and development, interpretation, promotion, and oversight of a unified effort regarding risk-based, risk-reducing security policies.

[8] These include protect passengers and property on an aircraft against an act of criminal violence or aircraft piracy; require a uniform procedure for searching and detaining passengers and property; authorize an individual who carries out air transportation security duties to carry firearms; discipline of employees for infractions of airport access control requirements; work with airport operators and air carriers to implement and strengthen existing controls to eliminate airport access control weaknesses; and order the deployment of such personnel at any secure area of the airport as necessary to counter the risk of criminal violence, the risk of aircraft piracy at the airport, the risk to air carrier aircraft operations at the airport, or to meet national security concerns.

[9] Since about half of those infected with COVID-19 don't have symptoms and might not realize they are infected, health authorities indicate that the real prevalence of the virus is typically at least double the number of cases confirmed by testing. In this case, TSA admits more than 11,000 of its workers have tested positive for coronavirus (17% of its employees). This means that some 22,000 TSA workers, or more than a third of its workforce, has likely had coronavirus. Yet they all have had to wear masks for close to a year and a half. How can the Court seriously consider TSA's argument that masks protect

The Court should stay TSA's Health Directives and Emergency Amendment.

**E.  I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates, issued at the direction of CDC, exceed CDC's statutory authority under the Public Health Service Act.**

Because TSA's directives were issued at the instruction of CDC, the Court has to take note of the illegality of CDC's action. Congress never gave CDC the staggering amount of power it claims, a fact this Court forcefully opined on recently in reviewing the agency's Eviction Moratorium. The Court resoundingly rejected CDC's position that it has immense authority under the PHSA to ban evictions to supposedly reduce the transmission of COVID-19:

> "It would be one thing if Congress had specifically authorized the action that the CDC has taken. But that has not happened. Instead, the CDC has imposed a nationwide moratorium on evictions in reliance on a decades-old statute that authorizes it to implement measures like fumigation and pest extermination. It strains credulity to believe that this statute grants the CDC the sweeping authority that it asserts. … the sheer scope of the CDC's claimed authority under [PHSA § 264](a) would counsel against the Government's interpretation. We expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast 'economic and political significance." … That is exactly the kind of power that the CDC claims here. … the Government's read of § [264](a) would give the CDC a breathtaking amount of authority. It is hard to see what measures this interpretation would place outside the CDC's reach…" *Alabama Ass'n of Realtors*.

Just like the Eviction Moratorium, the FTMM was issued by CDC claiming non-existent authority under 42 USC § 264(a). Because CDC has no authority to adopt a nationwide mask mandate, and TSA's four orders challenged here radiate from the CDC order, this Court must follow its own lead and immediately stay enforcement of the FTMM. "[O]ur system does not permit agencies to act unlawfully even in pursuit

---

transportation security when more than a third of its own maskwearing workforce has presumably been infected?

of desirable ends. … [(]even the Government's belief that its action 'was necessary to avert a national catastrophe' could not overcome a lack of congressional authorization). It is up to Congress, not the CDC, to decide whether the public interest merits further action here." *Id.*

Other courts also strongly signaled they disagree with CDC's broad reading of its power under the PHSA. In the 11th Circuit, the dissenting judge on a 2-1 panel concluded CDC exceeded its authority by ordering a nationwide Eviction Moratorium due to COVID-19. And the two judges who denied a preliminary injunction wrote: "We have doubts about the district court's ruling on the first factor: whether the plaintiffs are likely to succeed on the merits. ... the second sentence of § 264(a) appears to clarify any ambiguity about the scope of the CDC's power under the first." *Brown v. HHS*, No. 20-14210 (11th Cir. July 14, 2021).

CDC's Conditional Sailing Order directed at cruiseships was enjoined by a district court (a decision upheld by the 11th Circuit) because it exceeds CDC's statutory authority and the agency failed to follow the APA, *inter alia*. *State of Florida v. Becerra*, No. 8:21-cv-839 (M.D. Fla. June 18, 2021); CDC's motion to stay injunction denied, No. 21-12243 (11th Cir. July 23, 2021). The same legal conclusions should be applied here to stay the mask mandate.

In arguments below, TSA falsely claimed CDC's part of the FTMM, which TSA is enforcing, "was based on robust scientific evidence that the wearing of masks would help to prevent the spread of COVID-19…" That's quite ludicrous considering TSA didn't provide the Court of Appeals an iota of evidence – attached to its opposition in or the administrative record – proving that masks reduce the spread of a virus.

Whereas I have offered 223 documents posted to https://lucas.travel/masksarebad showing the opposite.[10] Notably TSA does not dispute the accuracy or validity of any of these materials.

TSA's Health Directives were only put into place because of CDC's demand. It follows that if the CDC order is unlawful, so are the TSA mandates. TSA's attempt to get around this Court's landmark CDC Eviction Moratorium case by asserting that "sanitation" includes covering human faces is a farce. The Court made it clear CDC's authority under the PHSA is severely limited. "It would be one thing if Congress had specifically authorized the action that the CDC has taken. But that has not happened. Instead, the CDC has imposed a nationwide moratorium on evictions in reliance on a decades-old statute that authorizes it to implement measures like fumigation and pest extermination." *Alabama Ass'n of Realtors*.

In no way has Congress vested CDC or TSA with authority to take action through requiring masking. Surgeons wear masks to protect *themselves* from splashes and sprays while operating, not as "a conventional sanitation measure" to stop the spread of viruses. *See* several studies showing fewer transmitted illnesses in mask-free operating rooms at https://lucas.travel/masksarebad.

As this Court acknowledged in the eviction case, Congress never gave CDC the staggering amount of power it now claims. Just like the Eviction Moratorium, the

---

[10] I don't submit all 223 documents into evidence separately because the Court would be overwhelmed with some 2,000 pages of material showing that scientists have known for decades that masks don't prevent transmission of respiratory viruses and actually cause harm to human health. I submit in the appendix just one of these studies – "Is a Mask That Covers the Mouth and Nose Free from Undesirable Side Effects in Everyday Use and Free of Potential Hazards?" published in the International Journal of Environmental Research & Public Health in April 2021 –to illustrate the findings of many of the others. App. 215-256.

FTMM was issued by CDC claiming nonexistent authority under the PHSA, 42 USC § 264. Unlike the Eviction Moratorium, which Congress did authorize for two short periods of time, Congress has **never** enacted into law a mandate that travelers wear masks.

CDC's mask orders, which form the basis for TSA's transportation mask mandate, suffer from the same legal defect as the Eviction Moratorium. Specifically, the mask mandate is a power not mentioned in any statute nor substantially similar to a power mentioned in statute. And even if Congress meant to give the CDC broader powers than mentioned in law, that would be an unconstitutional delegation of its power. "[C]oncerns over separation of powers principles cast doubt over the Mandate's assertion of virtually unlimited power to control individual conduct under the guise of a workplace regulation. As Judge Duncan points out, the major questions doctrine confirms that the Mandate exceeds the bounds of OSHA's statutory authority." *BST Holdings*.

Before this Court acted to stay the Eviction Moratorium, at least four federal district courts vacated it as illegal and/or unconstitutional, and so did the U.S. Court of Appeals for the Sixth Circuit.[11] Because § 361 of the PHSA (42 USC § 264) contains no authority to adopt a nationwide mask mandate for the transportation (or any other) sector, this Court must grant my application for a stay.

---

[11] *Tiger Lily v. HUD*, No. 2:20-cv-2692, 2021 WL 1171887 (W.D. Tenn. Mar. 15, 2021); *Tiger Lily v. HUD*, 992 F.3d 518, 520 (6th Cir. 2021); *Alabama Ass'n of Realtors v. HHS*, No. 20-cv-3377, D.D.C. May 5, 2021); *Skyworks v. CDC*, No. 5:20-cv-2407 (N.D. Ohio March 10, 2021); and *Terkel v. CDC*, No. 6:20-cv-564, 2021 WL 742877 (E.D. Tex. Feb. 25, 2021).

The PHSA authorizes CDC to promulgate regulations to "prevent the introduction, transmission, or spread of communicable diseases" into the United States or among the states. 42 USC § 264(a). The next sentence permits CDC to "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in [its] judgment may be necessary." *Id*. Sanitation of animals or articles found to be infected or contaminated in no way allows TSA to order all transportation passengers and employees – nearly all of whom aren't infected with COVID-19 – to don face coverings.

CDC's regulation implementing PHSA § 361 permits the agency's director, upon "determin[ation] that the measures taken by health authorities of any State or possession … are insufficient to prevent the spread of any of the communicable diseases," to "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." 42 CFR. § 70.2.

CDC's FTMM Order did not contain the required determination that the measures taken by health authorities of any specific state or territory are insufficient to prevent the spread of any communicable diseases. It only issued a broad generalized claim – without supporting evidence – that "Any state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not

taken adequate measures to prevent the spread of COVID–19 from such state or territory to any other state or territory." App. 177-182. There are 44 states that disagree with that assertion. App. 198.

Like TSA, CDC is not entitled to *Chevron* deference when considering the FTMM. This Court in *Alabama Ass'n of Realtors* agreed with the district court's judgment that no portion of PHSA § 361 authorized CDC to prohibit landlords from evicting tenants during a pandemic, interfering with state eviction laws. Likewise, no portion of § 361 authorizes CDC and TSA to make every American using any form of public transportation wear a face mask. No court during this pandemic has concurred with CDC's incredibly broad and erroneous reading of PHSA § 361. CDC's

> "interpretation goes too far. The first sentence of § 264(a) is the starting point in assessing the scope of the Secretary's delegated authority. But it is not the ending point. While it is true that Congress granted the Secretary broad authority to protect the public health, it also prescribed clear means by which the Secretary could achieve that purpose. … An overly expansive reading of the statute that extends a nearly unlimited grant of legislative power to the Secretary would raise serious constitutional concerns, as other courts have found. … Congress did not express a clear intent to grant the Secretary such sweeping authority." *Alabama Ass'n of Realtors.*

If this Court allows CDC and TSA to force masks over the mouths and noses of all transportation passengers and workers, the two agencies' sweeping view of their domain would, if left unchecked, allow them to adopt future regulations governing nearly all aspects of national life in the name of public health. If TSA is allowed to become the health police, the agency could ban anyone who coughs or sneezes from boarding a flight. It could demand every passenger run three miles on a treadmill before entering the security checkpoint to make up for the health consequences of sitting in a cramped airplane for numerous hours.

"[I]f CDC promulgates regulations the director finds 'necessary to prevent' the interstate or international transmission of a disease, the enforcement measures must resemble or remain akin to 'inspection, fumigation, disinfection, sanitation, pest extermination, [or the] destruction of infected animals or articles.'" *State of Florida*. Just like regulating what cruiseships must do before sailing again, forcing humans to wear masks is not allowed under the PHSA (42 USC § 264) or TSA's governing laws. Notably the FTMM applies to all travelers and workers, regardless of whether they are vaccinated, have naturally immunity, or are presently infected with coronavirus.

> "Congress directed the actions set forth in Section 361 to certain animals or articles, those so infected as to be a dangerous source of infection to people. On the face of the statute, the agency must direct other measures to specific targets 'found' to be sources of infection – not to amorphous disease spread but, for example, to actually infected animals, or at least those likely to be..." *Skyworks v. CDC*, No. 5:20-cv-2407 (N.D. Ohio March 10, 2021).

The PHSA authorizes CDC to combat the spread of disease through a range of measures, but these measures plainly do not encompass a nationwide mask mandate on all forms of public transportation effecting tens of millions of Americans every day. The Court should stay TSA's Health Directives and Emergency Amendment.

### F.  I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates run afoul of the 10th Amendment.

The FTMM violates the 10th Amendment because TSA's directives apply to intrastate travel, including taking a rideshare car or transit bus just one mile, during which there is no nexus to interstate commerce. TSA's directives are in direct contradiction to the mask polices of 44 states. App. 198. TSA can't overrule state mask rules

such as those such in several states that ***prohibit*** any public entity from requiring face coverings. *Id*. President Biden criticizes no-mask policies such as those adopted by Florida, however Florida is currently "reporting the lowest amount of coronavirus cases per capita in the nation. … At the same time Florida reported the lowest amount of new cases in the country per capita, coronavirus cases are surging in many states where strict lockdown [and mask] orders were issued by Democratic governors." App. 199-200.

CDC's eviction "moratorium intrudes into an area that is the particular domain of state law … 'Our precedents require Congress to enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power…'" *Alabama Ass'n of Realtors*. Likewise this Court must find that the FTMM intrudes into areas (intrastate transport and public health) that are the particular domain of state law. The "Mandate raises serious constitutional concerns that either make it more likely that the petitioners will succeed on the merits, or at least counsel against adopting OSHA's broad reading of § 655(c) as a matter of statutory interpretation." *BST Holdings.*

There is no language in the U.S. Code indicating Congress' intent to invade the traditionally state-operated realms of intrastate transportation and public health by forcing all passengers and workers to wear a mask. The Court requires "a clear indication" from Congress that it meant to "override[] the usual constitutional balance of federal and state powers" before interpreting a statute "in a way that intrudes on the police power of the States." *Bond v. United States*, 572 U.S. 844, 858, 860 (2014).

Congressional intent has been clear throughout the pandemic: It has left decisionmaking about masks, lockdowns, business closures and restrictions, school shutdowns, limits on the size of public gatherings, and other mitigation measures up to the states.

> "The Constitution creates a Federal Government of enumerated powers. *See* Art. I, § 8. As James Madison wrote: 'The powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite.' … if we were to accept the Government's arguments, we are hard pressed to posit any activity by an individual that [the Federal Government] is without power to regulate. … To uphold the Government's contentions here, we would have to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *United States v. Lopez*, 514 U.S. 549 (1995).

If I use public transportation within Missouri to visit a friend, that's a purely noneconomic intrastate activity not subject to federal regulation pursuant to the 10th Amendment. The

> "Mandate likely exceeds the federal government's authority under the Commerce Clause because it regulates noneconomic inactivity that falls squarely within the States' police power. A person's choice to remain unvaccinated and forgo regular testing is noneconomic inactivity. Cf. *NFIB v. Sebelius*, 567 U.S. 519, 522 (2012) (Roberts, C.J., concurring); *see also Id.* at 652–53 (Scalia, J., dissenting). And to mandate that a person receive a vaccine or undergo testing falls squarely within the States' police power. *Zucht v. King*, 260 U.S. 174, 176 (1922) (noting that precedent had long 'settled that it is within the police power of a state to provide for compulsory vaccination'); *Jacobson v. Massachusetts*, 197 U.S. 11, 25–26 (1905) (similar)."

Furthermore, the FTMM requires states and their political subdivisions that operate transit systems, airports, train stations, etc. to enforce federal orders mandating masks – even when those federal orders directly conflict with state law such as here in Missouri.

> "The power of the Federal Government would be augmented immeasurably if it were able to impress into its service – and at no cost to itself – the police officers of the 50 States. … [T]he Federal Government may not compel the

States to implement, by legislation or executive action, federal regulatory pro-
grams…" *Printz v. United States*, 521 U.S. 898, 919-920 (1997).

"[T]his Court never has sanctioned explicitly a federal command to the States to
promulgate and enforce laws and regulations." *FERC v. Mississippi*, 456 U.S. 742,
761-762 (1982).

TSA's Health Directives apply not only to travelers, but all employees working in
the transportation sector – most of whom never cross state lines and many of whom
work for state governments and their subdivisions. But "The Federal Government …
may not compel the States to enact or administer a federal regulatory program." *New
York v. United States*, 505 U.S. 144, 188 (1992).

> "It is an essential attribute of the States' retained sovereignty that they re-
> main independent and autonomous within their proper sphere of authority. …
> even when the States are not forced to absorb the costs of implementing a fed-
> eral program, they are still put in the position of taking the blame for its bur-
> densomeness. … The Federal Government may neither issue directives requir-
> ing the States to address particular problems, nor command the States' offic-
> ers, or those of their political subdivisions, to administer or enforce a federal
> regulatory program. It matters not whether policymaking is involved, and no
> case-by-case weighing of the burdens or benefits is necessary; such commands
> are fundamentally incompatible with my constitutional system of dual sover-
> eignty." *Printz*.

TSA has no authority to overrule the mask policies of all but six states by imposing
a national mask mandate for all forms of public transportation except driving your
own motor vehicle – especially when there's no evidence that masks mandates reduce
COVID-19 transmission. Recently "States with statewide mask mandates in place
are reporting higher coronavirus cases per capita than Florida." App. 201-204. Illi-
nois, one of only six states to presently have a mask requirement, reported an in-
crease in coronavirus cases of 45% over the last two weeks. The five other mask-man-
date states have an infection rate much higher than Florida. *Id.*

Although the federal government has some authority to regulate intrastate economic activity that has a substantial effect on interstate commerce, this Court has held the 10th Amendment prohibits the federal government from regulating noneconomic intrastate activity. If I use public transportation such as a bus or train to visit a friend in Missouri this is a purely noneconomic intrastate activity not subject to federal regulation. TSA has no constitutional authority to override that state policy by telling me to wear a mask when I travel within the state.

"[T]he Framers rejected the concept of a central government that would act upon and through the States, and instead designed a system in which the State and Federal Governments would exercise concurrent authority over the people." *Printz*.

> "The Commerce Clause power may be expansive, but it does not grant Congress the power to regulate noneconomic inactivity traditionally within the States' police power. *See Sebelius*, 567 U.S. at 554 (Roberts, C.J., concurring) ('People, for reasons of their own, often fail to do things that would be good for them or good for society. Those failures – joined with the similar failures of others – can readily have a substantial effect on interstate commerce. Under the Government's logic, that authorizes Congress to use its commerce power to compel citizens to act as the Government would have them act.'); *see also Bond v. United States*, 572 U.S. 844, 854 (2014) ('The States have broad authority to enact legislation for the public good – what we have often called a 'police power.' . . . The Federal Government, by contrast, has no such authority…' (citations omitted)). Indeed, the courts 'always have rejected readings of the Commerce Clause … that would permit Congress to exercise a police power.' *United States v. Lopez*, 514 U.S. 549, 584 (1995) (Thomas, J., concurring). In sum, the Mandate would far exceed current constitutional authority." *BST Holdings*.

"Whether Congress could enact such a sweeping mandate under its interstate commerce power would pose a hard question. … Whether OSHA can do so does not. *Id*. (Duncan, J., concurring).

Just like regulation of the landlord-tenant relationship and vaccine requirements are historically the province of the states, so is regulation of other public-health rules

and intrastate transportation. It is an ordinary rule of statutory construction that if Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) (quotation marks and citation omitted); *Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172–73 (2001). There is no "unmistakably clear" language in any statute indicating Congress' intent for TSA to invade the traditionally state-operated arenas of public health and intrastate transportation by forcing all people to wear a mask while traveling or working in the transportation industry.

Importantly for this 10th Amendment analysis, the FTMM requires states and their political subdivisions who operate transit systems and hubs such as airports and train stations to enforce federal orders mandating masks – even when those federal orders directly conflict with state law. The Constitution does not permit commandeering the states to enforce policies established by the federal government.

TSA's FTMM regulates not only travelers, but all employees working in the transportation sector – most of whom never cross state lines and many of whom work for state governments and their subdivisions: Employees must wear a mask while on the premises of a transportation hub unless they are only person in the work area. It offends the Constitution to imagine the federal government fining a state commuter-rail operator $118,826 per day for failing to ensure its train maintenance workers wear masks in violation of state law. TSA's mandatory obligation imposed on all state-operated transit systems and transportation hubs to enforce the FTMM plainly

runs afoul of the constitutional rule that the federal government may not compel the states to administer a federal mandate.

There is no question that the decision to impose a nationwide mask mandate on all forms of transportation is one of vast economic and political significance. Mask mandates have been the subject of "earnest and profound debate across the country." *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006). There have been statewide mask mandates put into place at some point during the pandemic by 40 states. App. 198. However, nearly every state long ago ended that requirement. There remains only six states that requires people cover their faces in public. *Id*. Going farther, several states *prohibit* any governmental agency from requiring any person be muzzled. *Id*.

> "[T]he Tenth Amendment affirms the undeniable notion that under our Constitution, the Federal Government is one of enumerated, hence limited, powers. … Accordingly, the Federal Government may act only where the Constitution authorizes it to do so. … The Constitution, in addition to delegating certain enumerated powers to Congress, places whole areas outside the reach of Congress' regulatory authority." *Printz* at 936-937 (Thomas, J., concurring).

Unlike TSA, the states are the appropriate authorities – as both a constitutional and practical matter – to determine whether imposing mask mandates is necessary to mitigate COVID-19. The Court should stay TSA's Health Directives and Emergency Amendment.

### G. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate the constitutional guarantee of freedom to travel.

TSA's mask directives restrict the free movement of disabled Americans such as myself who can't wear face masks. The right to travel includes more than the ability to drive one's own car. "The constitutional right to travel from one State to another,

and necessarily to use the highways *and other instrumentalities of interstate commerce* in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *United States v. Guest*, 383 U.S. 745, 757 (1966) (emphasis added).

The FTMM violates the constitutional freedom to travel without undue governmental interference. "It is a familiar and basic principle, recently reaffirmed in *NAACP v. Alabama*, 377 U.S. 288, 307 … that 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'" *Aptheker v. Secretary of State,* 378 U.S. 500 (1964). "[T]he 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence. … the right is so important that it is 'assertable against private interference as well as governmental action … a virtually unconditional personal right, guaranteed by the Constitution to me all.'" *Saenz v. Roe*, 526 U.S. 489, 498 (1999).

The Court consistently applies strict scrutiny to restrictions on the right to interstate travel. It has long "recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969).

Congress affirmed the constitutional right to fly for disabled Americans by enshrining it into statute:

> "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board … before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103.

There's no evidence that TSA's prohibitions on disabled Americans who can't wear masks have been approved by the transportation secretary or the compliance board.

My constitutional right to freedom of movement can't be restricted when there is no evidence that airplanes or other modes of transit have contributed to the spread of COVID-19 and there are less restrictive rules that could be adopted to minimize the risk to public health such as using CDC systems called "Do Not Board" and "Lookout" to alert airlines to bar passengers who have tested positive for a communicable disease. There's no evidence that TSA and/or CDC are using Do Not Board and Lookout to stop passengers who have tested positive for COVID-19 from embarking. Targeting travelers who are a genuine threat to public health – those who are infected – can be done without infringing on the freedom to travel for everyone else.

My free movement isn't restricted to using highways. The large distances covered rapidly by airplanes aren't feasible by ground transportation. To drive from Warsaw, Missouri, to Colorado Springs would take about 10 grueling hours each way, not counting stops to eat, get gas, use the bathroom, and sleep. I could not do that trip in one day. So that would mean four days of driving to and from Colorado Springs rather than a few hours to fly.

> "To make one choose between flying to one's destination and exercising one's constitutional right appears to us, as to the Eighth Circuit, *United States v. Kroll*, 481 F.2d 884, 886 (8th Cir. 1973), in many situations a form of coercion, however subtle. … While it may be argued there are often other forms of trans-

portation available, it would work a considerable hardship on many air travel-ers to be forced to utilize an alternate form of transportation, assuming one exists at all." *United States v. Albarado*, 495 F.2d 799 (2nd Cir. 1974).

In arguments below, TSA oversimplifies the constitutional right to travel by stat-ing caselaw only applies to "measures that prohibited individuals from moving from state to state." But even with this narrow view, the FTMM prohibits millions of dis-abled Americans from moving freely from state to state because we rely on public transportation such as planes, trains, and buses and can't get mask exemptions, enor-mously restricting our mobility. The FTMM is a deprivation of fundamental rights under the Constitution blocking my freedom of movement. "At the very least, even if the statutory language were susceptible to OSHA's broad reading – which it is not – these serious constitutional concerns would counsel this court's rejection of that read-ing. *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018)." *BST Holdings*.

TSA wrongly claimed I focus on "only one mode of transportation." But the FTMM affects *every* mode of transit except driving your own car. TSA's mask mandate com-pels me to choose between my health or exercising my right to travel. Such coercion is constitutionally impermissible. "It might be suggested that a prospective airline passenger will not actually be deprived of his right to travel because there are alter-native means of travel available. We do not find this argument persuasive 'since, in many situations, flying may be the only practical means of transportation.'" *United States v. Kroll*, 481 F.2d 884 (8th Cir. 1973).

As early as the Articles of Confederation, Congress recognized freedom of move-ment (Article 4), though the right was thought to be so fundamental during the draft-

ing of the Constitution as not needing explicit enumeration. This Court has repeatedly frowned upon restrictions of constitutional rights during the COVID-19 pandemic. The FTMM violates the long-standing constitutional freedom to travel without undue governmental interference. When the government deprives a person of his/her freedom to travel without due process of law, it violates the Bill of Rights.

"This freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful – knowing, studying, arguing, exploring, conversing, observing, and even thinking. Once the right to travel is curtailed, all other rights suffer..." *Aptheker* (Douglas, J., concurring).

"Even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Id.*

Abridged liberty cannot be merely compensated with cash, especially in this case where it is highly unlikely that there is any avenue in which monetary damages could be pursued by myself or any of the other tens of millions of individuals subject to TSA's *ultra vires* enforcement directives. This is unchanged even if the rule implicates only a modest or slight liberty interest. The question is whether the harm is irreparable, not whether it is severe.

In this year's *Tandon* case, the constitutional problem was California's emergency pandemic orders permitting, for example, several hundred people to shop at a big-box store but a much smaller number to gather at places of worship. The Court found this offended the First Amendment. Likewise, the Constitution is offended here when the

federal government doesn't enforce mask orders across the nation for uncountable number of activities that are not protected by the Constitution, but does enforce mask wearing on interstate and international travelers, an activity that IS protected by the Constitution. If going to nonconstitutionally protected activities such as a rock concert with 20,000 other fans or a college football game with more than 100,000 other people unmasked is permitted by the federal government, then exercises of constitutionally protected rights such as flying from one state to another must likewise be permitted.

"The right of 'free ingress and regress to and from' neighboring States, which was expressly mentioned in the text of the Articles of Confederation, may simply have been 'conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created.'" *Saenz* at 501. The Court should stay TSA's Health Directives and Emergency Amendment.

## H. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate the Fifth Amendment right to due process.

"No person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const., Amend. 5. Travelers, including myself, have a liberty interest in not being forced to wear something that I don't want to wear to block my breathing – a function essential for human life – or alternatively being barred from all modes of public transportation.

The FTMM deprives travelers of due process by assigning determinations on mask-exemption requests to private companies such as airlines with no opportunity

to appeal a denial to a neutral federal decisionmaker. TSA's Health Directives purport to allow the disabled to get mask exemptions, but the reality is the government and airlines have made it nearly impossible. I have qualified disabilities but can't get exemptions. I have experienced numerous denials when requesting mask exemptions from airlines (App. 11 *et seq.*) – and there's no procedure to appeal to TSA or any other federal agency.

> "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment. … Freedom of movement is basic in our scheme of values. *See Crandall v. Nevada*, 6 Wall. 35, 44; *Williams v. Fears*, 179 U.S. 270, 274; *Edwards v. California*, 314 U.S. 160. … Since we start with an exercise by an American citizen of an activity included in constitutional protection, we will not readily infer that Congress gave the Secretary … unbridled discretion to grant or withhold it." *Kent v. Dulles*, 357 U.S. 116 (1958).

If TSA mandates masks and claims to allow disability exceptions, TSA itself constitutionally must provide due process in the form of a rapid pre-deprivation hearing to determine whether an airline wrongly applied the Health Directives in denying a disabled person transportation. Saying I can file a DOT complaint and wait years for the agency to do anything is not going to help me make my next flight.

The Court recently spoke forcefully to the issue of pandemic restrictions that violate constitutional rights. An American is "irreparably harmed by the loss of [constitutionally protected] rights 'for even minimal periods of time'; the State has not shown that 'public health would be imperiled' by employing less restrictive measures." *Tandon*. The Court should stay TSA's Health Directives and Emergency Amendment.

**I. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate the Air Carrier Access Act.**

TSA's mask mandate blatantly discriminates against Americans with medical conditions who can't wear masks in violation of the ACAA. "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a). TSA may not issue a directive that is contrary to statute.

Numerous DOT regulations illustrate how the FTMM is illegal. DOT, violating its own regulations, has allowed airlines to prohibit all passengers with disabilities who can't wear face masks from flying and/or impose numerous onerous requirements to obtain an exemption. App. 185-192.

TSA's discrimination against the disabled is extremely difficult to write about for me, and its numerous false claims below that the FTMM doesn't unlawfully bar those with medical conditions who can't wear masks from traveling are insulting. The Health Directives purport to allow the disabled to get mask exemptions, but the reality is TSA and the airlines have made it nearly impossible. TSA failed in the Court of Appeals to contradict that the FTMM violates the ACAA in at least eight ways. TSA instead quoted the numerous illegal items in the FTMM, which itself is *ultra vires*.

TSA's contention that I "may request an exemption from the relevant airline" is disingenuous because I've already done so many times and been refused. Documentation of M.S., Mr. Seklecki, and Mr. Wall's health problems have been provided to airlines, yet refusals still abound. *See,* e.g., my Veterans Administration medical records at App. 71-101.

It's likewise deceitful for TSA to argue that I can file an ACCA complaint with the Department of Transportation if denied a mask exemption. Lucas Wall is suing DOT in the Middle District of Florida[12] and has told me the department hasn't resolved the thousands of complaints it's received against airline mask denials, including several he's made himself.

The Court of Appeals' decision ignores that health experts strongly advise that tens of millions of Americans with a variety of medical conditions can't safely wear a mask. App. 208-256.

Because of TSA and CDC's FTMM directives, DOT – the agency that is supposed to enforce the ACAA – has allowed airlines to prohibit all passengers with disabilities who can't wear face masks from flying and/or impose numerous onerous requirements to obtain an exemption that violate the ACAA and its accompanying regulations. Under the CDC Order, a person with a disability who can't safety wear a mask is supposed to be exempt. However, the CDC Order goes on to place numerous restrictions on obtaining a mask waiver that violate the ACAA:

> "Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party,

---

[12] *Wall v. Centers for Disease Control & Prevention*, No. 6:21-cv-975 (M.D. Fla.)

medical documentation by a licensed medical provider, and/or other infor-
mation as determined by the operator, as well as require evidence that the
person does not have COVID–19 such as a negative result from a SARS–CoV–
2 viral test or documentation of recovery from COVID–19. … Operators may
further require that persons seeking exemption from the requirement to wear
a mask request an accommodation in advance." *Id.*

TSA's Health Directive for U.S. air carriers includes similar illegal language re-

garding mask exceptions. Here's an excerpt of TSA Health Directive SD 1544-21-02B

with illegal sections highlighted in bold underline and corresponding DOT regula-

tions placed in brackets:

> "Aircraft operators **may impose requirements, or conditions of carriage, on per-
> sons requesting an exemption from the requirement to wear a mask [1]**, in-
> cluding **medical consultation by a third party [2], medical documentation by a
> licensed medical provider [3], and/or other information as determined by the
> aircraft operator [4]**, as well as **require evidence that the person does not have
> COVID-19 such as a negative result from a SAR-CoV-2 viral test or documen-
> tation of recovery from COVID-19 [5]**. … Aircraft operators may also impose
> additional protective measures that improve the ability of a person eligible for
> exemption to maintain social distance (separation from others by 6 feet), such
> as **scheduling travel at less crowded times or on less crowded conveyances [6],
> or seating or otherwise situating the individual in a less crowded section of the
> conveyance [7]** or airport. Aircraft operators may further require that persons
> seeking exemption from the requirement to wear a mask **request an accommo-
> dation in advance [8]**." App. 136.

Regulations TSA's Health Directives and Emergency Amendment violate:

1. "[Y]ou must not refuse to provide transportation to a passenger with a disabil-

   ity on the basis of his or her disability, except as specifically permitted by this

   part." 14 CFR § 382.19(a).

2. Since airlines may not require a medical certificate for a passenger unless

   he/she has a communicable disease (14 CFR § 382.23(a)), they may also not

   require a third-party medical consultation. "[Y]ou may require that a passen-

   ger *with a medical certificate* undergo additional medical review by you if there

is a legitimate medical reason for believing that there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate…" 14 CFR § 382.23(d) (emphasis added).

3. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may also require a medical certificate for a passenger if he or she *has* a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). This requirement does not include speculation or presumption that a person might have a communicable disease such as COVID-19; evidence is required that the passenger *has* a communicable disease, e.g. has tested positive for coronavirus.

4. Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.21. TSA's Health Directive illegally assumes every single traveler is infected with COVID-19, even those who are fully vaccinated and/or have natural immunity. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an *individualized assessment*." 14 CFR § 382.19(c)(1) (emphasis added).

5. No provision of the ACAA or its accompanying regulations permits TSA to allow airlines to require that passengers submit a negative test for any communicable disease. Mandating disabled flyers needing a mask exemption submit an

expensive COVID-19 test before checking in but not requiring the same of non-disabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1).

6.  "[Y]ou must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17.

7.  "[Y]ou must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

8.  "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

It's especially troubling that DOT, the agency assigned by Congress to protect the rights of disabled flyers by enforcing the ACAA, has totally abdicated its responsibility. DOT has neglected its statutory duty to enforce the ACAA. The Office of Aviation Consumer Protection ("OACP"), a unit within DOT's Office of the General Counsel, issued a Notice of Enforcement Policy "Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft" on Feb. 5, 2021, "to remind U.S. and foreign air carriers of their legal obligation to accommodate the needs of passengers with disabilities when developing procedures to implement the Federal mandate on the use of masks to mitigate the

public health risks associated with the Coronavirus Disease 2019 (COVID-19)." App.

185-192.

> "OACP will exercise its prosecutorial discretion and provide airlines 45 days
> from the date of this notice to be in compliance with their obligation under the
> Air Carrier Access Act ("ACAA") and the Department's implementing regula-
> tion in 14 CFR Part 382 ("Part 382") to provide reasonable accommodations to
> persons with disabilities who are unable to wear or safely wear masks, so long
> as the airlines demonstrate that they began the process of compliance as soon
> as this notice was issued." *Id*.

The 45-day deadline was March 22, 2021, but it appears every commercial airline

in the nation continues to violate the ACAA because TSA has told them in its Health

Directives and Emergency Amendment that it's okay. OACP's Notice of Enforcement

Policy did not advise airlines that the CDC and TSA mandates allowing carriers to

impose additional requirements (such as requesting a mask exemption in advance,

submitting to a third-party medical consultation, submitting a medical certificate,

and requiring a negative COVID-19 test) are illegal. Yet OACP told airlines they

could not ban all disabled passengers who can't wear masks, as most airlines did from

Summer 2020 to the FTMM's effective date of Feb. 1, 2021:

> "The CDC and other medical authorities recognize that individuals with cer-
> tain medical conditions may have trouble breathing or other difficulties such
> as being unable to remove the mask without assistance if required to wear a
> mask that fits closely over the nose and mouth. … It would be a violation of the
> ACAA to have an exemption for children under 2 on the basis that children
> that age cannot wear or safely wear a mask and not to have an exemption for
> … individuals with disabilities who similarly cannot wear or safely wear a
> mask when there is no evidence that these individuals with disabilities would
> pose a greater health risk to others." *Id*.

> "The ACAA prohibits U.S. and foreign air carriers from denying air transpor-
> tation to or otherwise discriminating in the provision of air transportation
> against a person with a disability by reason of the disability. When a policy or
> practice adopted by a carrier has the effect of denying service to or otherwise
> discriminating against passengers because of their disabilities, the Depart-
> ment's disability regulations in Part 382 require the airline to modify the policy

or practice as necessary to provide nondiscriminatory service to the passengers with disabilities …" *Id*.

It is shocking the degree to which TSA, CDC, and DOT are allowing airlines to illegally discriminate against passengers with disabilities by enforcing the FTMM and making it virtually impossible to get a mask exemption. The Court should stay TSA's Health Directives and Emergency Amendment.

### J. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates were issued without notice and comment required by the Administrative Procedure Act.

TSA's Health Directives were issued without following APA procedures including notice and comment. "Legislative rules have the 'force and effect of law' and may be promulgated only after public notice and comment. *INS v. Chadha*, 462 U.S. 919, 986…" *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014). A court must "hold unlawful and set aside agency action … found to be … without observance of procedure required by law." 5 USC § 706(2)(D).

TSA claims that if it determines a security directive must be issued immediately, notice and comment are waived. Because the FTMM is not a security policy, the mask mandate does not fall under this exemption. COVID-19 began in December 2019 and was declared a global pandemic in March 2020. TSA had nearly 11 months to put the FTMM through APA's required notice-and-comment procedures,[13] but failed to do so.

---

[13] Had TSA put its mask directives through the required APA notice-and-comment period, I would have submitted the following concerns: (1) data shows states without mask mandates suffered fewer deaths per capita than states that imposed such requirements; (2) the FTMM is out of step with the current policies of nearly every state plus numerous businesses who don't require their customers cover their faces; (3) requiring masks in the transportation sector leads to widespread chaos in the skies and on the ground, endangering aviation and transit safety; (4) the FTMM unlawfully discrimi- nates against travelers who can't wear a face covering due to a disability; (5) the gargantuan amount

"The conditional sailing order is a rule … The APA therefore obligates CDC to treat the conditional sailing order as a rule and to provide notice and comment. 5 U.S.C. § 553(b). To satisfy its notice-and-comment obligations under the APA, 'an agency must consider and respond to significant comments received during the period for public comment.' *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). Therefore, the conditional sailing order violates the APA… Precedent demonstrates how infrequently the [good cause] exception should receive acceptance. *See, e.g., Am. Fed'n of Gov't Emp., AFL-CIO v. Block*, 655 F.2d 1153, 1158 (D.C. Cir. 1981) ('[A]dministrative agencies should remain conscious that such emergency situations are indeed rare.'); *State of Florida.*

The FTMM is an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 USC § 704. It represents the consummation of CDC and TSA's decision-making process with respect to requiring masks in the entire U.S. transportation sector. And it affects my legal rights and obligations because it prevents me from flying and using any other modes of public transportation because I can't wear a mask.

The FTMM is a rule within the meaning of the APA because it is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 USC § 551(4). CDC and TSA issued the FTMM without engaging in the notice-and-comment process. 5 USC § 553. Good cause does not excuse CDC's failure to comply with the notice-and-comment procedures. 5 USC § 553(b)(3)(B).

---

of scientific and medical evidence showing that masks have proven to be totally ineffective in reducing COVID-19 spread and deaths (*see* 223 scientific studies, medical articles, and videos at https://lucas.travel/masksarebad); (6) scientists have known for a long time that masks aren't effective in reducing transmission of respiratory viruses (*Id.*); (7) masks pose serious health risks to humans forced to wear them (*Id.*); (8) many experts consider forcing kids to wear masks child abuse; (9) masks have contributed to a surge in serious crime; (10) masks contribute to the huge problem of racism in America; (11) masks are damaging the environment (*Id.*); (12) unlike masks, vaccines are extremely effective in reducing COVID-19 infections and deaths; (13) people who have recovered from COVID-19 have long-lasting immunity; and (14) airplane cabins pose little risk for coronavirus spread and there have been few, if any, reports of coronavirus transmission on aircraft.

The policies were rushed into effect only 12 days after President Biden took office. But the World Health Organization declared COVID-19 a pandemic March 11, 2020 – meaning CDC and TSA had nearly 11 months to put the FTMM through the required notice-and-comment procedures before adopting them as final rules. But they failed to do so. Moreover, the FTMM has now been in effect for 10 months, including two extensions ordered by TSA and a third announced by the president two days ago. Yet the agencies still haven't submitted it for public comment; they just keep renewing it every few months without hearing how devastating it is for the disabled in particular. "The Mandate's stated impetus – a purported 'emergency' that the entire globe has now endured for nearly two years, and which OSHA itself spent nearly two months responding to – is unavailing as well. And its promulgation grossly exceeds OSHA's statutory authority." *BST Holdings*.

"Violation of the conditional sailing order triggers a serious consequence... The conditional sailing order is a rule … The APA therefore obligates CDC to … provide notice and comment. … CDC lacked 'good cause' to evade the statutory duty of notice and comment." *State of Florida*. The Court should stay TSA's Health Directives and Emergency Amendment.

**K. I have a substantial likelihood of success on the merits of my claim that the challenged mandates must be vacated because they are arbitrary and capricious in violation of the APA.**

TSA's mandate forcing me to wear a mask (even though my medical conditions prohibit it) as a condition of using any form of public transportation is the perfect example of arbitrary and capricious executive policies that the law demands be

stopped. A court must "hold unlawful and set aside agency action … found to be … arbitrary, capricious, [or] an abuse of discretion." 5 USC § 706(2)(A).

CDC's "conditional sailing order likely is by definition capricious. … An agency decision issued without adherence to its own regulations must be overturned as arbitrary and capricious…" *State of Florida*. Likewise, the FTMM is by definition capricious for failing to consider vaccination, natural immunity, and disability status, among other factors. The FTMM "therefore is patently not a regulation 'narrowly drawn to prevent the supposed evil,' cf. *Cantwell v. Connecticut*, 310 U.S. 307." *Aptheker*.

The FTMM impermissibly establishes an irrebuttable presumption that every single person traveling anywhere in the United States is infected with COVID-19 and therefore must wear a mask to supposedly prevent transmission of the virus. (Scientific research actually shows that masks do nothing to reduce coronavirus spread and are harmful to humans. https://lucas.travel/masksarebad.) TSA claims that every single traveler – even those who are fully vaccinated and/or have natural immunity – are deemed to be a direct threat to transportation security. This conclusion is beyond absurd and is scientifically impossible.

> "[R]ather than a delicately handled scalpel, the Mandate is a one-size-fits-all sledgehammer that makes hardly any attempt to account for differences in workplaces (and workers) that have more than a little bearing on workers' varying degrees of susceptibility to the supposedly 'grave danger' the Mandate purports to address. … it is generally 'arbitrary or capricious' to 'depart from a prior policy *sub silentio*,' agencies must typically provide a 'detailed explanation' for contradicting a prior policy… Such shortcomings are all hallmarks of unlawful agency actions." *BST Holdings*.

58

CDC's FTMM Order, upon which TSA's Health Directives and Emergency Amendment are based, makes numerous false claims about the effectiveness of face coverings including that

> "Masks help prevent people who have COVID–19, including those who are presymptomatic or asymptomatic, from spreading the virus to others. … Masks also provide personal protection to the wearer by reducing inhalation of these droplets, i.e., they reduce wearers' exposure through filtration. … Appropriately worn masks reduce the spread of COVID–19 – particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19. … Requiring a properly worn mask is a reasonable and necessary measure to prevent the introduction, transmission, and spread of COVID–19 into the United States and among the states and territories under 42 USC 264(a) and 42 CFR 71.32(b)." App. 178.

CDC's FTMM Order ignores the science showing that people who have recovered from coronavirus have long-lasting natural immunity: "CDC recommends that people who have recovered from COVID–19 continue to take precautions to protect themselves and others, including wearing masks; therefore, this mask requirement also applies to people who have recovered from COVID–19." *Id*.

CDC's FTMM Order is so broad it appears to require passengers on ferries, cruiseships, and long-distance trains to wear masks even within their own private cabins, completely segregated from other people. *Id*.

TSA's Health Directives are so onerous they apply to people who are not traveling interstate, employees working at facilities and on conveyances that only serve intrastate travelers, and people at a transportation hubs for purposes other than traveling interstate (i.e. working, buying tickets for future travel, waiting on a train platform for a family member to arrive, etc.).

The FTMM is exactly the kind of policy Congress has told the courts to vacate as arbitrary and capricious. 5 USC § 706(2)(A). The Court should stay TSA's Health Directives and Emergency Amendment.

## L.  I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate the Food, Drug, & Cosmetic Act.

TSA's mask mandate must be stayed because it violates federal law prohibiting the mandatory use of any medical device approved under an Emergency Use Authorization ("EUA") by the Food & Drug Administration ("FDA"). Individuals to whom any EUA product is offered must be informed "of the option to accept *or refuse administration of the product*…" 21 USC § 360bbb-3(e)(1)(A)(ii)(III) (emphasis added). TSA can't force travelers to use EUA products such as masks, according to the FDCA. TSA may only *recommend* masks and advise passengers if they refuse to wear a mask, the consequence *might* be a higher risk for contracting COVID-19.

When courts review the legal interpretations of an agency such as TSA regarding its compliance with statutes it does not administer, "such review can be more stringent: Courts sometimes review such matters *de novo*, or without any deference at all to the agency's interpretation." *Freeman v. DirecTV*, 457 F.3d 1001, 1004 (9th Cir. 2006).

By supplying surgical masks to passengers at its airport checkpoints, TSA is a distributor of FDA EUA medical devices and is subject to the FDCA restrictions that any person may refuse administration of the product. But if a passenger refuses the

offer of a surgical mask from a TSA worker, he is denied passage through the check-point and deprived of the ability to board a flight. By distributing EUA masks, TSA is carrying out an activity "for which an authorization … is issued" under the FDCA.

The FTMM is illegal because it forces Americans to use a medical device (face masks), most of which are approved by FDA under EUAs. TSA can't force travelers to use EUA products including masks. There's good reason for the law prohibiting forced use of EUA medical devices. Requirements for EUA products are waived for, among other things, "current good manufacturing practice otherwise applicable to the manufacture, processing, packing … of products subject to regulation under this chapter…" 21 USC § 360bbb-3(e)(3)(A). "Nothing in this section provides the Secretary any authority to require any person to carry out any activity that becomes lawful pursuant to an authorization under this section…" 21 USC § 360bbb-3(l). This is consistent with HHS regulations requiring that participants in trials of experimental medical devices must be informed that "participation is voluntary, refusal to participate will involve no penalty…" 45 CFR § 46.116(a)(8).

The law is crystal clear: TSA has no authority to require any passenger wear a mask authorized under EUA. But most masks being used by Americans to comply with the FTMM meet the legal definition of an EUA "eligible product" that is "intended for use to prevent … a disease…" 21 USC § 360bbb-3(a). FDA regulates most face masks under EUAs. FDA states on its website:

> "On April 18, 2020, in response to concerns relating to insufficient supply and availability of face masks, [FDA] issued an [EUA] authorizing the use of face masks for use by members of the general public… A face mask is a device … that covers the user's nose and mouth and may or may not meet fluid barrier or filtration efficiency levels. It includes cloth face coverings as a subset. …

> Face masks are regulated by FDA when they meet the definition of a 'device' under section 201(h) of the Act. Generally, face masks fall within this definition when they are intended for a medical purpose. … Face masks are authorized under this EUA when they are intended for use as source control, by members of the general public … to cover their noses and mouths, in accordance with CDC recommendations, to help prevent the spread of SARS-CoV-2 during the COVID-19 pandemic."

The HHS secretary authorized EUAs for COVID-19 countermeasures (85 Fed. Reg. 17,335) including respiratory devices (85 Fed. Reg. 13,907). FDA published the EUA for face masks July 14, 2020. 85 Fed. Reg. 42,410. Another mask EUA was published Nov. 20, 2020. 85 Fed. Reg. 74,352. HHS Secretary Xavier Becerra renewed the public-health emergency for COVID-19 effective Oct. 18, 2021, allowing EUAs for masks and other devices to continue. App. 193. FDA's website confirms my argument that face masks are worthless. Masks must not be

> "labeled in such a manner that would misrepresent the product's intended use; for example, the labeling must not state or imply that the product is intended for antimicrobial or antiviral protection or related uses or is for use such as infection prevention or reduction… No printed matter, including advertising or promotional materials, relating to the use of the authorized face mask *may represent or suggest that such product is safe or effective for the prevention or treatment of patients during the COVID-19 pandemic*."

The instruction manual for a 3M N95 respirator mask, which is among the small number of masks that are fully FDA approved, makes clear its wearing still has risks: "Misuse may result in sickness or death. … [It] cannot eliminate the risk of contracting infection, illness, or disease… Individuals with a compromised respiratory system, such as asthma or emphysema, should consult a physician and must complete a medical evaluation prior to use." App. 206-207.

Despite the lack of data that masks are effective, FDA issued an umbrella EUA for 41 types of surgical masks, many of which are used by passengers to comply with

the FTMM. Notably five types of masks have been withdrawn from the EUA after FDA found them to be defective. FDA has also revoked the EUA for respirator masks made in China for being faulty. CDC's National Institute for Occupational Safety & Health ("NIOSH") found many masks made in China "authorized under the April 3, 2020, EUA did not meet the expected performance standards." An astounding 167 respirator mask brands from China had their EUAs revoked by FDA. Another 54 were previously revoked. FDA revokes EUAs when "appropriate to protect the public health or safety." Surgical masks (typically light blue in color) made in China are also not authorized by FDA.

Although these 221 respirator mask brands (plus all surgical masks) manufactured in China may no longer be legally sold in the United States, there are likely tens of millions of these face coverings still being used by passengers due to the FTMM. So not only are quality masks worthless in TSA's goal of reducing transmission of COVID-19, but the vast majority sold in the United States are actually *defective*, according to FDA. "The 'may be effective' standard for EUAs provides for a lower level of evidence than the 'effectiveness' standard that FDA uses for product approvals." Even a well-informed consumer would find it nearly impossible to understand what types and brands of face masks have been authorized and which – if any – are regarded as safe to use for extended periods of time by NIOSH. The administrative record shows no indication these issues were considered.

When a mask manufacturer applies for an EUA, it must agree it may not "misrepresent the product or create an undue risk in light of the public health emergency.

For example, the labeling must not include any express or implied claims for: … antimicrobial or antiviral protection or related uses, (3) infection prevention, infection reduction, or related uses, or (4) viral filtration efficiency."

Because the FTMM forces transportation passengers and workers to use emergency medical devices, the Court should stay TSA's Health Directives and Emergency Amendment.

**M. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate Occupational Health & Safety Administration regulations for transportation workers.**

The U.S. Department of Labor's Occupational Health & Safety Administration ("OSHA") states "Surgical masks are not considered respirators by OSHA … surgical masks do not seal tightly to the wearer's face, nor do they provide a reliable level of protection from inhaling smaller airborne particles."

TSA ignores that the FTMM applies to transportation employees as well as passengers. Its Health Directives don't comply with OSHA's extensive rules regulating maskwearing in the workplace. 29 CFR § 1910.134. The fact OSHA stringently regulates employee masking shows the severe dangers the practice imposes. TSA has no authority to impose those dangers on transit workers or passengers.

OSHA's standards apply to employees. There's no evidence TSA is ensuring all transportation employers comply with the requirements of 29 CFR § 1910.134. Also, OSHA does not permit employers (such as airlines, bus companies, etc.) to mandate masks for customers, further invalidating the FTMM.

Due to the dangers of obstructing a person's breathing, OSHA requires that a Respirator Medical Evaluation Questionnaire be completed by anyone who will be required to wear a mask. If any employer demands someone wear a mask, OSHA requires it "Must provide respirators, training, and medical evaluations at no cost…" But there's no evidence that TSA is making sure transit operators provide training and medical evaluations to their workers and passengers before forcing them to block their oxygen intake.

"All oxygen-deficient atmospheres (less than 19.5% O2 by volume) [such as airplane cabins] shall be considered IDLH," according to OSHA. IDLH stands for "immediately dangerous to life or health." The percentage of oxygen on an airplane pressurized at 8,000 feet is equivalent to 15.1% oxygen at sea level. While wearing a mask in such an oxygen-deficient atmosphere as a plane cabin, there is a risk of hypoxia for people with existing respiratory difficulties, among the many factors the administrative record shows TSA failed to consider before rushing its Health Directives and Emergency Amendment into place.

Lack of oxygen explains why the airlines are having thousands of customers and flight attendants who become agitated or violent and need to remove their masks. These people are experiencing hypoxemia due to oxygen deprivation from having their nose and mouth covered.

OSHA requires that before any human be required to don a mask, a company must: 1) provide a medical evaluation to determine person's ability to use a respirator, before fit testing and use; 2) identify a physician or other licensed health care

professional to perform medical evaluations using a medical questionnaire or an initial medical examination that obtains the same information as the medical questionnaire; and 3) must obtain a written recommendation regarding the employee's ability to use the medical device. TSA's mask mandates don't provide for any of this.

OSHA requires companies mandating masks to "provide effective training to respirator users, including: why the respirator is necessary and how improper fit, use, or maintenance can compromise the protective effect of the respirator; limitations and capabilities of the respirator; use in emergency situations; how to inspect, put on and remove, use and check the seals; procedures for maintenance and storage; recognition of medical signs and symptoms that may limit or prevent effective use; and general requirements of this standard." TSA doesn't heed this.

Because the FTMM fails to meet any OSHA mask standards, the Court should stay TSA's Health Directives and Emergency Amendment.

## N. I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates violate several international treaties the U.S. has ratified.

TSA's mask requirements break several provisions of international law, starting with the International Covenant on Civil & Political Rights ("ICCPR"). Treaty Doc. 95-20 (ratified by the Senate April 2, 1992). The protection of the rights of the disabled is of international concern. "[I]n accordance with the Universal Declaration of Human Rights, the ideal of free human beings enjoying civil and political freedom and freedom from fear and want can only be achieved if conditions are created whereby everyone may enjoy his civil and political rights, as well as his economic,

social and cultural rights…" *Id.*

The Nuremberg Code principles are incorporated into treaty. "[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7.

"No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. There is no law enacted by Congress that authorizes TSA to require  airline passengers to wear masks, nor is there a law enacted by Congress allowing airlines to discriminate against the disabled. In fact, the ACAA prohibits such discrimination. 49 USC § 41705.

International human-rights law does not recognize a "right to transportation" per se. Rather, it guarantees the right to liberty of movement: "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law… 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12.

By banning the disabled who can't don masks from flying, TSA violates our rights under international law to liberty of movement, freedom to leave any country, and ability to enter our own country. Congress has not passed any law allowing TSA to restrict a person's movement based on their inability (or unwillingness) to impede their breathing.

"1. No one shall be subjected to arbitrary or unlawful interference with his privacy … 2. Everyone has the right to the protection of the law against such interference or

attacks." ICCPR Art. 17. But TSA allows airlines to impose numerous onerous requirements for the disabled to obtain a mask exemption, arbitrarily and unlawfully interfering with our privacy by forcing us to disclose sensitive medical information to airline employees who are not our physicians. I have a right under international law for this Court to protect me against such interference and attacks on my privacy.

Next, let's look at the Convention on International Civil Aviation ("CICA"),[14] which the United States ratified Aug. 9, 1946.

> "Each contracting State undertakes to collaborate in securing the highest practicable degree of uniformity in regulations, standards, procedures, and organization in relation to aircraft, personnel, airways and auxiliary services in all matters in which such uniformity will facilitate and improve air navigation. To this end the International Civil Aviation Organization shall adopt and amend from time to time, as may be necessary procedures dealing with: ... such other matters concerned with the safety, regularity, and efficiency of air navigation as may from time to time appear appropriate." CICA Art. 37.

> "Any State which finds it impracticable to comply in all respects with any such international standard or procedure, or to bring its own regulations or practices into full accord with any international standard or procedure after amendment of the latter, or which deems it necessary to adopt regulations or practices differing in any particular respect from those established by an international standard, shall give immediate notification to the International Civil Aviation Organization of the differences between its own practice and that established by the international standard." CICA Art. 38.

The International Civil Aviation Organization ("ICAO") "shall enjoy in the territory of each contracting State such legal capacity as may be necessary for the performance of its functions. Full judicial personality shall be granted wherever compatible with the constitution and laws of the State concerned." CICA Art. 47.

Pursuant to CICA Art. 37, ICAO has adopted, *inter alia*, Annex 9 – Facilitation to the Chicago Convention, which contains provisions on facilitation of air transport,

---

[14] This treaty is also known as the "Chicago Convention"

namely Standards and Recommended Practices, including provisions on facilitation
of the transport of passengers requiring special assistance. The 15th Edition of Annex
9 to CICA became effective Oct. 23, 2017, and became applicable Feb. 23, 2018. Annex
9 to CICA is binding in this country as part of the treaty.

Annex 9 defines "person with disabilities" as "Any person whose mobility is re-
duced due to a physical incapacity (sensory or locomotor), an intellectual deficiency,
age, illness, or any other cause of disability when using transport and whose situation
needs special attention and the adaptation to the person's needs of the services made
available to all passengers."

"Contracting States shall take the necessary steps to ensure that persons with
disabilities have equivalent access to air services." CICA Annex 9 § 8.34.

"[P]ersons with disabilities should be permitted to travel without the requirement
for a medical clearance. Aircraft operators should only be permitted to require per-
sons with disabilities to obtain a medical clearance in cases of a medical condition
where it is not clear that they are fit to travel and could compromise their safety or
well-being or that of other passengers." CICA Annex 9 § 8.39.

Because the FTMM violates America's obligations under international law, the
Court should stay TSA's Health Directives and Emergency Amendment.

## O.  I have a substantial likelihood of success on the merits of my claim that the FTMM must be vacated because the challenged mandates can't survive strict scrutiny.

"Strict scrutiny is a searching examination, and it is the government that bears
the burden" of proof. *Fisher v. University of Texas*, 570 U.S. 297, 310 (2013). Specifi-
cally, the government must establish that a mandate is "justified by a compelling

governmental interest and … narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 531-532 (1993). The FTMM fails strict scrutiny because there are far less restrictive options available to advance the federal government's asserted interest in combatting the spread of COVID-19.

Strict scrutiny must apply in this case because TSA, through enforcement of the unlawful FTMM, disparately impacts the right to due process and the freedom of movement compared to analogous activities that are not constitutionally protected. If a person may go see a movie, eat in a restaurant, shop in a crowded mall, and so forth without a mask, then he must also be permitted to travel without covering his face – especially when the person (such as myself) has a medical condition that prevents him from safely wearing a mask.

> "In cases implicating this form of 'strict scrutiny,' courts nearly always face an individual's claim of constitutional right pitted against the government's claim of special expertise in a matter of high importance involving public health or safety. It has never been enough for the State to insist on deference or demand that individual rights give way to collective interests. Of course we are not scientists, but neither may we abandon the field when government officials with experts in tow seek to infringe a constitutionally protected liberty. The whole point of strict scrutiny is to test the government's assertions, and our precedents make plain that it has always been a demanding and rarely satisfied standard. … Even in times of crisis – perhaps especially in times of crisis – we have a duty to hold governments to the Constitution." *South Bay*, 141 S.Ct. 716 (Gorsuch, Thomas, and Alito, JJ., concurring).

CDC and TSA have never rationally explained why they believe sitting next to someone for two hours in a movie theater unmasked is any different than sitting next to someone on a plane, train, or bus for two or more hours. There is no way the agencies can satisfy narrow tailoring.

"We adhere to the view that the 'Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States.' … But

the Constitution also entrusts the protection of the people's rights to the Judiciary…"
*South Bay* (Roberts, C.J., concurring).

In the instant matter, we have CDC and TSA requiring masks in no sector of the nation except transportation, without showing a single scientific study identifying transit as highly vulnerable to coronavirus spread. The Court doesn't care for those sorts of distinctions, especially when constitutional rights such as due process and the freedom to travel are denied when numerous other nonconstitutionally protected activities are permitted without mask wearing.

> "[T]he government has the burden to establish that the challenged law satisfies strict scrutiny. … [N]arrow tailoring requires the government to show that measures less restrictive of the [constitutionally protected] activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the [constitutionally protected] exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for [constitutionally protected] exercise too." *Tandon*.

In this matter, CDC and TSA have measures available to them that are far less restrictive than mandating masks be worn in the entire national transportation network, especially systems that have been established to stop passengers with a communicable disease from traveling such as the "Do Not Board" and "Lookout" lists.

The FTMM fails narrow tailoring because to the extent TSA seeks to reduce sickness, hospitalizations, and deaths, there are far less restrictive means available than a blanket mandate that everyone wear masks, whose effectiveness are greatly disputed by scientists and doctors. https://lucas.travel/masksarebad.

Caps on attendance at houses of worship in New York could not survive strict scrutiny because the State "offered no evidence that applicants … contributed to the

71

spread of COVID-19," and there were "many other less restrictive rules that could be adopted to minimize the risk to those attending religious services." *Roman Catholic Diocese.*

Although the virus is still circulating at low levels in the United States – as it likely always will  -- the public-health system is not under any strain. States such as Florida and Missouri that have never required masks are seeing low rates of COVID-19 infection compared to other states and localities that do mandate face coverings. App. 199-203. Mask decisions must be left up to states and localities. The Court should stay TSA's Health Directives and Emergency Amendment.

**P. I'm suffering irreparable harm of being banned or severely restricted from the nation's entire public-transportation system due to TSA's FTMM enforcement because I medically can't wear a face mask. The government's violation of my constitutional and statutory rights will continue to cause irreparable harm absent a stay.**

I will without a doubt suffer continual irreparable injury if the requested relief is not granted. In its Nov. 17 one-sentence ruling (App. 9) on my Emergency Motion for Stay or Preliminary Injunction Pending Review, the Court of Appeals failed to consider the seriousness of the irreparable injuries I am suffering. Put simply, a "violation of a constitutional right constitutes irreparable injury…" *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013). And failure "to provide notice and comment … establishes irreparable injury. … the harm flowing from a procedural violation can be irreparable." *State of Florida.* This is unchanged even if the rule implicates only a modest or slight liberty interest. The question is whether the harm is irreparable, not whether it is severe.

The Court frowns on pandemic restrictions that violate constitutional rights. An American is "irreparably harmed by the loss of [constitutionally protected] rights 'for even minimal periods of time'; the State has not shown that 'public health would be imperiled' by employing less restrictive measures." *Tandon*, 141 S.Ct. 1294.

Being forced to miss Christmas with my son would constitute irreparable harm. "I don't get to see him often, and it's critically important we get to spend this holiday together. … I was previously booked from Kansas City to Colorado Springs Nov. 18 to spend Thanksgiving with my son but had to cancel the ticket because American Airlines is unlawfully denying mask exemptions to passengers with disabilities and TSA isn't doing anything about it. … It was crushing to miss such an important holiday with my son." App. 12.

When considering this prong, "it is not so much the magnitude but the irreparability that counts." *Enter. Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir.1985) (quoting *Canal Authority v. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974)). Here I have both an enormous magnitude of harm plus irreparability. If the Court of Appeals eventually rules in my favor and vacates the Health Directives and Emergency Amendment, there's no way I can go back in time to spend a holiday with my teenage boy.

Justice Gorsuch wrote in a concurring opinion in *Roman Catholic Diocese* that government is not free to disregard the Constitution in times of crisis: "Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical."

"It is clear that a denial of the petitioners' proposed stay would do them irreparable harm. For one, the Mandate threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s). For the individual petitioners, the loss of constitutional freedoms 'for even minimal periods of time ... unquestionably constitutes irreparable injury.' *Elrod v. Burns*, 427 U.S. 347, 373 (1976)." *BST Holdings*.

The Court must revisit the Court of Appeals' erroneous holding and instead should conclude that the FTMM too broadly and indiscriminately restricts the right to travel – especially for people with disabilities who can't wear a mask – and thereby abridges the liberty guaranteed by the Constitution. It is the Court's duty to enjoin enforcement of the mandate that was issued beyond TSA's statutory and constitutional authority.

My injuries can't be recovered from TSA because the APA doesn't permit monetary relief: "A person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency ... acted or failed to act in an official capacity or under color of legal authority shall not be dismissed..." 5 USC § 702 (emphasis added).

The sovereign immunity defense has been withdrawn only with respect to actions seeking specific relief *other than money damages*, such as a stay. *Bowen v. Massachusetts*, 487 U.S. 879 (1988). Therefore, I have suffered irreparable injury. The Court should stay TSA's Health Directives and Emergency Amendment.

**Q. The equities weigh strongly in favor of a stay. The injuries I (and tens of millions of similarly situated disabled Americans) are suffering by being excluded from all forms of public transportation across the entire country outweigh the harm a stay would inflict on TSA.**

The injuries I'm suffering because of TSA's FTMM enforcement outweigh the harm the requested interim relief would inflict on the agency. Whereas I have been denied the ability to use airline tickets I have paid for and been deprived of my constitutional rights to due process and freedom to travel, the government would suffer no harm if the Court grants a stay. The relief requested would actually match the federal government's hands-off mask policy in every other realm of society and the no-mask rules of 44 states. App. 198.

The balance of equities factor focuses on the "effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). TSA can't have an interest in taking actions that are outside of its statutory and/or constitutional authority. The agency therefore cannot claim to have any cognizable "injury" as a result of the issuance of a stay halting enforcement nationwide of the FTMM. Staying the Health Directives and Emergency Amendment would restore the transportation sector to the status quo that existed before these *ultra vires* measures were put into place by TSA in February.

A "stay will do OSHA no harm whatsoever. Any interest OSHA may claim in enforcing an unlawful (and likely unconstitutional) [Mandate] is illegitimate. Moreover, any abstract 'harm' a stay might cause the Agency pales in comparison and importance to the harms the absence of a stay threatens to cause countless individuals..." *BST Holdings*.

TSA admits more than 11,000 of its employees have been infected with COVID-19. App. 205. But TSA workers are forced to don face coverings. If masks are effective, why have so many TSA workers tested positive? The Court should stay TSA's Health Directives and Emergency Amendment.

## R. Entry of a preliminary injunction stopping TSA from enforcing the FTMM would serve the public interest.

A stay is warranted because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Bev. Ass'n v. City and Cty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc). Vaccines against COVID-19 are now available to every American age 5 and older who wants one. "[I]t is too late for the State to defend extreme measures with claims of temporary exigency, if it ever could." *South Bay United Pentecostal Church v. Newsom,* 141 S.Ct. 716, 720 (2021) (Gorsuch, J.).

TSA has produced no evidence showing that face masks are effective in reducing COVID-19, especially now that most Americans are fully vaccinated. In fact, masking has been totally ineffective in reducing coronavirus infections and deaths. https://lucas.travel/masksarebad. "The public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions – even, or perhaps *particularly*, when those decisions frustrate government officials." *BST Holdings* (emphasis original).

It's in the public interest to prevent discrimination against travelers with medical conditions who can't wear masks. The policy of the United States is that passengers

with disabilities shall not be discriminated against. 49 USC § 41705. There is "no

public interest in the perpetuation of unlawful agency action." *Shawnee Tribe v.*

*Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021); *see also State v. Biden*, 10 F.4th 538 (5th

Cir. 2021; *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

A stay that "maintains the separation of powers and ensures that a major new policy

undergoes notice and comment" is also in the public interest. *Texas v. United States*,

787 F.3d 733, 768 (5th Cir. 2015). Issuing a stay will also preserve proper federalism,

where it is the primary province of the states to regulate public health and safety.

*See Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905).

In weighing the public interest, the Court needs to take into account that air-

planes are among the safest places you can be during the pandemic due to high-effi-

ciency filters that bring fresh air into the cabin every 3-4 minutes. Aircraft cabins

have more sterile air than many hospital operating rooms. Most importantly, there

have not been any reported outbreaks of COVID-19 at airports or on board aircraft.

> "Not only is there no evidence that the applicants have contributed to the
> spread of COVID–19 but there are many other less restrictive rules that could
> be adopted to minimize the risk to public interests. Finally, it has not been
> shown that granting the applications will harm the public. As noted, the State
> has not claimed that attendance at the applicants' services has resulted in the
> spread of the disease. And the State has not shown that public health would
> be imperiled if less restrictive measures were imposed." *Roman Catholic Dio-
> cese*.

It's in the public interest to end the FTMM. Protecting Americans' Fifth Amend-

ment rights to due process and the liberty to travel – not to mention the states' 10th

Amendment protection against being made to enforce federal orders contrary to their

own laws – is in the public interest.

"COVID-19 no longer threatens the public's health to the same extent presented at the start of the pandemic or when CDC issued the conditional sailing order. … And Florida's high likelihood of success on the merits ensures that a preliminary injunction would serve the public interest." *State of Florida*.

> "[T]his all assumes that COVID-19 poses any significant danger to workers to begin with; for the more than 78% of Americans aged 12 and older either fully or partially inoculated against it, the virus poses – the Administration assures us – little risk at all.) *See*, e.g., 86 Fed. Reg. 61,402, 61,402–03 ('COVID-19 vaccines authorized or approved by the [FDA] effectively protect vaccinated individuals against severe illness and death from COVID-19.'). … The Mandate is staggeringly overbroad. … one constant remains – the Mandate fails almost completely to address, or even respond to, much of this reality and common sense." *BST Holdings*.

Because of the FTMM, tens of millions of Americans who can't wear face coverings because of medical conditions are essentially banned from using all modes of public transportation nationwide for no rational reason. This can hardly be deemed to be in the public interest. Embracing the theory that a nationwide mask mandate is still necessary to prevent an imminent peril to public health would require this Court "to exhibit a naiveté from which ordinary citizens are free." *Department of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (citation omitted).

To the extent that legitimate public-health concerns surrounding COVID-19 resurface locally, this Court enjoining enforcement of the FTMM would not stop the states from reinstating or extending their own mask mandates if they deemed it necessary and proper despite the scientific evidence to the contrary.

Also demonstrating the public interest is that regulation of public health is historically the province of the states, 44 of which do not require people to cover their nose and mouth. App. 198. And let's not forget Congress decides what's in the public

interest, not unelected bureaucrats at CDC and TSA. Congress has **never** enacted a federal mask mandate.

The Court has to consider that the federal mask mandate negatively impacts transportation security because it has created chaos in the sky and on the ground with several thousand reports of unruly passenger and crew behavior as a direct result of the mask mandate. Airline executives recognize it's in the public interest to improve transportation security by ending the mask mandate.

"The US government can help reduce the incidence of unruly air passenger behavior by doing away with the requirement that travelers wear face coverings, says the chief executive of Spirit Airlines," Flight Global reported June 23. https://bit.ly/FG062321. "'That's got to be the next step – when facial [covering requirements] are relaxed on airplanes,' CEO Ted Christie says during the Routes Americas conference ... 'That is going to take a lot of steam out of things. … The masks make everyone uncomfortable, and it does drive a lot of friction.'"

The CEO of Frontier Airlines also spoke out against the FTMM because of the safety risks it creates: "Barry Biffle agrees: face coverings are a prime contributor to a string of recent in-flight disruptions. 'The reality is, a lot of people don't want to wear masks,' says Biffle, who also spoke at the event. 'You don't have to wear a mask here, you don't have to wear [masks] at Walmart, but yet you've got to do it on a plane.' 'People are agitated,' he adds." *Id*.

It its entirely hypothetical – and without scientific support – to claim (as TSA did below) that staying the mask mandate would "thus expos[e] every passenger on pub-

lic transportation to a heightened risk of spreading and contracting a highly communicable and deadly disease." The Court should ignore TSA's grim-reaper statistics about COVID-19.[15] TSA's so-called "facts" about coronavirus have nothing to do with the issue at bar. This Court has made clear that regardless of how devastating an event an agency is responding to, it may not exercise authority beyond what Congress gave it.

TSA's contention that other passengers wearing masks somehow protect my "health and safety (and that of every other passengers)" is hilarious given that the agency has provided not a scintilla of evidence that masks prevent the spread of a respiratory virus. Protecting disabled Americans from discrimination in the nation's transportation system, however, is in the public interest.

Again TSA cites no evidence to support its claim that its Health Directives somehow "protect the public from unsafe air operations." Nor can the Court believe its scandalous assertion that "Petitioner is not entitled to put fellow passengers at risk of contracting COVID-19…" TSA presents the Court no evidence that I am infected with coronavirus or that not wearing a mask would in any way put anybody else at higher risk. The only "robust scientific research" shows masks don't work and damage my health. https://lucas.travel/masksarebad.

---

[15] The death counts quoted by TSA to inflame the Court are highly questionable as most people who die "with" COVID-19 infection are counted as having died "due to" COVID-19, when in fact their death was actually attributed to a pre-existing condition. But that is an issue for another debate.

California engaged in similar fearmongering in *South Bay*, claiming that "the re-
lief plaintiffs seek from this Court would imperil public health." The Court must re-
ject such erroneous claims that a stay of the FTMM would harm public health.

As justices of this Court have recognized, government "actors have been moving
the goalposts on pandemic-related sacrifices for months, adopting new benchmarks
that always seem to put restoration of liberty just around the corner." *South Bay*, 141
S. Ct. at 720 (Statement of Gorsuch, J.). It is time for the FTMM to end. The Court
should stay TSA's Health Directives and Emergency Amendment.

## IX. CONCLUSION

The Court of Appeals erred in refusing to grant me a stay to halt enforcement of
the FTMM until a final judgment is entered and this Court disposes of a petition for
a writ of certiorari. The task of protecting travelers from overzealous government
mandates that are issued in excess of statutory and regulatory authority as well as
violate my constitutional rights from government officials is in the hands of this
Court.

Equitable principles favor a nationwide stay of TSA's Health Directives and Emer-
gency Amendment as "the scope of injunctive relief is dictated by the extent of the
violation established, not by the geographical extent of the plaintiff class." *Califano
v. Yamasaki*, 442 U.S. 682, 702 (1979). Here, the FTMM is effective nationwide. Thus,
its violation is nationwide, and the stay should be too. A nationwide stay, in particu-
lar, would promote the public interest of equal treatment under the law for the disa-
bled and be consistent with basic administrative law principles, *Nat'l Mining Ass'n v.*

*U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1408-10 (D.C. Cir. 1998); equitable juris-

prudence, *Califano* at 702; and the uniform enforcement of federal law, *see Texas v.*

*United States*, 787 F.3d 733, 768-69 (5th Cir. 2015). It would make little sense if this

Court, having found that the FTMM is likely unconstitutional and/or unlawful,

merely enjoined its application only to me while allowing TSA to continue enforcing

the *ultra vires* mask mandate against the tens of millions of other Americans who use

and/or work in the transportation sector every day.

Pursuant to 28 USC § 1651, for the numerous reasons set forth above, I ask the

Court to grant my application for emergency interim relief to order TSA to stop en-

forcing the FTMM nationwide.

WHEREFORE, I request this Court issue an order granting the following relief:

1. TSA's three Health Directives and one Emergency Amendment challenged in

   this Petition for Review are hereby STAYED pending a final ruling in the

   Court of Appeals and disposition of a petition for a writ of certiorari by this

   Court;

2. TSA and all of its officers, agents, servants, employees, contractors, and attor-

   neys are hereby ENJOINED from enforcing the Federal Transportation Mask

   Mandate nationwide;

3. TSA is ORDERED to remove all signs from all airports stating masks are re-

   quired and to scrub its website of any mention of face coverings; and

4. Because all airlines and other transportation providers nationwide who are

   subject to the FTMM's enforcement provisions are in active concert or partici-

   pation with the enjoined federal agency in enforcing the mask mandate, all

airlines and other transportation providers nationwide are also hereby EN-

JOINED from requiring that any passenger wear a face covering unless such

a such a restriction is imposed by valid state or local law.

Respectfully submitted this 4th day of December 2021.

_____
Anthony Eades, applicant
19499 Cedar Gate Dr.
Warsaw, MO 65355
Telephone: 813-786-8960
E-Mail: teades2603@live.com